# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | |
| Plaintiff, | § § | Case No. 6:20-cv-585-ADA |
| v. | § § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

## MOTION TO DISMISS BY DEFENDANT GOOGLE LLC FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)

# **TABLE OF CONTENTS**

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.      The '961 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.      WSOU Alleges Infringement of Claim 1 by Two Google APIs, But Does Not Allege That Anyone or Anything Actually Uses the Two APIs in an Infringing Manner—Or, Indeed, That Anyone or Anything Uses the Two APIs at All. . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      To State a Plausible Claim for Relief, WSOU Must Allege Direct Infringement. . . . . . . 6

II.      WSOU Fails to Allege Direct Infringement of Claim 1 by Google's APIs. . . . . . . . . . . 7

        A.      WSOU Fails to Allege That Google Infringes Claim 1. . . . . . . . . . . . . . . . . . . . . . 7

        B.      WSOU Fails to Allege That Anyone Infringes Claim 1. . . . . . . . . . . . . . . . . . . . . 8

III.     Because WSOU Failed to Allege Direct Infringement Against Google or Anyone Else, Its Allegations of Indirect Infringement Must Also Fail. . . . . . . . . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## **TABLE OF AUTHORITIES**

*Cases* **Pages**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015).............................................................. 8

*Artrip v. Ball Corp.*,
    735 Fed. App'x 708 (Fed. Cir. 2018)....................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................ 6, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................ 6, 8

*BMC Res., Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007)............................................................ 7, 8

*Craigslist Inc. v. 3Taps Inc.*,
    964 F. Supp. 2d 1178 (N.D. Cal. 2013)................................................ 4, 8

*Conley v. Gibson*,
    355 U.S. 41 (1957).................................................................................. 6

*De La Vega v. Microsoft Corp.*,
    No. 19-612, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)............... 6, 7, 8, 9, 10

*Dippin' Dots, Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007)................................................................ 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)................................................................ 9

*Glory Licensing LLC v. United Airlines, Inc.*,
    No. 09-5569, 2011 WL 13295205 (E.D.N.Y. Mar. 15, 2011)................. 9

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012).......................................................... 7, 10

*In re Kollar*,
    286 F.3d 1326 (Fed. Cir. 2002)................................................................ 7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)................................................................ 6

# TABLE OF AUTHORITIES

*Cases* **Pages**

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

*Microsoft Corp. v. AT&T Corp.*,
550 U.S. 437 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Papasan v. Allain*,
478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ricoh Co. v. Quanta Comput. Inc.*,
550 F.3d 1325 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Wallen v. Teknavo Grp.*,
No. 12-6196, 2018 WL 1278317 (E.D.N.Y. Feb. 22, 2018). . . . . . . . . . . . . . . . . . . . . . . . 4

*Statutes and Rules* **Pages**

35 U.S.C. § 271. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION**

In this action for alleged patent infringement, the plaintiff fails to allege infringement. Plaintiff WSOU Investments, LLC claims only that Google provides two application programming interfaces, or APIs, that someone else *could* use, in combination, to write an application that an end user later *could* use in an infringing way.  But WSOU does not specify any allegedly infringing application, or even allege that any such application exists.  Instead, WSOU's allegations depend on a double hypothetical:  first, that a developer would write an application which would rely in part on Google's two APIs, and, second, that an end user would then use that application in an infringing way.  WSOU does not explain how Google would be liable for any infringement caused by the hypothetical end user's hypothetical use of the hypothetical application, or even claim that any actual infringement actually occurs.  No plaintiff can sustain allegations of patent infringement without alleging patent infringement, and WSOU is no exception.  WSOU's complaint does not properly allege any direct, induced, or contributory infringement, and thus fails to state a claim for which this Court can grant relief.  Under Fed. R. Civ. P. 12(b)(6), the Court should dismiss these claims.

**BACKGROUND**

**A.     The '961 Patent**

U.S. Patent No. 8,737,961, entitled "Method and Apparatus for Incrementally Determining Location Context," explains that "device manufacturers are continually challenged to deliver value and convenience to consumers by, for example, providing compelling network services," and that a "popular application is delivering services to a user of a wireless device based on the device's location."  Docket No. 1-1 at 1:7-12.  Toward this end, "[i]t is desirable to

derive context, such as 'work' or 'lunch' or 'recreation,' to be used to tailor network services." *Id.* at 1:24-26.  Although "many mobile devices include Global Positioning System (GPS) receivers that provide geolocation of the device to about 30 meter accuracy," *id.* at 1:12-14, the patent explains that "there are problems delivering services based on GPS data," *id.* at 1:15-16, including that "the power consumption in continuously monitoring on-device GPS is high," *id.* at 1:16-17, and so "[i]t is still not possible for most of the mobile phones to continuously trace a user for more than a relatively short period (e.g., 3 hours) without charging." *Id.* at 1:17-20.  As a result, the patent explains, "there is a need for an approach to derive or predict location context for a user of a mobile device, or both, that scales well to many users, such as incrementally determining location context."  *Id.* at 1:33-36.

To address the "need" it identifies, the patent claims a "[m]ethod and apparatus for incrementally determining location context." *Id.* at 3:63-64.  The patent describes deriving "location context . . . at least in part, from signals received from distinct signal sources," *id.* at 5:66-6:1, such as "wireless fidelity (WiFi) access points and global system for mobile communications (GSM) base stations." *Id.* at 6:9-10.  The "location context client 103 continuously samples the signal fingerprints from a user's mobile terminal," *id.* at 6:31-33, including "GSM cell identifiers" and "WiFi access point identifiers." *Id.* at 6:38-39.  When the "mobile terminal 150 is not moving substantively, e.g., not moving outside a limited or otherwise specified area, the identifiers indicated by successive signal data fields 203 are similar," *id.* at 7:17-20, but when the terminal "is moving substantively," the "identifiers . . . change more dramatically and are therefore less similar." *Id.* at 7:22-25.  "When a mobile terminal is frequently not moving with similar sets of transmitter IDs, those similar sets define a stationary

state, e.g., a limited area where the user of the mobile terminal has a tendency to stay." *Id.* at 7:26-29.

The patent starts its data set with "no stationary states; that is, the set Z of stationary states is empty. The set grows as stationary states are learned incrementally over time." *Id.* at 13:21-23. Based on this data, "a service is delivered to a user based on the current or most recent transition state or stationary state," *id.* at 12:14-15, such as "deliver[ing] a coupon to the user's mobile terminal based on that state." *Id.* at 12:19-20. "For example, the location context service module 220 determines that the user is currently at work but is about to leave for lunch; and passes this information to an external application . . . such as a marketing service that provides restaurant coupons to a user going to lunch in the vicinity of a subscribing restaurant." *Id.* at 7:61-67. Claim 1 recites:

> A method comprising:
>
> causing at least in part a receiving of signal data that indicates a set of one or more distinct signal sources from which signals are received at a mobile device for each of a plurality of different times;
>
> determining whether the mobile device is moving outside a specified area at a current time of the plurality of different times based on the signal data;
>
> if the mobile device is determined to be not moving outside the specified area, then causing at least in part an incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time;
>
> determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area and
>
> causing at least in part initiation of delivery of a service to the mobile device based on the stationary state.

*Id.* at 37:5-24. Claim 1 is the only claim WSOU mentions in its complaint.

**B.     WSOU Alleges Infringement of Claim 1 by Two Google APIs, But Does Not Allege That Anyone or Anything Actually Uses the Two APIs in an Infringing Manner—Or, Indeed, That Anyone or Anything Uses the Two APIs at All**

In its complaint, WSOU asserts infringement by "Google's Awareness API," which it asserts is "an API providing multiple context and location signals to mobile applications," and includes two separate APIs, "a Fence API and a Snapshot API." Compl. ¶ 47. As WSOU admits, these two APIs have different purposes: "[t]he Fence API allows an app to register the current situation of a user and conveys notification of the met combined context conditions," while "[t]he Snapshot API allows an app to send requests for information about the current context of a user." *Id.* WSOU's Complaint does not explicitly define the meaning of an API, but implicitly adopts the view that "[a]n Application Programming Interface (API) is a set of programming instructions and standards to allow third parties to develop software that draws information from, or otherwise interacts with, a website, program, or database." *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178, 1880 n.1 (N.D. Cal. 2013); *see also Wallen v. Teknavo Grp.*, No. 12-6196, 2018 WL 1278317, at *6 n.4 (E.D.N.Y. Feb. 22, 2018) ("An API or application programming interface is a set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service.") (citing *API*, Oxford Living Dictionaries, available at https://en.oxforddictionaries.com/definition/api).

WSOU admits that Google's Fence API and Snapshot API do not themselves perform any steps of the claimed method. Instead, WSOU alleges that the two APIs "allow" unidentified applications to perform various activities:

> The Awareness API is an API providing multiple context and location signals **to mobile applications**. The Awareness API comprises five location and context signals: time, location, activity, beacons, and headphones. The Awareness API includes a Fence API and a Snapshot API. The Fence API **allows an app** to register the current situation of a

– 4 –

> user and conveys notification of the met combined context conditions. The Snapshot API **allows an app** to send requests for information about the current context of a user.
>
> Awareness API **enables developers** to create context-based features with minimal impact on system resources. An application combines optimally processed context signals and lets the API manage system resources so that the app does not have to do the same.

Compl. ¶¶ 47-48 (emphasis added). WSOU does not accuse a particular mobile application of performing the steps in question, and refers instead to the two APIs' various alleged capabilities which, it asserts, various others could put together in an allegedly infringing way. *See id.* ¶¶ 49, 51, 53-54, 56-59 (referring to actions by "an app," "developers," "apps," "the application," and "the user").

WSOU's allegations further require the actual infringer—whether "an app," "developers," "apps," "the application," or "the user"—to combine various functions within the Fence API and the Snapshot API. *See id.* ¶¶ 46-60. Although WSOU's allegations are not entirely clear, and it does not provide a step-by-step analysis or chart of the asserted method in its complaint, WSOU appears to contend that, to infringe claim 1 of the '961 patent, some actual infringer must make various calls to the Fence API and the Snapshot API and then combine the results of these calls to act in an infringing manner. *See, e.g.*, *id.* ¶ 56 ("The user can use combination fences as well."); *id.* ¶ 57 ("A stationary state can be combined with an incremented count for another signal source such as motion data for activity (e.g. walking) using one or more sensors such as motion sensors, position sensors, etc. For example, when a user's stationary state (i.e. within a geofencing region) is determined, the application can incrementally count data for other context sets (e.g. step counting, distance covered, etc.)."). WSOU thus does not allege that Google performs the steps of the asserted method, or even that someone else does so;

instead, WSOU asserts only that Google provides flexible tools that an infringer allegedly *could* use, if he or she combined them in precisely the right way, to infringe the method of claim 1.

## ARGUMENT

### I. To State a Plausible Claim for Relief, WSOU Must Allege Direct Infringement

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "[I]n order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in original)), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 46-47 (alteration in original) and citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The *Twombly/Iqbal* "plausibility standard applies to direct infringement claims." *Artrip v. Ball Corp.*, 735 Fed. App'x 708, 714 n.4 (Fed. Cir. 2018) (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017)). As this Court has recently explained, *Twombly* and *Iqbal* require, at minimum, that "the complaint must plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed.'" *De La Vega v. Microsoft Corp.*, No. 19-612, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (quoting *Lyda*

*v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2017)). If a plaintiff's allegations of direct infringement fail, so too must corresponding allegations of indirect infringement: "To support a claim for indirect infringement, a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'" *De La Vega*, 2020 WL 3528411, at *7 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1336 (Fed. Cir. 2012)).

**II.     WSOU Fails to Allege Direct Infringement of Claim 1 by Google's APIs**

"Infringement of a method claim 'occurs when a party performs all of the steps of the process.'" *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) (quoting *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007)). The enumerated steps of a method claim must "'all be practiced as recited in the claim for a process to infringe.'" *Ricoh*, 550 F.3d at 1333 (quoting *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007)). Because "a process 'consists of doing something, and therefore has to be carried out or performed,'" *Ricoh*, 550 F.3d at 1335 (quoting *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002)), and "software is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions," *Ricoh*, 550 F.3d at 1335 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007)), even "a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Ricoh*, 550 F.3d at 1335.

**A.     WSOU Fails to Allege That Google Infringes Claim 1**

As WSOU acknowledges, Google's Snapshot and Fence APIs are not independently executable, but work only if called by executable code in a software application. *See, e.g.*, Compl. ¶ 51 ("The Fence API **allows an app** to register the current situation of a user . . .")

(emphasis added); *id*. ¶ 54 ("Geofencing **enables developers** to add a radius to adjust the proximity of a specific location and the duration in that specific location") (emphasis added). Because Google's APIs merely "allow third parties to develop software that draws information from, or otherwise interacts with" Google's software and information, *Craigslist*, 964 F. Supp. 2d at 1880 n.1, even if software on its own could infringe a method claim—which it cannot—Google's APIs could not do so, because they are not a "set of instructions that directs hardware to perform a sequence of actions," *Ricoh*, 550 F.3d at 1335.  WSOU's complaint boils down to the assertion that, because unidentified developers could employ Google's APIs in various ways to build a myriad of applications, and unknown end users could use one of those applications in an allegedly infringing manner, then Google must be responsible for this infringement.  WSOU's allegations do not meet the *Twombly/Iqbal* plausibility standard because they do not "plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed,'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1339), and the Court should therefore dismiss WSOU's complaint in its entirety.

**B.     WSOU Fails to Allege That Anyone Infringes Claim 1**

WSOU's allegations fail for another reason:  not only do they fail to allege infringement by Google through its API, they fail to allege infringement by *anyone*.  WSOU specifically asserts only infringement of one method claim, claim 1.  *See* Compl. ¶ 60.  But direct infringement of a method claim only "occurs where all steps of a claimed method are performed by or attributable to a single entity," *Akamai Techs., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (citing *BMC*, 498 F.3d at 1379-81), and so, as this Court has recently explained, when alleging "joint infringement by the combined acts of multiple

parties," the plaintiff must further plausibly plead that "'either (1) one party exercises the requisite "direction and control" over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1339).

WSOU pleads neither.  To the contrary, its complaint talks about hypothetical possible actions by "an app" (Compl. ¶¶ 47, 51, 54), "developers" (*id*. ¶¶ 48-49, 51-54), "apps" (*id*. ¶ 53), "the application" (*id*. ¶¶ 57-59) and "the user" (*id*. ¶ 56).  Thus, even if the Court assumed that the hypothetical developer and user were both real—which they are not—and even if the Court further assumed that Google was somehow responsible for alleged infringement by this hypothetical duo—which it is not—then WSOU's allegations would still fail, because the complaint fails to assert how these "'actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1339); *see also Glory Licensing LLC v. United Airlines, Inc.*, No. 09-5569, 2011 WL 13295205, at *2 (E.D.N.Y. Mar. 15, 2011) ("Because the only theory of infringement alleged in the complaint requires multiple actors, (*i.e.*, defendant and a United customer to act as a 'user'), in order to adequately plead direct infringement, Glory would have needed to allege that United controlled its customers, a dubious contention.") (footnote omitted). For this reason as well, WSOU has failed to plead infringement of method claim 1, and the Court should dismiss the complaint in full.

**III.    Because WSOU Failed to Allege Direct Infringement Against Google or Anyone Else, Its Allegations of Indirect Infringement Must Also Fail**

"Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement." *Dynacore Holdings Corp. v. U.S. Philips*

– 9 –

*Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  At the pleading stage, to state a claim for indirect infringement, "a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'"  *De La Vega*, 2020 WL 3528411, at *7 (quoting *In re Bill of Lading*, 681 F.3d at 1336).  WSOU's complaint pleads no direct infringement, *see supra* §§ I-II, and thus its allegations of indirect infringement also cannot survive, and the Court should dismiss them as well.  *De La Vega*, 2020 WL 3528411, at *7.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the complaint in this action, Docket No. 1, in its entirety.

Date:  September 11, 2020　　　　　　Respectfully submitted,

/s/ *Michael E. Jones*
Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (*pro hac vice* pending)
Jen Kash (*pro hac vice* pending)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-585@cases.warrenlex.com

Tharan Gregory Lanier (*pro hac vice*)
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939

+1 (650) 739-3900 facsimile
tglanier@jonesday.com

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 11, 2020, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

<div style="text-align:right">

/s/ *Michael E. Jones*
Michael E. Jones

</div>