**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| | § |
| | §    **CIVIL ACTION 6:20-CV-00571-ADA** |
| **WSOU INVESTMENTS, LLC d/b/a,** | §    **CIVIL ACTION 6:20-CV-00572-ADA** |
| **BRAZOS LICENSING AND** | §    **CIVIL ACTION 6:20-CV-00573-ADA** |
| **DEVELOPMENT** | §    **CIVIL ACTION 6:20-CV-00574-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00575-ADA** |
| *Plaintiff,* | §    **CIVIL ACTION 6:20-CV-00576-ADA** |
| v. | §    **CIVIL ACTION 6:20-CV-00577-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00578-ADA** |
| **GOOGLE LLC,** | §    **CIVIL ACTION 6:20-CV-00579-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00580-ADA** |
| *Defendant.* | §    **CIVIL ACTION 6:20-CV-00581-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00582-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00583-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00584-ADA** |
| | §    **CIVIL ACTION 6:20-CV-00585-ADA** |
| | § |
| | §    **JURY TRIAL DEMANDED** |

**<u>JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER</u>**

     The parties jointly move for entry of a protective order. While the parties have reached agreement on most items, multiple items remain in dispute. The parties' respective positions are below. A proposed protective order with the disputes highlighted is attached as Exhibit A.

1

1.      **Section 8: Definition of Source Code**

| Plaintiff's Proposal | Defendant's Proposal (Default PO) |
|---|---|
| To the extent a Producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the Producing Party may designate such Protected Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code ("Source Code Material") (i.e., a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator), the Producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE." | To the extent a Producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the Producing Party may designate such Protected Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the Producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE." |

A.      **Plaintiff's Position**

For section 8, WSOU proposed the identical definition for source code to which Google agreed to in eighteen of its prior cases.[1] Google previously agreed in these cases – like before – to the definition of source code. Only recently did Google change its mind.

Google's prior agreement to this definition of source code is for good reason.  When one asks Google's search engine to "define: source code," one receives nearly verbatim the definition WSOU requested (and to which Google previously agreed):

---

[1] 13 Cases: Uniloc 2017, LLC v. Google LLC, Case Nos. 2:18-cv-491-504-JRG-RSP and the following 5 Cases in Uniloc 2017, LLC v. Google LLC, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex., July 2, 2019)



One can see that Google's search engine pulled this definition from "Oxford Languages."

By avoiding a definition of "source code," Google's proposal invites further disputes as to whether something truly is source code or not.  To avoid such disputes, WSOU simply proposes Google's previous agreed definition, which is also nearly verbatim to the definition provided by its search engine.  The same definition of source code was also agreed to in 12 cases between *WSOU* and *Microsoft*[2] and 12 cases between WSOU and Huawei.[3]

As to the term "live data," in the meet and confers between the parties, both parties struggled to specify exactly what "live data" encompassed and when it might arise in the cases. Given those discussions, Google previously agreed with WSOU to remove "live data." Only recently did Google reintroduce this term.

Google cites the cases of *WSOU v. ZTE* as an allegation that the Court rejected WSOU's proposal; however, the facts are different. The Court entered its default protective order, which neither

---

[2] WSOU Investments, LLC. v. Microsoft Corp., Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021)
[3] WSOU Investments, LLC. v. Huawei Technologies, Ltd. Et al., Case No. 6:20-cv-533-544 (W.D. Tex)(Aug. 24, 2021).

Google nor WSOU seek here. The Court did not consider piecemeal adjustments to the Court's default. Again, WSOU did not come up with the language it now proposes; Google did – when it originally proposed that WSOU and Google use the language from Google's prior cases.

**B.      Defendant's Position**

Google's proposal follows the Court's Default Protective Order, including the Court's definition of "source code." This Court rejected WSOU's position, including its definition of "source code", in the *WSOU v. ZTE* cases, *see WSOU Investments LLC v. ZTE Corporation*, 6:20-cv-00487-ADA, Dkt. Nos. 74-1 & 83 at Section 8, and it should do so here as well.  WSOU's attempts to distinguish the *ZTE* dispute by arguing that this Court "did not consider piecemeal adjustments to the Court's default" is mistaken. The same dispute was briefed—ZTE, like Google, sought the default language and WSOU sought the same language it seeks here.  *Id.*  The Court adopted its default definition.  Google requests that this Court reach the same result here.

Addressing the specifics of WSOU's position, WSOU challenges the Court's definition of "source code" including reliance on live data.  Contrary to WSOU's assertion, the Court's default lessens the likelihood of future disputes between the parties about what qualifies as source code and does not, all while favoring caution by providing protection to data related to the source code and that is equally deserving of highly confidential treatment.  For instance, WSOU's purported definition might exclude data about the source code (or created from that source code), which should be protected as source code.  To the extent a dispute develops, the appropriate persons can still work with the information while any such disputes are resolved in the meet and confer process; it is appropriate to give initial source code protection to all such material rather than strip these highly confidential materials of protection by an underinclusive definition.

WSOU's proposal invites competing arguments as to what is source code and what is not, while

the Court's Default definition is clear about what data falls under the umbrella of source code and live data.  There is no ambiguity in the Court's Default definition, and Google requests that the Court adopt it in this case.

**2.      Section 10(a): Location of Source Code Computers**

| Plaintiff's Proposal | Defendant's Proposal (Default PO) |
|---|---|
| Additionally, except as provided in paragraph 10(o) below, the stand-alone computers may only be located in Austin, Texas at the offices of the Producing Party's outside counsel or a location in Austin selected by such outside counsel. | Additionally, except as provided in paragraph 10(o) below, the stand-alone computers may only be located at the offices of Producing Party's outside counsel. |

**A.      Plaintiff's Position**

For section 10 (a), during the negotiation of this protective order, the parties previously agreed that Google's source code would be made available in this District in Austin.  Early in this case, WSOU requested that the source code be made available in Austin – noting (1) WSOU's source code experts being in Austin, and (2) Google's production of its source code in Austin in multiple cases between Uniloc and Google. WSOU likewise disclosed these Austin-based source code experts in December 2020 and January 2021. WSOU understood that the parties had reached agreement on this issue and were surprised to see it as "disputed" issue in the latest draft circulated by Google.

5

Google has a large campus in Austin[4] and uses multiple law firms in Austin.  Given that Google has previously made its code available for inspection at such Austin law firms and that WSOU's disclosed experts are located in Austin, Google should have no problem making code available in Austin.  Also, as explained to Google in the meet and confers, this Court took the identical approaching in requiring Microsoft to make its source code available in Austin to WSOU at a law firm that Microsoft uses.  *See* e.g., *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Nov.. 30, 2020)(Text Entry . . . "The Court will have the source code made available in Austin.")

Google's allegation of making source code available in Dallas (as opposed to Austin) was disingenuous. The "offer" was made five months after WSOU disclosed its ***Austin***-based experts and requested that the source code be made available in ***Austin***.  Also, the "offer" was conditioned on acceptance of an unreasonable acquisition bar that would prevent WSOU's experts (and counsel) from working in similar areas to the patents-in-suit.  WSOU does not believe it was a true offer.

### B.    Defendant's Position

Google again proposes the provision from the Court's default Protective Order--that the stand-alone computers for source code review be located at the offices of the Producing Party's outside counsel. *See* Default Protective Order - Patent Cases, Section 11.  Google's counsel in these cases has offices in Dallas, and, in fact, Google informed WSOU months ago that its source code was available for inspection at Jones Day's office in Dallas.

WSOU's asserts that Google agreed to provide source code review in Austin.  WSOU is incorrect about that, and the record of communications between counsel is clear.

---

[4] As noted in WSOU's complaint, in "June of 2019, Google had more than 1,100 employees in Austin. In January 2019, it was reported that Google "signed a lease for an entire 35-story tower that has started construction just east of the Central Library in downtown Austin."4 Google's 35-story tower in Austin "will have 790,000 square feet of space, enough to potentially house about 5,000 people." *See* e.g. 6:20-cv-00571-ADA, Dkt. 1, paragraph 8 and 9. (Footnotes omitted)

In any event, WSOU's proposal to require source code inspection in Austin should be rejected for several other reasons.  First, WSOU's proposal imposes burdens on Google to find, equip and pay for offices in Austin, when the source code is already available for inspection (and has been for months) in the location provided by the default order.  Additionally, WSOU's position is inconsistent with that it took in other cases before this Court; indeed, in the Huawei cases, WSOU asked this Court to enter a Protective Order allowing for source code review in Dallas. *See WSOU Investments LLC v. Huawei Technologies Co., Ltd.*, 6:20-cv-00544-ADA, Dkt. No. 70 at 5-7, and Dkt. No. 67 at 7 (ordering production in Dallas or as otherwise agreed to by the parties).

Finally, WSOU's decision to select experts who are based in Austin is not an appropriate basis to increase litigation burdens and expense for Google by requiring source code inspection at WSOU's desired location.  WSOU is wrong about Google's efforts to make source code available in Dallas.  Google purchased numerous computers for the sole purpose of making source code available, prepared the facilities in Dallas, and made its source code available there months ago.  It is not clear why WSOU suggests that is "disingenuous."

Accordingly, if this Court is inclined to impose a specific location, it should be in Dallas (a location WSOU has previously requested in other cases and where Google's counsel has offices), not in Austin.  To the extent Google is ordered to make source code  available in Austin, Google requests that WSOU bear any additional costs including hiring additional counsel to accommodate the source code review in Austin, as opposed to the default location of the offices of Google's outside counsel.

### 3.        Section 10(k): Source Code Printing Limits

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Do not include Defendant's proposal. | Each print request shall be made in writing to the Producing Party.  Any print request that consists of more than twenty-five (25) pages of a continuous block of Source Code shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need for such a printed copy.  The Receiving Party may request printed Source Code of no more than one thousand (1000) pages total, subject to further agreement between the Producing Party and Receiving Party or order by the Court. |
| To the extent the Receiving Party requires an aggregate total of more than WSOU Proposal: 1000 pages of Source Code for any software release, limited by a contiguous block of no more than one hundred (100) pages, the Receiving Party shall make such request, and the Parties shall meet and confer in an effort to reach an agreement to produce an agreed number of additional pages. | To the extent the Receiving Party requires an aggregate total of more than Google Proposal: 1000 pages of Source Code, the Receiving Party shall make such request, and the Parties shall meet and confer in an effort to reach an agreement to produce an agreed number of additional pages. |

### A.        Plaintiff's Position

For section 10(k), with regard to number of printouts, this Court has already resolved an identical

issue in twenty-four cases between (1) WSOU and Microsoft and (2) WSOU and Huawei. In those cases,

the Court reached the following fair resolution on the number of printouts: "The receiving Party shall not

print more than 1000 pages for each software release. . ." 12 Cases: *WSOU Investments, LLC. v. Microsoft

Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021) and 12 Cases: *WSOU Investments, LLC. v.

Huawei Technologies, Ltd. Et al.*, Case No. 6:20-cv-533-544 (W.D. Tex)(Aug. 24, 2021). WSOU simply

suggests using this identical language.

Google seeks to modify such language by creating an extra limit of 1,000 pages *total* – without

regard to how many software releases exists for accused instrumentalities.  Because of the differences

between releases of software, there should not be an arbitrary limit across all such releases, which Google proposed. Google also unnecessarily seeks to limit contiguous page counts to 25 pages with a note that 25 pages is "presumptively excessive." Given the overall page limit per release, there is no need for such page limits. Nonetheless, in the spirit of compromise, WSOU was willing to agree to a limit of 100 as noted in its proposal.

### B.     Defendant's Position

Google's proposal provides for a reasonable arrangement that limits contiguous printing requests to 25 pages by default and establishes a default page limit of 1000 pages per case.  That provides WSOU with the ability to print 13,000 pages of Google's highly confidential source code. WSOU has not explained why it expects to need to print more. Google's proposal follows the Court's default procedure if WSOU believes it needs additional pages.  Such limits provide a reasonable limit that reflects that the source code printouts should be used only for specific purposes, such as for citing specific portions of source code in a Court filing or expert report. The limits also reflect the principle (embodied in the protective order) that source code printouts are not a substitute for general source code review, which should be done on a source code computer.

The protection of Google's source code is of paramount importance. Improperly distributed source code would not only reveal valuable trade secrets underlying Google's products, but could also make Google vulnerable to individuals interested in writing a debilitating virus or breaking important functionality.

WSOU proposed limit of 1000 pages per software release per case undermines the limit entirely. It allows a completely new set of pages to be printed for each release even if the differences between those releases are nominal at most.   As a result, it allows for printing of a substantial number of pages with no suggestion that there is a need to do so.  Given the number of cases filed by WSOU, this allows

WSOU to print tens of thousands of pages.  Such a substantial number of pages is not warranted, and WSOU offers no reason why it would be appropriate.

Courts have routinely imposed restrictions on the printing of source code.  *See Linex Tech Inc. v. Hewlett Packard Co.*, No. C 13-00159, 2013 WL 1820909, at *2 (N.D. Cal. Apr. 30, 2013) (limiting the number of consecutive source code pages that can be printed because plaintiff's proposed "modification undermines the protective order's restrictions preventing a party from reviewing source code outside the secure room and weaken confidentiality protections"); *Unwired Planet LLC v. Apple Inc.*, No. 12-cv-505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (finding that Apple established good cause to limit the amount of source code that may be printed beyond what is "reasonable" and limiting printing to 250 pages of code, with no more than 30 consecutive pages); *Prism Techs., LLC v. Adobe Sys., Inc.*, No. 10-cv-220, 2011 WL 5523389, at *1 (D. Neb. Nov. 14, 2011) (recognizing that "unlimited printing of defendants' source code . . . would unduly risk defendants' hard-fought confidentiality of this investment").

Because WSOU's proposal creates an unacceptable risk of inadvertent disclosure of printed source code, it should be rejected, and Google's proposed language should be included in the Protective Order.

### 4. Sections 10(l) & 10(p): Time Frame for Providing Print Outs

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Within **one (1) business day** of receiving a print request, the Producing Party shall either (i) provide to the Receiving Party five (5) Bates stamped hard copies of the requested Source Code, which at the Producing Party's sole discretion may be provided on watermarked paper ("Original Copies") or (ii) inform the Requesting Party that it objects to the print request or portions thereof as inconsistent with this Order. | Within no later than **two (2) business days** of receiving a print request, the Producing Party shall either (i) provide to the Receiving Party five (5) Bates stamped hard copies of the requested Source Code, which at the Producing Party's sole discretion may be provided on watermarked paper ("Original Copies") or (ii) inform the Requesting Party that it objects to the print request or portions thereof as inconsistent with this Order. |
| If, during the course of a review, the receiving Party has stored electronic print-outs of Source Code Material (for example a .pdf file) on the review computer, the receiving Party may request the producing Party provide the receiving Party with a Bates-labeled and appropriately designated paper copy of the electronic print-outs to the Receiving Party within **one business day**. | If during the course of a review the receiving Party has stored electronic print-outs of Source Code Material (for example a pdf file) on the review computer, the receiving Party may request the producing Party provide the receiving Party with a Bates-labeled and appropriately designated paper copy of the electronic print-outs to the Receiving Party within **no later than two business days**. |

### A. Plaintiff's Position

In section (l) and (m), WSOU has requested a reasonable one business day turnaround for print requests. This is identical to the time period in the 12 cases between *WSOU and Microsoft*.[5] In source code review, it is common for a source code reviewer to make a PDF on the source code review computer to designate a print request. In this scenario, there is plenty of time to actually take that PDF and provide a paper copy. Under Google's proposal, if WSOU makes such a PDF file (for printing) on Thursday,

---

[5] *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021)("If during the course of a review the receiving Party has stored electronic print-outs of Source Code Material (for example a pdf file) on the review computer, the receiving Party may request the producing Party provide the receiving Party with a Bates-labeled and appropriately designated paper copy of the electronic print-outs to the Receiving Party within *one (1) business day*.") (Emphasis added.)

WSOU must wait until Monday of the next week to receive a printed copy of that PDF. WSOU's proposal more reasonably allows a business day to printout the PDF file, which is plenty of time.

### B.     Defendant's Position

The sole dispute between the parties is whether the producing party should have two business days to provide printouts or only one.  Google's proposal reasonably requests two business days to review and complete source code print requests (which, under WSOU's proposal, may consist of thousands of pages), and arrange for delivery.  This accommodates for circumstances when the receiving party makes a request towards the end of a day and accommodates staffing challenges, while still providing for production in a very timely fashion. Given the number of pages and copies that WSOU seeks to print, this also permits a reasonable time to ensure such printing can actually be finished and delivered.  WSOU's request for a one business day turnaround is particularly cumbersome in view of their insistence that source code be provided in Austin, as opposed to a location where Google's outside counsel has offices (i.e., Dallas, where WSOU's outside counsel also has nearby offices).

**5.      Section 10(n): Limits On Copies Of Printouts**

| Plaintiff's Proposal | Defendant's Proposal |
| --- | --- |
| The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, , which shall presumptively be a total of ten (10), all of which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL – SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied. | Do not include Plaintiff's proposal. |

**A.      Plaintiff's Position**

In section (n), WSOU has proposed the Court's default protective order langue, which specifies a "reasonable number," which shall presumptively be ten (10).  This is fair. Google proposes striking that language. While the parties have agreed elsewhere that an _initial_ request will include _five_ copies, WSOU should not be precluded from extra copies, up to the Court's default of 10, should it need such copies.

**B.      Defendant's Position**

Google's proposal reflects a compromise wherein Google agreed to provide more printed copies (five) (_supra_ Sections 10(l) & 10(p)) in exchange for WSOU not having unfettered discretion to make copies of Google's highly confidential source code.  Each additional copy of Google's source code creates additional, material risk to Google.  Under Google's proposal, WSOU will have sufficient copies of the printouts for the limited purposes for which those printouts are supposed to be used.  Indeed, under Google's proposed limits WSOU could make up to five copies of the up to 13,000 pages of source code printouts.  That is more than sufficient and WSOU's proposal for more copies is unnecessary.

Bottom line, and as already noted above, source code printouts are meant to be limited and not a substitute for general source code review, which should be done on a secure source code computer.

Google's proposal thus again reflects the risk to Google created by each additional printout while avoiding any prejudice to WSOU.

**6      Section 10(o): Methods of Transporting Source Code**

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| A Producing Party's Source Code Material may only be transported by the Receiving Party at the direction of a person authorized under paragraph 10(f) above to another person authorized under paragraph 10(f) above, on paper via hand carry, Federal Express, or other similarly reliable courier. | A Producing Party's Source Code Material may only be transported by the Receiving Party at the direction of a person authorized under paragraph 10(f) above to another person authorized under paragraph 10(f) above, and on paper via hand carry (including via a hand carry courier service). |

**A.      Plaintiff's Position**

For section 10 (o), WSOU proposes the Court's default protective order, which is also the same protective order language used in the 12 cases between *WSOU* and *Microsoft*[6] and 12 case between WSOU and Huawei.[7]  This is also the default language for the Eastern District of Texas. The parties previously agreed to this; however, Google recently retracted that agreement. Google's new proposal strikes the Court's default language: "Federal express or other reasonably reliable courier" and mentions nothing of ability to transfer via courier. It would be unreasonable to require authorized experts or counsel to transfer to one another – as opposed to using a courier.  Google's proposal unreasonably requires either an expert or counsel of record to be the courier.

**B.      Defendant's Position**

Google proposes that the Proposed Order require the receiving party to transport the producing party's source code printouts by hand carry.  In multiple cases in the Eastern District of Texas presenting the same issue, the Eastern District ruled in favor of requiring the parties to transport source

---

[6] *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021).

[7] *WSOU Investments, LLC. v. Huawei Technologies, Ltd. Et al.*, Case No. 6:20-cv-533-544 (W.D. Tex)(Aug. 24, 2021).

code by hand carry. *See, e.g., UNILOC 2017, LLC et al., v. Google LLC*, 2:18-cv-00493-JRG-RSP, Dkt. No. 45 at Section 10(l) (directing that source code could only be transported by a disclosed person "via hand carry"); *Eolas Technologies, Inc. v. Amazon.com, Inc.,* 6:15-cv-01038-RWS, Dkt. Nos. 81, 82, 98 (directing that source code be transported "on paper via hand carry" and not electronically).  Google's proposal is consistent with other provisions of the Protective Order requiring that protected material be stored or viewed at secure locations and only accessible to a limited number of approved counsel, outside consultants, and experts.

WSOU's proposal, which provides for "Federal Express or other similarly reliable courier" to transport source code, would undermine other provisions of the Protected Order that protect source code material.  Under WSOU's proposal, a standard common carrier may be used to transport source code despite the risk of lost, misdelivered, or stolen packages.   Even with a tracking number (which WSOU's proposal does not require), if the printed source code is lost in the mail, no one can confirm where it was sent or to whom. This risk is too great and not warranted.

Despite WSOU's protestation, Google's proposal would permit the transport of source code via more secure mechanisms, such as hand carry via a courier.  Such services ensure that the code is properly controlled and protected while in transit and minimizes the risk of inadvertent loss.  If WSOU chooses to transport printed code (which is not intended to be used for review in the first instance), Google should not bear the burden of the risk created by that choice.

7.      **Section 11: Prosecution bar**

| Plaintiff's Proposal | Defendant's Proposal (Default PO) |
|---|---|
| Any person permitted to receive the other Party's Designated Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL – SOURCE CODE and directed to technical information relevant to the case, but excluding financial data or non-technical business information  (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to Field of Invention of the patents-in-suit on behalf of the Receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals, or two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL, whichever is earlier. Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s).  Each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE TECHNICAL MATERIAL, and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or other affiliate, prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit. | Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit during the pendency of this Action and for one year after its conclusion, including any appeals.  To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent application pertaining to the field of invention of the patent-in-suit.  Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in a PTO proceeding, *e.g.*, IPR or PGR, except for that person shall not participate—directly or indirectly—in the amendment of any claim(s). |

A.      **Plaintiff's Position**

For section 11, in attempts to minimize disputes, WSOU agreed to use the ***identical*** prosecution

16

bar Google previously agreed to in its ***eighteen*** prior cases against Uniloc. *See* e.g., *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex., June 14, 2019)(Judge Payne) and *Uniloc 2017, LLC v. Google LLC,* Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex., July 2, 2019)(Dkt. 47). This is also the same protective order language used in the 12 cases between WSOU and Microsoft[8] and 12 case between WSOU and Huawei.[9]

Google identified the protective order from such Uniloc cases as a starting point for the present cases and also initially agreed to this prosecution bar language. However, Google later backtracked from its previous agreement and introduced modified language instead.

Given Google's prior use of the ***identical*** prosecution bar in these ***eighteen*** different cases, Google should also have no problem with its use in the cases involving WSOU. Two particular problems arise with Google's new language.

i.   **The Bar Should Not Apply Those Who Don't Actually "Access" Materials and Financial Information (Other than Technical Information)**

Google's previously agreed-to language contains often-used language concerning *when* a prosecution bar attaches, namely (1) when an individual *actually* obtains information (as opposed to only having "access to" it) and (2) when an individual obtains "technical information" as opposed to "financial data." Counsel has "access to" designated material when they make an appearance – even if they never access or otherwise learn about designated material. Attaching a prosecution bar in such circumstances is non-sensical.  There is no harm.  Likewise, there is no risk of harm coming from one who only looks at financial information and not technical information relevant to the case. Under Google's proposal, the prosecution bar would attach to a financial consultant who had access to, but never looked at, any confidential sales numbers in a case.

---

[8] *WSOU Investments, LLC. v. Microsoft Corp*., Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021).
[9] *WSOU Investments, LLC. v. Huawei Technologies, Ltd. Et al.*, Case No. 6:20-cv-533-544 (W.D. Tex)(Aug. 24, 2021).

There is nothing controversial about WSOU's proposal, which again adopts Google's prior agreed-to language. In addition to Google's prior agreement to this language in eighteen cases,[10] it is identical, word for word, to language agreed to by WSOU and Microsoft and, also, WSOU and Huawei in the twenty-four cases between those parties.[11] Other parties have also recognized this common-sense approach – including Apple.[12]

### b.    Alternative Time Language

Google's previously agreed to language also contains often used language in prosecution bars concerning an alternative time period when a prosecution bar should no longer apply to a person – "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL." This language reflects the simple fact that memories fade over time and that the principal expiration clause, which is tied to the case ending (including the appeals), can go on for years. This same language has either been agreed to by parties or used by Courts in at least the following cases (including eighteen cases with Google):

- <u>13 Cases</u>: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- <u>5 Cases</u>:  *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . .")
- <u>12 Cases</u>: *WSOU Investments, LLC. v. Microsoft Corp.,* Case No. 6:20-cv-454-465 (W.D.

---

[10] *See* e.g., *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ");  5 Cases:  *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ");

[11]  *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021) and *WSOU Investments, LLC. v. Huawei Technologies, Ltd. Et al.*, Case No. 6:20-cv-533-544 (W.D. Tex)(Aug. 24, 2021).

[12]  *Agis Software Development, LLC v. Apple, Inc.*, Case No. 2:17-cv-516-JRG (E.D. Tex.)(Oct. 26, 2017) ("who obtains, receives, or otherwise learns of, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL of a technical nature under this Order.").

Tex)(March 30, 2021)(" or two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL.")

- *Kojicast, LLC v. Funimation Productions, LLC*, Case Nos. 2:19-cv-132 (E.D. Tex.)(Jul. 19, 2019)("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Keurig, Incorporated v. Sturm Foods, Inc.*, Case No. 10-841-SLR-MPT (D. Del.)(July 6, 2001)("two years after that person's last review of the Designated Material")
- *Uniloc 2017, LLC v. Kaspersky Lab, Inc.*, Case No. 2:19-cv-219-JRG (E.D. Tex.)(Nov. 19, 2019) ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Kik Interactive, Inc.*, Case No. 2:19-cv-150-JRG-RSP (E.D. Tex.)(Aug. 11, 2020)( ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Riot Games, Inc.*, Case No. 2:19-cv-223-JRG (E.D. Tex.)(Mar. 19, 2020)(two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Pass & Seymour, Inc. v. General Protecht Group, Inc. et al.*, Case No. 5:077-cv-833 (N.D. N.Y.)(Dec. 21, 2011)("for a period of eighteen months (18) months from his or her last review of such information.")
- *Prism Technologies v. Research in Motion, Ltd el al*, Case No. 8:08-cv-537 (D. Neb)(Feb. 9, 2010)("two years (for examination prosecution and support) after that person's last review of the designated information . . . ").
- *WM Wrigley Jr. Co, v. Cadbury Adams USA*, Case No. 2:04-cv-346 (N.D. Ill.)(Jan. 21, 2005)("three years after that person's last review of the designated information . . .")
- *Vest Corporation v. Amdocs Management Limited et al.*, Case No. 3:14-cv-1142 (D. Ore.)(Feb. 21, 2017)("two years after the person last reviews the source code . . . ").

## B.    Defendant's Position

Google's proposal in these cases follows this Court's Default Protective Order and is consistent

with the Court's approach in resolving a similar dispute *WSOU v. ZTE* cases.  *See WSOU Investments*

*LLC v. ZTE Corporation*, 6:20-cv-00487-ADA, Dkt. No. 74-1 at Section 12.  Perhaps for that reason,

WSOU also agreed to the same prosecution bar that Google requests in the *WSOU v. Juniper* and

*WSOU v. HPE* cases before this Court.  *See WSOU Investments LLC v. Juniper Networks, Inc.*, Case

6:20-cv-00812-ADA, Dkt. No. 55 at Section 11; *see also WSOU Investments LLC d/b/a Brazos*

*Licensing and Development v. Hewlett Packard Enterprise Company*, 6-20-cv-00783-ADA, Dkt. No.

44-1 at Section 16(e).

And Google has an additional substantive concern with WSOU's proposal -- it seeks to apply

the prosecution bar only to prosecution on behalf of WSOU itself.  WSOU's counsel and employees are

involved in prosecuting patents on behalf of other entities that have also sued Google and many other

technology companies.  Limiting the prosecution bar to only work done on behalf of WSOU would

create the risk that Google's confidential information is inadvertently misused while prosecuting

patents for other, related entities.  *See, e.g., In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378

(Fed. Cir. 2010) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress

information once learned, no matter how well-intentioned the effort may be to do so.") (internal

quotation omitted).

8.      **Section 12: Acquisition Bar**

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Do not include Defendant's proposal. | Absent written consent from the designating Party, any individual affiliated with Plaintiff who obtains, receives, has access to, or otherwise learns, in whole or in part, the any other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not be involved in any activity related to: (i) the acquisition of patents or patent applications relating to the Field of Invention or (ii) the advising or counseling clients regarding the same.  This Acquisition Bar shall begin when such HIGHLY SENSITIVE MATERIAL is first received by the affected individual and shall end after the conclusion of this Action, including any appeals. |

A.      **Plaintiff's Position**

i.      **Courts Have Repeatedly Rejected the Acquisition Bar Google Seeks**

This Court should reject Google's proposed acquisition bar – just like multiple prior Courts

have. Google argues that, in addition to barring certain prosecution activities, that there should also be

a bar extending to "any individual affiliated with Plaintiff" to prohibit activity related to "the

acquisition of patents or patent applications relating to the Field of Invention" including "advising or

counseling clients regarding the same."

This Court's default protective order contains no such acquisition bar, and district courts routinely reject their inclusion.[13] There's a good reason for this. Acquisition bars cast a wide net in preventing legitimate activities such as allowing Plaintiff's counsel from advising Plaintiff about potential acquisitions of their own patents—advice that would not require use of Defendants' confidential materials. Likewise, it would prohibit Plaintiff's counsel from offering their other clients routine advice – placing an unreasonable restriction of Plaintiff's counsel's ability to practice law.

The agreed portions of the Protective Order indicate that Designated Material may not be used for "any other purpose." See e.g., Paragraph 7. By further prohibiting activities, Google's acquisition bar casts a wider net than necessary – prohibiting legitimate activities unrelated to use of Designated Materials.  Because of this harmful effect on Plaintiff's counsel, Courts have noted that acquisition bars are only appropriate when a defendant can show "that there is an unacceptable risk of inadvertent disclosure of Defendants' confidential material by Plaintiff's counsel" (or, in this case, by other individuals who are allowed to view Defendants' protected material). Order (Dkt. 374), *Garnet Digital, LLC v. Apple, Inc*., 6:11-cv-00647-LED (E.D. Tex.). Defendants have not demonstrated that such a

---

[13]

[12] *See, e.g., SOL IP, LLC, v. AT&T Mobility,* Case No. 2:18-cv-526-RWS-RSP (E.D. Tex May 29, 2019)(Overruling Defendants' objection to magistrate judge denial of acquisition bar); *Jenam Tech, LLC v. Samsung Elecs. Am., Inc.,* Case No.4:19-cv-00250-ALM-KPJ,(E.D. Tex. Feb. 4, 2020);  *Karamelion LLC v. ADT LLC,* Cas No. 2-18-cv-00330-JRG (E.D. Tex Jan. 24, 2019); *Rockstar Consortium US LP v. Google,* C.A. No. 2:13-893-JRG (E.D. Tex., June 19, 2014); *Data Engine Technologies LLC v. Google Inc*. No. 14-cv-1115 (Apr. 8, 2015 Oral Order at Doc 33); *TQ Beta, LLC v. DISH Network Corporation, et al.,* No. 14-cv-848-LPS-CJB (Apr. 1, 2015 Oral Order at Doc 32); *Copy Protection  LLC Netflix Inc.,* No. 14-cv- 365-LPS (Dec. 16, 2014 Oral Order at Doc 28); *IP Learn LLC* v. *Beeline Acquisition Corp.,* No. 11-825-RGA (October 23, 2012 transcript at 9); *Intellectual Ventures I LLC* v. *Canon Inc.,* No. 11-792- SLR (December 18, 2012 transcript at 4-8); *Personalized Media Communications, LLC v. Amazon.com, Inc.,* 13- 1608-RGA (March 21, 2014 transcript at 54)); *Intellectual Ventures I LLC, et al.* v. *AT&T Mobility LLC,* 12-193- LPS (June 5, 2014 transcript at 46-49); *Graphics Properties Holdings, Inc.* v. *Asus, No.* 12-210-LPS (July 1, 2014 transcript at 38); *Pragmatus Telecom, LLC v. Genesys Tele. Lab., Inc., No.* 14-cv-26-RGA (Nov. 12, 2014 Oral Order a D.I. 35); *CRFD Research, Inc.* v. *Netflix Inc.,* No. 14-cv-314-GMS (Jan. 5, 2015 transcript at 14); *Media Communications, LLC v. Amazon.com, Inc.,* 13-1608-RGA (March 21, 2014 transcript at 54).

risk is present here. Nothing in the facts of this case presents any elevated risk of "inadvertent disclosure."[14]

This is not the first time Google has attempted to force an acquisition bar on parties or individuals. The following is non-limiting examples of orders where Courts (including this Court) have rejected Google's attempt at inclusion of an acquisition bar.

- *VideoShare, LLC v. Google, LLC et al.*, Case No. 6:19-cv-663 (W.D. Tex., July 23, 2020)(Judge Albright)(Dkt. 45)(Minute hearing denying acquisition bar).
- *Personalized Media Communications, LLC v. Google LLC*, Case No. 2-19-cv-00090-JRG (E.D. Tex., August 7, 2019).[15]
- **13 Cases**: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex., June 14, 2019)(Judge Payne)[16]
- *Uniloc USA, Inc., et al Amazon Digital Service, Inc., et al.* Case No 2:16-cv-570 (March 1, 2017)(Judge Schroeder)(Google as co-defendant)[17]
- *Rockstar Consortium US LP v. Google*, Case No. 2:13-893-JRG (E.D. Tex., June 19, 2014)[18]
- *Data Engine Technologies LLC v. Google Inc.*, Case No. 14-cv-1115 (Apr. 8, 2015 Oral Order at Doc 33)
And, in yet other cases, following Court guidance, Google chose to no longer pursue such an

acquisition bar:

- *Hammond Development International, Inc. v. Amazon.Com, Inc. et al WDTX*-6-19-cv-00355 (February 21, 2020)(Dkt. 56)(Google as co-defendant)(noting guidance from Court in hearing of Feb. 5, 2020)
- **5 Cases**:  *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex., July 2, 2019)(Dkt. 47)(noting earlier rulings from Court that excluded Google's request for an acquisition bar)[19]

---

[14] To the extent Google might argue that acceptance of a limited prosecution bar is an admission that such a risk exists, that is not the case.  The agreement to inclusion of a prosecution bar is based on the inclusion of such a provision in standard protective order and, also, a desire to avoid unnecessary Court entanglement.

[15] Compare Doc. 83 (Disputed Protective Order) to Doc. 86 (Protective Order).

[16] Compare Doc. 52 (Disputed Protective Order) to Doc. 57 (Protective Order).

[17] Compare Doc. 47 (Disputed Protective Order) to Doc. 61 (Protective Order).

[18] Compare Doc. 66 (Disputed Protective Order) to Doc. 105 (Protective Order).

[19] Compare Doc. 52 (Disputed Protective Order) to Doc. 57 (Protective Order).

Google has chosen not to pursue an acquisition bar in at least the following non-limiting cases.

- *Uniloc USA, Inc., et al v. Google, LLC et al.,* Case No 2:16-cv-566 (February 28, 2017)(Dkt. 64)(Disputed Protective Order where Acquisition Bar not Proposed).

### ii.    Google's Proposed Acquisition Bar Extends to the World, Not Just the Parties

Unlike the prosecution bar, the scope of Google's acquisition bar extends to the world, not just to parties. In particular, under Google' proposal, "anyone" affiliated with WSOU – including its paralegal, staff, and experts – would be prevented from "any activity" done for any client (not just WSOU) "related to" the "(i) the acquisition of patents or patent applications relating to the Field of Invention or (ii) the advising or counseling clients regarding the same." Thus, for example, Google's proposal prohibits WSOU's outside counsel (here, attorneys with the Etheridge Law Group) and any expert it might hire from conducting a validity analysis or settlement negotiations for any party – not just WSOU.

### iii.    The Acquisition Bar Cases Google Provides are Distinguishable.

In the meet and confer between the parties, WSOU pointed out to Google the repeated rejection of acquisition bars and inquired whether Google had any case law to support its proposal. Google provided four cases.

In the first, *Infogation Corp. v. Google LLC*,[20] Google argued (1) that the Plaintiff *agreed* to the bar it seeks in another case, (2) that "this District has routinely included acquisition bars in protective orders," and (3) that there was a lack of case law to the contrary. The first item – a prior acquisition bar – is not present.  As to the second item, this District does not routinely include such bars.  If anything, inclusion is an exception – not routine – and only reserved where a party has met its

---

[20] Case No. 6:20-cv-00366 (W.D. Tex.), D.I. 47

burden.  As to the third, Google should have known better – having lost the issue multiple times.

In the second, *Multimedia Content Management LLC v. DISH Network LLC*,[21] the defendant presented evidence that principals of the plaintiff company wanted to review source code.  No such facts exist here.

In the third, *Mobile Telecommunications Tech., LLC v. ZTE (USA) Inc*.,[22] the first sentence of the order noted that the parties "agreed" to the provision.  WSOU does not agree to Google's proposed acquisition bar.

The final case, *E–Contact Techs., LLC v. Apple, Inc.*,[23] issued its order in 2012.  Several more recent decisions from the Fifth Circuit reject such an approach.

### iv.     Google's Attempt to Prevent WSOU from Having Counsel of its Choice Should not be Allowed

Even if Google could demonstrate an "unacceptable risk of inadvertent disclosure" (which it has not), as explained by the Federal Circuit, a "district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank* at 1380.

WSOU has a right to have the benefit of its counsel of choice. Google is attempting to restrict that right for activities that have absolutely nothing to do with the alleged harm they seek to avoid – inadvertent disclosure of certain DESIGNATED MATERIAL. Google is attempting to restrict that right even in scenarios where there undeniably would be no inadvertent disclosure of DESIGNATED MATERIAL. Google has not provided good cause to deprive WSOU of the benefit of the counsel of its choice.

---

[21] Case No. 6-18-cv-00207 (W.D. Tex.), D.I. 93, 95
[22] Case No. 2:13-cv-00946 (E.D. Tex.) (LEAD CASE), D.I. 74
[23] Case No. 1:11-cv-00426, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012).

> **v.   Google's acquisition bar extends to those who never actually obtained "Highly Sensitive Technical Material" for an unreasonable amount of time**

Google's acquisition bar extends until (1) the conclusion of this Action, including any appeals, and attaches to (2) those who have "access to" "Highly Sensitive Technical Material" even if they never actually accessed the material. This is an unreasonable restriction on the practice of law.  Cases can extend for years.  Google has some cases that have been going for more than five years (including appeals) – including those filed in 2016. If the court in those cases had adopted an acquisition bar like the one proposed by Google here, counsel involved early in those cases (but not now) would today *still* be prevented from advising clients on the validity of patents in a similar Field of Invention. The unreasonable bar proposed by Google would apply to those attorneys even if (1) they never actually obtained or viewed the protected material and (2) they no longer work with any firm representing the party.

> **v.   The Protective Order Already Prevents the Harm Google Wants to Prevent**

The agreed portion of the protective order already has provisions that prevent the very harm Google seeks to avoid by preventing use for "shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose." *See* Paragraph 7. Yet, Google apparently assumes these restrictions will be violated. There is no reason to make this assumption. Several provisions of the protective order already mitigate against such concerns, including (1) limiting DESIGNATED MATERIAL to the present litigation, (2) limiting *who* can handle DESIGNATED MATERIAL, (3) limiting *how* certain DESIGNATED MATERIAL is accessed (e.g., on a standalone computer), (4) limiting the media for certain DESIGNATED MATERIAL, and (5) requiring destruction of DESIGNATED MATERIAL after the litigation ends.

### B.     Defendant's Position

The Federal Circuit has recognized that, despite an attorney's best efforts to compartmentalize separate cases and representations, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (citation omitted); *see also In re Sibia Neurosciences, Inc.*, No. 525, 1997 WL 688174 (Fed. Cir. 1997).  When attorneys involved in litigation represent a client before the Patent Office, there is inherently a risk of disclosing defendant's confidential information:  "it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents." *E-Contact Techs., LLC v. Apple, Inc.*, No. 1:11-cv-426, 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012).

The rationale for prosecution bars also applies to acquisition bars.   Courts have recognized that the rationale for prosecution bars also applies to acquisition bars. "Litigation counsel who have access to Google's critical source code and other highly confidential information should not be permitted to consult with their client strategically under circumstances where an inadvertent disclosure of what they have seen at the defendant's stand-alone computer could potentially be used to harm the defendant." *Inventor Holdings, LLC v. Google, Inc.*, No. 1:14-cv-186, 2014 WL 4369504, at *2 (D. Del. Aug. 27, 2014).  Similarly, another court entered a disputed acquisition bar, reasoning that in exchange for "the disclosure of [defendant's] confidential, 'crown jewel' technology to opposing counsel," an acquisition bar "prevents attorneys from—inadvertently or otherwise—relying on the confidential information when they advise other parties anticipating litigation against" the defendant. *Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. C 12-05791, 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013).

Here, an acquisition bar is particularly warranted, where WSOU is engaged in the ongoing

acquisition of patents with the intention of asserting them.  *See* https://www.brazoslicensing.com/what-we-do (touting business of purchasing patents to obtain licenses or "take on the [alleged] infringers").  Each of the patents asserted in these cases was acquired from a third party entity.  Litigation counsel for WSOU also represents the Uniloc entities in suits against Google, who have likewise asserted numerous acquired patents.

The acquisition bar will prevent WSOU's counsel, or other persons with access to Google's highly sensitive materials, from inadvertently using Google's confidential information while advising clients on potential patents to acquire, which might be asserted against Google.  Both this Court and the Eastern District of Texas have endorsed similar provisions in similar situations.  *See, e.g., Infogation Corporation, v. Google LLC*, 6:20-cv-00366-ADA, Dkt. No. 47 at § 12; *Multimedia Content Management LLC v. Dish Network LLC*, 6:18-cv-00207-ADA, Dkt. No. 94 at 16; *Eolas Technologies, Inc. v. Amazon.com, Inc*. No. 15-01038, Dkt. Nos. 81, 82, 98. In balancing the interests of both parties, the significant potential harm to Google outweighs the modest restriction an acquisition bar would place on WSOU's counsel and other designated persons with access to Google highly sensitive material. *E-Contact Techs.*, 2012 WL 11924448, at *2 ("This Court finds that the potential harm of inadvertent disclosure outweighs the restriction imposed on counsel for Plaintiff. An acquisition bar should be included in the protective order."); *see also Unwired Planet LLC v. Apple Inc.*, No. 12-0505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (finding that "good cause exists to include in the protective order the bar that Unwired's outside counsel cannot use the confidential information obtained in this lawsuit for the purpose of giving advice on patent acquisitions").

Finally, WSOU's arguments that the proposed bar prevents the firm from advising on settlement agreements or validity analyses is a red herring.  The bar applies to patent acquisition activity, not the resolution of litigation.

9.      **Section 13: Taking Protected Material Outside of the United States**

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Do not include Defendant's proposal. | No Protected Material may leave the territorial boundaries of the United States of America.  Without limitation, this prohibition extends to Protected Material (including copies) in physical and electronic form.  The viewing of Protected Material through electronic means outside the territorial limits of the United States of America is similarly prohibited.  Notwithstanding this prohibition, Protected Material, exclusive of material designated RESTRICTED CONFIDENTIAL - SOURCE CODE, and to the extent otherwise permitted by law, may be taken outside the territorial limits of the United States if it is reasonably necessary for a deposition taken in a foreign country.  The restrictions contained within this paragraph may be amended through the consent of the Producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations. |

A.      **Plaintiff's Position**

The Court's default protective order contains no prohibitions on potential foreign handling.

WSOU already agreed to certain Google-requested provisions, namely that "[e]ach party receiving

Protected Material shall comply with all applicable export control statutes and regulations." Yet,

Google seeks to extend foreign prohibitions by putting up unnecessary and discriminatory hurdles.

There is no legitimate reason for these requests.

Google is an international company with offices in approximately 154 locations throughout the

world – including more than two dozen offices through Africa, the Middle East, Europe, and China.

Source:  https://careers.google.com/locations/

Google's employees already handle Google confidential material in these various countries.   If



Google's prohibitions were adopted and applied against it, Google's own employees (e.g., foreign

nationals and those on H-1b visas) would be unable to see the things they are already working on – in

either the U.S. or abroad.

While potentially wanting to argue the dangers of immigrants and foreign nationals, Google has

repeatedly advocated the importance of international talent to not only Google, but also the U.S. Last

summer, in response to a restriction on H-1B visas, Google CEO, Sundar Pichai, tweeted:



In 2019, Google obtained 6,054 H-1b work visa, which was the sixth highest amongst all companies.[24]

Sundar Pichai himself was also a prior H-1b work visa recipient.[25] Google has no good reason to discriminate against the very international talent pool it advocates makes "Google the company it is today." The protective order already provides numerous restrictions on not only <u>with whom</u>, but also the <u>manner</u> in which, confidential information can be shared. As an example, source code printouts can only exist on media such as paper and is extremely limited with respect to distribution.  Additionally, for experts, there is a built-in vetting process where backgrounds are disclosed. Everyone who accesses the confidential information is subject to not only the protective order, but also this Court's governance of it.

    The carte-blanche international prohibition Google seeks also makes little sense. It has nothing to do with actual export regulations (to which WSOU has already agreed).  In particualr, Google cannot dispute that some of its relevant documentation <u>already</u> comes from its foreign technical teams.

---

[24] https://www.epi.org/publication/h-1b-visas-and-prevailing-wage-levels/#top-30
[25]    https://www.businessinsider.in/tech/news/sundar-pichai-satya-nadella-indra-nooyi-and-even-melania-trump-entered-the-us-on-the-same-h-1b-visa-that-donald-trump-is-suspending/articleshow/76531744.cms

Sending such documents back to the places from which they came would be in violation of Google's proposals.

Further, a host of other unintended consequences arise with Google's international prohibition. As an example, any attorney having their email routed through a Canadian server (e.g., VPN or otherwise) or accessed while within Canada (e.g., opening service of a sealed PDF filing) would violate Google's requested prohibitions. There is simply no legitimate reason to prohibit activities such as these.

Also, Google recognizes that problems will arise with their proposal given that some third-party discovery in this litigation is overseas. Google's unworkable solution to this is to seek to carve-out an exception to the problem they created by later agreement. There is no need to create later agreements because there is no reason to prevent foreign handling of Protected Material that doesn't otherwise have any export restrictions.

### B.    Defendant's Position

WSOU's assertions above about Google's "potential[]" argument is inflammatory rhetoric disconnected from the dispute. Google's proposal says nothing about immigration status. Google's proposal is aimed at protecting its highly confidential information by a Protective Order subject to this Court's jurisdiction.

Google requests that the Protective Order prevent WSOU from taking Google's highly sensitive information outside of the United States (except when necessary for foreign depositions). This is a reasonable precaution to ensure that Google's highly confidential information stays within the jurisdiction of this court. *See, e.g., Egervary v. Rooney*, 80 F. Supp. 2d 491, 506 (E.D. Pa. 2000) ("[T]he Court's contempt powers - the only possible way of enforcing such an Order - are virtually meaningless to a foreign national with no property in this country and no intention of returning here.").

If Google's Protected Material is taken or sent to a foreign country, where the Court's jurisdiction does not extend, the risk of exposure without proper means to protect against that exposure are significantly increased. *See Data Engine Techs. LLC v. Google Inc.*, No. 1:15-cv-1115- LPS-CJB, Dkt. 33 (adopting Google's provision prohibiting source code from being taken outside the U.S. because Google's "source code is entitled to stringent protection").  Several cases illustrate the risk of allowing confidential documents outside the United States.  For instance, in *Versata Software, Inc. v. SAP Am., Inc., et al*., 2011 U.S. Dist. LEXIS 102267, No. 2:07-cv-153 (E.D. Tex. Sept. 9, 2011), the court, over defendants' objections, allowed such information overseas and ultimately had to sanction the plaintiff for violations of the protective order by a foreign discovery vendor in India.  And, as recognized by the court in *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, documents that leave the United States can be subject to processes that "compromises the entire integrity of stipulated protective orders and by extension . . . American Jurisprudence." No. 18-MD-02843-VC (JSC), 2021 WL 3209711, at *1, 4 (N.D. Cal. July 29, 2021) (recognizing instance where party who obtained documents through discovery in the United States encouraged member of the United Kingdom Parliament to use mechanism there to retrieve same documents, and granting motion to modify protective order to include disclosure of such documents which were made publicly available in another country and in violation of another court's protective order).

Here, there is no valid reason to export sensitive material outside of the United States and thus outside the safeguards of U.S. law.   WSOU never addresses the jurisdictional problem raised by Google; that if confidential information leaves the United States and is used inappropriately, there is no mechanism for this Court to enforce violations of the protective order for conduct outside the ambit of its jurisdiction.  That is why Google requests that this provision be included in the protective order. Moreover, there is no prejudice to WSOU in requiring that Google's confidential information stay

within the United States.  And to the extent there is a foreign deposition, Google's proposal accounts for that and allows the information to be taken abroad for that sole exception.

Google's proposal is a reasonable balance of all these concerns, as reflected by the fact that this Court has previously issued a Protective Order including similar protections as those sought by Google. *Hammond Development International, Inc. v. Amazon.com, Inc.*, 1:20-cv-00342-ADA, Dkt. No. 57. Similarly, Google's proposal has been adopted by multiple courts in the Eastern District of Texas over arguments similar to those made by WSOU here.  *See UNILOC 2017, LLC et al., v. Google LLC,* 2:18-cv-00493-JRG-RSP, Dkt. No. 45 at 12; *accord Fujinomaki v. Google, Inc*., No. 2:15-cv-1381-JRG-RSP, Dkt. 101, at § 5.C (E.D. Tex. Jan. 25, 2016); *Eolas Techs. Inc. v. Amazon.com*, Inc., No. 6:15-cv-1038-RWS, Dkt. 98, at ¶ 13 (E.D. Tex. May 5, 2016).

10.     **Section 15: Mechanism for Handling Non-Party Confidential Information**

| Plaintiff's Proposal | Defendant's Proposal (Default PO) |
|---|---|
| In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:<br><br>    1.     within three (3) business days notify in writing the Requesting Party and the Non-Party simultaneously that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;<br>    2.     promptly provide the Non-Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested; and<br>    3.     make the information requested available for inspection by the Non-Party. If the Non-Party fails to object and seek a protective order from this court within 14 calendar days of receiving the notice and accompanying information, the Party shall produce the Non-Party's confidential information responsive to the discovery request. If the Party maintains it cannot produce the Non-Party's confidential information even after the notice and accompanying information have been provided, the Party may prepare a joint motion in which the Party and the Requesting Party ask that the court order expedited production of the Non-Party's confidential information in response to the discovery request. If the Non-Party timely seeks a protective order, the Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material. | Do not include Plaintiff's proposal. |

    A.     **Plaintiff's Position**

WSOU proposes the identical mechanism put in place by WSOU and Microsoft concerning production of a Non-Party's confidential information when there is an agreement to "not produce the Non-Party's confidential information." *See WSOU Investments, LLC. v. Microsoft Corp*., Case No. 6:20-cv-454-465 (W.D. Tex)(Mar. 30, 2021). Two sophisticated parties came to an agreement on the inclusion of such a mechanism when such a scenario arises; it is unclear why Google objects.  This particular mechanism puts reasonable procedures in place where a Party actively works towards production of documents in such circumstances.

B.      **Defendant's Position**

WSOU contends that inclusion of its proposal is proper merely because another defendant in a different case agreed to it.  WSOU provides no justification for including this requirement in the protective order.  To the extent there are disputes about the timing of the production of information subject to third-party confidentiality agreements, those can already be addressed through standard discovery mechanisms.  WSOU has also agreed to a number of protective orders without this unusual provision.   *See, e.g., WSOU Investments LLC v. ZTE Corporation*, 6:20-cv-00487-ADA, Dkt. No. 83; *WSOU Investments LLC v. Huawei Technologies Co., Ltd.*, 6:20-cv-00544-ADA, Dkt. No. No. 67; *WSOU Investments LLC v. Juniper Networks, Inc.*, Case 6:20-cv-00812-ADA, Dkt. No. 73.

Moreover, WSOU's proposal would subject Google to potentially violating confidentiality agreements without first following the steps required by those agreements.  For example, WSOU's proposal requires that Google notify WSOU regardless of any (standard) requirements to first notify the non-party and provide the non-party with time to seek appropriate protection.  It deprives the non-party of their rights.

WSOU, in effect, wants a "one-size fits all" approach to all conceivable confidentiality agreements that Google might have with non-parties.  But Google cannot post-hoc re-write or undo the

terms of its confidentiality obligations with non-parties.  And while Google will comply with any valid discovery request, WSOU's requested provision would prevent Google from using the proper channels with non-parties to effectuate production under the terms of any confidentiality agreement.  As such, Google requests that this Court reject WSOU's proposal to modify the Default Protective Order.

DATED:  September 2, 2021         Respectfully submitted,

*/s/ James L. Etheridge*
Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
**Law Firm of Walt, Fair PLLC.**
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
JHuang@EtheridgeLaw.com

*Counsel for Plaintiff WSOU Investments, LLC*

Date: September 2, 2021

Respectfully submitted,

*/s/ Tharan Gregory Lanier*

Tharan Gregory Lanier (*pro hac vice*)
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Sasha Mayergoyz
**Jones Day**
77 W. Wacker Drive
Chicago, IL 60601
+1 (312) 782-3939
smayergoyz@jonesday.com

Tracy A. Stitt
Edwin O. Garcia
**Jones Day**
51 Louisiana Avenue NW
Washington, DC 20001
+1 (202) 879-3641
tastitt@jonesday.com
edwingarcia@jonesday.com

***Attorneys for Defendant Google LLC***