IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § § § § § § § § § § | CIVIL ACTION 6:20-CV-00571-ADA<br>CIVIL ACTION 6:20-CV-00572-ADA<br>CIVIL ACTION 6:20-CV-00573-ADA<br>CIVIL ACTION 6:20-CV-00575-ADA<br>CIVIL ACTION 6:20-CV-00576-ADA<br>CIVIL ACTION 6:20-CV-00579-ADA<br>CIVIL ACTION 6:20-CV-00580-ADA<br>CIVIL ACTION 6:20-CV-00583-ADA<br>CIVIL ACTION 6:20-CV-00584-ADA<br>CIVIL ACTION 6:20-CV-00585-ADA |
| Plaintiff, | | |
| v. | | |
| GOOGLE LLC, | | |
| Defendant. | | |

**OPPOSED MOTION TO MODIFY THE PROTECTIVE ORDER**

On September 2, 2021, the parties filed a Joint Motion for Entry of Disputed Protective Order. *See* -571 Dkt. 49. The motion presented nine disputed issues for the Court's consideration. *Id.* The Court entered a protective order on September 17, 2021. *See* -571 Dkt. 52. Plaintiff WSOU Investments, LLC ("WSOU") respectfully requests that the Court modify the following provisions of the Protective Order:

- Section 13: Taking Protected Material Outside of the United States
- Section 10(o): Methods of Transporting Source Code
- Section 10(a): Location of Source Code Computers

As background, counsel for WSOU was involved for years with litigation against Google in numerous (20+) EDTX cases. The parties hammered out a protective order there and successfully worked through any issues that arose. In the present cases, each of WSOU's proposals were based on either: (1) language WSOU and Google agreed to in EDTX and that served the parties well through all of the prior litigation; or (2) the WDTX default order. Further, the WDTX default order was relied upon in the current Microsoft litigations (12 cases) by both parties to

permit all the source code to be reviewed, document productions, and numerous depositions. However, in these matters, Google took the opposite position, denying WSOU any access to the source code for review under the WDTX default protective order, and instead demanding WSOU agree to its proposed Protective Order, including numerous restrictions later denied by the court. Now the Court has entered a protective order (without a hearing) that, as currently written, is very burdensome and unnecessarily expensive to WSOU and its experts and will result in substantial delay in discovery, as discussed below.

### A. Section 13: Taking Protected Material Outside of the United States

WSOU has testifying experts located in Canada. Section 13 of the Protective Order contains the following language, which was proposed by Google and opposed by WSOU, that makes it extremely burdensome and all but denies WSOU's Canadian expert's access to protected material:

> No Protected Material may leave the territorial boundaries of the United States of America. Without limitation, this prohibition extends to Protected Material (including copies) in physical and electronic form. The viewing of Protected Material through electronic means outside the territorial limits of the United States of America is similarly prohibited. Notwithstanding this prohibition, Protected Material, exclusive of material designated RESTRICTED CONFIDENTIAL - SOURCE CODE, and to the extent otherwise permitted by law, may be taken outside the territorial limits of the United States if it is reasonably necessary for a deposition taken in a foreign country. The restrictions contained within this paragraph may be amended through the consent of the Producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulation.

Given that WSOU has Canadian experts, this provision is highly prejudicial to WSOU. WSOU requests that the Protective Order be modified to strike all the language in the block quote above from Section 13.

This provision is also extremely impractical given the realities of modern travel. By

prohibiting the "viewing of Protected Material through electronic means outside the territorial limits of the United States of America," the provision prohibits counsel of record and designated experts in these cases from consulting together and viewing protected material on electronic devices from their respective offices and requires the experts to travel across the border into the United States to consult with counsel and consultants for WSOU.

Google mistakenly argues this provision is necessary to ensure protected material stays within the jurisdiction of this Court. -571 Dkt. 49 at 32. This argument should be rejected because, even without this provision, the only people who are authorized to view protected material (the parties and their employees, counsel, and experts or litigation support services who have signed Appendix A) are already subject to the power of this Court. Designated experts, including WSOU's Canadian experts, must sign the Acknowledgment & Agreement to be Bound by Protective Order, which expressly states "I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this Action." -571 Dkt. 52 at 22-23.

Further, the provision is ineffective at solving the alleged jurisdictional problem Google hopes to solve. The Protective Oder authorizes access of protected materials only by individuals who are already subject to this Court's jurisdiction (or who sign Appendix A expressly subjecting themselves to this Court's jurisdiction). The jurisdictional concern raised by Google can *only* occur if a party first violates other provisions of the Protective Order. In the *Versata Software* case cited by Google, for example, protected material fell into the hands of a vendor outside the jurisdiction of the court because Versata's counsel **violated** *other* provisions of the Protective Order. A provision prohibiting materials from leaving the United States would not have stopped Versata's counsel from violating the Protective Order any better than the existing provisions of that protective order did. And it would not have changed the fact that the outside vendor had not

subjected itself to the jurisdiction of the court.  Nevertheless, the Court was still not powerless and chose to sanction counsel responsible for the violation. *Versata Software Inc. v. SAP Am., Inc.*, 2:07-CV-153 CE, 2011 WL 4017944, at *7 (E.D. Tex. Sept. 9, 2011), *aff'd in part, vacated in part, remanded*, 717 F.3d 1255 (Fed. Cir. 2013) (sanctioning Versata for violating the protective order).

Here, even absent the provision above, WSOU cannot disclose protected material to any person who does not first subject themself to the jurisdiction of this Court. Further, if either party violates the Protective Order by sending protected material to an unauthorized person outside the United States, the provision above does nothing to make that unauthorized person subject to this Court's jurisdiction. The provision is burdensome, prejudicial to WSOU, and ineffective at mitigating the risk of unauthorized disclosure. WSOU requests that the Protective Order be modified to strike all the language in the block quote above from Section 13.

### B. Section 10(o): Methods of Transporting Source Code

WSOU requests that Section 10(o) be modified as follows:

> A Producing Party's Source Code Material may only be transported by the Receiving Party at the direction of a person authorized under paragraph 10(f) above to another person authorized under paragraph 10(f) above, and on paper via hand carry (including via a hand carry courier service), or [Federal Express, or other similarly reliable courier].

The added language in red comes from the Court's default protective order, which is also the same protective order language used in the 12 cases between WSOU and Microsoft,[1] 12 cases between

---

[1] *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454 through 465 (W.D. Tex) (Mar. 30, 2021).

WSOU and Huawei,[2] and 11 cases between WSOU and ZTE Corporation.[3]  Like the two provisions above, Google's striking of "Federal Express, or other similarly reliable courier" places a significant burden on WSOU. Under the current Order, WSOU is required to have a courier <u>hand carry</u> confidential information from Dallas, Texas, over 2,000 miles away to WSOU's experts in Canada and other experts in Baltimore or San Francisco. Such an unnecessary extreme burden outweighs any miniscule concern of mishandling by Federal Express. Moreover, firearms and federally controlled pharmaceuticals are permitted to be shipped via Federal Express. If Federal Express can be trusted to transport these items, it can certainly be trusted to transport confidential papers. Google offers no evidence that delivery by "Federal Express or other similarly reliable courier" is more likely to cause mishandling of protected material than "hand carry." The *unavoidable* burden imposed on WSOU by striking the Court's *default* language permitting delivery by Federal Express or other similarly reliable courier should outweigh the minuscule risk of Federal Express losing a package. WSOU requests that the Protective Order be modified to permit transportation by "Federal Express, or other similarly reliable courier."

C. Section 10(a): Location of Source Code Computers

WSOU requests that Section (10)(a) of the Protective Oder be modified to require that source code be located on stand-alone computers at the offices of Google's counsel in Austin or at a location in Austin selected by Google's counsel. In the alternative, Google may keep the source code in Dallas, but WSOU may review the code by remote means in Austin.  This remote review method was initially used successfully in the Microsoft matters and used in other recent matters.

---

[2] *WSOU Investments, LLC. v. Huawei Technologies, Ltd. Et al.*, Case No. 6:20-cv-533 through 544 (W.D. Tex)(Aug. 24, 2021).
[3] *See WSOU Investments, LLC. v. ZTE Corporation*, Case No. 6:20-cv-487 (W.D. Tex) (Dkt. No. 83).

For example, SecureReview, is a remote source code review tool that allows for conducting reviews via approved machines. Remote code reviews have become more common since the advent of COVID-19 travel restrictions. Remote code reviews permit PO-cleared personnel to review the source code in compliance with PO protocols, are reasonably fluid, and are comparable to standard live reviews but without the burdens of travel on the code reviewers and their families to be gone for weeks.

WSOU's source code experts are in Austin. Requiring them to travel to Dallas for lengthy stays to review source code will impose a significant burden on them. In currently pending matters between WSOU and Microsoft, this Court ordered that source code be made available in Austin, either physically or remotely. WSOU's experts spent approximately twenty weeks reviewing code in Austin. Had they been instead forced to travel to Dallas, they would have had to spend twenty weeks away from their homes and families reviewing code in Dallas. Here, if the source code is produced Dallas, WSOU's experts will spend weeks living in Dallas away from their home and families or traveling daily between Austin and Dallas. All of this is unnecessary and will result in nothing more than imposing additional costs, real hardships on people and families, a significantly slowing of the case and discovery. Coupled with the provision discussed above requiring hand carry of the printouts, a simple operation of carry printouts back to the office requires even more travel by having reviewers return to Dallas just to pick up printouts.

Producing the code in Austin will be no burden to Google. WSOU's proposal will not impose any burdens on Google to "find, equip and pay for offices in Austin" as Google argues. -571 Dkt. 49 at 7. As explained in WSOU's original statement on this issue, Google has a large

campus in Austin[4] and uses multiple law firms in Austin. WSOU is not opposed to Google producing its code at its campus in Austin. Google has confirmed recently that it owns 550,000 square feet worth of office spaces in Downtown Austin at its three locations: 100 Congress Ave., 901 E. Fifth St., and 500 W. Second St.  Given that Google has previously made its code available for inspection at such Austin law firms and that WSOU's disclosed experts are located in Austin, Google should have no problem making code available in Austin. Also, as explained to Google in the meet and confers, this Court took the identical approaching in requiring Microsoft to make its source code available in Austin to WSOU at a law firm that Microsoft uses. *See* e.g., *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Nov.. 30, 2020) (Text Entry . . . "The Court will have the source code made available in Austin.").

WSOU respectfully requests that Section 10(a) be modified to add the language in red: "Additionally, except as provided in paragraph 10(o) below, the stand-alone computers may only be located [in Austin, Texas] at the offices of the Producing Party's outside counsel [or a location in Austin selected by such outside counsel.]"  Alternatively, Google must provide remote access to its source from such location in Austin, TX.

For the foregoing reasons, WSOU respectfully requests that the Protective Order be modified.

---

[4] As noted in WSOU's complaint, in "June of 2019, Google had more than 1,100 employees in Austin. In January 2019, it was reported that Google "signed a lease for an entire 35-story tower that has started construction just east of the Central Library in downtown  Austin."4 Google's 35-story tower in Austin "will have  790,000  square feet of space, enough to potentially house about 5,000 people." *See* e.g. 6:20-cv-00571-ADA, Dkt. 1, paragraph 8 and 9. (Footnotes omitted)

Dated: September 23, 2021

Respectfully Submitted,
*/s/ Ryan S. Loveless*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
**ETHERIDGE LAW GROUP, PLLC**
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
JHuang@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
**LAW FIRM OF WALT, FAIR PLLC**
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served via email to all counsel of record on September 23, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless

## CERTIFICATE OF CONFERENCE

I conferred with Counsel for Google by email on September 2, 2021 Google is opposed to the relief sought in this motion.

*/s/ Ryan S. Loveless*
Ryan S. Loveless