```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
                           WACO DIVISION

WSOU INVESTMENTS LLC             *     September 29, 2021
                                 *
VS.                              *     CIVIL ACTION NOS.
                                 * W-20-CV-571, 572, 573, 575, 576,
GOOGLE LLC                       *     579, 580, 583, 584, 585

              BEFORE THE HONORABLE ALAN D ALBRIGHT
                 TELEPHONIC SCHEDULING CONFERENCE

APPEARANCES:

For the Plaintiff:        James L. Etheridge, Esq.
                          Travis Lee Richins, Esq.
                          Etheridge Law Group, PLLC
                          2600 E. Southlake Blvd., Suite 120-324
                          Southlake, TX 76092

                          Mark D. Siegmund, Esq.
                          Law Firm of Walt Fair, PLLC
                          1508 N. Valley Mills Drive
                          Waco, TX 76710

For the Defendant:        Tharan Gregory Lanier, Esq.
                          Jones Day
                          1755 Embarcadero Road
                          Palo Alto, CA 94303

                          Tracy A. Stitt, Esq.
                          Jones Day
                          51 Louisiana Avenue, N.W.
                          Washington, D.C. 20001-2113

                          Jennifer A. Kash, Esq.
                          Warren Lex LLP
                          2261 Market Street, No. 606
                          San Francisco, CA 94114

                          Michael E. Jones, Esq.
                          Patrick C. Clutter, Esq.
                          Potter Minton PC
                          110 N College, Suite 500
                          Tyler, TX 75702
```

| | | |
|---|---|---|
| 1 | Court Reporter: | Kristie M. Davis, CRR, RMR |
| 2 | | PO Box 20994 |
| | | Waco, Texas 76702-0994 |
| 3 | | (254) 340-6114 |
| 4 | Proceedings recorded by mechanical stenography, transcript | |
| 5 | produced by computer-aided transcription. | |

1        (September 29, 2021, 2:32 p.m.)

2        DEPUTY CLERK:  Discovery hearing in Civil Actions

3   W-20-CV-571, 572, 573, 575, 576, 579, 580, 583, 584 and 585,

4   styled WSOU Investments LLC versus Google LLC.

5        THE COURT:  If I could have announcements from counsel

6   starting with plaintiff.  Mr. Siegmund?

7        MR. SIEGMUND:  Good afternoon, Your Honor.  This is Mark

8   Siegmund for plaintiff WSOU Investments LLC.  With me this

9   afternoon are my colleagues Jim Etheridge and Travis Richins

10  from the Etheridge Law Group, and Mr. Etheridge will be the

11  main speaker today, Your Honor.

12       THE COURT:  Okey dokey.  And for defendant?

13       MR. CLUTTER:  Good afternoon, Your Honor.  This is Patrick

14  Clutter with Potter Minton on behalf of Google LLC.  Also on

15  the line for Google are Greg Lanier, Tracy Stitt and Edwin

16  Garcia of Jones Day and Jen Kash of Warren Lex.  We're ready to

17  proceed.

18       THE COURT:  Okay.  Very good.  We'll start off with -- I

19  think the issue -- if it's broader than this, let me know, but

20  I think the issue about whether or not material can leave the

21  territorial boundaries of the United States has to do with the

22  fact that plaintiff has one or more experts in Canada.  I'll --

23  Mr. Siegmund or whoever, plaintiffs -- if you can just confirm

24  that that is essentially what we're fussing over.  If it's more

25  than that, let me know so I can -- so we can get to it.

1     MR. ETHERIDGE:  Good afternoon, Judge.  Yes.  That is
2 correct.  Dr. Cooperstock lives in Montreal and he is our
3 expert on three of these cases, and Dr. Cooperstock is a
4 professor at the university there.  He has appeared and done
5 work in cases in the PTAB in the Southern District of
6 California, Eastern District of Texas, Southern District of
7 Texas, Western District of Texas, Massachusetts, Eastern
8 District of New York, and he's reviewed Apple source code.  So
9 if we're not going to change the protective order, we at least
10 need to make an exception around him.
11     THE COURT:  Okay.  And let me hear from the folks for
12 Google as to why there's a problem with this -- the reason I
13 set this for a hearing, I certainly understood the issue.  I
14 don't understand why there is a concern on this being -- going
15 to a specific witness in Canada, but if Google has one, I'm
16 happy to hear what that is.
17     MR. LANIER:  Thank you, Your Honor.  My partner Tracy
18 Stitt will address that.
19     THE COURT:  Okay.  Yes, ma'am.
20     MR. STITT:  Thank you, Your Honor.  May it please the
21 Court.
22     Google's concern with the (inaudible) and sensitive
23 information that it's disclosed in this matter leaving the U.S.
24 is it's pretty straightforward.  It's actually beyond just
25 going to a particular individual.  There's actually twofold

1  concerns here.  The first is with respect to even disclosure to
2  an authorized individual such as Dr. Cooperstock, once he and
3  the information leave the U.S., they're beyond the Court's
4  jurisdiction, and that's the case even if he has agreed to sign
5  an undertaking and agreed to be bound by the protective order,
6  because the reality is there's no --
7          (Clarification by the reporter.)
8          MR. STITT:  The point that I was making was that even if
9  Dr. Cooperstock has agreed to sign an undertaking and be bound
10 by the protective order, once he leaves the jurisdiction of the
11 U.S. and takes the information with him outside the U.S., the
12 reality is there isn't a mechanism to enforce the PO, number
13 one, and the second --
14         THE COURT:  I have the power to take actions against the
15 plaintiff, and so it seems to me that the plaintiff's counsel
16 and plaintiff are, you know, kind of putting their head in the
17 Lion's mouth here in that regard, willingly doing that, and I
18 get it that -- you know, if he's in -- I don't know what --
19 frankly, I don't know what I could do to him if he was in
20 Minnesota.  I mean, I don't -- if he's in Minnesota and he does
21 something bad, I don't know that -- I mean, he would violate
22 the protective order, but it would be a civil remedy.  I mean,
23 at any rate, I'm not sure -- I'm not sure I get -- what I care
24 about you saying is if there's something particular about it
25 going to Canada, as long as the gentleman -- I think what I

1  heard counsel from plaintiff tell me is they can live with it
2  being limited to this one expert as the only person who's going
3  to be across the territorial boundaries of the United States,
4  and if he signs the undertaking and the plaintiff knows that
5  they're responsible for any misconduct on his part, not that
6  there will be any, but -- misconduct or just negligence, I
7  guess, would be the same thing, that they're responsible.  I'm
8  not sure that I have any greater concern with the fact that
9  he's in Canada than other places.  But -- and you said you had
10 two reasons.  So I'm happy to hear the other one.
11       MR. STITT:  Yes, Your Honor.  If I may respond briefly.
12       And first of all, with respect to him being in other
13 places in the U.S., I think that there would be some mechanism
14 for you to enforce, whether it be via Rule 45 or some way to
15 enforce even against him as long as he's in the U.S.
16       The second concern that we have --
17       THE COURT:  Well, what would I -- so -- and I mean this.
18 You know, I tried to think of this.  Let's say he's in
19 Minnesota and he -- I don't know what he would do wrong with
20 it.  So -- but something happens that Google's unhappy about.
21 What sanctions could I enforce against this person other --
22 that I -- I mean, I can enforce all kinds of unhappy things on
23 the plaintiff for it, but what could I do to the expert?
24       MR. STITT:  If he was in Minnesota, we would have a
25 mechanism to file an action there or some sort of subpoena

1  there and have it removed to you.  I think -- I'm not -- in
2  terms of the specifics, I don't know the exact, but there would
3  be a mechanism more likely there --
4      THE COURT:  I get there's a mechanism.  I get there's a
5  mechanism.  But I don't get -- I don't understand what the
6  mechanism gets you is what I'm saying.  Is -- a mechanism to
7  get me to do what?
8      MR. STITT:  Well, two things.  If he's in the U.S. and the
9  information is still in the U.S., then we may be able to remedy
10 any of these inadvertent disclosures and keep the problem to a
11 minimum.
12     The second concern that I was going to raise with the fact
13 that this would be leaving the U.S. and going to Canada outside
14 the jurisdiction of the U.S. relates to potential disclosures
15 or risks or threats that it would be susceptible to by virtue
16 of the fact that it is leaving the U.S. and that there are
17 other --
18     THE COURT:  I don't -- I guess hypothetically I
19 understand, but tell me what -- why is there a greater danger?
20 I mean, they're going to be sending it over the Internet,
21 right?  I mean, and so -- or they're going to be delivering a
22 laptop or doing something.  What is the greater danger that
23 he's in Canada than there is that he's in Minnesota?  I'm not
24 following that.
25     MR. STITT:  Sure, Your Honor.  And by being in Canada and

1   by having the information outside the jurisdiction of the U.S.,
2   if there were to be, for an example, government action or
3   another investigation under Canadian law to get this
4   information from him, that would be outside the jurisdiction of
5   your Court and you would not be able to control or enforce
6   anything with respect to disclosures that would happen --
7            THE COURT:  Okay.  I get that's a great hypothetical.  Do
8   you have any example where that's ever happened?  Where the
9   Canadian government has come in and said to a person who's an
10  expert for an American company, we want to seize something that
11  is protected by a protective order from a United States federal
12  Court?
13           MR. STITT:  I don't have an example from Canada.  I do
14  know of an example from the United Kingdom where there was an
15  investigation from the government to get some information from
16  a case.
17           THE COURT:  And, again, that's really why I had this
18  hearing was I'm unaware of any time we need to be afraid of
19  something happening in Canada.  So I'm going to allow --
20  you-all work out the safest means of getting it to this expert
21  in Canada.  I don't know if that's -- I don't know what that
22  means.  I don't know if it's delivery by laptop or -- that's,
23  you know, encrypted.  I don't know what that is, but you-all
24  have done this a thousand times.  But I'm going to allow this
25  one expert to be -- to come within the protective order.  I

1  don't think Google's articulated a really concrete concern that
2  would prevent that.
3       The next issue has to do with Section 10(o), and I'm happy
4  to hear first from plaintiff why you want your proposal and
5  then from defendant as to the merit of theirs.
6       MR. ETHERIDGE:  I believe those are the provisions about
7  the hand carry.
8       THE COURT:  How it may be transported.  Yes.
9       MR. ETHERIDGE:  Right.  Okay.  So in all my years of
10 litigating, I've never seen this clause anywhere that the
11 printouts have to be hand carried.  And the practical aspect of
12 that is, look.  We know from other cases our code review guys
13 are on site four days a week for maybe 20 weeks, the constantly
14 asking for code to be printed out.  They get the code and they
15 take it back to their offices and they're able to review it.
16 Here in order to get that to our experts, which includes
17 Dr. Cooperstock in Montreal, we've got an expert in Baltimore
18 and we got a couple experts in San Francisco, this would have
19 to be hand carried to them.  And what the fight was about
20 earlier was whether or not you could send it by FedEx.  We know
21 that firearms are sent by FedEx, pharmaceuticals -- Class 1
22 pharmaceuticals are sent by FedEx.  So I don't understand the
23 reason for the extra layer and costs associated with having to
24 use the hand carry and the delay.
25      Now, Mr. Lanier and I talked this morning and he did make

1  an interesting proposal, which was they would eat that cost and
2  they would still meet the two day deadline, the two day
3  business deadline on getting the documents to us.  But I'm not
4  sure that that completely covers everything because what
5  happens in a deposition, when you finish a deposition and you
6  have documents that need to be moved, how --
7         THE COURT:  Mr. Etheridge, let me ask you this.
8         MR. ETHERIDGE:  Okay.
9         THE COURT:  If I were to require Google to pay for and be
10 responsible for this hand deliver transmission so that they
11 could be protected but it was entirely at their cost and they
12 could do it within hours as relatively quickly as FedEx could
13 do it, what would your concern be?  If I put all the burden on
14 you, what -- I don't know exactly what it is y'all are worried
15 about, but Person A, where everything is, puts it in a sealed
16 envelope, some security person that Google has hired and is
17 paying for can deliver it to wherever it -- to Person B as
18 quickly as FedEx could get it there, and that way it is, in
19 essence, hand delivered.  What would the problem be with that?
20        MR. ETHERIDGE:  Well, I guess I would caution the Court,
21 but you can take whatever caution you want.  Obviously you're
22 the judge.  That's not in your default and that's not in the
23 default in the Eastern District of Texas, and that's not
24 anywhere.  The default always is or FedEx or other courier
25 service.

1       THE COURT: Mr. Etheridge, I'm trying to come up with a
2  solution here.
3       MR. ETHERIDGE: Okay. I mean, if they're paying for it
4  and every time information needs to be moved around, they
5  agree --
6       THE COURT: Whatever you could say -- any time unlimited
7  if your person would be using FedEx, and I go with Google here,
8  Google would be required to pick it up at their cost, deliver
9  it at their cost and deliver it as quickly as FedEx however
10 many times that need be, how is the plaintiff prejudiced at
11 all?
12      MR. ETHERIDGE: That seems fine as long as it actually
13 happens.
14      THE COURT: Well, I'm -- you know --
15      MR. ETHERIDGE: Right.
16      THE COURT: That worries me a little bit that you would
17 say that because if I order it, I'm -- you know, I'm not --
18 it's not going to be a suggestion if I tell Google that's their
19 option. I know Mr. Lanier pretty well and others, and I have
20 little -- I don't -- if Mr. Lanier said in the opposite
21 direction that's fine as long as, you know, Mr. Etheridge
22 actually lives up to what you tell him to do, you know, I'm
23 very copacetic that everyone on here is going to do what I tell
24 them to do. It would shock me to the bones for Mr. Lanier and
25 his team to -- unless something dramatically went wrong for him

1   not to comply with what I suggested.
2          So let me turn to -- I'm not sure if it's Ms. Stitt or
3   Mr. Lanier who's handling this or maybe someone else, but that
4   is my -- if Google doesn't want to do it the way the plaintiff
5   is suggesting, I provided an alternative.  So you can pick
6   either of those that you want.
7          MR. LANIER:  Thank you, Your Honor.  It's Greg Lanier.
8   May I first ask logically can you-all hear me?  Because my
9   picture has disappeared.  I apologize.
10          THE COURT:  We can see and hear you.
11          MR. LANIER:  Well, okay.  I hope I -- I can't see you.  So
12   I will try to read the room without being able to see it.
13          THE COURT:  And I see you used the props of the guitars in
14   the background to subliminally impress me.
15          MR. LANIER:  There you go.
16          THE COURT:  Mr. Siegmund appears to have some -- I think
17   probably some stuff from his either military service or his sad
18   years at Texas A&M in the background.  So, you know, what's
19   good for the goose is good for the gander.
20          MR. LANIER:  Understood, Your Honor.  Of course.
21          You know, we had proposed exactly what Your Honor's
22   ordered as a comprise here, and obviously if that's Your
23   Honor's guidance, we'll do it.  Just to be crystal clear, we
24   will meet the deadlines of the protective order by hand carry
25   at Google's expense.

1    THE COURT:  And whatever FedEx can do, y'all just need to
2    do that and we'll be fine.
3        MR. LANIER:  Thank you, Your Honor.
4        THE COURT:  The last issue is Section 10(a) which has to
5    do with standalone computers may only be located in Austin,
6    Texas.  Tell me -- let me hear from Google as to what Google
7    wants and then I'll get back to Mr. Etheridge.
8        MR. LANIER:  Thank you, Your Honor.  Again, Greg Lanier on
9    this issue.  We thought Your Honor's order was -- enforcing
10   Your Honor's OGP in the default protective order made good
11   sense, and we've had the source code available on computers in
12   our Dallas office for some time now.  Mindful of the Court's
13   clear guidance to try to work this issue out, we made a
14   proposal this morning to WSOU.  We have not yet heard back, but
15   our proposal was that we would make the source code -- the
16   computers available in Austin at a location, probably a local
17   law firm, that Google was comfortable working with on two
18   conditions.  The first was that WSOU be responsible for the
19   expenses particular to being in Austin and, second, that
20   because the fact of the moving of the source code from Dallas
21   where it has been to Austin wouldn't be used by WSOU as a
22   grounds to seek delay in or change in the schedule of the case.
23       Now, just to be clear on that point, the reason we made
24   that a condition of our proposal was because the source code
25   has been in our Dallas office since May of this year.  So we

1  didn't want to be told --
2       THE COURT: I got it.
3       MR. LANIER: Okay. Thank you, Your Honor. I'll stop
4  there then.
5       THE COURT: Mr. Etheridge?
6       MR. ETHERIDGE: Okay. So two points on that. One is I'm
7  glad to see that we can have the code in Austin. I know you're
8  familiar with the Federal Circuit and their mandamus on Sonos
9  and they pointed out that the inquiry focus should be on the
10 costs and inconvenience of requiring people to travel to a
11 distant forum to be away from their homes and families for an
12 extended period. So that's why we wanted it in Austin. All
13 our -- we always thought it would be in Austin. We've
14 litigated with Google before for years. It's always --
15      THE COURT: Just jump ahead and tell me what you think
16 of --
17      MR. ETHERIDGE: So two things. I'd like some
18 clarification on when they say the costs associated with it
19 being in Austin. I'm not sure what all that encompasses. If
20 it's some reasonable rental of an office in a law firm, I guess
21 as long as that's reasonable, that's okay. I'm a little bit
22 concerned if what we end up with is having to pay for two
23 associates that sit outside the door eight hours a day and bill
24 us.
25      THE COURT: Well, here's what we're going to do. When

1  Google sends you the bill, if you think it's unreasonable and
2  you can't persuade Google that it's unreasonable, come back to
3  me, and I have a pretty good idea of what I think is
4  reasonable.
5      So -- and, number two, with regard to no additional time
6  or delay, Mr. Etheridge hasn't asked for one, and so if Mr.
7  Etheridge -- I'm not -- he's not prohibited -- WSOU is not
8  prohibited down the road from saying they might need more time,
9  but I'll deal with that if and when the plaintiff decides that
10 they might need more time.  So I think we've worked everything
11 out.
12     Is there -- I'll start with Mr. Lanier just because you're
13 in my screen.  Is there anything else we needed to take up with
14 Google?
15     MR. LANIER:  We don't have anything else to raise today,
16 Your Honor.  Thank you.
17     THE COURT:  And Mr. Etheridge?
18     MR. ETHERIDGE:  I have nothing else, Your Honor.  Thank
19 you.
20     THE COURT:  Okay.  Thank you-all for getting on the phone
21 so quickly and getting this worked out with us.  If you need
22 anything else, this is Jeffrey's case, so just let him know and
23 we'll jump back on.
24     Have a good day.
25     (Hearing adjourned at 2:50 p.m.)

1  UNITED STATES DISTRICT COURT )
2  WESTERN DISTRICT OF TEXAS    )
3
4      I, Kristie M. Davis, Official Court Reporter for the
5  United States District Court, Western District of Texas, do
6  certify that the foregoing is a correct transcript from the
7  record of proceedings in the above-entitled matter.
8      I certify that the transcript fees and format comply with
9  those prescribed by the Court and Judicial Conference of the
10 United States.
11     Certified to by me this 3rd day of October 2021.
12
13                              */s/ Kristie M. Davis*
                                KRISTIE M. DAVIS
                                Official Court Reporter
14                              800 Franklin Avenue
                                Waco, Texas 76701
15                              (254) 340-6114
                                kmdaviscsr@yahoo.com