**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC d/b/a, BRAZOS LICENSING AND DEVELOPMENT** | § § § § § | |
| *Plaintiff*, | § § | **Civil Case No. 6:20-cv-572-ADA** |
| v. | § § | **Civil Case No. 6:20-cv-580-ADA** |
| | § | **Civil Case No. 6:20-cv-584-ADA** |
| **GOOGLE LLC,** | § | **Civil Case No. 6:20-cv-585-ADA** |
| | § | |
| *Defendant*. | § § | **JURY TRIAL DEMANDED** |
| | § | **FILED UNDER SEAL** |
| | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFF WSOU'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND SERVE AMENDED <u>INFRINGEMENT CONTENTIONS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 1

PROCEDURAL BACKGROUND ............................................................................... 4

ARGUMENT ............................................................................................................... 8

I.      LEGAL STANDARD FOR AMENDING CONTENTIONS ........................... 8

II.     WSOU'S MOTION FOR LEAVE CONTRAVENES THE OGP'S PURPOSE ............. 8

III.    WSOU'S MOTION EVISCERATES THE REVISED SCHEDULING ORDER THAT EXTENDED FACT DISCOVERY BY FOUR MONTHS TO NARROW THE ISSUES FOR TRIAL ................................................................. 10

IV.   THE RELEVANT FACTORS WEIGH DECISIVELY AGAINST GRANTING LEAVE TO AMEND THE FINAL INFRINGEMENT CONTENTIONS .................... 11

      A.     WSOU Cannot Show Diligence Or Good Cause .................................. 11

      B.     WSOU's Proposed Amendments Would Prejudice Google And This Court, And Any Continuance Would Only Exacerbate That Prejudice ............. 14

V.    WSOU'S MOTIONS FOR LEAVE TO AMEND CONTENTIONS SHOULD ALSO BE DENIED IN EACH CASE FOR ADDITIONAL REASONS SPECIFIC TO EACH CASE ................................................................. 17

      A.     -585 Case ............................................................................................. 17

             1.     WSOU's Attempt to Accuse Additional Products Should Be Denied ........................................................................... 17

             2.     WSOU's Attempt to Insert An Additional Claim At the Thirteenth Hour Should Be Denied. ................................. 22

      B.     -580 Case ............................................................................................. 22

             1.     WSOU's Attempt to Usher In a Brand New Infringement Theory Should Be Denied .............................................. 22

             2.     WSOU's Attempt to Add Additional Products Should Be Denied ........ 26

      C.     -584 Case ............................................................................................. 27

             1.     WSOU's Attempt To Assert Six Additional Claims Should Be Denied ........................................................................... 27

             2.     WSOU's Attempt To Accuse Additional Products Should Be Denied ........................................................................... 29

             3.     WSOU's Motion To Amend The Complaint Should Be Denied ........... 33

      D.     -572 Case ............................................................................................. 34

i

## <u>TABLE OF CONTENTS</u>
<u>(continued)</u>

**Page**

| | | |
|---|---|---|
| 1. | WSOU's Attempt To Accuse Another Product Should Be Denied | 34 |
| 2. | To The Extent WSOU Seeks To Add New Infringement Theories, That Should Not Be Allowed | 36 |
| CONCLUSION | | 39 |

## TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Adaptix, Inc. v. T-Mobile USA, Inc.*,
  2014 WL 12639945 (E.D. Tex. 2014) ....................................................15

*Advanced Aerodynamics, LLC v. Spin Master, Ltd.*,
  6:21-cv-00002-ADA ...............................................................................9, 10

*Avocent Redmond Corp. v. Rose Elecs.*,
  2012 WL 4903278 (W.D. Wash. 2012) ...................................................30

*Berger v. Rossignol Ski Co.*,
  2006 WL 1095914 (N.D. Cal. 2006) .......................................................28

*Bot M8 LLC v. Sony Corp.*,
  4 F.4th 1342 (Fed. Cir. 2021) ..................................................................33

*Cavazos v. JP Morgan Chase Bank Nat. Ass'n*,
  388 F. App'x 398 (5th Cir. 2010) .......................................................19, 26

*Dali Wireless v. Corning, Inc.*,
  6-20-cv-1108-ADA .....................................................................................3

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
  2009 WL 81874 (E.D. Tex. 2009) ......................................................20, 27

*De La Vega v. Microsoft Corp.*,
  2020 WL 3528411 (W.D. Tex. 2020) .......................................................33

*Freshub, Inc. v. Amazon.com Inc.*,
  2021 WL 8202605 (W.D. Tex. 2021) ..................................................20, 27

*Global Sessions LP v. Travelocity.com LP*,
  2012 WL 1903903 (E.D. Tex. 2012) ...................................................17, 31

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ......................................................................28

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
  2013 WL 5763738 (E.D. Tex. 2013) ........................................................31

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
797 F.3d 1025 (Fed. Cir. 2015)........................................................................8

*KlausTech, Inc. v. Google, Inc.*,
2017 WL 4808558 (N.D. Cal. 2017) ...........................................................13, 32

*Marlowe Patent Holdings LLC v. Dice Elecs., LLC*,
293 F.R.D. 688 (D.N.J. 2013)...........................................................................33

*Micro Motion, Inc. v. Kane Steel Co.*,
894 F.2d 1318 (Fed. Cir. 1990)..........................................................................13

*MV3 Partners LLC v. Roku, Inc.*,
6:18-cv-0308-ADA (W.D. Tex.) .........................................................................14

*O2 Micro Intern. LTD v. Monolithic Power Systems, Inc.,* , 467 F.3d 1355 (Fed.
Cir. 2006) .........................................................................................12, 13, 14

*Papst Licensing GmbH v. Apple, Inc.*,
2020 WL 11613777 (E.D. Tex. 2020) .................................................................15

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
704 F.3d 958 (Fed. Cir. 2013)...........................................................................17

*Phigenix, Inc. v. Genentech, Inc.*,
783 F. App'x 1014 (Fed. Cir. 2019) ...................................................................14

*Rhodes v. Amarillo Hosp. Dist.*,
654 F.2d 1148 (5th Cir. 1981) ..........................................................................13

*Sol IP, LLC v. AT&T Mobility LLC*,
2020 WL 1911388 (E.D. Tex. Apr. 20, 2020)....................................19, 22, 29, 30

*Speedtrack, Inc. v. Endeca Techs. Inc.*,
524 F. App'x 651 (Fed. Cir. 2013) .....................................................................12

*Sycamore*, *IP Holdings LLC v. AT&T Corp.,* , 2018 WL 1695231 (E.D. Texas,
April 6, 2018)...................................................................................................10

*Uniloc, Inc. v. Distinctive Devs. Ltd.*,
2016 WL 11485612 (E.D. Tex. 2016) .................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*VLSI Tech. LLC v. Intel Corp.*,
   2022 WL 1477726 (W.D. Tex. 2022) ........................................................................14

*WSOU Invs., LLC v. Dell Techs. Inc.*,
   No. 20-485-ADA ......................................................................................................12

*WSOU Invs. LLC v. OnePlus Tech. Co.*,
   2022 WL 174517 (W.D. Tex. 2022) ..............................................................8, 11, 29, 35

**STATUTES**

35 U.S.C. § 112 ............................................................................................................29

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| WSOU | Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development |
| Google | Defendant Google LLC |

*\* Emphasis added unless indicated otherwise.*

**INTRODUCTION**

WSOU admits its motion for leave to amend its Final Infringement Contentions seeks to "reset" all four cases.  And so it would, as WSOU seeks to introduce a litany of new infringement theories, accuse at least 18 new products, and assert 7 new claims.

WSOU seeks this "reset" (really, to fundamentally alter all four cases) nearly two years after the original 15 cases were filed, 14 months after the *Markman* hearing, 12 months after service of Final Infringement Contentions, 8 months after the original close of fact discovery, and more than 2 months after the close of fact discovery was extended at WSOU's request.   WSOU excuses its delay with tales of discovery disputes and wrangling over source code.   But the remarkably broad relief WSOU seeks is not based on late or missing discovery, it is based on information that was publicly available long before WSOU's Final Infringement Contentions were due.  WSOU's story is misleading and false, as is explained in detail below.

So, too, is WSOU's suggestion that it is seeking only to add accused products that are essentially the same as or so integrally related to products already accused that they were covered by the original "final" infringement contentions.  Were that the case, WSOU's motion would rely on Google's technical document and source code productions, showing the clear links between the newly and originally accused products.  Instead, WSOU belatedly accuses products that were publicly announced long ago, products that are functionally and technically different from the products WSOU originally accused, as explained in the analysis of specific cases below.

WSOU's delay in prosecuting these cases is the sole reason why its motion comes so late and so lacks in merit.  WSOU's motion should be denied.

**SUMMARY OF ARGUMENT**

WSOU seeks to amend *final* infringement contentions to provide "*a fully fleshed-out* set of

infringement theories." (Mot at. 2).  But under this Court's well established practices, the ***Final*** Infringement Contentions should already be "fleshed out" and they are final, absent good cause for amendment.  WSOU has no good cause for amendment of its Final Infringement Contentions in these cases.

 ***First, WSOU cannot establish any diligence.***  The facts of each case demonstrate many ways that WSOU failed to show diligence:

 **-585 Case:**  After two years of confirming its accusations against Google's Awareness API, including directly to this Court, WSOU now seeks to abandon the Awareness API and instead accuse Google Maps, Google Ads, and "any other Google product and/or service using geofencing capabilities," and also seeks to add a new claim.  WSOU sets forth new infringement theories against features within Google Maps and Google Ads, both of which are well-known products that predate WSOU's complaint by a matter of years.  WSOU does not and cannot identify any good cause for its delay in identifying new products and theories, which it now alleges "on information and belief."

 **-580  Case:**  After two years of confirming, including directly to this Court, that infringement occurred when an application called into the Mobile Vision API and received a response from that API, WSOU now seeks to abandon the Mobile Vision API, claiming instead that infringement is complete within a barcode reading engine called ▮▮▮▮ and seeking to accuse all products including ▮▮▮▮—using a list of those products that Google produced in December 2020.  Again, WSOU does not identify any good cause for its delay in rebooting its theory to accuse new products that do not use the Mobile Vision API.

 **-584 Case:**  WSOU attempts to double the number of asserted claims without identifying any good cause.  In fact, WSOU's motion establishes that the six new claims could have been

asserted from the outset of the case.  WSOU also seeks to add two different products, yet its stated basis for doing so is information that was publicly available on Google's website before WSOU served its final contentons.  Moreover, WSOU ignores that all the claims recite a "mobile communication device," whereas the newly-accused products are wall mounted or stationary and must be plugged into a power outlet.

**-572 Case**:  WSOU seeks to add a new product, but does not even argue that it was diligent in doing so.  Nor could it, as it relies solely on publicly-available information from Google's website dating back to the product's release in September 2020.  Google objects to WSOU's other proposed amendments concerning the originally accused product, YouTube TV, only to the extent that WSOU is changing its theory to no longer require the use of Anima, because it lacks good cause for such a change.  Google asked WSOU to confirm that its theory was the same, but it refused to do so (or even to take a clear position on the issue).

***Second, Google would suffer substantial prejudice should the Court grant WSOU's motion***.  WSOU's proposed contentions would require sweeping new discovery, including new document productions; searching through new code bases; identifying, coordinating with, and preparing new witnesses; searching for and charting new prior art; and engaging in new claim construction.  WSOU's assertion that "the availability of a continuance moots any prejudice" has it backwards:  protracting litigation with increasing discovery costs is the prejudice, not the remedy.  Rejecting WSOU's approach, this Court explained that a continuance "would only delay [] speedy resolution," and would reward rather than "deter future careless behavior nor serve to enforce this Court's Scheduling Order." *Dali Wireless v. Corning, Inc.,* 6-20-cv-1108-ADA, Dkt. 59 at 7.

## PROCEDURAL BACKGROUND

Given its circumstances, WSOU's third set of lead counsel tries to blame Google's discovery practices for WSOU's own extended delay in seeking to amend its final contentions. The record debunks that allegation. Google made its source code available more than a year ago, produced thousands of technical documents beginning in 2020, and scheduled dozens of depositions throughout the litigation. In response, WSOU delayed reviewing Google's source code, admittedly failed to review thousands of pages of Google's documents, and canceled nearly every deposition—twice. Google fully and actively participated in discovery, and it should not bear the consequence of WSOU's failure to do so.

WSOU's erroneous retelling of the discovery timeline does it no good because the story is irrelevant - WSOU is not seeking to completely "reset" these cases based on information it belatedly received or is still seeking in discovery (source code or otherwise). Rather, WSOU bases its new accusations and additions of claims and products on information that was long available in the public record, as set forth below in detail in the arguments related to each specific case. Nonetheless, since WSOU spends so much time addressing discovery, Google addresses the discovery timeline below.

***Infringement Contentions, Markman Hearing, and Start of Fact Discovery.*** WSOU filed these actions in June 2020, and the Court originally scheduled trial for March 2022. WSOU served its preliminary infringement contentions on October 9, 2020. Per the OGP, Google produced its core technical production on December 4, 2020. WSOU did not identify any substantive deficiencies with Google's technical productions.

The Court held a *Markman* hearing in March 2021, and the parties exchanged final contentions on May 21, 2021. At no point before the Final Infringement Contentions did WSOU raise with the Court any discovery deficiencies that would prevent them from providing complete

contentions.  Starting from the opening of fact discovery on March 29, 2021, Google produced thousands of technical documents and answered and timely supplemented dozens of interrogatories and requests for production.

***Source Code Production, Rule 30(b)(6) Designations, and Deposition Scheduling.***
Google made the relevant source code available in Dallas, the location of WSOU's then lead counsel, in May 2021.  WSOU waited until August 2021 to raise any issues with the Court, and in September this Court agreed with Google that providing source code in Dallas was appropriate. But instead of immediately reviewing that source code, WSOU asked the Court to reconsider its position.  Only in October 2021, after this Court accepted Google's compromise proposal to relocate source code to Austin in exchange for cost-shifting, did WSOU finally start reviewing the source code that had been made available five months before.

The parties also negotiated the scope of Rule 30(b)(6) deposition topics, and Google designated its witnesses in September 2021.  (Ex. 3.) Google stated that it would prepare witnesses regarding "the accused functionality charted in WSOU's Final Infringement Contentions." (*E.g.*, -580 Dkt. 92 at 4.)  Google explained that WSOU is not "entitled to unfettered discovery regarding Google's products.  The scope of discovery in these cases is bounded by the allegations in WSOU's infringement contentions." (Ex. 4.)  Google noted that "[i]f any issues prevent WSOU from taking a complete deposition, we expect that WSOU will raise and resolve them before testimony commences." (Ex. 5.)  WSOU never responded.

With fact discovery due to close on October 22, 2021, Google proceeded to schedule and prepare witnesses for over 20 depositions.  As depositions drew closer, WSOU declined to confirm any dates.  (Ex. 6.)  By October 5, 2021, Google had "called and written seeking confirmation that WSOU is going forward with depositions on the dates WSOU noticed and/or those confirmed by

Google." (*Id.*)  Later that day, WSOU responded that "depositions should not go forward" because Google would "only provide information with respect to the accused functionality."  (Ex. 7.) WSOU canceled all depositions.  (*Id.*).

**Revised Discovery Schedule, Conferring to Narrow Issues, and Appearance of WSOU's Second Lead Counsel.**  After WSOU canceled all depositions, the parties conferred regarding the arrested development of discovery and filed an amended schedule on October 21, 2021.  To provide efficient case narrowing going forward, the amended schedule memorialized the parties' agreement on deadlines for finalizing disputes on written discovery, scheduling depositions, and submitting disputes to the Court. (-572 Dkt. 66 at 2.)  Per the revised scheduling order, Google and WSOU counsel regularly met and conferred to narrow discovery issues.  At no point did WSOU suggest that it sought to amend its Final Infringement Contentions.

In December 2021, the Carter Arnett firm entered appearances and the Etheridge firm withdrew.  WSOU represented that the "withdrawal will not cause a continuance or delay and will not prejudice" any party.  (-572 Dkt. 76 at 1.)  WSOU's new counsel also advised that WSOU could not find (and apparently had never downloaded) various Google document productions in the -580 case.  (Ex. 8.)  WSOU requested that Google "reactivate the production links" for productions comprising over 900 documents (in just one case).  (*Id.*)

**February Discovery Hearing, Appearance of WSOU's Third Lead Counsel, and WSOU's Attempt to Amend Its Final Contentions.**  Through January and February 2022, the parties continued to meet and confer, Google provided new dates for all depositions in all cases, and WSOU took various depositions in the -572, -580, and -585 cases.  In the -584 case, WSOU represented in writing through its then-lead counsel, Cartner Arnett, that it would dismiss the case with prejudice, and the parties agreed on a stipulated form of dismissal.  (Ex. 9; Ex. 41.)  The

parties also resolved all discovery disputes in the -572 case.

On February 17, the Court held a discovery hearing for the -580 and -585 cases during which Google requested that the parties ████████████████████████████████████ ███████████████████████████ (Ex. 10 at 17:18-20.)  At that time, WSOU insisted it was not seeking to expand its allegations, stating that ████████████████████████████████████████ ██████████████████████████ (*Id.* at 19:17-19.)  Yet WSOU now argues that it is simply accepting Google's "invitation" to do precisely that, relying on a significantly edited quote from the hearing.  (Mot. at 8.)  WSOU is plainly incorrect, as made clear by the *complete* excerpt from the hearing transcript, with emphasis to the text that WSOU omitted:



(Ex. 10 at 15:18-16:7.)

Shortly after the hearing, the Carter Arnett firm withdrew and WSOU's third lead counsel, Folio Law Group, took over all four cases.  WSOU again stated that this change would not cause delay.  (-572 Dkt. 90 at 2.)  Google did not object, but noted that "efficiencies need to be brought to the future handling of the remaining cases."  (-572 Dkt. 91 at 2.)  On February 22, WSOU again canceled all pending depositions, regardless of whether or not it had raised any discovery disputes with the Court in those cases. (Ex. 42.)   In March, WSOU reneged on its representation to dismiss the -584 case.  In April, WSOU first told Google that it sought to amend the Final Infringement

7

Contentions in all cases and amend the complaint in the -584.  WSOU filed its motion for leave in May.

<u>**ARGUMENT**</u>

## I.   LEGAL STANDARD FOR AMENDING CONTENTIONS

This Court evaluates whether good cause exists to amend contentions based on: "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings."  *WSOU Invs. LLC v. OnePlus Tech. Co.*, 2022 WL 174517, at *2 (W.D. Tex. 2022).

## II.   WSOU'S MOTION FOR LEAVE CONTRAVENES THE OGP'S PURPOSE

While WSOU's motion spends most of its time addressing leave to amend the complaint in the -584 case, the parties' central dispute concerns WSOU's attempt to amend its Final Infringement Contentions in *all four cases* by introducing a slew of *new and revised theories*, adding *18 new products,* and asserting *7 new claims*—all more than 14 months after the *Markman* hearing and 12 months after WSOU served Final Infringement Contentions.  WSOU's approach defeats the OGP's key objectives and flouts basic principles of case management.

"The purpose of … local patent rules in general is to require parties *to crystallize* their theories of the case *early* in the litigation."  *Keranos, LLC v. Silicon Storage Tech., Inc*., 797 F.3d 1025, 1035 (Fed. Cir. 2015).  Though the OGP and other patent rules may have differing structures, they operate on the same principle:  making litigation more efficient and less expensive by providing predictability through rules that *all parties* must follow.  Here, the OGP's rules for asserting claims and final contentions are not suggestive or advisory; they are binding.

WSOU's motion would render the OGP's provisions toothless.  A year after serving its final contentions, WSOU now characterizes those contentions as merely "*then-final* infringement contentions" (Mot. at 7), and no more than "*putatively* final infringement contentions." (*Id.* at 21.) WSOU thus seeks to change the OGP's deadline for serving Final Infringement Contentions into "Intermediate" Infringement Contentions.  WSOU cannot rewrite this Court's rules.

WSOU's assertion that it seeks to amend its Final Infringement Contentions to provide "a fully fleshed out set of infringement theories" (*id.* at 2), fails for the same reason.  The time for doing that was at the Final Infringement Contention stage, not one year later.  Moreover, far from being "fully fleshed out," WSOU's second pass at providing Final Infringement Contentions is, at best, preliminary, using elastic placeholders such as "on information and belief"[1] and a laundry list of reservations and exceptions:  "Brazos *reserves the right to supplement or revise* its infringement contentions and/or chart, *including identification of additional asserted claims."* (-572 Dkt. 104, Exs. 3-6.)

Even when presented with timely motions (which WSOU's is not), this Court has denied leave to amend when doing so would "fundamentally alter[] the nature of the case" and "sidestep[] the Court's discovery order."  *Advanced Aerodynamics, LLC v. Spin Master, Ltd.*, 6:21-cv-00002-ADA, Dkt. 94 at 2 (rejecting leave to amend complaint).  Entirely disregarding the OGP's timing and structure, WSOU's attempt at self-help would dramatically remake these cases nearly two years after filing and one year after Final Infringement Contentions.

---

[1] *See e.g.,* "upon information and belief" in the -572 case (Dkt. 104, Ex. 3 at 78, 87); in the -584 case (Dkt. 92, Ex. 5 at Appx. B at 19, 111; Appx D at 23, 47); and in the -585 case Ex. 14 at 7, 8, 35, 36, 56, 57, 59, 79, 82, 104, 123, 125, 126, 127, 129, 130, 131, 133, 134, 135, 137, 149, 150, 171, 172, 185, 224, 225,  253, 254, 274, 275, 277, 298, 301, 323, 349, 350.

### III. WSOU'S MOTION EVISCERATES THE REVISED SCHEDULING ORDER THAT EXTENDED FACT DISCOVERY BY FOUR MONTHS TO NARROW THE ISSUES FOR TRIAL

In October 2021, WSOU recognized that it could not complete all the discovery it needed to conduct for the then-ten remaining cases.  Google agreed to a revised scheduling order, on the condition that the revised schedule include specific deadlines for identifying and resolving discovery disputes and narrowing the issues for trial.  (-572 Dkt. 66.)  (It is worth noting that with these extensions requested by WSOU and its self-help delays, fact discovery opened well over a year ago.)

The parties' agreed schedule included several guideposts to steer these matters to trial.  First, the parties agreed to set October 22, 2021, as the deadline for serving new discovery.  WSOU did not indicate that it would seek to add products, claims, or theories.  WSOU did not seek discovery on any products it now seeks to accuse.  And WSOU never mentioned seeking leave to amend its Final Infringement Contentions.  The parties also agreed to have finalized meet and confers on "any outstanding discovery disputes in written form" on December 10, 2021.  *Id.* During those meet and confers, WSOU never mentioned seeking to amend its Final Infringement Contentions.  The parties agreed to a January 21, 2022, deadline for "resolv[ing] any remaining discovery disputes" with "all filings with Court due by Jan. 28, 2022."  *Id*.  During that process, WSOU again never suggested that it sought to amend its Final Infringement Contentions.  On February 1, 2022, per the Court's schedule, the parties met and conferred "to ***narrow*** the number of claims asserted and prior art references asserted."  Again, during this narrowing conference, WSOU never mentioned seeking leave to *expand* the cases.

WSOU's motion defeats the purpose of the parties' jointly-revised schedule that was "designed to *require parties to crystallize* their theories of the case."  *Sycamore IP Holdings LLC*

10

*v. AT&T Corp.,*, 2018 WL 1695231, at *10 (E.D. Texas, April 6, 2018).  Granting WSOU's motion to change infringement theories, inject new theories, add new products, and assert new claims, would fundamentally alter the nature of the cases, requiring the parties to restart the litigation nearly from scratch.  WSOU's proposed amendments would require conducting technical discovery from the ground up for new products, an additional *Markman* hearing, another set of invalidity contentions, and likely additional discovery disputes regarding each of these new exchanges.

**IV.   THE RELEVANT FACTORS WEIGH DECISIVELY AGAINST GRANTING LEAVE TO AMEND THE FINAL INFRINGEMENT CONTENTIONS**

Seeking leave to amend its Final Infringement Contentions in every case, WSOU proffers a series of generalized arguments and barely mentions the specifics of any case except the -584.  As explained below, WSOU's general arguments are without merit.  Section V addresses additional reasons for denying WSOU's motion specific to each case.

**A.    WSOU Cannot Show Diligence Or Good Cause**

This Court is unequivocal that "*absent extraordinary circumstances*, [a plaintiff] will not be given leave to amend its final infringement contentions."  *OnePlus*, 2022 WL 174517, at *3.  No such circumstances exist here.

***WSOU's Delay Demonstrates An Absence Of Diligence.***  When assessing leave to amend, courts focus on "[w]hether the offending party was diligent … in supplementing contentions, *after an alleged need* to disclose the new matter *became apparent*."  *Id.* at *2.  The present record establishes WSOU's total lack of diligence.  Information about the newly-accused products in the -580 and -585 cases was publicly available long before WSOU filed suit.  Information about Google TV (-572 case) was publicly available before WSOU served preliminary contentions over 20 months ago.  Information about Nest Thermostat (-584 case) was also publicly available over

20 months ago, and information about the Nest Hub product (-584 case) was publicly available before WSOU served its final infringement contentions 15 months ago.

The fundamental problem with WSOU's delay is that "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement *would be virtually meaningless* as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro Intern. LTD v. Monolithic Power Systems, Inc.,* , 467 F.3d 1355, 1366 (Fed. Cir. 2006). As WSOU previously argued to this Court, if parties could amend disclosures "at their leisure," then "the requirement for good cause and diligence would be eviscerated, creating a loophole and setting a dangerous precedent," thus "effectively rendering Court-ordered deadlines meaningless." *WSOU Invs., LLC v. Dell Techs. Inc*., No. 20-485-ADA, Dkt. 173 at 4. WSOU's own argument soundly defeats its motion here.

Indeed, courts consistently hold that delays far shorter than WSOU's demonstrate a lack of diligence. *See O2 Micro*, 467 F.3d at 1367 (affirming denial of leave when plaintiff "waited almost three months … to serve its proposed amended contentions"); *Speedtrack, Inc. v. Endeca Techs*., Inc., 524 F. App'x 651, 659 (Fed. Cir. 2013) (same when plaintiff "waited six months"); *Uniloc, Inc. v. Distinctive Devs. Ltd.*, 2016 WL 11485612, at *2 (E.D. Tex. 2016) (denying leave when plaintiff had "months (from November 19, 2012, to August 6, 2013) in which it could have sought leave to amend … using the information already in its possession"). By any measure, WSOU lacked diligence in seeking to amend.

***WSOU's Attempts To Excuse Its Delay Are Meritless.*** WSOU does not even attempt to show diligence on a case by case basis, and its generalized argument fails as well. Speaking to all four cases together, WSOU contends that its lack of "*full access* to Google's confidential source code evidence and deposition testimony" before serving its final contentions provides good cause.

(Mot. at 21.)  Again, WSOU fails utterly to show how source code production relates to its failure to accuse products publicly announced long before its final infringement contentions were due, in general or in any specific case.  And, its argument reduces to the position that a party could freely amend final contentions any time during discovery.  The OGP refutes that argument by requiring the plaintiff to serve Final Infringement Contentions after two months of fact discovery and well before the close of fact discovery.  The Federal Circuit has also dismissed this argument:  "We reject [plaintiff's] apparent argument that 'good cause' must exist for amending its infringement contentions, without regard to its diligence in doing so, merely because new evidence was revealed during discovery."  *O2 Micro*, 467 F.3d at 1366.  Moreover, WSOU's attempt to use source code and depositions as a crutch for amending its final contentions collapses on even cursory review of WSOU's proposed amendments, which accuse new products on which WSOU admits it has not received discovery.

WSOU also asserts that it required discovery in order to formulate new theories, accuse different products, and identify more claims, but the Federal Circuit rejects that argument as well.  "[D]iscovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990).  The same is true with the OGP, which contemplates discovery for proving a disclosed theory, not for creating new ones.

Similarly, WSOU's decision to pivot to a third lead counsel cannot excuse lack of diligence nor supply good cause.  (Mot. at 11-13, 21.)  "[R]etention of a new attorney able to perceive or draft different or more creative claims from the same set of facts is itself no excuse for the late filing of an amended complaint."  *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981).  A "change of counsel does not alter the diligence analysis; *diligence is measured according*

13

*to the efforts of all counsel representing a party*." *KlausTech, Inc. v. Google, Inc.*, 2017 WL 4808558, at *5 (N.D. Cal. 2017).

Finally, WSOU's citation to *MV3* is inapposite.  That case involved "cat-and mouse games played during discovery" based on which the Court found that plaintiff "was sufficiently diligent" because plaintiff sought leave to amend within 8 days of receiving new information, "although there was room for improvement." *MV3 Partners LLC v. Roku, Inc.*, 6:18-cv-0308-ADA (W.D. Tex.), Dkt. 146 at 3.  Accordingly, WSOU's cited cases are "readily distinguishable because the moving party in each demonstrated early notice, diligence, new evidence, and/or leave obtained from the district court—none of which apply here." *Phigenix, Inc. v. Genentech, Inc*., 783 F. App'x 1014, 1019 (Fed. Cir. 2019).

Because WSOU cannot show diligence, this Court has "no need to consider the question of prejudice," though it may do so at its discretion.  *O2 Micro*, 467 F.3d at 1368.

### B.     WSOU's Proposed Amendments Would Prejudice Google And This Court, And Any Continuance Would Only Exacerbate That Prejudice

WSOU's motion should also be denied because it would materially prejudice Google and the Court by fundamentally altering the nature of these cases.

***Prejudice To Google.***  This "Court goes to great lengths to prevent defendants from being unduly prejudiced by changes in infringement contentions." *VLSI Tech. LLC v. Intel Corp.*, 2022 WL 1477726, at *4 (W.D. Tex. 2022).  Here, Google faces precisely this undue prejudice.  WSOU seeks to start anew by introducing new theories, new products, and new claims through a second round of final contentions that are purely preliminary in nature, and based upon "information and belief" and long-available public information.  This would require Google to bear significant new costs and burdens to engage in sweeping new discovery including:  (i) new and extensive document review and production in all four cases; (ii) searching through different code bases; (iii)

14

identifying, coordinating with, and preparing different witnesses; and (iv) searching for and charting different prior art for new claims.

WSOU tries to minimize the effort that Google would be forced to undertake and simply ignores the substantial resources that Google would need to expend.  At this juncture, these cases should be narrowing toward summary judgment and trial, rather than significantly growing through new cycles of discovery.  Google "has spent considerable time and resources litigating th[ese] case[s].  It would be highly prejudicial to force [Google] into another round of litigation." *Papst Licensing GmbH v. Apple, Inc.*, 2020 WL 11613777, at *3 (E.D. Tex. 2020).

**_Prejudice To The Court._**  Judicial economy also counsels in favor of denying WSOU's motion, which would dramatically expand the resources the Court must devote to resolving these long-pending cases.  WSOU's new theories and new claims would necessitate additional rounds of claim-construction exchanges and another *Markman* hearing.  For these reasons, the OGP expressly discourages a plaintiff from introducing new claims after the *Markman* hearing and final contentions and directs that "[a]ny amendment to add patent claims requires leave of court so that the Court can address any scheduling issues."  WSOU's introduction of new theories and new products would likely multiply discovery disputes and motions.  All of this would require the Court and the parties to radically veer from the OGP and the previously-extended discovery schedule.  WSOU casually dismisses these concerns, but this Court "does not establish its deadlines so lightly."  *Dali*, Dkt. 59 at 6.

**_A Continuance Would Magnify Prejudice Rather Than Cure It._**  WSOU asserts that a continuance would ameliorate any prejudice.  The opposite is true.  A continuance would require Google to expend substantial resources on essentially brand-new cases two years after these actions were filed and one year after WSOU's Final Infringement Contentions should have framed

the litigation on a path toward trial.  Here, a "continuance would not cure the potential prejudice to [Google], as the parties have spent considerable resources on these cases." *Adaptix, Inc. v. T-Mobile USA, Inc.*, 2014 WL 12639945, *3 (E.D. Tex. 2014).  This Court explains its "reticen[ce] to grant" a continuance because "it would only delay the speedy resolution of this case and would not deter future careless behavior nor serve to enforce this Court's Scheduling Order."  *Dali*, Dkt. 59 at 7.  This reasoning applies with full force here.

WSOU also erroneously suggests that Google's agreement to adjourn fact and expert discovery deadlines when WSOU's third lead counsel requested that shows lack of prejudice. Google's professional courtesy in allowing new counsel to get up to speed on the cases that WSOU built during the past two years should not be mistaken for, nor converted into, a green light to start litigation from scratch.  Google emphasized this point when responding to WSOU's motion to substitute new counsel:  "Clearly, efficiencies need to be brought to the future handling of the remaining cases."  (-572 Dkt. 91 at 2.)  Yet WSOU seeks to do the reverse.

Further, WSOU replaced lead counsel twice after serving its Final Infringement Contentions.  Each time, WSOU represented that doing so would not delay case resolution, and WSOU never intimated that it would seek to amend its final contentions.  (-572 Dkt. 76 at 1 (replacing Etheridge firm with Carter Arnett "will not cause a continuance or delay and will not prejudice WSOU or any other party to this action"); -572 Dkt. 90 at 2 (replacing Carter Arnett "not for purposes of delay").  WSOU should not be allowed to do so now.

***Denial Will Not Prejudice WSOU.***  WSOU's assertion that denying leave to amend will cause it prejudice is unavailing.  (Mot. at 25.)  <u>First</u>, denying WSOU's motion simply means that WSOU must go forward with the cases that it has built over the past two years.  That is a natural consequence of any litigation, rather than prejudice.  <u>Second</u>, any alleged prejudice suffered by

WSOU is of its own doing.  WSOU could have charted the additional products and asserted new claims much earlier in the litigation.  Thus any alleged prejudice "should have generated a commensurate amount of diligence."  *Global Sessions LP v. Travelocity.com LP*, 2012 WL 1903903 at *6 (E.D. Texas, May 25, 2012).  The Federal Circuit aptly explains that a plaintiff "has no good explanation for its failure to bring its new infringement contentions earlier and thus has brought any perceived prejudice on itself."  *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 971 (Fed. Cir. 2013).

## V.   WSOU'S MOTIONS FOR LEAVE TO AMEND CONTENTIONS SHOULD ALSO BE DENIED IN EACH CASE FOR ADDITIONAL REASONS SPECIFIC TO EACH CASE

### A.   -585 Case

WSOU seeks to radically change and expand this case by adding *any* product that happens to use "geofencing."  But WSOU has long been clear, and its proposed new contentions confirm, that geofencing alone is not enough to infringe the '961 patent.  The products it seeks to add now were well known long before WSOU's infringement contentions were served.  WSOU's motion to amend in the -585 case should thus be denied for many reasons.

#### 1.   WSOU's Attempt to Accuse Additional Products Should Be Denied

***Throughout These Actions, WSOU Repeatedly Confirmed—Including Directly to This Court—That it Accused Google's Awareness API.***  In June 2020, WSOU filed its complaint, alleging that "[t]he Awareness API is an API providing multiple context and location signals to mobile applications" and accusing the Awareness API of infringement.  -585 Dkt. 1 at 16.

In October 2020, WSOU served its preliminary infringement contentions, confirming its allegations against the Awareness API.  *See generally* Ex. 13.  Google promptly notified WSOU that its contentions failed to ███████████████████████████████████████████ ████████████████████  Ex. 15.  In response, WSOU confirmed:

[REDACTED]

Ex. 16 (emphasis added). In December 2020, the parties filed a joint discovery letter concerning the scope of WSOU's contentions. WSOU argued that "[a]n identification of applications that use Android provides no additional details as to WSOU's theory of infringement" because it alleged infringement by unidentified "apps and services that infringe through Google's Awareness API, which is a part of the Google Android system." -585 Dkt No. 34, Ex. A.

In May 2021, WSOU served its final infringement contentions, reconfirming its allegations against Google's Awareness API. *See generally* Ex. 11. During discovery in this action, WSOU repeatedly referred to the accused Awareness API by name, *see, e.g.*, Ex. 17, and confirmed that it did not seek source code or technical documents regarding Google Maps or Google Ads, or any Google applications whatsoever. Ex. 18.

On February 11, 2022, after completing document discovery and taking every technical deposition in the -585 case, WSOU filed a Motion to Extend Pretrial Deadlines explaining that "[i]n Cause No. 6:20-cv-585, *Brazos specifically accused functionality within Google's Awareness API.*" -585 Dkt. 96 at 1 (emphasis added).

On February 17, 2022, the Court held a hearing on the parties' discovery submissions. WSOU repeatedly represented to the Court that it accused the Awareness API of infringement, and not any Google applications. [REDACTED]

[REDACTED] Ex. 10 at 19:17-19. Although WSOU had already received all document discovery and taken every technical deposition, WSOU did not tell the Court that it would seek leave to amend its contentions to accuse Google Maps or

Google Ads, let alone *any* ███████████████████████████████████████████  It was

not until almost two years into this litigation, in March 2022, that WSOU first revealed its intention

to add any new products, much less an unidentified further list.

    ***WSOU Cannot Identify Any Diligence***.  WSOU's proposed new contentions purport to

expand this action to accuse Google products other than the Awareness API, including Google

Maps Popular Times and Timeline features, and Google Ads.[2]  Exs. 12,[3] 14.  WSOU's May 2021

Final Infringement Contentions do not identify or even *contain the words* "Google Maps,"

"Google Ads," "Timeline," or "Popular Times."  *See generally* Ex. 11.  WSOU now claims its

prior allegations were "exemplary" (Mot. at 2), but its prior statements confirm the opposite.  And

WSOU was required to provide detailed—not "exemplary"—contentions by May 2021.  *See Sol*

*IP, LLC v. AT&T Mobility LLC*, 2020 WL 1911388, at *6 (E.D. Tex. Apr. 20, 2020).

    WSOU makes no specific arguments regarding its diligence in this action, and has thus

waived them.  *See Cavazos v. JP Morgan Chase Bank Nat. Ass'n*, 388 F. App'x 398, 399 (5th Cir.

2010).  WSOU even admits that it did not learn of Google Maps or Google Ads, or the newly

accused features of those products, through discovery in these actions.  (Mot. at 14 (emphasis

added) ("Brazos's proposed Amended Infringement Contentions account for information learned

by Brazos via Google's source code—or more to the point, *what was not included in Google's*

---

[2] WSOU's proposed new contentions also list other new products it now purports to accuse in this action:  "Google Play Services," "Context Fence API" and "Google API."  None of these products were listed in WSOU's Final Infringement Contentions.  WSOU provides no citations or documentation even attempting to map any element of the asserted claims against these products, some of which do not appear to exist, and so the Court needn't consider whether to permit their insertion in this action.

[3] WSOU refers to its Exhibit 6 as containing a redline of its -585 Final Contentions.  (Mot. at 3, n.1.)  Because WSOU's hand-marked "redline" excludes part of the contentions and fails to indicate substantial new matter it proposes to insert, Google prepared a complete redline.

*produced source code*").)  WSOU's proposed new contentions cite public information regarding these new products, noting these new allegations are merely "on information and belief."  (*E.g.*, Ex. 14 at 7, 8, 35, 36, 56, 57, 59, 79, 82, 104, 123, 125, 126, 127, 129, 130, 131, 133, 134, 135, 137, 149, 150, 171, 172, 185, 224, 225,  253, 254, 274, 275, 277, 298, 301, 323, 349, 350.)  WSOU cannot present any reasonable justification for its many years' delay in identifying these additional products.  Google released Maps in February 2005, Maps Timeline in July 2015, and Popular Times in July 2015.  (Exs. 20, 22, 23.)  Google released Google Ads in October 2000 (Ex. 19). WSOU cites public documentation concerning Google Ads that has been available since at least 2019.  (Ex. 34.); *see Freshub, Inc. v. Amazon.com Inc*., 2021 WL 8202605, at *1 (W.D. Tex. 2021) (denying leave to amend where party had information when it served its final contentions).

**Adding An Unknown Number of Additional Products Would Significantly Prejudice Both Google and the Court**.  Permitting WSOU to restart the -585 case to add additional claims and theories accusing a yet-undisclosed set of products that use "geofencing capabilities" would require entirely new discovery into multiple newly accused product lines, each of which has a different team at Google.  Google would be forced to begin anew its defense against this suit, searching for documents and preparing multiple new witnesses for depositions, as well as investigating invalidity based on WSOU's new reading of its claims and newly asserted claims. *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, at *5 (E.D. Tex. 2009).

**Neither WSOU's Motion Nor its Proposed Contentions Allege That These Newly Accused Features Use the Awareness API**.  That is because they do not, as WSOU knows well. *See, e.g.,* Ex. 21 at 117:14-16 ███████████████████████████████

A ██████ *id*. at 75:9-11 ("Q. ██████████████████████████████████

██████████████ ).  Each of the newly-accused features predates WSOU's complaint by a matter of

years.  WSOU does not and cannot explain why it failed to identify any of these features at the outset of this action, or any time during the past two years.

***WSOU Did Not—And Still Does Not—Contend That Any Claim of the '961 Patent is Infringed By Simply "Geofencing."***  The Court should deny WSOU's motion for leave to accuse "any other Google product and/or service using 'geofencing capabilities," because it admits that the use of geofencing, alone, is not enough to show infringement of the '961 patent.  WSOU's Complaint, Preliminary, and Final Contentions accused the Awareness API of infringing the '961 patent by ███████████████████████████████████████████████████ Ex. 11 at 22, 81, 96, 138, 197.   WSOU's Final Contentions did not contend that any and all use of geofencing infringes any claim of the '961 patent.  Instead, WSOU's Final Contentions identified geofencing *within Awareness API* as meeting *some, but not all*, of the asserted claim elements. *E.g.*, Ex. 11 at 23-24 (for "████████████████████████████████████████████ ██████████████████████████████████████████).  In order to meet the other elements of its claims, WSOU previously identified Awareness API "context types," stating that infringement occurs when "context types" are combined using Boolean operators.  E.g. Ex. 11 at 47, 62, 92, 113, 163, 178, 208; *see also id.* at 41 (for "causing at least in part an incrementing of a count" and "determining a primary set of stationary states").

WSOU now seeks to abandon the Awareness API, and instead accuse Google Maps, Google Ads, as well as "any other Google product and/or service using geofencing capabilities." (Ex. 14.)  But WSOU's proposed new contentions *still* do not contend that any and all use of geofencing infringes any claim of the '961 patent.  *E.g.*, *id.* at 49, 57, 62, 63, 79, 82, 83.  WSOU's motion for leave to amend to accuse "any other Google product and/or service using 'geofencing capabilities" should accordingly be denied.

       **2.**      **WSOU's Attempt to Insert An Additional Claim At the Thirteenth Hour Should Be Denied.**

WSOU's proposed new contentions add claim 3 of the '961 patent.  WSOU provides no alleged justification for failing to assert claim 3 until now, and none exists.   WSOU does not pretend to assert claim 3 against the previously accused Awareness API, or against any product

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. 14 at 123, 127.  Again, WSOU cites public documentation that was available before WSOU filed its complaint.  WSOU cannot, and does not attempt to, show any diligence in asserting this additional claim.

WSOU's addition of this new claim would compound the prejudice to Google, necessitating additional invalidity contentions and further claim construction to address new claim elements not present in any of the previously-asserted claims.  For example, claim 3 recites the terms "extant stationary state," "conditional probability for each wireless transmitter," and "a cluster threshold," none of which appear in any previously asserted claims.

     **B.**      **-580 Case**

       **1.**      **WSOU's Attempt to Usher In a Brand New Infringement Theory Should Be Denied**

***WSOU's Infringement Theory For Two Years.***  For the first two years, WSOU proceeded with a theory of infringement that required both the Mobile Vision API and an application calling the API.  WSOU now claims these allegations were "exemplary" (Mot. at 2), but its prior statements confirm the opposite.  In any event, WSOU was required to provide detailed—not "exemplary"—contentions by May 2021.  *See Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 1911388, at *6 (E.D. Tex. Apr. 20, 2020).

For the first two years of this case, WSOU alleged infringement required the application to call the Mobile Vision API, which would in turn call various versions of Google's internal barcode-

reading engine, called ▮▮▮▮▮▮ ▮▮▮▮▮ would provide a result back to the API, which would provide a result to the application or user; the application would then send another query back to the API, which in turn would pass it to ▮▮▮▮▮ WSOU's theory of infringement thus included, and required, all these steps:



WSOU's theory remained consistent, starting with its complaint.  WSOU alleged that "Google provides a Mobile Vision API to its users to allow them to include the functionalities of barcode reading, face reading, and text reading in applications," including:

- Steps 1-3: a "barcode reading feature [that] processes an input image in order to decode the barcode" (-580 Dkt. 1, ¶¶ 46-47),

- Steps 4-5: "returns a barcode graphic object" (-580 Dkt. 1, ¶¶ 46-47), which

- Steps 6-8: "allows a user to adjust the corners of the region of interest denoted by the box (i.e. performing correction on the input image)" before resubmission of the image to the API.  -580 Dkt. 1, ¶ 48.

WSOU's infringement contentions doubled down on its theory that infringement requires steps 1-8.  In its preliminary contentions, WSOU again alleged that:

- Steps 1-3: ████████████████████████████████████████

  ████████████████████████████████████████

  (Ex. 24 at 4, 50, 97, and 153), which it uses to

- Steps: 4-5: ██████████████████████ (*id.* at 4, 7, 17, 33, 50, 55, 67, 97, 102, 114,

  153, 156), which

- Steps 6-8: ████████████████████████████████████████

  ████████████████████████████████████████

  ██████████████████████████ *Id.* at 6, 7, 17, 33, 52, 55, 67, 99,

  102, 114, 154, and 156.

WSOU's Final Infringement Contentions stuck to the same theory that infringement
required steps 1-8.  WSOU once again alleged that:

- Steps 1-3: ████████████████████████████████████████

  ██████████████ (Ex. 25 at 5, 61, 117, and 179); and

- Steps 4-5: ██████████████████████ (*id.* at 5, 10, 21, 43, 61, 68, 82, 117, 124, 136,

  179, and 183); which

- Steps 6-8: ████████████████████████████████████████

  ████████████ *id.* at 10, 21, 43, 68, 82, 124, 136, and 183.

WSOU again stuck with its theory that infringement required steps 1-8, adding only an additional
mechanism by which a user could complete steps 6-8:  in addition to ████████████████████
████████████ *supra*, the Final Infringement Contentions claimed that ████████████████
██████████████ (step 6; *id.* at 14, 30, 40, 75, 95, 148, and 189) and use the Mobile Vision
API ████████████████████████████ (steps 7-8; *id.* at 14, 30, 40, 75, 95, 148,
and 189).



24

WSOU's Final Infringement Contentions thus reconfirmed its theory that infringement requires action by an application calling the Mobile Vision API, a response from the API, and further action by the application receiving the response (prompted, if necessary, by the user).

***WSOU's Proposed New Contentions Would Abandon Its Long-Held Theory of Infringement for an Entirely New Theory, in Which All Infringement Occurs Within*** ████         WSOU's proposed new contentions would abandon the previous two years of this action, including contentions, written discovery and depositions, in favor of an entirely new theory in which infringement occurs not through a back-and-forth between an application and the Mobile Vision API, but entirely within the ██████ barcode-reading engine itself.  WSOU's own redline shows how it has junked its old theory, in which ████████████████████," and replaced it with a new theory of infringement within ██████ itself:

████ at 38; *see also id.* at 20, 48, 91, 115, 179, 227.  WSOU's proposed new contentions consistently claim that infringement is complete within ██████ itself.  *See, e.g., id.* at 7, 142, 212 ("████████████████████

████████████████); 13, 34, 83, 106, 148, 171, 218 ████████

████████████; 16, 87, 155, 223 ████████

████████████); 18, 89, 157, 225 ████████████

████████████████████████);

22, 24, 93, 95, 159, 161, 229 ████████████████); 27, 99, 164, 234

████████████████████████"); 38,

111, 175 ██████████████████████████████████████).  WSOU's

proposed new contentions thus posit an entirely new theory of infringement entirely within

████████ and abandon its previous claim of a call-and-response across the Mobile Vision API.[4]

### 2.   WSOU's Attempt to Add Additional Products Should Be Denied

*WSOU Cannot Identify Any Diligence*.  WSOU attempts to use its new infringement

theory to accuse at least nine new products that WSOU has known about since at least December

2020, and likely earlier, causing prejudice to Google.  WSOU's new theory would require a

complete reboot of claim construction and discovery in this case.[5]  WSOU's motivation for doing

so is not hard to find:  by junking its prior theory of infringement, WSOU asks the Court to allow

discovery against at least nine new products, and potentially more, claiming that ██████████

████████████████████████████████████████████████████████████

████████████ including at least ████████████████████████████████████

████████████████████████████████████████████████████████████

████████   Ex. 27 at 2.  WSOU's proposed new contentions cite GOOG-WSOU580-00002865,

and for good reason:  this list of new products is a verbatim copy of that document, which Google

produced in its initial technical production on *December 4, 2020*.  WSOU had this document well

before its Final Infringement Contentions on May 21, 2021, but it used those contentions only to

confirm and reconfirm its existing theory of infringement.  *See supra.*  And Google's December

2020 production is not nearly the earliest disclosure of these products.  The press covered Google

Lens barcode features, for example, in May 2018.  Ex. 28.  Google produced source code for

---

[4] Citing only "generally" to its proposed new contentions, WSOU claims that those contentions "are primarily updated via an extensive series of citations to Google's confidential source code." Mot. at 13.  As Google has explained in detail, *supra*, this is not correct.

[5] Again, WSOU does not argue its diligence in this action, and has thus waived any assertion that it was.  *Cavazos v. JP Morgan Chase Bank Nat. Ass'n*, 388 F. App'x 398, 399 (5th Cir. 2010).

███████ on May 21, 2021; WSOU finally reviewed it on October 6, 2021; and, as WSOU admits in its motion, on "October 7, 2021, Brazos wrote to Google to note that Google's source code production in the 580 Case omitted the latest version of the accused ███████ functionality," which Google then provided. (Mot. at 6.)  At no time did WSOU tell Google that its accusations would shift from a call-and-response including instantiations of ███████ as well as applications and the Mobile Vision API to accusations involving only ███████. *Freshub, Inc. v. Amazon.com Inc.*, 2021 WL 8202605, at *1 (W.D. Tex. 2021) (denying leave to amend where party had information when serving final contentions).

***Adding Nine New Products Would Significantly Prejudice Both Google and the Court***. Should the Court allow WSOU to reboot its infringement theory and thus the -580 case, adding at least nine products and potentially more, it would require entirely new discovery into multiple newly accused product lines, each having a different team at Google.  Google will be forced to begin anew its investigations in defense against this suit, searching for documents and preparing multiple new witnesses for depositions.  Google would be "burdened with additional written discovery, document production requests, and additional work from the parties' technical experts." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, at *5 (E.D. Tex. Jan. 12, 2009).  The Court should deny this motion and require WSOU to proceed with the case it developed over two years of litigation.

    **C.**       **-584 Case**

        **1.**       **WSOU's Attempt To Assert Six Additional Claims Should Be Denied**

This Court should reject WSOU's attempt to more than double the number of asserted claims nearly 17 months after serving its Preliminary Infringement Contentions, 12 months after serving its Final Infringement Contentions, and 10 months after the deadline for amending the pleadings.

***WSOU Has No Good Cause for Asserting New Claims***.  WSOU had exclusive control when deciding which claims to assert in its preliminary contentions.  WSOU affirmatively chose to assert only method claims 1-5, and the parties have litigated those claims for well over a year.  Now—long after the *Markman* hearing (March 2021) and serving final contentions (May 2021)—WSOU seeks to add another method claim and five apparatus claims.

WSOU's sole reason for attempting to add new claims is Google's interrogatory response on non-infringement (Mot. at 11), where Google explained that it: (i) does not perform any claimed method, and (2) cannot infringe method claims by making, selling, or offering to sell an apparatus. (-584 Dkt. 92, Ex. 23 at 13.)  WSOU argument fails for several reasons.  <u>First</u>, Google served this response on April 28, 2021 before WSOU served its Final Infringement Contentions.  (*Id.* at 25.)  WSOU thus cannot, and does not attempt to, show any diligence.  To the extent WSOU suggests that prior lead counsel were negligent in failing to assert these claims, courts reject that position.  "Carelessness or mere errors, however, are insufficient to establish good cause."  *Berger v. Rossignol Ski Co.*, 2006 WL 1095914, at *5 (N.D. Cal. 2006).

<u>Second</u>, Google's response cited settled law existing long before WSOU decided which claims to assert.  Google relied on precedent that "[t]he law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."  *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).  As such, the substance of Google's response should not have surprised WSOU, nor does it provide any good cause.

<u>Third</u>, WSOU's characterization of the claims it seeks to add as "similar apparatus claims parallel to WSOU's previous assertion of method claims" (Mot. at 14) is self-defeating.  If these claims are merely "parallel apparatus claims" (*id.* at 23), then there is no basis for WSOU's failure to assert them in a timely manner.  WSOU's contention that the new claims provide "an alternate

means to prove infringement" confirms this point. (*Id.*) If true, WSOU should have asserted these claims 18 months ago. From the start of this case, nothing has changed about the claims or the accused Pixel 4 products. And none of WSOU's arguments justify (or explain) its attempt to *add another method claim* (claim 6).

>      ***Adding More Claims Would Prejudice Google and the Court.***   Beyond the complete absence of good cause, WSOU's attempt to inject new claims would be highly prejudicial. Adding more claims, with new structural limitations not present in the method cliams, will require additional rounds of *Markman* briefing and another hearing to construe at the least the term "one memory and the computer program code being configured to, with the at least one processor, [to] cause" (claim 13), and the Court has construed similar language to invoke Section 112, ¶ 6. (-584 Dkt. 45 at 1-2.). Moreover, one year after serving Final Invalidity Contentions, Google would be forced to expend additional resources to search, review, and chart prior art for another set of invalidity contentions addressing different claims that introduce new limitations.

>      **2.      WSOU's Attempt To Accuse Additional Products Should Be Denied**

WSOU also attempts to add two products—the Nest Thermostat and the Nest Hub. The Court should deny leave such leave, regardless of which claims are asserted.

>      ***WSOU Cannot Identify Any Diligence.***   WSOU's sole basis for seeking to add Nest Thermostat and Nest Hub is that the products use a Soli radar sensor. (Mot. at  8-10.)  WSOU ignores that it "had an obligation to search for all accused products using publicly available information." *Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 1911388, at *5 (E.D. Tex. 2020). The critical question is "[w]hether the offending party was diligent … in supplementing contentions, *after an alleged need* to disclose the new matter *became apparent*." *OnePlus,* 2022 WL 174517, at **2. WSOU's motion leaves no doubt that it was not.

WSOU acknowledges that the Nest Thermostat with a radar sensor was publicly released

in October 2020 (Mot. at 8)—seven months before WSOU served its Final Infringement Contentions and 18 months before WSOU sought to amend those final contentions.  Attempting to justify this delay, WSOU asserts that Google "updated its marketing materials only within the last few months," incorrectly implying that this was Google's only public disclosure of these products. (*Id.* at 21.)  Not so:  on October 12, 2020, Google published information on its website notifying the public that the Nest Thermostat includes a radar sensor: "Nest Thermostat … *uses Soli technology for motion sensing* and your phone's location…."  (Ex. 29 at 2; Ex. 30 at 3.)  Because a radar sensor is the only basis on which WSOU seeks to amend the final contentions, WSOU could have done so over a year-and-a-half ago based on publicly-available information.

WSOU also acknowledges that the Nest Hub with a radar sensor was publicly available in March 2021 (Mot. at 9), three months before WSOU served its Final Infringement Contentions and 14 months before WSOU sought to amend those contentions.  On March 16, 2021, Google published information notifying the public that the Nest Hub has a radar sensor:

> Sleep Sensing uses *Motion Sense (powered by Soli low-energy radar technology)* to analyze how the person closest to the display is sleeping, based on their movement…..

(Ex. 31 at 4; Ex. 32 at 2.)  The italicized language includes a hyperlink to another Google webpage (dated March 16, 2021) which provides further detail about how the Soli radar sensor is part of Nest Hub, and WSOU itself attaches this publicly-available document to its motion. (-584 Dkt. 92 at Ex. 32.)  Because a radar sensor is the sole basis on which WSOU seeks to add Nest Hub, WSOU could have done so before its May 2021 Final Infringement Contentions based on publicly-available information.

In these circumstances, courts routinely deny leave to amend infringement contentions because the newly-accused products "could have been identified using publicly available websites" long before plaintiff's motion.  *Sol*, 2020 WL 1911388, at *5; *see Avocent Redmond*

30

*Corp. v. Rose Elecs.*, 2012 WL 4903278, \*2-3 (W.D. Wash. 2012) (denying leave when plaintiff could not explain failure to identify new products based on publicly-available information); *Global Sessions LP v. Travelocity.com LP*, 2012 WL 1903903 \*4 (E.D. Tex. 2012) (same).

WSOU attempts to excuse its lack of diligence by shifting blame to Google's discovery responses and asserting that "Google never disclosed the existence" of a radar sensor in the Thermostat and Nest Hub.  (Mot. at 10.) That argument is wrong and ignores relevant limitations of the asserted patent claims.  <u>First</u>, Google fully and completely answered WSOU's interrogatories by identifying the Pixel 4 smartphone, which is Google's *only* mobile communication device with a radar sensor.  The obvious and fatal defect with WSOU's new position is that none of the claims in the '697 patent are so broad as to cover any product having a radar sensor.  (Mot. at 1, 8.)  Rather, all the claims of the patent recite a "mobile communication device using radar" (claim 1) or "a radar equipped mobile communication device" (claim 13). While the originally-accused Pixel 4 is a "mobile communication device," the Nest Hub (which is a stationary device for the home) and the Thermostat (which is mounted to a wall) are demonstrably not "mobile communications devices."  WSOU's exhibits 26-28, 30, and 32 confirm this.  Lastly, as demonstrated by its amended complaint (addressed below), WSOU does not (because it cannot) even plead that the Thermostat is a mobile communications device.

<u>Second</u>, the "burden is on Plaintiff, not Defendants, to search for and identify infringing products to the extent possible based on publicly available information."  *Keranos, LLC v. Silicon Storage Tech., Inc.*, 2013 WL 5763738, at \*3 (E.D. Tex. 2013).  WSOU failed to do so based on publicly-available information.  Even putting aside that the Thermostat and Nest Hub are not "mobile communication devices," Google disclosed the presence of a radar sensor in these products to the entire world in the public statements discussed above.  Moreover, Google's

31

production from July 2021 also included documents demonstrating that the Soli radar sensor was incorporated into the Thermostat and Nest Hub:



(Ex. 2  at 1; *see* Ex. 1.)

WSOU's assertion that it just now "located this newly public information" (Mot. at 11), establishes lack of diligence because public and confidential information has been available to WSOU for an extended period of time.  As to WSOU's insinuation that Google "attempted to conceal" this information (*id.* at 17), WSOU's own exhibit 32 demonstrates that information about including a radar sensor in the Thermostat and Nest Hub was in *plain sight*.  Either WSOU never looked or its prior counsel never considered those products "mobile communications devices." WSOU wrongly suggests that its delay should be excused because its third lead counsel found this information whereas prior counsel failed to do so.  "[C]hange of counsel does not alter the *diligence analysis; diligence is measured according to the efforts of all counsel representing a party*."  *KlausTech*, 2017 WL 4808558, at *5.

**Adding Different Products Would Be Prejudicial.**  As discussed above in Section IV.B, adding these products would materially prejudice Google by causing at least a two-fold increase in discovery after this Court already extended discovery last October.  If WSOU's motion were granted, it would also necessitate summary-judgment briefing and another *Markman* hearing at least regarding the term "mobile communication device."

The threatened prejudice to Google and WSOU's lack of diligence is compounded by the fact that WSOU previously represented that it would dismiss this case.  In fact, WSOU sent Google a draft stipulated dismissal, and then requested (and received) Google's permission to file the

dismissal. (Ex. 9; Ex. 41).  Pursuant to the stipulated dismissal, the parties canceled all scheduled depositions of Google witnesses.  And unsurprisingly, Google's counsel and its experts ceased working on this case.  WSOU reneged on the parties' agreement, and now seeks to add new products and assert different claims. WSOU's assertion that prior counsel acted without authorization when pursuing a stipulated dismissal cannot mitigate Google's prejudice.  And it cannot justify broadly expanding a case that WSOU committed to dismiss. "*Ex post facto* disagreement with strategic decisions of counsel, made in the course of litigation, does not constitute good cause." *Marlowe Patent Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013).

### 3.    WSOU's Motion To Amend The Complaint Should Be Denied

WSOU's motion to amend its complaint should be denied for the same reasons as the motion to amend the Final Infringement Contentions.  The motion to amend the complaint should also be denied as futile because, as explained above, neither the Thermostat nor the Nest Hub is a "mobile communication device."  WSOU's amended complaint has a variety of screenshots, but it never alleges how the Nest Hub is a "mobile communication device."  (-584 Dkt. 93, Ex. 1 at ¶ 54.)  "Because Plaintiff does not include even a short written description of how the accused instrumentalities meet the [claim] limitation, [the] complaint fails to state a claim." *De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *6 (W.D. Tex. 2020).  Similarly, the amended complaint alleges that "[t]he Nest Thermostat *interfaces* with a mobile communication device." (-584 Dkt. 93, Ex. 1 at ¶ 66.) This establishes that the Nest Thermostat **is not** a mobile communication device; at most, it interfaces with one. In such instances, "a plaintiff may find it has pleaded itself out of court." *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).  Unsurprisingly, it may find itself receiving Rule 11 notices when an amended complaint accuses products based on objectively unreasonable theories that are contrary to a limitation present in all claims.

### D.    -572 Case

#### 1.    WSOU's Attempt To Accuse Another Product Should Be Denied

Having long represented that YouTube TV is the only accused product in this case, WSOU improperly seeks to now add the Google TV product, about which information was publicly available *21* months ago (before WSOU's preliminary infringement contentions).

***WSOU cannot establish diligence.***  From the outset, WSOU accused only the YouTube TV product.  Attempting to downplay the impact of its proposed amendments, WSOU states that it is merely clarifying its original contentions to "further specify that Google's 'Google TV' service allegedly infringes … in the same or a similar manner as YouTube TV."  (Mot. at 2, 13.)  That is manifestly wrong.  WSOU cannot "clarify" its contentions to add Google TV because those contentions *never once* referenced Google TV.  In actuality, WSOU seeks to add an entirely different product that it never previously accused.  That is improper for several reasons.

<u>First</u>, WSOU's attempted addition of Google TV is in no way a mere "clarification."  YouTube TV and Google TV are different and separate products.  YouTube TV is a subscription-based service that provides access to live and on-demand programming.  (Ex. 33.)  By contrast, Google TV aggregates content available from a user's existing applications and subscriptions, including not only YouTube TV, but also other applications that offer different content, such as Disney+, HBO Max, Netflix, etc.  (Ex. 35, Ex. 36.)

<u>Second</u>, given that WSOU's proposed amendments cite ***only*** public documents regarding Google TV, WSOU cannot explain its belated attempt to add this product.  Google TV was released and publicly available as of September 30, 2020—weeks before WSOU served preliminary contentions and nearly eight months before its final contentions.  (*Id.*)  Critically, all the exhibits that WSOU adds to its amended contentions regarding Google TV are publicly-available websites that WSOU could—and should—have found long ago.  Despite WSOU's obligation to search

34

public information to identify accused products, it plainly failed to do so until more than a year after its Final Infringement Contentions.   Indeed, one of WSOU's own exhibits is an announcement about Google TV's release dated September 30, 2020.  (-572 Dkt. 104, Ex. 3 at 2 (citing link to Ex. 35 as Exhibit T.)  Unable to dispute this timeline, WSOU cannot establish diligence for seeking to add Google TV.  WSOU's lack of diligence is underscored by the fact that Google's technical documents produced between December 2020 and August 2021, while tailored to allegations against YouTube TV, included documents referencing Google TV, including documents explaining the differences between YouTube TV, Google TV, and other Google products.  And WSOU even asked a Google deponent questions about Google TV, yet it never raised the possibility of accusing that product in correspondence leading to the February 2022 discovery hearing or at that hearing.  This alone warrants denial.

Third, far from ever suggesting that it would seek to add Google TV, WSOU affirmatively represented that YouTube TV was the only accused product in a September 2021 hearing with the Court.  (Ex. 37 at  9:25-10:2, 10:7-11:3.)

WSOU had ample information—public and Google confidential—and ample time to accuse Google TV before the deadline for preliminary and final contentions.  There is no reason for WSOU's delay, let alone "extraordinary circumstances."  *OnePlus*, 2022 WL 174517, at *3.

***Adding Google TV would be prejudicial.***   For the reasons explained in Section IV.B, adding the Google TV product would cause a significant increase in discovery because it is a different and separate product from YouTube TV.  As this Court previously explained, "[i]t is far too late in the litigation to reverse course and introduce entirely new theories, particularly theories this Court understood would be applicable or necessary from the outset of the case."  *Adv. Aerodynamics,* Dkt. 94 at 2.  That is equally true here.

### 2. To The Extent WSOU Seeks To Add New Infringement Theories, That Should Not Be Allowed

WSOU's position on its other proposed amendments is unclear, at best. These proposed amendments relate specifically to its infringement theory for the accused YouTube TV product, not Google TV. WSOU characterizes these proposed amendments as simply "clarif[ying] that all elements of Google's YouTube TV recommender system—including at least Google's ███████ ████████████████████████████—are within the scope of Accused Products." (Mot. at 13.) But this statement is no clarification, and its vagueness leaves open the possibility that WSOU is actually attempting to add an entirely new infringement theory, one in in which Google's ████ platform is no longer required for infringement (in contradiction to WSOU's position previously in this case, including in its Final Infringement Contentions). Google specifically asked WSOU to confirm that point, but WSOU never did.

Google informed WSOU that it "object[s] to WSOU's apparent attempt to broaden its infringement theory beyond the scope of the final infringement contentions. As confirmed throughout the case, WSOU's [YouTube TV] infringement theory is limited to ████████ ███████ (-572 Dkt. 104, Ex. 44 at 11.) WSOU's proposed amendments are ambiguous as to whether they expand WSOU's infringement theory to no longer require use of ████████████ to generate recommendations on the home page of YouTube TV. Accordingly, Google asked WSOU to "confirm that the theory set forth in the [proposed amended] contentions continues to require the use of ████████████ to generate recommendations, as it has from the outset of this case." (*Id.* at 7.) WSOU dodged the question, stating:

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

(*Id*. at 6.)  Accordingly, Google must assume that WSOU's proposed amendments seek to change its infringement theory to no longer require use of Anima.  Google objects to this fundamental alteration of the '572 case, for the reasons following.

    ***Wsou Does Not Have Good Cause To Change Its Infringement Theory.***  A review of the proposed amendments demonstrates how WSOU changes its infringement theory under the guise of a "clarification."  The asserted claims require three components and from the outset, WSOU accused Google's ███████████ (used by YouTube TV to generate and deliver recommended content to users on the Home tab) as one of the claimed components.  WSOU never articulated a theory that did not require ██████  WSOU's proposed amendments appear to pivot from ███████ being the central part of its infringement theory, *to merely an example* of components that perform the functionality that WSOU associated exclusively with ██████ in its final contentions.  Rather than providing purported "clarity," the amendments inject ambiguity.  And they do not explain how WSOU contends YouTube TV infringes if using ███████████ is not required.

| Final Infringement Contentions | Proposed Amended Contentions |
|---|---|
| ███████████████████████████ ███████████████████████████ ███████████████████████████ ███████████████████ Ex. 38 at 8. | ███████████████████████████ ███████████████████████████ ███████████████████████████ ███████████ -572 Dkt. 104, Ex. 3 at 16. |
| ███████████████████████████ ███████████████████ Ex. 38 at 10. | ███████████████████████████ ███████████████████████████ ██████ -572 Dkt. 104, Ex. 3 at 19. |

| | |
|---|---|
| ████████████████████ | ████████████████ |
| Ex. 38 at 25. | -572 Dkt. 104, Ex. 3 at 34. |

Additionally, WSOU's assertion that it *only* learned of ███████████████ *through Google's source code* after service of the Final Infringement Contentions is contradicted by those very contentions.  Not only did Google produce documents discussing the role of ████████ ████████████ in the YouTube TV recommender system before the deadline for final contentions, but *WSOU itself cited* those documents *in its* Final Infringement Contentions.  (Ex. 38 at 42, 185.)  These databases were already part of WSOU's infringement theory that requires the use of ████  Further, most of the documents on which WSOU now relies were produced in December 2020 (five months before the final contentions) and the remaining documents were produced in August 2021 (nine months ago).

Moreover, WSOU previously tried to expand its infringement theory to include functionality that did not require Anima, but then abandoned that attempt.  When submitting a discovery dispute to this Court, Google objected to WSOU's demand for discovery on YouTube TV targeted ads because ██████████████████████████████████████ ██████████████████████  (Ex. 39 at 3-4, Issue 3.)  WSOU subsequently withdrew this issue and abandoned any attempt to expand its infringement theory beyond ████ (Ex. 40.)  As such, there is no basis for allowing WSOU to re-introduce infringement theories that it previously abandoned.

*Adding New Theories Would Be Prejudicial.*  WSOU's new infringement theory would fundamentally alter the nature of the case, greatly broaden the scope of discovery, and prejudice Google for the reasons discussed in Section IV.B.  The prejudice is compounded by the fact that

WSOU previously withdrew its attempt to broaden its YouTube infringement theory beyond ███ and abandoned its attempt to seek this broader discovery.  WSOU's decision to withdraw that attempt, only to reassert it now under the pretext of clarifying amendments, is a bad-faith tactic that would significantly delay the case.

*     *     *

*Case Schedule.*  The parties have had some preliminary discussions about a revised case schedule.  For the reasons discussed above—including WSOU's attempt to fundamentally alter this case with the introduction of new theories, numerous additional accused products, and more asserted claims—Google submits the scope of the cases should be finally determined before their new schedule is set.

## <u>CONCLUSION</u>

For the above reasons, the Court should deny WSOU's motions.

Date: June 3, 2022

Respectfully submitted,

*/s/ Tharan Gregory Lanier, with permission by*
*Michael E. Jones*

Michael E. Jones (Texas Bar No. 10929400)
Shaun W. Hassett (Texas Bar No. 24074372)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
shaunhassett@potterminton.com

Tharan Gregory Lanier
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

Sasha Mayergoyz
**Jones Day**
77 W. Wacker Drive
Chicago, IL 60601
+1 (312) 782-3939
smayergoyz@jonesday.com

Tracy A. Stitt
Edwin O. Garcia
**Jones Day**
51 Louisiana Avenue NW
Washington, DC 20001
+1 (202) 879-3641
tastitt@jonesday.com
edwingarcia@jonesday.com

Michael A. Lavine
**Jones Day**
555 California Street
26th Floor
San Francisco, California 94104

+1 (415) 626-3939
mlavine@jonesday.com

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com
20-580@cases.warrenlex.com


*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 3, 2022.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 3, 2022.

*/s/ Michael E. Jones*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order in this case and Judge Albright's Amended Standing Order Regarding Filing Documents Under Seal in patent Cases and Redacted Pleadings.

*/s/ Michael E. Jones*