# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT, | ) ) ) | Case No. 6:20-cv-00572-ADA |
| | ) | Case No. 6:20-cv-00580-ADA |
| Plaintiff, | ) ) | Case No. 6:20-cv-00584-ADA |
| v. | ) ) | Case No. 6:20-cv-00585-ADA |
| GOOGLE, LLC | ) ) | **JURY TRIAL DEMANDED** |
| Defendant | ) ) | ██████████████ |

**BRAZOS'S REPLY BRIEF IN FURTHER SUPPORT OF
OPPOSED MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND
SERVE AMENDED INFRINGEMENT CONTENTIONS**

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................................. 1

II.  Brazos's Amended Infringement Allegations Are Based On Sufficient Diligence, and
     Google Cannot Show Prejudice .................................................................................. 4

     A.  Brazos Has Been Diligent ..................................................................................... 4

     B.  Google Cannot Show Prejudice ............................................................................ 6

     C.  Brazos's Diligence and Google's Lack of Prejudice in the 572 Case ............... 7

         1.  Brazos Is Not Adding a New Infringement Theory as to YouTube TV ...................... 7

         2.  Brazos Names Google TV As an Accused Product Based on Sufficient Diligence..... 8

     D.  Brazos's Diligence and Google's Lack of Prejudice in the 580 Case ............... 9

     E.  Brazos's Diligence and Google's Lack of Prejudice in the 584 Case ............ 11

     F.  Brazos's Diligence and Google's Lack of Prejudice in the 585 Case ............ 16

III. Conclusion ................................................................................................................ 18

# TABLE OF AUTHORITIES

## <u>CASES</u>

*BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*,
  No. 2:19-cv-00156-KS-MTP (S.D. Miss. Mar. 2, 2021) ............................................. 7, 11

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ............................................................................ 15

*Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*,
  No. 18-5932, 2019 U.S. Dist. LEXIS 86953 (E.D. La. May 23, 2019) ............................ 3

*Cavazos v. JP Morgan Chase Bank Nat'l Ass'n*,
  388 F. App'x 398 (5th Cir. 2010) ........................................................................ 5

*Chamberlain Group LLC v. Overhead Door Corp.*,
  No. 2:21-CV-00084-JRG (E.D. Tex. Mar. 30, 2022) ................................................ 13

*Dali Wireless, Inc. v. Corning, Inc.*,
  No. 6:20-cv-01108-ADA (W.D. Tex. Dec. 23, 2021 ................................................. 7

*Dyfan, LLC v. Target Corp.*,
  28 F.4th 1360 (Fed. Cir. 2022) ............................................................................ 16

*Epistar Corp. v. Lowe's Cos., Inc.*,
  No. 6:20-CV-00420-ADA (W.D. Tex. Aug. 4, 2021) ............................................... 7

*Freshub, Inc. v. Amazon.com Inc.*,
  No. A-19-CV-00885-ADA, 2021 U.S. Dist. LEXIS 257336
  (W.D. Tex. Feb. 10, 2021) ................................................................................. 10

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-cv-00310-JRG-RSP, 2020 U.S. Dist. LEXIS 237130
  (E.D. Tex. Dec. 17, 2020) .................................................................................. 11

*J.R. Simplot Co. v. McCain Foods United States*,
  No. 1:16-cv-00449-DCN, 2020 U.S. Dist. LEXIS 32074 (D. Idaho Feb. 20, 2020) .......... 6

*Klaustech, Inc. v. Google, Inc.*,
  No. 10-cv-05899-JSW (DMR), 2017 U.S. Dist. LEXIS 177166
  (N.D. Cal. Oct. 25, 2017) .................................................................................. 6

*MV3 Partners LLC v. Roku, Inc.*,
  No. 6:18-CV-00308-ADA (W.D. Tex. Mar. 23, 2020) ............................................. 3

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
  No. 2:17-CV-00715-JRG, 2019 U.S. Dist. LEXIS 235776 (E.D. Tex. Apr. 24, 2019) ... 12

*Rhodes v. Amarillo Hosp. Dist.*,
    654 F.2d 1148 (5th Cir. 1981) ............................................................................... 6

*United States v. Jackson*,
    426 F.3d 301 (5th Cir. 2005) ............................................................................... 5

*Vitaworks IP, LLC v. Qianjiang Yongan Pharm. Co.*,
    No. 16-5321 (CCC), 2018 U.S. Dist. LEXIS 232045 (D.N.J. Nov. 5, 2018).................... 5

*WSOU Invs., LLC v. Dell Techs. Inc.*,
    No. 20-485-ADA (W.D. Tex. Mar. 30, 2022) .................................................. 4

## I.     INTRODUCTION

Google's opposition to Brazos's motion for leave to amend (ECF No. 107,[1] "Opp'n Br.") feigns surprise that—notwithstanding months of discussions concerning Brazos amending its infringement contentions in the context of a "reset" case schedule—Brazos now petitions the Court for the relief that has long been under consideration. *See* Opp'n Br. at 1. But as set forth in Brazos's opening brief, Brazos seeks leave to amend precisely so that the parties can litigate based on a common understanding of the scope of these cases; so that Google's infringement can be resolved in a single set of proceedings (rather than requiring duplicative filings); and so that those disputes can efficiently proceed based on shared expectations regarding the case schedule—this last point being one on which Brazos and Google completely agree. *Cf.* Opp'n Br. at 7 ("efficiencies need to be brought to the to the future handling of the remaining cases") (quoting ECF No. 91 at 2).[2]

Google repeatedly implies that Brazos should have raised objections before serving Final Infringement Contentions in May 2021. *See* Opp'n Br. at 4-5 ("At no point before the Final Infringement Contentions did [Brazos] raise with the Court any discovery deficiencies that would prevent them from providing complete contentions."); *see also id.* at 18-19, 26, 28, 30 (referencing Brazos's May 2021 contentions). But Google's argument fails to acknowledge the so-called

---

[1] As in Brazos's opening brief in support of the instant motion ("MTAmend Br."), Brazos cites to the 572 Case docket unless otherwise noted. *See* ECF No. 104 at 3 n.2. Citations to "Ex." 1-48 refer to Brazos's exhibits submitted in support of its opening brief. *See* ECF Nos. 104-105. Brazos's further exhibits newly submitted in support of this reply brief continue this numbering sequence. And references to Google's submitted exhibits are designated "Google Ex. __."

[2] Google objects that Brazos's motion seeks to "expand" these cases after the parties' "narrowing conference." Opp'n Br. at 10. It is Brazos's understanding that at the February 1 meet-and-confer the parties agreed that sufficient narrowing would occur via a reduction to the number of patents (i.e., cases) that Brazos asserted against Google—which indeed occurred (from 15 patents on filing to four today). *See* MTAmend Br. at 3, 5 & n.4. If Google wishes to discuss further reduction of claims and prior art references, Brazos is happy to so engage.

"unknown unknowns" that necessarily limited Brazos's access to relevant facts at that time, along with the disconnect in Google's interpretation of Brazos's infringement contentions that became obvious to Brazos only as discovery progressed, culminating in the February 17, 2022, discovery hearing. In many instances Brazos could not have known in May 2021 about the information, and more critically the significance of the information, that forms the basis for its proposed amendments, as the evidence critical to prove infringement—i.e., source code and deposition testimony—would not be available to Brazos for months, at which point only then was Brazos able to identify critical issues. *See* MTAmend Br. at 5-8; *see also infra* II(C)-(E).

That Brazos's amendments may necessitate, in Google's view (and accepted *arguendo* by Brazos), "conducting technical discovery from the ground up for new products, an additional *Markman* hearing, another set of invalidity contentions, and likely additional discovery disputes" (Opp'n Br. at 11) is not news to Google, as addressed by Google's own counsel during the February 17 hearing. *See* MTAmend Br. at 8, Opp'n Br. at 7. And since that hearing, the parties have already advised the Court that permitting Brazos to amend contentions might affect disputes that await the Court's rulings. *See* Ex. 49 (3/23/22 email status report to chambers) ("The parties agree that should [Brazos's] amendment of infringement contentions be permitted, it would materially impact (if not moot) the appropriate resolution of the discovery issues as well as impact the appropriate schedule for these cases going forward. . . .").

Otherwise, Google's opposition—though it faults Brazos's allegedly "erroneous retelling of the discovery timeline"—presents Google's own selective, and occasionally misleading, picture of how these cases arrived at their present posture. Opp'n Br. at 4. Google specifically condemns Brazos for "blam[ing] Google's discovery practices for [Brazos's] own extended delay in seeking to amend its final contentions." *Id.* But Google cannot credibly contest that it bears responsibility

for many events that dictated the late date at which critical facts first came to Brazos's attention. And *perfect* diligence is not the standard by which a request for leave to amend should be measured. Rather, "the good-cause standard of Rule 16 permits flexibility," so long as all requirements are met upon weighing all factors in context. *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 18-5932, 2019 U.S. Dist. LEXIS 86953, at *12 n.27 (E.D. La. May 23, 2019) (citing 6A Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, Fed. Practice & Proc. § 1522.2 (3d ed. 2019)).

To that end, Brazos's opening brief sets out several instances in which Google's discovery conduct materially contributed to delays in timely completion of discovery, notwithstanding any alleged shortcomings on the part of Brazos that Google raises (which Brazos will not try to rebut one-by-one[3]). *See* MTAmend Br. at 5-11. This Court has found similar circumstances to justify leave to amend. *See MV3 Partners LLC v. Roku, Inc.*, No. 6:18-CV-00308-ADA, ECF No. 146 at 4 (W.D. Tex. Mar. 23, 2020) ("[I]t appears that [Defendant] delayed producing portions of source code and [certain] documents. Therefore, in view of [Defendant's] actions, the Court finds that [Plaintiff] was sufficiently diligent, although there was room for improvement.").

Finally, Google attempts to minimize its own failure to provide fulsome discovery of infringing products, and to shift the blame to Brazos for having allegedly insufficiently monitored Google's ongoing product rollouts and other purportedly "publicly available" information as this

---

[3] But as one example of the parties' differing views of the discovery timeline, Google makes much of Brazos's alleged lack of diligence in taking depositions (*see* Opp'n Br. at 5-6), while omitting both that (a) Google first disclosed 30(b)(6) witnesses on September 24, 2021, under a month before fact discovery was then scheduled to close, and (b) the related correspondence exchange leading to adjournment of those depositions occurred in under two weeks. *See id.* & Google Exs. 3-7. In contrast, Google's opposition fails to engage concerning the multiple occasions on which Google itself took a full month to respond to Brazos's identification of deficiencies in Google's productions. *Cf.* MTAmend Br. at 6-7 & Exs. 14-15, 21-22.

3

case progressed. *See* Opp'n Br. at 1, 3-4, 11-12, 14, 20, 22, 29-32, 34. But between a combination of Google's affirmative decisions to withhold relevant disclosures of new infringing products, and delayed discovery only belatedly revealing to Brazos that additional products might fall within the scope of Brazos's infringement allegations, Google can show neither fault nor prejudice in terms of Brazos having identified new products once Brazos finally had sufficient information at hand.

Simply put, none of Google's objections can successfully contravene the "good cause" test that Brazos must satisfy, for the reasons that follow.

## II.   BRAZOS'S AMENDED INFRINGEMENT ALLEGATIONS ARE BASED ON SUFFICIENT DILIGENCE, AND GOOGLE CANNOT SHOW PREJUDICE

Brazos addresses below Google's general positions concerning Brazos's alleged lack of diligence, and Google's alleged prejudice.[4] Case-specific rebuttals follow *infra* starting at page 7.

### A.   Brazos Has Been Diligent

Google argues that Brazos "cannot establish any diligence," and that Brazos "is not seeking to completely 'reset' these cases based on information it belatedly received or is still seeking in discovery (source code or otherwise)."[5] Opp'n Br. at 2, 4. But to the extent that Brazos now seeks

---

[4] As to the remaining factor—i.e., "the importance of the amendments"—Google's opposition does not dispute the importance of Brazos's requested amendments, as indeed, the words "important" or "importance" appear only once, in Google's recitation of the legal standard. *Compare* MTAmend Br. at 22-23 *with* Opp'n Br. at 8.

[5] Google's reliance on Brazos's positions taken in opposing another motion for leave to amend ignores relevant distinctions. *Compare* Opp'n Br. at 12 (citing *WSOU Invs., LLC v. Dell Techs. Inc.*, No. 20-485-ADA, ECF No. 173 (W.D. Tex. Mar. 30, 2022) *with WSOU v. Dell*, ECF No. 173 at 1 ("Even to the extent Defendants' representation is true that they did not first discover these new references until September or October 2021, that was about 6 months ago and Defendants admittedly concealed these references for months before first disclosing them to Brazos and even longer before seeking to amend their invalidity contentions."), 6 ("The three new references are not vital to Defendants' case. Defendants already identified 41 prior art references . . ."). In any event, that case was dismissed by stipulation before the Court ruled on the motion for leave to amend. *See id.*, ECF No. 189 (W.D. Tex. Apr. 25, 2022).

to clarify, sharpen—or, in some instances, modify its infringement theories, Brazos's proposed amendments display the requisite diligence necessary for this Court to find that Brazos has shown good cause to amend.

In arguing that Brazos has "waived" diligence-related arguments, Google misapprehends the Fifth Circuit's holding in *Cavazos v. JP Morgan Chase Bank National Ass'n*, 388 F. App'x 398, 399 (5th Cir. 2010). *See* Opp'n Br. at 19, 26 n.5. *Cavazos* holds that a party may not on reply raise a new *legal issue* not in its initial brief. *See, e.g.*, *Cavazos*, 388 F. App'x at 399 ("Cavazos's initial brief failed to attempt to demonstrate error in the district court's determination that he was without standing . . ."); *see also United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("For the first time in his reply brief, Jackson argues that he was entitled to written notice . . .").

In contrast, Brazos squarely raised throughout its motion that its actions show sufficient diligence to support Brazos's requests for leave to amend. *See* MTAmend Br. at 5-13, 20-22. Now that Google deploys its own selective narrative in opposition—at a level of specificity that Google neglected to provide during the parties' two months of correspondence concerning Brazos's proposal to amend (*see generally* Exs. 41, 44, 48)—Brazos presents below additional factual context from the litigation record that responds to and contravenes Google's characterizations.

Google also claims that "[Brazos's] decision to pivot to a third lead counsel cannot excuse lack of diligence nor supply good cause." Opp'n Br. at 13. But courts have found good cause to amend based at least in part on retention of new counsel. *See Vitaworks IP, LLC v. Qianjiang Yongan Pharm. Co.*, No. 16-5321 (CCC), 2018 U.S. Dist. LEXIS 232045 (D.N.J. Nov. 5, 2018) ("Although the appearance of new counsel does not automatically create good cause to amend, . . . a prolonged process is inefficient and not an effective use of party or court resources."); *J.R. Simplot Co. v. McCain Foods United States*, No. 1:16-cv-00449-DCN, 2020 U.S. Dist. LEXIS

32074 (D. Idaho Feb. 20, 2020) (during the four-month period "after the Court's revised claim construction ruling, [Plaintiff] . . . retained new counsel to assist with this matter [, *inter alia*] . . . . [T]he Court's revised claim construction ruling required additional discovery. [Plaintiff] was diligent in seeking amendment and the changes will not unfairly prejudice [Defendant]").[6]

## B.   Google Cannot Show Prejudice

Google's opposition to a continuance and allegations of prejudice ignore case posture and Google's own statements. Specifically, Google seeks to back away from the one of "three options" that Google itself voluntarily raised at the February 17 discovery hearing—i.e., that Brazos supplement its contentions to ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ *See* Ex. 23 at 15:20-16:3, 26:24-27:1; *see also* MTAmend Br. at 7-8. But now that Brazos has served amended contentions, Google effectively seeks to disavow its prior statements to the Court. Google's quotation of additional portions of its counsel's remarks (Opp'n Br. at 7) does not change this picture. Indeed, it was precisely because of Google's counsel's representations that such a process is "███████████████████████" (*id.*, quoting Google Ex. 10 at 15:18-16:7) that Brazos engaged in a months-long exchange of proposals to

---

[6] The cases Google cites are distinguishable. The plaintiff in *Rhodes* did not retain new representation until *seventeen months after* original counsel resigned following disbarment proceedings, and new counsel sought to amend thirty months after the original complaint and just three weeks before trial. *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1152, 1154 (5th Cir. 1981). Here Brazos's retention of new counsel was more timely—and Brazos's motion for leave to amend comes earlier—than in *Rhodes*. As for *Klaustech, Inc. v. Google, Inc.*, discovery had already been open for almost two years during which "KlausTech only conducted minimal discovery" before the relevant motion to amend was filed, and the court further found that "[i]t is undisputed that KlausTech could have deposed Google's technical witnesses or conducted additional written discovery during that time." *Klaustech, Inc. v. Google, Inc.*, No. 10-cv-05899-JSW (DMR), 2017 U.S. Dist. LEXIS 177166, at *14-15 (N.D. Cal. Oct. 25, 2017). Brazos conducted substantially more timely discovery than did the plaintiff in *Klaustech*—including (once eventually permitted by Google) review of source code, interrogatories, and depositions.

explore whether a revised schedule that could be even contingently acceptable to Google might be identified. *See* MTAmend Br. at 12-13, 18, 24 & Exs. 40, 41, 44, 47.

Google's opposition notably does not engage with Brazos's citation to the Court's *Epistar* decision, in which the Court granted leave to amend contentions, in part because "any prejudice experienced by Defendant is mitigated by granting Defendants . . . . enough time to respond to the amended contentions." *Epistar Corp. v. Lowe's Cos.*, Inc., No. 6:20-CV-00420-ADA, ECF No. 67 at 3-4 (W.D. Tex. Aug. 4, 2021); *see also* Opp'n Br. at 14. The same result should follow here.[7]

That Google otherwise claims a variety of non-schedule-related prejudice from Brazos's amendments is unsurprising, in that these amendments may well disadvantage certain non-infringement positions. But just because Brazos's proposed amendments may disadvantage Google in the context of a substantive adjudication on the merits does not mean that Google suffers prejudice cognizable in the context of a request for leave to amend. *See, e.g.*, *BNJ Leasing, Inc. v. Portabull Fuel Serv., LLC*, No. 2:19-cv-00156-KS-MTP, ECF No. 128 at 2 (S.D. Miss. Mar. 2, 2021) ("The undersigned judge generally finds it more efficient to allow the parties to plead their best case before the Court starts addressing dispositive motions.").

### C.   Brazos's Diligence and Google's Lack of Prejudice in the 572 Case

#### 1.   <u>Brazos Is Not Adding a New Infringement Theory as to YouTube TV</u>

Throughout this case Brazos has accused Google's YouTube TV recommender system of infringing the '806 patent; that has not changed. Google's ███████████ is part of the accused

---

[7] Google's citation to *Dali Wireless, Inc. v. Corning, Inc.*, in support of its argument that here "a continuance 'would only delay [] speedy resolution'" (Opp'n Br. 3) is irrelevant, as the *Dali* movant expressly was "not seeking an extension of the discovery deadline" and maintained that "[t]he case can proceed on the existing schedule set forth in the Court's scheduling order." *See* Case No. 6:20-cv-01108-ADA, ECF No. 45 at 8 (W.D. Tex. Dec. 23, 2021). Here the parties have already mutually agreed to extend the discovery schedule—the only unsettled questions are for how long, and what the scope of the case will be. *See* MTAmend Br. at 12; Ex. 40 at 1.

functionality, but Google incorrectly equates *reference* to the ████████████ with being *limited* to the ██████████████. Google specifically complains of Brazos adding details concerning the involvement of its ██████████████████████ (*see id*. at 36-38)—but Google's concern that this introduces a new theory is unfounded. As Google itself points out, Brazos's previously served Final Infringement Contentions include reference to ██████████████████. *See* Opp'n at 38, citing Google Ex. 38 at 42, 185. That ██████████████████████████████████ ██████████████████████████████████—is not news to Google.

Brazos's amendments add additional details regarding ██████████████████. *See* Ex. 51 (572 Source Code App'x) §§ II-III. It was not until Brazos could review Google's source code that Brazos could determine the full involvement of ████████████████████████████████████, principally because the documents in Google's production, including the excerpts in Brazos's final infringement contentions, do not fully explain the importance of ██████████████████.[8] Google's later-provided source code demonstrates the importance of these functionalities in the recommender system, as Brazos's proposed amended contentions now indicate. *See id*.

### 2. Brazos Names Google TV As an Accused Product Based on Sufficient Diligence

Google insists its Google TV product is separate from YouTube TV, and is thus not within Brazos's existing infringement contentions. Yet Google states in the same breath that ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Opp'n Br. at 34 (emphases added). If ████████████████████████████████████████████████████

---

[8] For example, the document Brazos cites in its final contentions states only, ████████████████████ ██████████████████████████████████████ Google Ex. 38 at 42.

███████████████████████████████████████████████████, and Google thus cannot be prejudiced by its addition.

Google argues that Brazos should have already known to call out Google TV as a specifically accused product based upon Google's public statements. *See* Opp'n Br. at 34-35. But when Google TV's current incarnation was first released in September 2020, it was not apparent to Brazos from discovery if ███████████████████████████████████████ ██ ████████████████████. This is in part due to Google's ██████████████████████ ███████████████████████████████████████████████████████. In fact, Google takes advantage of the confusion caused by ████████████████████████ ████████████████████████████████████████████████████████████████ ███████ *See* Opp'n Br. at 35 (citing Google Ex. 37 at 9:25-11:3). But Brazos's September 2021 representation was regarding Dr. Jonyer's confidentiality obligations ███████████████ ████████████████████████████████████████████████████would not be at issue, because that product is not accused. *See* Ex. 44 at 9 (4/26/22 Abraham-Lanier email).

### D. Brazos's Diligence and Google's Lack of Prejudice in the 580 Case

In the 580 Case, Google's principal objection to Brazos's amended contentions appears to be that they are *narrower*. Google repeatedly concedes that it was on notice that ███████████████ ████████████████████████████████████. Specifically, Google agrees that the ████████████ was included in Brazos's initial and final contentions as part of Mobile Vision API. *See* Opp'n Br. at 22-27. Google also agrees that the source code produced in this case included ████████████ ██████ based on the scope of Brazos's infringement contentions. *See id.* at 26-27. Google's claim that Brazos's amended contentions "would require a complete reboot of claim construction and discovery in this case" is thus illogical. *Id.* at 26. Google provides no examples of what claim terms

might need to be construed, or what additional discovery would need to be taken regarding infringement or validity (and does not contest that ███████████ source code has already been produced). *See id.* Nor does Google articulate any specific prejudice caused by the additional detail in Brazos's amended contentions.

As to timing of Brazos's amendment,[9] Google concedes that it produced ███████ source code on May 21, 2021—the day Brazos's final contentions were due—and that production was still incomplete as of October 2021 when Brazos informed Google the production was missing the latest version ██████. *See* Opp'n Br. at 26-27. Brazos also learned critical information in deposition concerning how Google deploys the accused ████████████████ ████████████████████████. *See, e.g.*, Ex. 50 (1/21/22 Prins Dep. Tr.) at 36:7-38:1 ██████████████████████████ ████████████████████████████████████████ ███████████████████████████████ In March 2022, in view of this information and after a diligent review of the complete ██████ source code, Brazos notified Google it would be amending its contentions to clarify where in the code each claim element is satisfied and which Google products use ████████. *See* Ex. 4 at, *e.g.*, 7, 13-16, 20, 24 & 27; Ex. 60 (580 Source Code App'x).[10] An example of the near-total focus of Brazos's amended contentions on Google's ████████ code is shown, e.g., in portions

---

[9] Google's citation to *Freshub* is inapposite, as that case involved a defendant seeking to add information that its own employee possessed more than a year after serving contentions. *See* Opp'n Br. at 27 (citing *Freshub, Inc. v. Amazon.com Inc.*, No. A-19-CV-00885-ADA, 2021 U.S. Dist. LEXIS 257336 (W.D. Tex. Feb. 10, 2021)). In contrast, here Brazos's contentions rely on Google's confidential source code, the production of which was not completed till October 2021.

[10] Given the nature of Brazos's proposed amendments, Brazos is puzzled by Google's unsupported argument that Brazo's amendments did not primarily comprise citations to Google's confidential code. *See* Opp'n Br. at 26 n.4; *cf.* Ex. 60.

describing ███████████████████████████████████████████████████████

███████████████████████████████████████████. *See, e.g.*, Ex. 4 at

12; Ex. 60 at 8-13.

Google's primary concern in opposing Brazos's amendment seems to be that Google will

no longer be able to argue that the ping-pong-like diagram in Google's briefing (which neither

expressly references claim terms nor appears in Brazos's contentions) is representative of Brazos's

infringement theory. *See* Opp'n Br. at 23-24. But even to the extent Brazos's amended contentions

deprive Google of a non-infringement position, this does not rise to the level of actual prejudice.

*See, e.g.*, *BNJ Leasing*, No. 2:19-cv-00156-KS-MTP, ECF No. 128 at 2.

Furthermore, Google's argument that Brazos has added "additional accused products" that

will result in prejudice to Google is a red herring. Opp'n Br. at 26-27. Google has long been aware

both that ████████████████████████████████████████████████████████

████████████████████. *See, e.g.*, *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00310-JRG-RSP, 2020

U.S. Dist. LEXIS 237130, at *12 (E.D. Tex. Dec. 17, 2020) ("[Defendant], as the developer of the

[accused] feature . . . would possess most, if not all, relevant discovery."). Yet Google also claims

prejudice on the ground that Brazos's amendments would obligate Google to perform a larger

amount of additional work than in the absence of the amendments. *See* Opp'n Br. at 27. But the

issue of which Google products incorporate and/or derive value from ██████████████, and

how, was already before the Court at the February 2022 hearing (*see, e.g.*, Ex. 52 (4/22/22 Brazos

Proposed Order) ¶ 1)—and thus Brazos's amended contentions can only serve to resolve any

attendant confusion that sparked that discovery dispute in the first instance.

### E.    Brazos's Diligence and Google's Lack of Prejudice in the 584 Case

As to the 584 Case, Google does not dispute that it in March 2022 it updated its Soli radar

chip website to add the Accused Nest Products alongside the previously accused Pixel 4, or that it

added a support web page describing Google Nest Hub 2nd Generation's use of the prior-accused "Motion Sense" feature. *See* Opp'n Br. at 27-33; *also compare* Ex. 37 *with* Ex. 39; *see also* Ex. 31. Google also acknowledges it made these updates when Google believed it had successfully pressured Brazos to dismiss this case. *See* Opp'n Br. at 7 ("In March, [Brazos] reneged on its representation to dismiss the -584 case"), 33.[11] Google also apparently does not dispute these new products fall within the definition of "Accused Instrumentalities" as defined by Brazos's Complaint ███████████. *See* Opp'n Br. at 27-33; Case No. 20-cv-584-ADA, ECF No. 1 ¶¶ 45-46; Ex. 33.

Instead, Google argues that notwithstanding Brazos's multiple requests asking Google to disclose products containing the Accused Instrumentalities, Brazos should have seen past Google's obfuscation and unearthed the new products' infringement on its own by constantly monitoring Google's entire web presence for other mentions of the Soli radar chip. *See* Opp'n Br. at 29-30. But a plaintiff need not perpetually canvass the entire Internet or even all of a defendant's website for tidbits about new products that a defendant was obligated to identify during litigation. *See Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc*., No. 2:17-CV-00715-JRG, 2019 U.S. Dist. LEXIS 235776, at *9-10 (E.D. Tex. Apr. 24, 2019) ("Even if information sufficient to accuse the [infringing products] could have been gleaned from public sources, [defendant] had a duty to supplement their discovery responses to include these new products."). Rather, Brazos acted diligently by—once it learned of Google's March 2022 Soli-related website updates—promptly

---

[11] Although Google repeatedly complains about Brazos's strategic decision to pursue the 584 Case after contemplating dismissal, Google at no point argues that Brazos was in any way legally or equitably bound to dismiss the case based on the parties' exploratory negotiations. *See generally* Opp'n Br.

conducting further research, drafting an amended complaint and contentions, and sending them to Google. *See* MTAMend Br. at 8-11.

Google claims that Brazos should have known about the Accused Nest Products because Google ███████████████████████████████████████████████ — ██████████████████████████. *See* Opp'n Br. at 31. This is also not the applicable standard, as Judge Gilstrap recently ruled in ordering sanctions and a new trial based on late disclosure of a new product. *See Chamberlain Group LLC v. Overhead Door Corp.,* No. 2:21-CV-00084-JRG, ECF No. 386 (E.D. Tex. Mar. 30, 2022). The *Chamberlain* defendants claimed the plaintiff should have identified new products via document and source-code discovery, despite defendants affirmatively denying existence of the products in written discovery. *See id.* at 11. But the Court ruled that plaintiffs do not bear the burden of parsing a defendant's internal documents for references to new products that have also been subject to disclosure requests:

> Defendants now attempt to dodge any responsibility for the failure to disclose such products. In fact, Defendants seek to place the blame squarely on Chamberlain for failing to parse an alleged 1,220 documents and related source code . . . Chamberlain cannot be (and is not) expected to innately know the intricacies of Defendants' documents and internal vernacular. . . . Defendants' attempts to split hairs and rely on technicalities with deposition questions and interrogatories fails to acknowledge Defendants' responsibility to participate in a fair and fulsome discovery process. Defendants bore an affirmative duty during discovery to disclose relevant information—which duty they breached—to Chamberlain's direct detriment.

*Id.* at 12.

Google attempts to excuse its conduct by claiming that under Google's purported construction of the term "mobile communications device," Google was not obligated to disclose the new infringing products. *See* Opp'n Br. at 31. But Google's construction (shared with Brazos for the first time after Google's receipt of Brazos's amended contentions) lacks intrinsic and extrinsic support. For example, when Brazos inquired about the basis for Google's threats to seek

relief under Rule 11, including the intrinsic basis for Google's new claim construction position, Google responded by failing to city any intrinsic support for its claim construction position. *See* MTAmend Br. at 15-16; Ex. 45.[12]

In opposition, Google advances an implicit claim construction position in arguing that "the Nest Hub (which is a stationary device for the home) and the Thermostat (which is mounted to a wall) are demonstrably not 'mobile communications devices.'" Opp'n Br. at 31. Here Google partly misinterprets Brazos's infringement theory, which as to the Nest Thermostat requires a *combination with the Google Home Application* on a mobile device. *See* Opp'n Br. at 29-30; *cf.* Ex. 5 (584 Amended Contentions) App'x D at, *e.g.*, 1, 8, 11, 18, 29, 32-33, 36, 38, 48. Google offers no position as to how such a combination would not satisfy the "mobile communications device" element. Furthermore, Google's position that a product that is stationary while operating cannot be a mobile communication device contradicts the patent specification and prosecution history. *See* Ex. 45 at 6; Ex. 46 (5/6/22 Rule 11 correspondence).

Brazos is especially surprised that Google considers Brazos's interpretation of the "mobile communications device" to be "unreasonable," in that *Google's own patents and applications* define the term "mobile communication device" to encompass devices that are "stationary" while operating and plug into a wall power outlet. For example, Google's U.S. Patent No. 10,134,111 discloses a "mobile communication device" as follows:

> [T]he term computing device or portable computing device, as used herein, may refer to a *mobile communication device, such as a smart phone, mobile station (MS), terminal, cellular phone, cellular handset, personal digital assistant (PDA), smartphone, wireless phone, organizer,*

---

[12] Google's opposition does not address its prior Rule 11 correspondence, but for one sentence that obliquely references Google's claim construction position and notes that a plaintiff "may find itself receiving Rule 11 notices when an amended complaint accuses products based on objectively unreasonable theories that are contrary to a [claim] limitation . . ." Opp'n Br. at 33.

> *handheld computer, desktop computer, laptop computer, tablet computer,*
> *set-top box, television, appliance, game device, medical device, display*
> *device,* wearable device or some other like terminology.

Ex. 53 at 3:67-4:08 (emphasis added). In addition, WIPO patent application WO 2007/002524A1,

acquired by Google from Motorola, defines "mobile communication device" to encompass "any

other device that is capable of sending and receiving communication signals on a network,"

including a "personal computer." Ex. 54 at 3. Google's position that it reasonably did not disclose

the Accused Nest Products because of its construction of "mobile communications device," is thus

undermined by Google's own patent portfolio.

Google also briefly argues that Brazos's amended complaint does not sufficiently allege

that the claim element "mobile communications device" is satisfied via the Google Home

Application in combination with the Nest Thermostat. *See* Opp'n Br. at 33. This is incorrect. *See*

Exs. 1-2 (proposed 584 Amended Complaint) ¶¶ 65-75. Between the above allegations on the face

of the amended complaint and Brazos's incorporation of its proposed Amended Final Infringement

Contentions (*see id.* ¶ 47; *see also* Ex. 5 App'x D), Brazos has more than carried its burden to

identify what portions of the Google Home Application in combination with the Nest Thermostat

satisfy this limitation. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).

Finally, Google claims prejudice via Brazos's request to add apparatus claims in parallel

to the method claims already asserted against the Pixel 4. *See* Opp'n Br. at 27-29. But it strains

credibility that Google would need to expend much effort to account for the additional elements

identified by Google, such as "processor" and "memory." *See id.* at 29. Indeed, Google argues

(without citation to actual claim language) that because an unrelated patent (with different claims)

was found by this Court to invoke Section 112(6), and further because this unrelated patent also

recites a "processor" and "memory," then there is a possible need to construe the present claims to

also invoke Section 112(6). But Google makes this argument even though nowhere do the asserted

apparatus claims use the word "means" and thus, as the Federal Circuit has recently clarified, a strong presumption exists that such terms are not subject to the means-plus-function-requirements of Section 112(6). *See Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022).

Nor does Google contest that the addition of apparatus claims would simplify issues of proof regarding ███████████████████████████████████████████████████████████, compared to the previously asserted method claims, in response to which Google intends to argue that it is not liable for infringement because ██████████████████████████████████████ ███████████████████████████. *See* Opp'n Br. at 29. Thus, adding the apparatus claims would unquestionably simplify the issues of proof for trial by removing the need to show Google's ██████████████████████████████████████████████, and result in little, if any, prejudice to Google.[13]

## F.     Brazos's Diligence and Google's Lack of Prejudice in the 585 Case

With respect to the 585 Case, as plaintiff, Brazos necessarily starts from a position of imperfect information about Google's infringing products. Brazos originally accused the Awareness API of infringement because that was what was publicly available.[14] What Brazos could not have known before discovery was ██████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████.

---

[13] Google also appears to claim that Brazos has "*add[ed] another method claim* (claim 6)" against the Pixel 4. *See* Opp'n Br. at 33 (emphasis in original). This is incorrect; Brazos does not assert Claim 6 against the Pixel 4. *See* Ex. 5, App'x A.

[14] Brazos's complaint alleges that Google makes "systems that incrementally determine the location context of a mobile device" and that "[t]he Accused Products include, *but are not limited to*, Google's Awareness API." Case No. 20-cv-585, ECF No. 1 ¶¶ 45-46 (W.D. Tex. Jun. 29, 2020) (emphasis added).

Due to that knowledge gap, Google limited its responses to what was available to Brazos, while rebuffing efforts by Brazos to determine the full scope of Google's use of the accused functionality. *See, e.g.*, Google Ex. 17 (10/14/21 Cummings Letter) ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████.

It was not until Google allowed its witnesses to be deposed in early 2022 that Brazos finally learned the scope of Google's infringement was not so limited as it had anticipated and Google had led Brazos to believe. For example, ████████████████████████

████████████████████████████████████████████

████████████████████████████████████. *See, e.g.*, Ex. 57 (2/1/22 Riley Dep. Tr.) at 40:7-41:23 (███████████████████); 55:14-57:3 ████████████

█████████████████████). Additionally, it was only through discovery that Brazos obtained documents suggesting ████████████████████████████

████████████████████████████████. *See, e.g.*, Ex. 58 (2/4/22 Duddie Dep. Ex. 1) at GOOG-WSOU585-00001702.

On realizing that the scope of Google's infringing conduct was broader than Brazos originally understood it to be, Brazos promptly amended its infringement contentions with the newly acquired information.[15]

## III.   CONCLUSION

For the foregoing reasons and those in its opening brief, Brazos respectfully requests that the Court grant it leave to file its First Amended Complaint in the 584 Case, and to serve its Proposed Amended Final Infringement Contentions in each of the 572, 580, 584, and 585 Cases.

---

[15] Google argues that Brazos's "hand-marked 'redline' [i.e., Ex. 6] excludes part of the contentions and fails to indicate substantial new matter it proposes to insert." Opp'n Br. at 19 n.3. Brazos does not believe this to be an accurate statement, but rather a misimpression caused by the manner in which Google electronically/automatedly generated its own redline, which contains several errors of its own. *See* Ex. 59. At this time, Brazos believes its original redline is a more accurate reflection of the scope of Brazos's proposed amendments, but to the extent further meet-and-confer discussions with Google shed further light on this issue, the parties will promptly advise the Court.

Date: June 13, 2022                              Respectfully submitted,


                                                 */s/ Joseph M. Abraham*
                                                 Joseph M. Abraham, TX SB No. 24088879
                                                 Timothy Dewberry, TX Bar No. 24090074
                                                 **FOLIO LAW GROUP PLLC**
                                                 13492 Research Blvd., Suite 120, No. 177
                                                 Austin, TX 78750
                                                 T: 737-234-0201
                                                 Email: joseph.abraham@foliolaw.com
                                                 Email: timothy.dewberry@foliolaw.com


                                                 Cliff Win, CA Bar No. 270517
                                                 Steven Skelley, WA Bar No. 53017
                                                 **FOLIO LAW GROUP PLLC**
                                                 1200 Westlake Ave. N., Ste. 809
                                                 Seattle, WA 98109
                                                 Tel:    (206) 880-1802
                                                 Email: cliff.win@foliolaw.com
                                                 Email: steve.skelley@foliolaw.com


                                                 Gregory P. Love
                                                 State Bar No. 24013060
                                                 Mark D. Siegmund
                                                 State Bar No. 24117055
                                                 **STECKLER WAYNE CHERRY & LOVE, PLLC**
                                                 8416 Old McGregor Road
                                                 Waco, TX 76712
                                                 Tel.: (254) 651-3690
                                                 Fax: (254) 651-3689
                                                 greg@swclaw.com
                                                 mark@swclaw.com


                                                 *Attorneys for Plaintiff WSOU Investments,*
                                                 *LLC d/b/a Brazos Licensing & Development*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 13th day of June 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served a copy via email to all counsel of record.

*/s/ Joseph M. Abraham*
Joseph M. Abraham