IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT,<br><br>      Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>      Defendant | Case No. 6:20-cv-00572-ADA<br>Case No. 6:20-cv-00584-ADA<br>Case No. 6:20-cv-00585-ADA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUPPLEMENTAL CLAIM CONSTRUCTION SUR-REPLY BRIEF**

**TABLE OF CONTENTS**

I. GOOGLE MISAPPLIES *O2 MICRO* ...................................................................................1

II. U.S. PATENT NO. 8,041,806 (CASE NO. 6:20-CV-572-ADA)..........................................1

    a. "Internet Protocol Television (IPTV) service" ...........................................................1

III. U.S. PATENT NO. 8,737,961 (CASE NO. 6:20-CV-585-ADA)..........................................4

    a. "incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time" (claims 1, 11)...................4

    b. "the set of wireless transmitters" (claim 3)..................................................................5

        1. "Wireless Transmitters" Does Not Have a Different Meaning from "Signal Sources" ........................................................................................ 6

        2. Google Misreads Claim 3's Interrelationship Between the First Conditional Probability and Second Conditional Probability..................... 6

        3. Brazos's Reading Does Not Contradict the Specification or Its Infringement Contentions ........................................................................ 7

        4. The Specification and Claims Provide Clear Definition............................ 8

IV. U.S. PATENT NO. 8,803,697 (CASE NO. 6:20-CV-584-ADA)..........................................9

    a. "Mobile Communications Device"..............................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp.*,
   262 F.3d 1258 (Fed. Cir. 2001)..................................................................................3

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006)..................................................................................4, 6

*Chimie v. PPG Indus.*,
   402 F.2d 1371 (Fed. Cir. 2005)..................................................................................4

*Comaper Corp. v. Antec. Inc.*,
   596 F.3d 1343, 1348 (Fed. Cir. 2010)........................................................................6

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016)..................................................................................10

*Halliburton Energy Servs. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008)..................................................................................4

*Icon Health & Fitness, Inc. v. Polar Electro Oy*,
   656 F. App'x 1008 (Fed. Cir. 2016) ..........................................................................4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2007)..................................................................................1, 10

*Paragon Sols., LLC v. Timex Corp.*,
   566 F.3d 1075 (Fed. Cir. 2009)..................................................................................13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................................11, 13

*Pilot Energy Sols., LLC v. OXY USA Inc.*,
   No. A-16-CA-00687-SS, 2017 U.S. Dist. LEXIS 138325 (W.D. Tex. Aug. 25, 2017)............6

*Uniloc 2017 LLC v. Netflix, Inc.*,
   No. 21-2085, 2022 U.S. App. LEXIS 34595 (Fed. Cir. Dec. 15, 2022).....................................6

I.  **GOOGLE MISAPPLIES *O2 MICRO***

*O2 Micro* holds that if a dispute exists as to claim scope, the judge and not the jury must resolve it. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2007). Google stretches this holding too far, claiming that *O2 Micro* means that whenever parties dispute a term's meaning, then that term cannot be construed as "plain and ordinary meaning." Reply at 1, 12. Here, despite proposing constructions that spell out Google's own (narrowed) definitions of the disputed terms, Google argues that *both* parties have proposed "plain and ordinary meaning" because Google's constructions "reflect" the ordinary meaning. *Id.* at 1, 13. Therefore, Google argues, the Court cannot construe the terms as "plain and ordinary meaning," because under *O2 Micro* that leaves an unresolved dispute that must be addressed. This is not correct. First, Google has not proposed "plain and ordinary meaning" for any of the disputed terms. It thus follows that if the Court were to adopt "plain and ordinary meaning," it would necessarily be rejecting Google's proposed constructions. Second, *O2 Micro* does not prohibit a court from adopting a term's plain and ordinary meaning. In *O2 Micro* the Federal Circuit found error in the district court's decision not to construe the term "only if." *O2 Micro Int'l*, 521 F.3d at 1360-61. The Federal Circuit agreed that the words "only if" have a well understood meaning in the English language but found that this meaning did not resolve the parties' dispute as to the scope of the claim. *Id.* As discussed below, the "plain and ordinary meaning" of the disputed terms is clear, and Google understands that meaning. Reply at 1, 12-15. Google simply disagrees with that meaning.

II.  **U.S. PATENT NO. 8,041,806 (CASE NO. 6:20-CV-572-ADA)**

   a.  "Internet Protocol Television (IPTV) service"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | "An internet service provider (ISP) service that delivers television content to subscribers over a private, managed Internet Protocol (IP) network connection" |

1

The meaning of "IPTV service" is clear from the intrinsic evidence, and Google has not shown why the strong presumption in favor of plain and ordinary meaning should be disregarded. Google's reply just reiterates the same extrinsic evidence from its opening without showing why this Court should import two limitations into the claim—namely that the IPTV service must be delivered by an ISP and that it must be delivered over a private, managed connection.

Google misinterprets *O2 Micro* to argue that this term cannot be construed as "plain and ordinary meaning." This is both incorrect (as above) and unnecessary. The jury will have no difficulty understanding "IPTV service." It simply means television content delivered by Internet Protocol. Google confirms it fully understands the plain and ordinary meaning of IPTV service. Reply at 1 ("Brazos interprets the term as any 'television delivered by Internet Protocol.'"). Google muddies the waters by asserting that Brazos has added "public Internet video to the term's scope." *Id*. This is not the case. All that is encompassed by the term "IPTV service" is television content delivered by Internet Protocol. Contrary to Google's argument, the dispute between the parties will be fully resolved at Markman if this Court adopts "plain and ordinary meaning."

Google's reply confirms its addition of two limitations to "IPTV service" is improper. First, Google that the specification consistently and exclusively teaches that the IPTV service requires an ISP-implemented access network. Reply at 6-7. Here Google mischaracterizes the specification. As it relates to the "access network," the specification requires only that it enable interaction between a subscriber and an electronic content source. For example, the specification states:

- "The access network 24 enables interactions between" "one or more subscribers . . . 22, one or more sources of targeted electronic content . . . 60, and an electronic content source 58." '806 patent 7:24-26.

- "Interactions between the subscriber 22 and the electronic content source 58 are enabled by the access communication link 26 through the access network 24." *Id.* 7:61-63.

Nowhere does the specification require the access network to be ISP-implemented. The

specification's few discussions of the access network being ISP-implemented are expressly qualified as exemplary embodiments. *Id.* 5:1-16, 4:56-61; 6:12-16 ("[T]he system 20 represents one illustrative example of an embodiment of the invention. Other embodiments may include . . . different components, with similar or different interconnections . . ."); 7:43-44 ("An ISP **might** host its own IPTV service, **for example**.") (emphasis added). Contrary to Google's assertion, this shows the patentee understood that an ISP-hosted IPTV service is but one possible embodiment.

Claim 1 simply requires the IPTV service be provided by the electronic content source, which itself is provided by an access network. The *Bell Atlantic* case does not dictate otherwise. *See* Reply at 2, citing 262 F.3d 1258 (Fed. Cir. 2001). There the Federal Circuit held "when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with **only a single** meaning, he has defined that term by implication." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (cleaned up) (emphasis added). By contrast, "IPTV service" is used here consistent with *two* implementations: ISP and non-ISP. Google has no basis to limit IPTV service to an ISP-implemented one.

Google's attempts to import the "private" and "managed" aspects of its proposed construction fare no better. Google again mischaracterizes the specification in stating "[t]he patentee's uniform use of ISP-implemented access networks to host IPTV services requires a privately managed, ISP-created network." Reply at 2. Again, the patentee uniformly required the access network to enable interaction between a subscriber and an electronic content source, but not that the access network must be implemented by an ISP. Google relies entirely on extrinsic evidence to import "private" and "managed" into its proposed construction, and concedes these words do not appear in the specification. *See id.* Indeed, "private" and "managed" do not even appear by implication—rather, they are wholly imported from the extrinsic evidence, and cannot

compensate for Google's lack of intrinsic evidence.

### III. U.S. PATENT NO. 8,737,961 (CASE NO. 6:20-CV-585-ADA)

a. "incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time"
(claims 1, 11)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning; not indefinite | Indefinite |

Google doubles down by deliberately misconstruing Brazos's infringement contentions, unilaterally imposing interpretations of terms therein, and ignoring the intrinsic evidence.

First, Google provides no authority for using Brazos's infringement contentions in claim construction; none of Google's cited cases found a claim term indefinite by ignoring intrinsic evidence in favor of a defendant's interpretation of a plaintiff's infringement contentions. Rather, courts rely—as they must—on the language of the claims, specification, and intrinsic evidence in determining indefiniteness. *See Icon Health & Fitness, Inc. v. Polar Electro Oy*, 656 F. App'x 1008, 1014 (Fed. Cir. 2016) (finding indefiniteness because the ***intrinsic evidence*** lacked a way to differentiate "what constitutes an in-band communication versus an out-of-band communication (other than the fact that they are different)"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-52 (Fed. Cir. 2006) (adopting construction—based on the intrinsic evidence—that avoided vitiating or rendering superfluous other portions of the claim at issue); *Chimie v. PPG Indus.*, 402 F.2d 1371, 1377-79 (Fed. Cir. 2005) (scope of relative claim element limited by disclosure in specification to reconcile ambiguous claim language); *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) (ambiguous scope of invention over the prior art as disclosed in the specification warranted finding of indefiniteness). The Court should find that a POSITA could determine the scope of the term "incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time" with reasonable certainty.

Second, even if the Court were to consider Brazos's infringement contentions (which is not necessary), Brazos simply does not assign "four inconsistent 'plain meanings'" to the disputed claim term that—according to Google—"vitiate[] the claim language." Reply at 6. Rather, Brazos's infringement contentions cite different ways that Google's services display or aggregate certain information as *evidence* that the "incrementing . . . a count" claim element is satisfied by the Accused Instrumentalities. That does not mean those different ways of displaying or aggregating information directly embody the claim element at issue, only that those different mechanisms indicate that Google is able to aggregate or display such information because it keeps a frequently incremented count as disclosed in the '961 patent. *See* Response Br. at 13-14.

For example, Brazos discloses that "Google Ads obtains a mobile device's geographic location from data received from multiple signal sources around a mobile device." 585 Dkt. 111-9 at 57. Brazos cites evidence that Google "increment[s] a count for a stationary state associated with the geographic location of a mobile device by tracking how often a mobile device is in a particular area." *Id.* at 62. And there is evidence that Google relies on and aggregates that data by, e.g., displaying "the number of customers at a particular business location for a certain time," a number "associated with the location of mobile devices as ascertained form one or more distinct signal sources." *Id.* at 59. Further, Brazos cites evidence that "Google Ads also tracks data and increments counters for stationary states associated with particular geographic locations" when creating and displaying certain reports. *Id.* at 64. Relying on such inferential evidence (absent fulsome discovery) does not mean Brazos ascribes different definitions to the claim term.

    b.    "the set of wireless transmitters" (claim 3)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning; not indefinite | Indefinite |

1.  "Wireless Transmitters" Does Not Have a Different Meaning from "Signal Sources"

Despite support in the specification that wireless transmitters are signal sources in the context of the '961 patent (*see* Response Br. at 16-17), Google alleges the patentee distinguished the "set of distinct signal sources" from the "set of wireless transmitters" because different terms used in a patent purportedly have different meanings. Reply at 8. Google's cases are not applicable.

In *Comaper Corp.*, the Federal Circuit acknowledged the inference as to different terms with different meanings "is not conclusive." 596 F.3d 1343, 1348 (Fed. Cir. 2010). Rather, the court found the terms "drive bay" and "drive bay slot" differed because the intrinsic evidence supported such. *Id*. And in *Bicon*, the issue was not whether two different claim terms should have different meanings; it was whether a patentee might argue physical structures and characteristics in a claim are superfluous and non-limiting (which Brazos does not do here). 441 F.3d at 950.

Moreover, both the Federal Circuit and this Court reject that two terms must have different meanings absent supporting intrinsic evidence. *See, e.g.*, *Uniloc 2017 LLC v. Netflix, Inc.*, No. 21-2085, 2022 U.S. App. LEXIS 34595, at *15-17 (Fed. Cir. Dec. 15, 2022) (construing claim term "selected known coding technique" equivalent to term "known coding technique"); *see also Pilot Energy Sols., LLC v. OXY USA Inc.*, No. A-16-CA-00687-SS, 2017 U.S. Dist. LEXIS 138325, at *26-28 (W.D. Tex. Aug. 25, 2017) (specifications and claims suggest "treating" and "separating" are synonymous where specification ascribed identical functions to each term).

2.  Google Misreads Claim 3's Interrelationship Between the First Conditional Probability and Second Conditional Probability

Although claim 3 recites both "the extant stationary state given the set of one more distinct signal sources" and "the set of wireless transmitters given the extant stationary state," a POSITA would understand the "set of wireless transmitters" refers to the distinct signal sources ***that are wireless***, provided they are associated with the same extant stationary state. Google contends that

6

because claim 3 recites a *first step* to determine a conditional probability for each wireless transmitter and a *second step* to determine a separate conditional probability "for the set of distinct signal sources," it would be nonsensical for the wireless transmitters to be the same as the signal sources. Reply at 9. This is not correct. The second conditional probability is determined for the extant stationary state, *not* the set of distinct signal sources. The specification confirms this in Figure 5, in which the conditional probability of the stationary state given the set of wireless signal sources—i.e., P(z|vi)—is determined as a function of the conditional probabilities of each individual wireless signal source transmitter—i.e., P(IDk|z)). *Id.* Fig. 5; *see also id.* 14:47-49 ("In step 533 P(z|vi) is determined using Equation 2, which is a function of the P(IDk|z) for k=1 to Ki"). Thus, contra Google, claim 3 does not recite these two steps such that the second conditional probability is based on itself.

      3.  Brazos's Reading Does Not Contradict the Specification or Its Infringement Contentions

Google contends the specification precludes interpreting "wireless transmitters" as "distinct signal sources" because "wireless transmitters are merely examples of the many 'signal sources' that could be received by a mobile device," and thus the broader genus "distinct signal sources" should not be limited to the exemplary species "wireless transmitters." Reply at 10. Google's genus-species argument is misplaced. Brazos's interpretation does not limit distinct signal sources to wireless transmitters. Rather, claim 3's "set of wireless transmitters" (i.e., one example of signal sources), refers to distinct signal sources associated with a stationary state. Brazos does not propose limiting distinct signal sources to wireless transmitters. Rather, "the set of wireless transmitters given an extant stationary state" is the particular set of distinct *wireless* signal sources associated with the extant stationary state (e.g., "a stationary state associated with the set of one or more distinct signal sources at the current time"). '961 patent 37:35-36, 37:15-17.

Google also argues Brazos's infringement contentions allegedly "state that 'distinct signal sources' include more than just 'wireless transmitters,' such as device hardware for assessing movement." Reply at 10. *First*, as above, this is true: wireless transmitters are but examples of signal sources—consistent with Brazos's contentions. *Second*, the portion of Brazos's contentions that Google cites describes signal sources generally, which can use non-wireless signal sources (e.g., motion sensors) along with wireless transmitters to determine if a mobile device is moving relative to a specified area. *See, e.g.*, 585 Dkt. 111-9 at 16 ("Detected user activity, such as when they walk or drive . . . . Nearby beacons that you've registered . . . sensing and inference are performed to return fresh state values"). In context, the set of wireless transmitters associated with an extant stationary state refers to the wireless signal sources associated with that state, regardless of whether the totality of signal sources also include non-wireless sources. Nothing in Brazos's contentions precludes wireless transmitters from being interpreted as signal sources precisely because they are, as Google admits, types of signal sources.

    4.  The Specification and Claims Provide Clear Definition

Google argues Brazos's reading "renders the first 'conditional probability' of claim 3 meaningless: if all of the particular transmitters are already associated' with a particular stationary state" because "the probability for 'each' transmitter 'given an extant stationary state' would always be 100%." Reply at 12. Based on this argument, Google alleges that claim 3 does not provide any basis for a skilled artisan to determine which wireless transmitters are within "the set of wireless transmitters."

Google's reasoning that the probability for each wireless transmitter is always 100% is incorrect. To the contrary, the specification explains the determination of individual probabilities of each wireless transmitter ID of a vector $v_i$ (i.e., set) of wireless transmitter IDs **given a stationary state z** ('961 patent 13:16-23), where such probabilities may be 100% at times (*id.*

8

13:33-35) or may be some other value at other times (*id.* 14:30-35). According to the specification, the symbol P(IDk|z)—which represents the individual probabilities of each wireless transmitter ID (*id.* 13:33-35, 13:66-14:29, Fig. 2C)—may be zero if "that particular wireless transmitter ID has not before been observed in the current [stationary] state z." *Id.* 14:30-35. The patent also explains that a wireless transmitter ID that appears in every set of distinct signal sources will have a probability of 100%, while an ID that appears in a few sets will have a smaller probability. *Id*. 9:51-54. Google's argument as to why "the set of wireless transmitters" is allegedly "render[ed] . . . meaningless" is thus baseless—i.e., even under Brazos's reading, the specification supports potentially non-uniform probabilities for each wireless transmitter as described above.

### IV.    U.S. PATENT NO. 8,803,697 (CASE NO. 6:20-CV-584-ADA)

a.    "Mobile Communications Device"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | "a portable device that can communicate while it is moving" |

Google incorrectly argues that not construing "mobile communications device" is legal error, while also cobbling together a construction including two additional limitations ("portability" and "can communicate while it is moving") from seven dictionary definitions, three portions of the patent prosecution history, and cherry-picked quotations from the specification describing optional features. Reply at 12. But though the '697 patent describes an invention capable of wireless communication, nothing requires blanket insertion of the additional limitations Google asserts, as Google's reply lacks credible argument that the inventor acted as their own lexicographer or disavowed claim scope. Reply at 12-15; *cf.* '697 patent 9:50-12:22.

Instead, Google insists that the Court has the legal obligation to construe the term "mobile communications device" beyond its plain and ordinary meaning because Brazos "asserts that the term covers corded and wall-mounted devices." Reply at 12. Yet Google's proposed construction

9

says nothing about whether a device may need a power cord (which all devices require at some point, either directly or indirectly)—and even the previously accused Google Pixel 4 smartphone that Google admits is a "mobile communications device" requires a power cord to regularly deliver power. *See* Ex. M (Pixel 4 sold with "USB-C™ power adapter"). This accords with the specification's note that the invention utilizes an "external power supply." '697 patent 9:7-9:9. Google further compounds its misleading focus on "wall-mounted" devices by refusing to acknowledge that Brazos accuses use of the Google Home application *running on a mobile communications device such as a smart phone* (which Google admits is an example of a "mobile communications device") in conjunction with the wall-mounted Google Nest Thermostat. *See* Response Br. at 28; 584 Dkt. 108 (Amended Complaint) ¶ 66.

Google's proposed construction fails to justify a claim construction beyond plain and ordinary meaning. Both *O2 Micro* and *Eon Corp.* (cited by Google) instruct that the claim construction process is appropriate only if the parties' respective interpretations of a term's plain and ordinary meaning change the scope of the patent in a way that impacts the resolution of the case. *See O2 Micro*, 521 F.3d at 1361; *see also Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). Further, Google's construction fails to provide additional clarity for a jury, simply substituting one plain and ordinary word ("mobile") with another ("portable") without explaining why one term is preferable to another.

Contrary to Google's assertions, Brazos has not expanded this claim term beyond the plain and ordinary meaning by accusing either the Nest Thermostat in conjunction with a smart phone running the Google Home App, or the Nest Hub 2nd Gen. Reply at 12-15. Google argues the invention must be capable of being used in places like theaters, cinemas, and libraries, and therefore the term "mobile communications device" must include Google's additional limitations.

10

Reply at 13. But even reading these *exemplary* use cases as *mandatory* requirements (as Google incorrectly urges), Google still fails to establish what substituting the word "portable" for the word "mobile" accomplishes, and further provides no explanation as to why even if the invention were located in a theater, cinema, or library, the device must be able to "communicate while it is moving." *Id.* Google's argument that "otherwise [the invention] could not receive 'an incoming call' when brought to these locations" is unsupported, as these locations do not require a device to be *in motion while receiving calls*, and Google points to no reason why the invention could not be used while stationary to receive an incoming call in these locations. *Id.* at 13.

Google also argues that "[t]he patent explains that the originally claimed 'apparatus' could be either '[1] a *mobile* terminal or [2] *other* communication device,'" and that this means "the claimed '*mobile* communications device' must be different than '*other* communications device[s].'" *Id.* But nothing in the specification suggests such a reading—indeed, the disputed claim term is "mobile communications device," not "mobile terminal." Google then asserts that the some of the embodiments and optional features cited the specification "are not preferred embodiments of a 'mobile communications device,' as WSOU alleges; rather, they describe the 'mobile communications device' itself." Reply at 13-14. But this argument improperly reads the preferred embodiments and optional features into the claims as limitations. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

As Brazos has explained, the prosecution history also supports the plain and ordinary meaning of "mobile communications device." The term "apparatus" in the originally drafted claims would cover all physical devices that meet the remaining claim limitations. *See* Response

11

Br. Ex. E ('697 patent, claims dated 5/13/2011). But during prosecution the term was substituted with "mobile communications device"—which necessarily narrows the scope from all devices to just devices that are capable of wireless communications. *See* Response Br. Ex. G ('697 patent, claims dated 2/1/2014). The specification further describes various methods the invention could use to communicate with wireless communications networks, specifically mentioning "[t]he communication interface module may be, e.g., a radio interface module, such as a WLAN, Bluetooth, GSM/GPRS, CDMA, WCDMA, or LTE (Long Term Evolution) radio module." '697 patent 8:34-37. Thus, in the event the Court feels further definition of the plain meaning of the term "mobile communications device" is needed, it would be simply "a device that is capable of communicating wirelessly."

But Google argues for even further limitation by arguing that this slight narrowing during prosecution brings with it requirements of both "portability" and "communication while moving"—when prosecution history shows that neither were points of patentability when the term was narrowed. *See* Response Br. Ex. E ('697 patent, claims dated 5/13/2011), Ex. F ('697 patent, claims dated 7/29/2013), Ex. G ('697 patent, claims dated 2/1/2014). Thus, Brazos is not seeking to "recapture surrendered claim scope" through the plain and ordinary meaning of this term.

Google also incorrectly argues Brazos's presentation of the prosecution history is "inapt" because the inventor never suggested the claimed device was not portable. Reply at 14. But the absence of such an express distinction in the prosecution history is hardly surprising, as the focus of the applicant and examiner was distinguishing the invention from purported prior art measuring the movement of the prior art device itself using radar, rather than the invention's detecting movement of other objects using the inventive radar-detection functionality. *See* Response Br. Ex. G ('697 patent, claims dated 2/1/2014); *see also id.* Ex. D ('697 patent Remarks) at 9.

12

The extrinsic dictionaries Google cites fall far short of overcoming the intrinsic evidence.[1] Google continues to misapprehend *Phillips,* stating that a "claim should not rise or fall based on the preferences of a particular dictionary editor, or the court's independent decisions, uninformed by the specification, to rely on one dictionary rather than the other." 415 F.3d at 1322. *See also* Reply at 15. But that is exactly what Google asks the Court to do here—i.e., to pick and choose portions of different dictionaries (while excluding other dictionaries and/or portions thereof that Google doesn't like). *See* Reply at 15. Indeed, Google apparently interprets *Phillips* to suggest that the parties should consult seven dictionaries, rely on different parts of all seven (none of which define the term at issue), and then select from and editorialize these different definitions while ignoring the intrinsic record. *See* Google Br. Exs. 24-30. This is simply not correct.

Finally, Google concludes by faulting Brazos's references to Google's own patents as a "procedurally improper" introduction of extrinsic evidence. Reply at 15. First, Brazos reiterates that it has no intention to rely on the extrinsic record; Brazos references these patents only to rebut Google's assertions that the extrinsic record uniformly supports Google's arguments. Thus, Brazos's production of these public documents to Google on November 7, in rebuttal to Google's production of extrinsic evidence on November 2—and well in advance of Google's opening claim construction briefing deadline of November 16—was procedurally proper (nor does Google allege to have suffered any prejudice). Second, these references were previously filed with this Court on June 13 in support of Brazos's Reply Brief in Further Support of its Motion for Leave to File an Amended Complaint and Serve Amended Infringement Contentions. *See* 584 Dkt. 101 Exs. 53-

---

[1] Google attempts to defend *Newton's Telecom Dictionary* by claiming that "the Federal Circuit approvingly cites *Newton's* in seven opinions"—while citing only a single case which merely grouped *Newton's* with other more credible dictionaries such as IEEE. Reply at 15 (citing *Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075 (Fed. Cir. 2009)).

13

54. Google has thus been aware of these references for at minimum more than five months before Google filed its opening claim construction brief. *See* 584 Dkt. 117.

Substantively, Google ignores grammatical rules in attempting to argue around the definitions of "mobile communication device" from its own patents. Specifically, looking past Google's uses of ellipses and truncation, Google's patents use the term "mobile communication device" to refer to multiple devices that fall outside the narrow construction that Google now proposes for identical terminology in the '967 patent. Reply at 15. The complete quote from Google's '111 patent is "the term computing, as used herein, may refer to ***a mobile communication device, such as*** a smartphone, mobile station (MS), terminal, cellular phone, cellular handset, personal digital assistant (PDA), smartphone, wireless phone, organizer, handheld computer, desktop computer, laptop computer, tablet computer, set-top box, television, appliance, game device, medical device, display device, wearable device or some other like terminology." Response Br. Ex. K, 3:67-4:8. Google thus defines "mobile communication device" by using the words "such as" immediately followed by a list of qualifying devices. Google attempts to claim these listed devices are examples of a "portable computing device," not a "mobile communication device." Reply at 15. In addition to being an intentional misreading of the patent language, Google's interpretation also contradicts Google's apparent assertions that the Nest and Google Home products accused by Brazos are not "portable."

Likewise, Google attempts another grammatical sleight-of-hand by ignoring that the words "mobile communication device" as used in its '524 application are similarly followed by the words "such as" and another list of exemplary devices. *See* Response Br. Ex. L at 3 ("The terminal 120 may be ***a mobile communication device, such as*** [a] wireless telephone, a cellular telephone, a personal digital assistant, a pager, ***a personal computer, a selective call receiver or any other***

14

***device that is capable of sending and receiving communication signals on a network including [a] wireless network****.*") (emphasis added). Again, this list of exemplary mobile communication devices includes items that are neither necessarily portable nor able to communicate while moving, thus further highlighting the inconsistency of Google's positions here.

Date: January 11, 2023

Respectfully submitted,

**FOLIO LAW GROUP PLLC**

*/s/ Joseph M. Abraham*
Joseph M. Abraham, TX SB No. 24088879
Timothy Dewberry, TX Bar No. 24090074
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
T: 737-234-0201
Email: joseph.abraham@foliolaw.com
           timothy.dewberry@foliolaw.com

Cliff Win, Jr., CA Bar No. 270517
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel:    (206) 880-1802
Email: cliff.win@foliolaw.com

Gregory P. Love
State Bar No. 24013060
Mark D. Siegmund
State Bar No. 24117055
**STECKLER WAYNE CHERRY & LOVE, PLLC**
8416 Old McGregor Road
Waco, TX 76712
Tel.: (254) 651-3690
Fax: (254) 651-3689
greg@swclaw.com
mark@swclaw.com

*Attorneys for Plaintiff Brazos Investments, LLC d/b/a Brazos Licensing & Development*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2023, a true and correct copy of the foregoing was served on all counsel of record who have appeared in this case via the Court's CM/ECF system per Local Rule CV-5.

/s/ *Joseph M. Abraham*
Joseph M. Abraham