# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>) Case No. 6:20-cv-00585-ADA<br>)<br>)<br>)<br>)<br>)<br>) |

**REBUTTAL EXPERT REPORT OF TODOR COOKLEV ON VALIDITY REGARDING
U.S. PATENT NO. 8,737,961**

                                                                **Dated: April 28, 2023**

                                                                 */s/ Todor Cooklev*

                                                                  **Todor Cooklev, Ph.D.**

21. During 2021-2022 I completed a two-year term as a Member-at-Large of the Board of Governors of IEEE Standards Association. The Board of Governors provides overall leadership of IEEE Standards Association.

22. I have served as an expert in several patent litigation cases. A list of the cases in which I have provided expert testimony appears in my *curriculum vitae*, which is attached hereto as Exhibit 1, and which I incorporate by reference as if set forth fully herein.

III. SCOPE AND PREPARATION OF THE REPORT

23. In preparing this Rebuttal Report and formulating my opinions and conclusions, I have considered, along with my expertise, knowledge, and experience with electronics technology and wireless communications technology, the information referenced or mentioned in the body of this Rebuttal Report, in the report of Google's expert, Dr. Gregory Welch, regarding the purported invalidity of the Asserted Claims, and in the List of Materials Reviewed attached hereto as Exhibit 2.

24. At the trial in this litigation or at my deposition, I may use the information and materials identified in my Rebuttal Report—as well as any additional information identified in discovery—to support or summarize my opinions and conclusions. Also, I may supplement these materials with additional materials, charts, or other demonstrative or illustrative materials to provide additional context to reviewed information. As noted earlier, I reserve the right to supplement this report based on any further information that may be produced or made available to me in this litigation subsequent to the submission of this report.

25. As noted above, I have attached as Exhibit 2 a list of materials that I have reviewed and considered in the preparation of this Rebuttal Report.

26. I am not an attorney and will not provide any opinions of law. My opinions are from the perspective of a person of ordinary skill in the art (POSITA) – and of how such a POSITA

5

would review the asserted materials, apply the Court's claim constructions, and understand the claims and written descriptions of the '961 patent; all of this was done with respect to the legal requirements that are used if invalidity is to be demonstrated. In terms of relevant issues of law, I have asked the attorneys at Folio Law Group for assistance so that I may apply those issues of law, as appropriate, to my analysis; my understandings of matters of law (as drawn from those requests for assistance) are provided below, in Sections V – VII.

## IV. SUMMARY OF OPINIONS

27. It is my conclusion and opinion that Claims 1, 4, 5, 9, 11 and 14 of the '961 patent are valid. Details of the analysis that led to that conclusion and that opinion are presented later in this report, in Section XI.

## V. PERSON OF ORDINARY SKILL IN THE ART

28. I understand that patent claims are viewed from the perspective of a Person of Skill in the Art (POSITA) at the time of the invention, where the "art" is the field of technology to which the patent is related. The purpose of using the viewpoint of a person of ordinary skill in the art is for objectivity and thus provides a viewpoint that is not the perspective of the inventor, a layperson, or a person of extraordinary skill in the art, at the time of the invention.

29. It is my understanding that the relevant factors to consider in determining the level of ordinary skill in the art include at least the following: (1) the type of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology; and (5) the educational level of workers in the field. In analyzing the proper level of skill in the art of the '961 patent, I have considered each of these factors.

30. The '961 patent is generally directed to the field of geolocation of mobile devices within wireless networks. In particular, the '961 patent discloses methods and systems for

80. On March 8, 2011, the applicants first disclosed the Hightower reference to the USPTO to consider during prosecution of the application.[26]

81. On March 24, 2011, the USPTO published the application as publication no. 2011/0070863.[27]

82. On November 12, 2013, in response to the Final Office Action mailed on August 9, 2013, the patentees amended the claim 1 to add "determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile devices is not moving outside the specified area."[28]

83. On December 4, 2013, the USPTO issued its Notice of Allowability for application no. 12/565,573, noting, in relevant part, that "none of the Prior Art made of record teaches all the claimed limitations in the instant application."[29]

84. The '961 patent was issued on May 27, 2014 with 15 claims, two of which (claims 1 and 11) are independent.

X. SUMMARY OF THE ASSERTED REFERENCES

85. In his report, Dr. Welch cites the following six references upon which he has relied for his invalidity analysis:

- U.S. Patent Application No. 2010/0317371 to Westerinen et al. ("Westerinen")[30]
- U.S. Patent No. 7,848,765 to Phillips et al. ("Phillips")[31]

---

[26] WSOU_585_8737961_0000182-190.
[27] WSOU_585_8737961_0000144.
[28] WSOU_585_8737961_0000049-58.
[29] WSOU_585_8737961_0000041-43.
[30] See Welch Report at ¶¶ 170-294.
[31] See id. at ¶¶ 295-404.

Each one of these references (Westerinen or Dupray) does not need the other to provide location-based service to the mobile device.

### M. Dr. Welch's Opinions Regarding Purported Lack of Enablement of the Asserted Claims Under 35 U.S.C. § 112

293. In paragraphs 803 through 825 of his report, Dr. Welch offers a short set of assertions regarding the purported indefiniteness and/or lack of enablement of certain claim limitations that, in his opinion, would "render asserted independent claims 1 and 11, (as well as their respective dependent claims) of the '961 patent invalid because the specification of the '961 patent fails to provide an adequate written description or enable POSITA to practice at least the following claim elements without undue prejudice."[272]

294. The two terms that Dr. Welch concludes are "indefinite" and/or not enabled are: (1) "causing at least in part an incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time"[273]; and (2) "determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area."[274]

295. First, it appears that Dr. Welch is substantially repeating arguments or positions that Google has already advanced before the Court during claim construction, and which the Court has previously rejected. Indeed, I am informed that prior to Dr. Welch's report, Google sought the construction of the following terms on or about March 25, 2021:

- "stationary state";
- "incrementing [of] a count[er] for a stationary state";

---

[272] Welch Report at ¶ 803.
[273] *Id*. at ¶¶ 804-812.
[274] *Id*. at ¶¶ 813-825.

73

- "determine[e/ing] a primary set of stationary states."[275]

296. On June 2, 2021, the Court issued its claim construction ruling, and ruled that each of the above terms held their plain and ordinary meaning. In doing so, the Court *rejected* Google's argument that the terms "stationary state" and "determine[e/ing] a primary set of stationary states" were indefinite.

297. On February, 16, 2023, I understand that the Court held a supplemental claim construction proceeding at Google's initiation. I understand that prior to the hearing, the Court emailed its preliminary claim constructions to the parties.[276] I am informed that Google had argued to the Court that the term "incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time" was indefinite. However, the Court rejected Google's argument that the term was indefinite and ruled that plain and ordinary meaning should apply.[277]

298. To the extent that Dr. Welch is now taking positions that are inconsistent with the Court's constructions and rulings, such positions are improper. Dr. Welch should be applying the Court's constructions to his analysis.

299. I have reviewed the '961 patent and its file history. From my reading of the intrinsic evidence, I disagree with Dr. Welch's conclusion that either of the terms fail for lack of enablement. From reading the specification and the file history of the '961 patent, it is my opinion that a POSITA is able to determine how to enable the two terms Dr. Welch argues are indefinite and not enabled by the disclosures of the '961 patent. Indeed, with regard to the term "increment[ing] of a count...", as a POSITA reading the patent, I am able to determine how to

---

[275] *See*, e.g., Ex. 3 (June 2, 2021 Claim Construction Order) at 5.
[276] Ex. 3.
[277] *Id*.

implement this claim element. Similarly, with the term "determining a primary set of stationary states…", as a POSITA reading the patent, I am able to determine how to implement this claim element.

300.  For example, with regard to the "increment[ing] of count…," the specification teaches that in an exemplary and non-limiting embodiment, a stationary state record includes one or more count fields, and the count field "holds data that indicates the number of sample intervals for which that particular set of transmitter IDs was received simultaneously."[278] The specification teaches that when the stationary state record is updated, if, for example, there is a match to a set of transmitter IDs in a transmitter set field, then "the associated count is incremented."[279] Therefore as a POSITA reading the patent, I am able to to implement this claim element.

301.  And with regard to "determining a primary set of stationary states…,"claim 1 recites: "determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count…"[280] As further non-limiting examples, the specification discloses that Figures 11A and 11B "are graphs of cumulative distribution of most frequent stationary states for a mobile terminal accumulated incrementally over time…"[281] The specification goes on to disclose Tables 6 and 7, where Table 6 shows "Total number of stationary states" and Table 7 shows "Number of stationary states to account for 95% of stationary time." For example, for User 1, the WiFi data stream type discovered 86 stationary states (Table 6), but only 5 stationary states (out of the 86) accounted for 95% of stationary time (Table 7).[282] In describing Figures 11A and 11B, the specification describes charting the fraction observations (of

---

[278] '961 patent, 8:60-9:28.
[279] *Id.*, 13:51-60.
[280] *Id.*, 37:18-22.
[281] *Id.*, 3:33-37.
[282] *Id.*, 23:15-22, 24:10-18.

all observations) attributed to the first through sixth most frequent stationary states.[283] Thus, as the claim language itself recites, determining a primary set of stationary states includes stationary states with the most observations, or highest (most frequently) incremented counters. Therefore as a POSITA reading the patent, I am able to to implement this claim element.

## XII.   SUMMARY AND CONCLUSIONS

302.   It is my opinion that Claims 1, 4, 5, 9, 11, and 14 of the '961 patent are valid for the reasons discussed above.

303.   For the foregoing reasons based on my analysis provided in this Rebuttal Expert Report, in my opinion, Dr. Welch has not offered clear and convincing evidence to show that any of the Asserted Claims of the '961 patent are invalid. I therefore conclude that the Asserted Claims of the '961 patent are valid.

304.   The opinions in this Rebuttal Expert Report are my current opinions and are based on information available at the time of my report. I reserve the right to amend or supplement my opinions to address any further information that becomes available to me relating to the validity of the '961 patent.

---

[283] *Id.*, 23:23-54.