**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | **PUBLIC VERSION** |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-585-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**
**OF U.S. PATENT NO. 8,737,961 BY DEFENDANT GOOGLE LLC**

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A.   The '961 Patent Issued on the Addition of a "Primary Set of Stationary States". . . 1

    B.   WSOU Argued That the "Primary Set of Stationary States" is the "Stationary States With the Most Observations" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    C.   WSOU's Validity Expert Opines That the "Primary Set of Stationary States" is Not The "Stationary States With the Most Observations". . . . . . . . . . . . . . . . . .2

    D.   WSOU's Two Technical Experts Reach Opposite Conclusions on the "Primary Set". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.   The Asserted Claims Are Invalid Under § 112 For Lack of Written Description . . 5

        A.   The '961 Patent Does Not Convey The Invention With Reasonable Clarity. . 5

        B.   Dr. Cooklev Cannot Identify What The "Primary Set of Stationary States" is, But Only What it is Not . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.   Dr. Cooklev Does Not Contest Dr. Welch's Opinions Concerning Written Description, Leaving Them Unrebutted . . . . . . . . . . . . . . . . . . 7

            2.   Dr. Cooklev Admitted in Deposition That Each Portion of the Specification He Cites in his Report Does Not Disclose a "Primary Set of Stationary States". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

    II.   The Asserted Claims Are Also Invalid Under § 112 For Lack of Enablement. . . . .9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                                    **Pages**

*Alcon Research Ltd. v. Barr Labs., Inc.,*
    745 F.3d 1180 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Amgen Inc. v. Sanofi,*
    143 S.Ct. 1243 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Amgen Inc. v. Sanofi,*
    987 F.3d 1080 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
93 F.3d 766 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Flash-Control, LLC v. Intel Corp.,*
    No. 19-1107, 2020 WL 4561591(W.D. Tex. July 21, 2020), *aff'd,* No. 2020-2141, 2021
    WL 2944592 (Fed. Cir. July 14, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Genentech, Inc. v. Novo Nordisk, A/S,*
    108 F.3d 1361 (Fed.Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.,*
    687 F.3d 1377 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Novozymes A/S v. DuPont Nutrition Biosciences APS,*
    723 F.3d 1336 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Process Control Corp. v. HydReclaim Corp.,*
    190 F.3d 1350 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Realtime Data, LLC v. Morgan Stanley,*
    554 F. App'x 923 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stored Value Sols., Inc. v. Card Activation Techs., Inc.,*
    598 F.3d 1336 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Univ. Of Rochester v. G.D. Searle & Co.,*
    358 F.3d 916 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| SEALED 1 | Excerpts from the Opening Expert Report of Gregory Welch, Ph.D. (March 29, 2023) |
| 2 | U.S. Patent No. 8,737,961 to Ma et al. WSOU_585_8737961-0000308 to WSOU_585_8737961-0000352 |
| 3 | Office Action Summary Non-Final Rejection (January 30, 2013) WSOU_585_8737961-0000117 to WSOU_585_8737961-0000123 |
| 4 | Office Action Summary Final Rejection (August 9, 2013) WSOU_585_8737961-0000086 to WSOU_585_8737961-0000098 |
| 5 | Applicant Arguments/Remarks Made in an Amendment (November 12, 2013) WSOU_585_8737961-0000049 to WSOU_585_8737961-0000058 |
| 6 | Excerpts from Deposition Transcript of Dr. Todor Cooklev (May 12, 2023) |
| SEALED 7 | Excerpts from the Expert Report of Dr. Tamás Budavári Regarding Infringement of U.S. Patent No. 8,737,961 by Google LLC (March 29, 2023) |
| SEALED 8 | Excerpts from the Deposition Transcript of Dr. Tamás Budavári (May 25, 2023) |
| 9 | Excerpts from the Rebuttal Expert Report of Todor Cooklev on Validity Regarding U.S. Patent No. 8,737,961 (April 28, 2023) |

## INTRODUCTION

After three years of litigation, including three rounds of contentions and two *Markman* hearings, WSOU's two technical experts *disagree with each other and with WSOU's previous representations to the Court* on what the '961 patent discloses.  Their disagreement is unsurprising:  the patent specification lacks written description and enabling disclosure of the required "primary set of stationary states," failing to inform even WSOU's experts what the invention is and how to implement it.  As a result, Google is entitled to summary judgment of invalidity under 35 U.S.C. § 112.

## BACKGROUND

### A.    The '961 Patent Issued on the Addition of a "Primary Set of Stationary States"

The '961 patent describes an approach for deriving "context" for mobile devices called Incremental Location-State Acquisition and Prediction Framework, called "iLoc."  Ex. 1 ¶¶ 133-134 ("Welch Rep."), Ex. 2 ("'961") at 4:25-33.[1]  The patent describes clustering unique wireless signal identifiers—such as a group of SSIDs (Wi-Fi IDs) routinely seen by a mobile device at a particular location—to create "stationary state" records indicating "a limited area where the user of the mobile terminal has a tendency to stay."  '961 at 7:26-29; *see, e.g., id*. at Table 8.  As the patent explains, sufficiently similar sets of wireless identifiers represent a "fingerprint" for a stationary state of a mobile device.  *Id*. at 6:22-42; 7:9-11; Table 8.

The examiner twice rejected all pending claims, finding them obvious over the prior art.  Exs. 3, 4.  In response to a final rejection, the patentees added a limitation to the independent claims:  "determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more

---

[1] All exhibits are to the concurrently filed declaration of Sachli Balazadeh-Nayeri.

distinct signal sources when the mobile device is not moving outside the specified area."  Ex. 5.

Both parties' experts treat this "primary set" limitation as the inventive aspect, if any, of the

asserted independent claims.  Welch Rep. ¶ 160; Ex. 6 ("Cooklev Tr.") at 108:15-24.

**B.**     **WSOU Argued That the "Primary Set of Stationary States" is the "Stationary States With the Most Observations"**

During claim construction, Google argued that this term is indefinite.  Docket No. 39 at

14.  WSOU argued that "determin[e/ing] a primary set of stationary states" should have its plain

and ordinary meaning, because "as the claim language itself recites, determining a primary set of

stationary states includes stationary states with the most observations, or highest (most

frequently) incremented counters."  Docket No. 38 at 6-7.  According to WSOU, to determine

the "primary set," a POSITA could "determine the most frequent stationary states by simply

ordering the stationary states by descending frequency."  Docket No. 41 at 7.  The Court gave

this term its plain and ordinary meaning.  Docket No. 49 at 5.

**C.**     **WSOU's Validity Expert Opines That the "Primary Set of Stationary States" is <u>Not</u> The "Stationary States With the Most Observations"**

Contrary to its claim construction arguments, WSOU's validity expert, Dr. Todor

Cooklev, repeatedly confirmed that determining a stationary state with "the most observations"

cannot meet the "primary set" limitation of claims 1 and 11, and that "something more" is

required:

> Q.     If the system has already determined that a stationary state is a most frequent
>        stationary state, something more is required; right?
> A:     Yes.  Something is—I mean, something more is required, yes.

Cooklev Tr. at 135:13-17.

> A.     Just so you're—the way I understand the question is, just based on a stationary
>        state being among the most frequent stationary states, is this sufficient to make
>        that stationary state a member of the primary set?

Q.     Yes, that's a fair rephrasing.

A.     Yes, I think the answer is that's not sufficient, and something more is needed.  **It's not sufficient that it's just among the most frequent stationary states** . . .

*Id*. at 91:4-14.  Despite many hours of questioning on this issue, Dr. Cooklev was unable to define what "something more" is required by the claim.  Cooklev Tr. at 90:24 to 92:25; 95:6-11; 95:13-24; 96:10-12.

**D.     WSOU's Two Technical Experts Reach Opposite Conclusions on the "Primary Set"**

WSOU also submitted an infringement expert report from a different expert, Dr. Tamás Budavári.  In it, Dr. Budavári provided three examples of the "primary set of stationary states" of claims 1 and 11:

- A user's location history (all of the places the user visits);
- The total number of places visited by the user; and
- Places that are frequently visited.

Ex. 7 ("Budavári Rep.")  ¶¶ 114-115, 120-122; Ex. 8 ("Budavári Tr.") at 157:19 to 160:24.  But for each and every example Dr. Budavári provided, Dr. Cooklev reached the opposite conclusion:

|  | Dr. Budavári | Dr. Cooklev |
|---|---|---|
| A user's location history (all of the places the user visits); | "Timeline will give you a summary of **all the places that the user visits.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **This is a primary set for that user.**" Budavári Tr. at 158:20-24 (emphasis added). | "**The location history is <u>not</u> a primary set.**" Cooklev Tr. at 123:13-15 (emphasis added).<br><br>"Q:  Is it your opinion that the **location history of a particular user is not a primary set** of **stationary states?** A:  Oh, the location history? Q:  Yeah. A:  Yeah, I—**I don't think it is.**" Cooklev Tr. at 122:6-11 (emphasis added). |
| The total number of places visited by the user | "Q:  Okay.  So just so I understand, it's your opinion that Google Timeline provides users with a | "Q:  Okay.  So the **total number of stationary states** is not the primary set of stationary states; right? |

– 3 –

|  | Dr. Budavári | Dr. Cooklev |
|---|---|---|
|  | summary, and it provides **a total number of places visited by a user and, in your opinion, that is a primary set of stationary states as required by Claim Element 1D; is that right?** <br> MR. WIN:  Objection. <br> THE WITNESS:  **I think that could be an example of that, yes.**" <br> Budavári Tr. at 159:17-25 (emphasis added). | A:   **Yes.**"  Cooklev Tr. at 143:24 to 144:2 (emphasis added). <br><br> "Q:   What about the total number of places visited?  Phillips discloses that you can identify the **total number of places that are visited by a particular user.**  Does that not meet the primary set? <br> MR. WIN:  Objection to form. <br> THE WITNESS:  **No.  No, it doesn't.**" Cooklev Tr. at 124:14-20 (emphasis added). |
| The frequency of visits to a particular location. | "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ And that would be the subset I think that you are asking me." <br> Budavári Tr. at 159:13-16 (emphasis added). <br><br> "So the example, in my example in this scenario that I'm talking about would be the **places that are frequently visited potentially, and that's the primary set**.  Budavári Tr. at 160:8-11 (emphasis added). | "Q:  Is determining **which locations are visited repeatedly by counting the number of times an identifier of the location appears in the stored date determining a primary set of stationary states**? <br> A:  **No.**"  Cooklev Tr. at 152:6-10 (emphasis added). <br><br> "Q:   If the system has already determined that a stationary state is a **most frequent stationary state, something more is required**; right? <br> A:   Yes.  Something is—I mean, **something more is required, yes.**" Cooklev Tr. at 135:13-17 (emphasis added); *see also id.* at 90:24 to 91:15 ("**It's not sufficient that it's just among the most frequent stationary states . . .**"). |

Dr. Cooklev dismissed every "primary set" identified by Dr. Budavári, finding them

insufficient to meet the claim.  Cooklev Tr. at 123:13-15, 122:6-11, 143:24 to 144:2, 124:14-20,

152:6-10, 135:13-17, 90:24 to 91:15.

## ARGUMENT

### I.    The Asserted Claims Are Invalid Under § 112 For Lack of Written Description

The written description requirement allows "the public to understand and improve upon the invention and to avoid the claimed boundaries of the patentee's exclusive rights."  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1345 (Fed. Cir. 2010).   "[T]he hallmark of written description is disclosure."  *Id.* at 1351; *see also Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013).  The written description determination "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art."  *Flash-Control, LLC v. Intel Corp.*, No. 19-1107, 2020 WL 4561591, at *2 (W.D. Tex. July 21, 2020), *aff'd*, No. 2020-2141, 2021 WL 2944592 (Fed. Cir. July 14, 2021) (citation omitted) (affirming grant of summary judgment for lack of written description); *see Realtime Data, LLC v. Morgan Stanley*, 554 F. App'x 923, 938 (Fed. Cir. 2014) (same); *Stored Value Sols., Inc. v. Card Activation Techs., Inc.,* 499 F. App'x 5, 11 (Fed. Cir. 2012) (same).

Independent claims 1 and 11 require the step of "determin[ing] a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area."  '961 at 37:18-22, 38:30-36.   But the specification does not describe what the "primary set of stationary states" **is**, either on its face or in view of the competing conclusions of WSOU's technical experts.

### A.    The '961 Patent Does Not Convey The Invention With Reasonable Clarity

The specification itself, as well as the unrebutted testimony of Dr. Welch and the testimony of WSOU's experts, all confirm that the '961 specification fails to inform a POSITA

what the claimed "primary set of stationary states" is intended to cover.  There is no dispute that

the patentees amended the claims during prosecution to add this limitation, but did not amend the

specification.  *See supra* A; Welch Rep. ¶ 159; Ex. 9 ("Cooklev Rep.") ¶ 82.  The specification

does not include the term "primary set of stationary states" but provides only that:

> For example, in some embodiments, **when a primary stationary state is identified, as
> described in more detail below**, the user is prompted to label the user's current location
> with a word or phrase that can be used to tag the associated Stationary state.  In some
> embodiments, the user's messages or voice calls are monitored **while the user <u>is in one
> of the primary stationary states</u>**, and the words are mined to derive a context for the
> stationary state.

'961 patent at 8:5-12.  Though the specification acknowledges that it must provide "more detail"

to explain how to identify a "primary stationary state," it does not do so, and the term "primary

stationary state" never appears again.  *See generally* '961 patent.  In any event, Dr. Cooklev

testified that a "primary stationary state" is not the same as the "primary set of stationary states."

Cooklev Tr. at 61:5-22.  The specification lacks any description, let alone a sufficient written

description, of the "primary set of stationary states."

As Google's technical expert explains, "the specification of the '961 patent fails to

provide an adequate written description or enable [a] POSITA to practice" the "primary set of

stationary states" limitation.  Welch Rep. ¶¶ 803, 813 ("it is my opinion that the '961 patent

provides insufficient description of this limitation, such that a POSITA would be unable to

practice the full scope of the claims."); *see id*. ¶¶ 819-823 ("the '961 patent does not reasonably

convey to those skilled in the art that the inventor had possession of the claimed subject matter as

of the filing date."); *id*. ¶ 824.

WSOU's technical experts each hold themselves out as persons of ordinary skill in the art

relevant to the '961 patent (Cooklev Rep. ¶ 26; Budavári Rep. ¶ 27) and both testified that they

reviewed the specification in detail.  Cooklev Tr. at 13:5-22; Budavári Tr. at 24:16-24.  But

because the '961 patent lacks sufficient description of how the public should "understand and improve upon the invention" or "avoid the claimed boundaries of the patentee's exclusive rights," WSOU's two experts reach **opposite conclusions** as to what is and isn't a "primary set of stationary states." *Ariad Pharms.*, 598 F.3d at 1345; *see supra* D.  This is the antithesis of reasonable clarity.

### B.      Dr. Cooklev Cannot Identify What The "Primary Set of Stationary States" is, But Only What it is Not

During his deposition, Dr. Cooklev could not say what the "primary set of stationary states" is, but only what it is not.  *See supra* D; *see also* Cooklev Tr. at 122:6-11 (location history is not enough); *id.* at 123:8-15 (ability to view location history or analyze location history is not enough); *id.* at 124:14-20, 152:6-10 (determining which locations are visited repeatedly by counting the number of times an identifier of the location appears in the stored data is not enough); *id.* at 147:24 to 148:4 (automatically generating a label for a location or prompting a user to input a label for a location is not enough); *id.* at 149:16 to 150:19 (storing visited locations or the number of times a place is visited over some period of time is not enough), *id.* at 151:6-12 (storing frequency of visits is not enough); *id.* at 151:14-19 (storing the number of times and the duration of visits is not enough).

### 1.      Dr. Cooklev Does Not Contest Dr. Welch's Opinions Concerning Written Description, Leaving Them Unrebutted

In his report, Dr. Cooklev did not address Dr. Welch's opinions that the specification contains an inadequate written description, but provided only rebuttal opinions concerning enablement and indefiniteness.  Cooklev Rep. ¶¶ 293-301.  But a claim term can be definite and enabled, and still lack written description under Section 112.  *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1359 (Fed. Cir. 1999) ("definiteness and enablement are

analytically distinct requirements"); *see also Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d

916, 920 n.2 (Fed. Cir. 2004) (written description and enablement are separate requirements).

Dr. Cooklev provides no opinion that the '961 patent provides sufficient written description as

required by § 112, leaving Dr. Welch's written description opinions unrebutted.

> **2.  Dr. Cooklev Admitted in Deposition That Each Portion of the
> Specification He Cites in his Report Does <u>Not</u> Disclose a "Primary Set
> of Stationary States"**

In his report, Dr. Cooklev cites three portions of the specification in response to Dr.

Welch's opinions concerning enablement:  23:15-22, 24:10-18 and Figures 11A and 11B and

their description.  According to Dr. Cooklev's report, these passages provide "sufficient

guidance" to implement the claim.  Cooklev Rep. ¶ 301.  But none of these passages contains the

term "primary set of stationary states" or even "primary."  More so, during his deposition, Dr.

Cooklev admitted that none of these examples actually identifies a "primary set of stationary

states":

> The first cite (23:15-22) contains Table 6.  As to this table, Dr. Cooklev testified:
>
> Q.   So are you able to tell, looking at Table 6, which states are among the primary set
>      of stationary states?
> A.   Only from Table 6.  **Well, no.**

Cooklev Tr. at 71:18-21.  The second cite (24:10-18) contains Table 7.  As to this table, Dr.

Cooklev testified:

> Q.   And so which of these states for user one are in the primary set of stationary
>      states?
> A.   Well, it could be that all of these are in primary set.
> Q.   It could be or it is?
> A.   It could be.
> Q.   Is there a reason why you can't tell me that it is?
> A.   Because stationary states that account for 95 percent of stationary time **is not the
>      only consideration in determining a primary set**.

Cooklev Tr. at 144:11-23 (referring to Table 7); *see also id.* 145:17-23 ("Q:  So looking at Table 9, you can't tell me which of these states is within the primary set?  A:  It doesn't show all the considerations of—it could be that—some of them, it could be that—all of them.  It doesn't show this.").  Finally, as to the third cite (Figures 11A and 11B), Dr. Cooklev testified:

> Q.    Looking at Figures 11A and 11B, are you able to tell me, of these figures, which of the states are among the primary set of stationary states?
> A.    Figure 11A and 11B, **they're not intended to show the primary stationary states**.

Cooklev Tr. at 69:21 to 70:2; *id.* at 74:6-18 ("Figures 11A and 11B are not intended to show the stationary states that belong to the primary set.  But they show the most frequent stationary states, again, in this—in this example."); *id.* at 70:11-17.[2]  Dr. Cooklev could not point to any written description of the "primary set" because the patent does not contain one; his testimony "does not overcome the fundamental deficiencies" on the face of the specification.  *Novozymes*, 723 F.3d at 1346.  By the "four corners of the specification," claims 1 and 11 thus fail the written description test.  *Ariad Pharms.*, 598 F.3d at 1351.

## II.    The Asserted Claims Are Also Invalid Under § 112 For Lack of Enablement

Even if the specification disclosed "primary set of stationary states" with reasonable clarity, it would still fail to teach a POSITA how to make and use the full scope of the claimed invention by omitting the criteria by which a "primary set of stationary states" is "determined."  "To be enabling, the specification of a patent must teach those skilled in the art how to make and

---

[2] Dr. Cooklev also cites Column 3, lines 33-3, and Column 23:23-54, which describe Figures 11A-B.  These passages explain that Figures 11A and 11B show "most frequent stationary states" or "frequently visited places," which he testified are not a "primary set of stationary states."  Cooklev Tr. at 135:13-17 ("Q:  If the system has already determined that a stationary state is a most frequent stationary state, something more is required; right?  A:  Yes.  Something is—I mean, something more is required, yes."); *id.* at 152:6-10 ("Q:  Is determining which locations are visited repeatedly by counting the number of times an identifier of the location appears in the stored date determining a primary set of stationary states?  A:  No.").

use the full scope of the claimed invention without 'undue experimentation.'"  *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc*., 687 F.3d 1377, 1380 (Fed. Cir. 2012) (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed.Cir.1997)).   "The more one claims, the more one must enable."  *Amgen Inc. v. Sanofi*, 143 S.Ct. 1243, 1254 (2023).   "Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112 is a question of law that we review without deference, although the determination may be based on underlying factual findings."  *Amgen Inc. v. Sanofi, Aventisub LLC,* 987 F.3d 1080, 1084 (Fed. Cir. 2021), *aff'd sub nom*. *Amgen Inc. v. Sanofi*, 143 S. Ct. 1243 (2023) (citing *Alcon Research Ltd. v. Barr Labs., Inc.,* 745 F.3d 1180, 1188 (Fed. Cir. 2014)).

There is no dispute that the '961 patent describes determining which are the "most frequent stationary states for a mobile terminal."  *See* '961 at 23:23-27, 24:10-18; Welch Rep. ¶ 818 ("A POSITA would understand how to order stationary states by their relative frequency.").  But the specification stops there:  it does not say whether determining the "most frequent stationary states" is enough to "determine a primary set of stationary states," and Dr. Cooklev testified that such a determination is insufficient:

> Q.   If the system has already determined that a stationary state is a most frequent stationary state, something more is required; right?
> A.   Yes.  Something is—I mean, **something more is required, yes**.

Cooklev Tr. at 135:13-17 (emphasis added); *id*. at 90:24 to 91:15 ("A:  It's not sufficient that it's just among the most frequent stationary states . . ."); *id*. at 74:14-18 ("Figures 11A and 11B are not intended to show the stationary states that belong to the primary set.  But they show the most frequent stationary states, again, in this—in this example."); *id*. at 95:18-20 ("In general, there is an additional step to—after determining that a stationary state is among the most frequent stationary states.").

– 10 –

Dr. Cooklev could not identify what that additional criteria—what "something more"—is required to "determine a primary set of stationary states," but only examples of additional information a POSITA could "take into account," such as "content" from mobile device. Cooklev Tr. 78:5-10, 95:6-11, 83:21 to 84:4.[3]  But the patent does not disclose, and Dr. Cooklev could not explain, **how** this content informs whether a particular stationary state is primary or not.  Indeed, Dr. Cooklev testified that a POSITA could try any content whatsoever.  Cooklev Tr. at 83:23 to 84:4 ("Q:  What content informs whether or not a particular stationary state is a member of the primary set?  A:  Any type of content that pushed out from the device could be used, it seems to me.  What exactly is a set, I did not analyze this.  But any type of content."); *id.* at 84:8-9 ("Now, any type of content can be used for this."); *id.* at 84:23 ("Yeah, any type of content can be used."); *id.* at 82:9-18 ("Q:  so far what I understand is a person of skill could take this data into account, but I want to understand what it is that they would take into account.  A:  To the extent that I understand your question, the question—answering the question requires—requires work and—detailed work that I did not do to be able to answer."); *id.* at 85:5-12 ("I did not consider this to be able to answer.").  This is precisely the "undue experimentation" prohibited under § 112.  *See Amgen,* 987 F.3d at 1084.

## CONCLUSION

Because the '961 patent specification fails to sufficiently describe or enable the asserted independent claims, Google respectfully requests that the Court grant this motion for summary judgment of invalidity under § 112.

---

[3] Dr. Cooklev's opinion that the patent contains "sufficient guidance" does not create a genuine dispute of fact; WSOU cannot substitute expert testimony for enabling disclosure in the patent.  *Genentech*, 108 F.3d at 1366.  Dr. Cooklev moreover testified that the "guidance" he refers to is contained in same paragraphs addressed above, and which he testified do not show the "primary set of stationary states."  Cooklev Tr. at 79:13-16 ("Q:  Great.  Where is that guidance?  A:  Exactly the passages we have been reading."); *see supra* I.B.2.

Date:  June 28, 2023                              Respectfully submitted,

                                                  */s/ Erika Warren, with permission by*
                                                  *Shaun W. Hassett*
                                                  Michael E. Jones (State Bar No. 10929400)
                                                  mikejones@potterminton.com
                                                  Shaun W. Hassett  (State Bar No. 24074372)
                                                  shaunhassett@potterminton.com
                                                  POTTER MINTON, P.C.
                                                  102 North College, Suite 900
                                                  Tyler, Texas, 75702
                                                  +1 (903) 597-8311
                                                  +1 (903) 593-0846 facsimile

                                                  Tharan Gregory Lanier
                                                  (California Bar No. 138784) (*pro hac vice*)
                                                  tglanier@jonesday.com
                                                  JONES DAY
                                                  1755 Embarcadero Road
                                                  Palo Alto, California, 94303
                                                  +1 (650) 739-3939
                                                  +1 (650) 739-3900 facsimile

                                                  Matthew S. Warren (California Bar No. 230565)
                                                  Jennifer A. Kash (California Bar No. 203679)
                                                  Erika Warren (California Bar No. 295570)
                                                  Francesca Miki Shima Germinario
                                                  (California Bar No. 326208)
                                                  Virginia G. Kain (California Bar No. 344545)
                                                  Sachli Balazadeh-Nayeri
                                                  (California Bar No. 341885)
                                                  WARREN LEX LLP
                                                  2261 Market Street, No. 606
                                                  San Francisco, California, 94114
                                                  +1 (415) 895-2940
                                                  +1 (415) 895-2964 facsimile
                                                  20-585@cases.warrenlex.com

                                                  Tracy A. Stitt
                                                  JONES DAY
                                                  51 Louisiana Avenue NW
                                                  Washington, DC 20001
                                                  +1 (202) 879-3641
                                                  tastitt@jonesday.com

                                                  *Attorneys for Defendant Google LLC*

– 12 –

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

*/s/  Shaun W. Hassett*_____
Shaun W. Hassett
