IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a<br>BRAZOS LICENSING & DEVELOPMENT<br><br>    *Plaintiff*,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    *Defendant*. | Case No. 6:20-cv-00585-ADA<br><br>JURY TRIAL DEMANDED |

**DEFENDANT GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT OF
<u>NON-INFRINGEMENT OF U.S. PATENT NO. 8,737,961</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION & SUMMARY OF ARGUMENT ........................................................ 1

II. WSOU CANNOT MEET ITS BURDEN TO DEMONSTRATE INFRINGEMENT OF THE "INCREMENTING [OF] A COUNT[ER] FOR A STATIONARY STATE" LIMITATION ................................................................................................................... 2

    A. WSOU Offers No Evidence Showing That Any Alleged Stationary State Is "Associated With The Set Of One Or More Distinct Signal Sources At The Current Time" ......................... 2

    B. Unable To Identify A Single "Count" That Meets All The Claim Requirements, WSOU Cites To Various Unrelated "Counts" As "Evidence" The Claimed "Count" Must Exist Somewhere ........................................................................................................... 4

III. WSOU FAILS TO MEET ITS BURDEN TO DEMONSTRATE INFRINGEMENT OF THE "DETERMIN[E/ING] A PRIMARY SET OF STATIONARY STATES" LIMITATION ................................................................................................................... 8

IV. GOOGLE IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ASSERTED APPARATUS CLAIMS 11 AND 14 ..................................................... 10

    A. WSOU Cannot Meet Its Burden To Prove Infringement Of The Apparatus Claims Because Its Expert Fails To Identify The Claimed "Memory Including Computer Instructions" 10

    B. Dr. Budavári's New Infringement Theory Espoused For The First In Deposition Cannot Raise A Genuine Dispute ........................................................................................ 12

V. CONCLUSION ............................................................................................................. 13

## TABLE OF AUTHORITIES

Page

**CASES**

*511 Techs., Inc. v. Microchip Tech. Inc.*,
  6:20-CV-00245 No. 241 (W.D. Tex. 2022) ............................................................................ 12

*Amgen Inc. v. Sandoz Inc.*,
  923 F.3d 1023 (Fed. Cir. 2019) .............................................................................................. 8

*Christophersen v. Allied–Signal Corp.*,
  939 F.2d 1106 (5th Cir. 1991) ................................................................................................ 7

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
  103 F.3d 978 (Fed. Cir. 1997) ................................................................................................ 3

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) .............................................................................................. 4

*Oscar Renda Contracting, Inc. v. City of Lubbock*,
  2008 WL 11429735 (N.D. Tex. 2008) ................................................................................... 7

*Pause Tech., LLC v. TiVo Inc.*,
  419 F.3d 1326 (Fed. Cir. 2005) .............................................................................................. 4

*Procter & Gamble Co. v. Team Techs., Inc.*,
  2014 WL 12531486 (S.D. Ohio 2014) ................................................................................... 7

*WSOU Invs., LLC v. Dell Techs. Inc.*,
  6:20-cv-00480 No. 399 (W.D. Tex. 2023) ........................................................................... 12

*\* Emphasis added throughout unless indicated otherwise.*

*\*\* Deposition objections removed unless indicated otherwise.*

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | U.S. Patent No. 8,737,961 |
| 2 | T. Budavári Opening Infringement Report |
| 3 | 2023-05-25 Deposition of T. Budavári |
| 4 | G. Welch Rebuttal Non-Infringement Report |

I.      INTRODUCTION & SUMMARY OF ARGUMENT

This Court should grant summary judgment of non-infringement because WSOU cannot meet its burden of proving that the accused features satisfy every limitation of the asserted claims of U.S. Patent No. 8,737,961 (Ex. 1) (the "'961 patent"). As a threshold matter, while referring to "Google Maps" generally, Dr. Budavári only identifies the specific Popular Times and Timeline features as infringing. (Ex. 2 at ¶ 38). As explained below, Dr. Budavári's failure to address certain claim limitations and his bare conclusions with respect to others cannot create a genuine issue of material fact.

*First*, WSOU fails to establish that the accused features meet the limitation of "incrementing [of] a count[er] for a stationary state associated with the set of one or more distinct signal sources at the current time," as required by independent claims 1 and 11. For this limitation, Dr. Budavári does not address certain claim elements at all. *See* Section I.A. For the portion of the limitation which he does address, Dr. Budavári cannot identify a single count that allegedly meets the claim language. Instead, he lists at least 14 different and unrelated "counts," which he states provide "evidence" that this limitation is somehow met somewhere by Google. *See* Section I.B. Yet Dr. Budavári himself does not opine that any of his listed "counts"—individually or collectively—actually satisfy the claimed "count."

*Second*, Dr. Budavári fails to address the limitation in independent claims 1 and 11 of "determin[e/ing] a primary set of stationary states, each stationary state in the primary set ***associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources***." Instead of analyzing the specific claim language, Dr. Budavári simply refers to his discussion of a different limitation that recites "incrementing of a count for a stationary state." *See* Section II. That, however, is a separate and distinct claim limitation. The claims recite two different counts—one "count" for "a stationary state," and another "count" for

1

"similar sets of one or more distinct signal sources" that is "frequently" incremented. Dr. Budavári entirely ignores these different requirements. He also fails to offer any evidence for "a primary set of stationary states," neither identifying any such set nor explaining what makes a set "primary."

**Third**, Dr. Budavári's report does not identify a "memory including computer instructions," as required by apparatus claims 11 and 14. His bare conclusion that Google Pixel products have memory and processors and are pre-configured with the Google Maps Mobile application is insufficient as a matter of law to establish that those devices meet the claim limitation. *See* Section III.

## ARGUMENT

**II.    WSOU CANNOT MEET ITS BURDEN TO DEMONSTRATE INFRINGEMENT OF THE "INCREMENTING [OF] A COUNT[ER] FOR A STATIONARY STATE" LIMITATION**

All the asserted claims require "incrementing [of] a count[er] for a stationary state associated with the set of one or more distinct signal sources at the current time." There is no genuine dispute that the accused Popular Times and Timeline features do not satisfy this limitation for two independent reasons: (1) WSOU offers no evidence showing that either the "distinct signal sources" or "at the current time" claim element is met; and (2) WSOU fails to advance any discernible infringement theory for the full limitation. Dr. Budavári does not identify a single "count" in the accused features that meets this limitation. Rather, Dr. Budavári improperly reads out certain claim elements in effort to show that the limitation does not require any specific count.

**A.    WSOU Offers No Evidence Showing That Any Alleged Stationary State Is "Associated With The Set Of One Or More Distinct Signal Sources At The Current Time"**

Dr. Budavári's analysis is silent as to the second half of this claim limitation: "associated

2

with the set of one or more distinct signal sources at the current time." At most, Dr. Budavári identifies alleged evidence for the "incrementing of a count for a stationary state" portion of this limitation—hard stop. He makes no attempt whatsoever to show that the "distinct signal sources" and "current time" claim elements are met in the accused Popular Times and Timeline features. (Ex. 2 at ¶¶ 71–108). Instead, Dr. Budavári excises "distinct signal sources" and "current time" from the claim language.

Dr. Budavári purports to analyze whether "a count for a stationary state is incremented if the mobile device is determined to be not moving outside the specified area." (*Id*. at ¶ 83; *id.* at ¶¶ 86–87, 91, 93–95, 98, 100–02, 104, 106, 166). Critically, that is not the operative claim language, and Dr. Budavári's reformulation does not even attempt to account for the "distinct signal sources" and "current time" claim elements. "Literal infringement requires that every limitation of the patent claim be found in the accused infringing device [or method]." *Gen. Mills, Inc. v. Hunt-Wesson*, *Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). Dr. Budavári's truncated offering fails as a matter of law to meet WSOU's burden.

Dr. Budavári's testimony underscores his failure to address the full limitation: "incrementing of a count for a stationary state associated with the set of one or more ***distinct signal sources at the current time***." Dr. Budavári confirmed that his understanding of this claim limitation (which his report refers to as "Claim Element 1C") is unconstrained by the claim language, and he further confirmed that his opinion hinges on the erroneous understanding that the claimed count has "no specific goal" and "no specific meaning":

> Q: Let me ask it this way. Is it your opinion that there is more than one count incremented by Google that meets the requirements of this claim limitation?
>
> A: So I would refer back to the patent in this case. . . . And what I wanted to point out about the claim language is that there's no -- there's no specific goal or ***no specific meaning assigned to this count*** in regard in Claim Element 1C.

3

(Ex. 3 at 115:12–116:6).  That is wrong as a matter of law.  "[A]ll claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004).  Indeed, this Court construed this claim language to carry its plain and ordinary meaning, which cannot mean "no meaning at all."  The first half of this limitation requires an "incrementing of a count for a stationary state," and the second half requires that the stationary state be "associated with the set of one or more distinct signal sources at the current time."  The claim language itself establishes that not just any count will suffice.  All terms in a claim must have meaning and be given effect; "ignor[ing] . . . other language appearing later in the claim . . . ***impermissibly conflicts with the plain meaning*** of the claim." *Pause Tech., LLC v. TiVo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005).  Dr. Budavári's opinion does precisely that.

Contrary to Dr. Budavári's understanding, the ordinary meaning of this claim assigns a specific meaning to the "count": the "count" must be "for a stationary state," which in turn must be "associated with the set of one or more distinct signal sources at the current time."  Dr. Budavári fails to apply the entirety of this limitation, and WSOU thus fails to offer any evidence about the "distinct signal sources" and "current time" claim elements.

> **B. Unable To Identify A Single "Count" That Meets All The Claim Requirements, WSOU Cites To Various Unrelated "Counts" As "Evidence" The Claimed "Count" Must Exist Somewhere**

Dr. Budavári fails to advance any cogent infringement theory for even his truncated version of this limitation.  Instead, he offers a hodgepodge of 14 different, incomplete, inconsistent, and incompatible "examples" of so-called "counts" that he labels as somehow "relevant" to his analysis.  Importantly, and dispositive for purposes of this motion, Dr. Budavári would not commit to any of his "example" counts as actually meeting the claim limitation.  After more than three years of litigation, two iterations of "final" infringement contentions, and

4

depositions of six Google technical witnesses, WSOU still cannot advance any discernible theory as to what this claim limitation requires or how anything specific in the accused features actually practices it.  "A patentee who fails to provide probative evidence of infringement runs the risk of being peremptorily nonsuited."  *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1050 (Fed. Cir. 2001).  That time has now come for WSOU.

Dr. Budavári's discussion of "incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time" is fatally deficient, amounting to nothing more than an unsupported "hunch" that the accused features somewhere, somehow implement a count meeting the limitation.  When asked the simple question "what is the count that Google implements as required by this claim limitation," he said "[w]hat's in the report." (Ex. 3 at 117:6-9).  But his report does not provide the answer, either.  Instead, it "note[s] that although a 'count for a stationary state associated with the set of one or more distinct signal sources at the current time' may not be displayed to a user during normal operation of Google Maps, there are features—notably Timeline and Popular Times—*that indicate or otherwise evidence that Google implements such a count*."  (Ex. 2 at ¶ 75).  Rather than explain how Google allegedly implements the claimed "count," Dr. Budavári's report identifies a patchwork of 14 "examples," including ███████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ██████████████████████████ (Ex. 2 ¶¶ 75, 81, 91, 95, 99, 104; *see id*. ¶¶ 76–80, 81–83, 84–86, 87–89, 90–92, 93, 94, 95, 96–98, 99–100, 101, 102, 103–104, 105–106).  But he never explains how or why any of these examples allegedly meet the claim limitation.  This

5

disjointed list of "counts" underscores that WSOU lacks any infringement theory or supporting evidence for this claim limitation.

Confirming the absence of any coherent theory or probative evidence, Dr. Budavári would not commit to any of his 14 "examples" as actually satisfying the claim limitation. Instead, Dr. Budavári stated that his "examples" **"*could be relevant or not relevant*"**:

> Q: Okay. So in your opinion, there are multiple counters that Google implements that meet the requirements of this claim limitation; is that correct?
>
> A: So we are looking at the patent that is concerned with the context to your location. And that system is a large and complicated system that has many aspects. And, yes, there are counters that are relevant to determining this location. And there is more than one count in Google Maps that ***could be relevant or not relevant*** to those systems and locations. What I do here in this report is I list a number of those counters that Google Maps implements.

(Ex. 3 at 116:7–21). Dr. Budavári admitted that some of his "examples" are not relevant. In paragraph 91 of his report, Dr. Budavári states that a count of ▇▇▇▇▇▇▇▇▇▇▇▇ "***may*** qualify" as the claimed count. But when asked at his deposition whether that count did or did not meet the claim element, he stated that he "***would like to rethink that***" because "it's been a long time." (*Id.* at 133:2–134:13). He also testified that he "cannot remember how [the "may qualify"] language was crafted and what I meant by that at that time. That's why I'm trying to do the analysis right now, which is something that I probably shouldn't do…." (*Id.* at 134:15–25). After attempting to reconstruct his logic—which did not appear anywhere in his report—Dr. Budavári conceded, "I see what you're saying and I am willing to accept that this may not be the best example of [the claimed count]." (*Id.* at 136:15–137:24). Clearly, Dr. Budavári's fallback to "[w]hat's in the report" cannot support a triable issue of fact. (*Id.* at 117:6–9).

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party." *Oscar Renda Contracting, Inc. v. City of Lubbock*, No. 5:05-CV-029-C, 2008 WL 11429735, at

6

\*15 (N.D. Tex. Apr. 18, 2008). Here, WSOU fails to "put up" any evidence that raises a triable issue on "an essential element of [its] case" and on which it "will bear the burden of proof at trial." *Novartis*, 271 F.3d at 1046. Dr. Budavári's testimony that his examples "could be relevant or not relevant" cannot meet this standard.

Underscoring the lack of evidence, Dr. Budavári confirmed that he cannot actually identify what the claimed "count" is or where it exists in the accused features. Dr. Budavári repeatedly stated that he believes the claimed "count" is somewhere but (even after serving his report) he is still not sure where:

> Q: And in terms of the Google Maps, as you've defined it, where does this incrementing of a count of ▮ occur? . . .
>
> A: That's a good question. And I did not consider it . . . . ***So I do not know exactly where this happens. So if you're asking me that question, I cannot answer that.*** But what I'm saying is that Google Maps as a product performs this because ▮ ▮ ***-- it's counted somewhere***. ▮ ▮ That's a counter.

(Ex. 3 at 140:1–19). It is insufficient as a matter of law to allege that a claim element is merely "somewhere" in the accused product. Such "hunches" devoid of any evidentiary basis cannot create a triable issue precluding summary judgment. *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106 (5th Cir. 1991) (affirming summary judgment when expert's opinion was mere "hunch" and supported by "no scientific methodology"). As courts make clear, "[s]upposition, speculation, hypothetical musings, and/or anecdotes from … [an] expert are insufficient to … create a genuine issue of material fact." *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 12531486, at \*10 (S.D. Ohio July 3, 2014).

\* \* \*

Dr. Budavári's twin failures—the failure to analyze "distinct signal sources" and "current time," and the separate failure to advance an evidence-supported infringement theory for "incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time"—independently establish that WSOU fails to sustain a triable issue on which it bears the burden of proof.  Accordingly, Google is entitled to summary judgment of non-infringement of all claims.

### III. WSOU FAILS TO MEET ITS BURDEN TO DEMONSTRATE INFRINGEMENT OF THE "DETERMIN[E/ING] A PRIMARY SET OF STATIONARY STATES" LIMITATION

Claims 1 and 11 recite "determin[e/ing] a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area."  There is no genuine dispute that the accused products do not infringe because WSOU has a complete failure of proof for both "a frequently incremented count for one or more similar sets of one or more distinct signal sources" and for "a primary set of stationary states."

*First*, Dr. Budavári's report never addresses the claim language requiring "a frequently incremented count for one or more similar sets of one or more distinct signal sources."  Dr. Budavári's discussion of this limitation consists solely of incorporating his analysis of a different claim limitation that recites "incrementing of a count for a stationary state."  (Ex. 2 at ¶ 111).  "[P]recedent instructs that different claim terms are presumed to have different meanings." *Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir. 2019).  Here, although these two limitations appear within the same claim, they are each distinct limitations that use different claim language, recite different claim elements, and set forth separate requirements.  Indeed, nothing in the one limitation provides any antecedent basis for any claim elements recited in the other limitation.  Critically, the claimed "count *for a stationary state*" is not (and cannot be) a

8

substitute for the differently claimed "frequently incremented count **for one or *more similar sets of one or more distinct signal sources***," because by force of the claim language itself they are two different things.

Dr. Budavári's reference to his discussion of the "incrementing of a count for a stationary state" limitation is the full extent of his opinion for the different limitation requiring "a frequently incremented count for one or more similar sets of one or more distinct signal sources." The incorporated analysis is irrelevant as a matter of law because Dr. Budavári's discussion of the "count for a stationary state" does not address any other limitations. Thus, Dr. Budavári's treatment of "a frequently incremented count for one or more similar sets of one or more distinct signal sources" fails to offer any evidence or opinion that the limitation is met.

Dr. Budavári admits that the "frequently incremented count for one or more similar sets of one or more distinct signal sources" limitation (which he refers to as "claim element 1d") is not addressed by his discussion of the "count for a stationary state" limitation (which he refers to as "claim element 1c"), stating that he incorporates his analysis of claim element 1c only "*[i]nsofar as [his] analysis* of claim element 1c *is applicable to a portion* of claim element 1d." (Ex. 2 at ¶ 111). As the claim language demonstrates, however, nothing in claim element 1d is applicable to claim element 1c. Thus, by his own admission, Dr. Budavári failed to address the claim language requiring "a frequently incremented count for one or more similar sets of one or more distinct signal sources."

***Second***, Dr. Budavári fails to offer any evidence for "a primary set of stationary states." He never explains what makes a set of stationary states "primary." Instead, he purports to cite "examples" and "notes" of functionality and concludes, without explaining any basis, that they meet this limitation. (Ex. 2 at ¶¶ 112-22). Dr. Budavári's first "example" reads:

9



112. With regard to "determining a primary set of stationary states…", it is my opinion that Google indeed performs this step of the claimed method.

113. For example, █████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

(*Id.* at ¶¶ 112–13). Even including the unexplained excerpts from documentation that follow, nowhere in this supposed "example" does Dr. Budavári ever actually identify a "primary set of stationary states" or what makes that set "primary." He does not identify ███████████ ███████████████ or anything else as the primary set of stationary states, and he does not identify ████████████████████████ or anything else as the quality that makes such a set "primary." Dr. Budavári's remaining "examples" and "notes" are deficient in the same way. (*Id.* at ¶¶ 114–22).

Google is entitled to summary judgment of non-infringement of all claims given WSOU's complete failure of proof regarding the "frequently incremented count for one or more similar sets of one or more distinct signal sources" and "primary set of stationary states" limitations.

IV. **GOOGLE IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ASSERTED APPARATUS CLAIMS 11 AND 14**

Asserted apparatus claims 11 and 14 recite "at least one memory including computer instructions … configured to" perform certain steps. WSOU accuses various Google Pixel products of infringing these claims by providing the Google Maps Mobile application pre-installed and configured to perform those claimed steps. Because Dr. Budavári's report does not identify a "memory including computer instructions," there is no genuine dispute that the accused products do not infringe claims 11 and 14.

    A. **WSOU Cannot Meet Its Burden To Prove Infringement Of The Apparatus Claims Because Its Expert Fails To Identify The Claimed "Memory Including Computer Instructions"**

10

Dr. Budavári's report does not identify any evidence or provide any explanatory opinion that the accused products have a "memory including computer instructions," as required by claims 11 and 14. In fact, Dr. Budavári confirmed that his report does not identify any memory including computer instructions:

> Q: Where in your report do you identify that the RAM is the claimed memory?
>
> A: That -- so that's the -- how do I say it? That's the obvious choice. Anyone who – I guess I would use the POSITA would identify the RAM, the random access memory, as the memory. And I just only explained the role of the storage because you asked me about it. And because modern systems have that extra level of complication that actually facilitates the better running of software. But by all means, if one has to -- any POSITA would point at the RAM as the memory. ***If the report doesn't say it explicitly, it's because I didn't think of including it explicitly.*** It just was a straightforward answer.

(Ex. 3 at 186:23–187:13).

Rather than identifying a memory including computer instructions as the claims require, Dr. Budavári's report asserts that a series of screenshots of product pages satisfy this limitation. Dr. Budavári's basis for concluding that the claim limitation is met is a single, conclusory sentence:

> The following figures demonstrate that the Goole [sic] Pixel Products each possess, incorporate, and/or utilize at least one processor and at least one memory as claimed, thereby satisfying claim elements 11a and 11b.

(Ex. 2 at ¶ 158). This *ipse dixit* is followed by a series of screenshots of Pixel product pages showing various technical specifications. (*Id*. at Figs. 89–94). Yet Dr. Budavári's report fails to identify which, if any, of the memories listed in the technical specifications meets the claimed "memory including computer instructions." As this Court recognizes, merely alleging that a figure demonstrates a claimed structure, without specifically identifying the claimed structure in the figure, cannot establish a genuine dispute. *WSOU Invs., LLC v. Dell Techs. Inc.*, 6:20-cv-00480 No. 399, at 679–83, 700, 722 (W.D. Tex. 2023) (granting directed verdict given plaintiff's

11

failure to identify the claimed "processor module" beyond testimony that a picture of the accused product "has a processor in it.").

Here, not only does Dr. Budavári fail to identify the claimed "memory," he equally fails to identify the claimed "computer instructions." Instead, he asserts that "the Goole [*sic*] Pixel Products each possess, incorporate, and/or utilize at least one processor and at least one memory as claimed" because "Google Pixel products are pre-configured with and meant to operate Google applications, including Google Maps." (Ex. 2 at ¶¶ 158–59). This assertion parrots the claim language but provides no analysis and does not identify any "computer instructions." "It is well settled … that a party may not avoid [summary judgment] simply by framing the expert's conclusion as an assertion that a particular critical claim limitation is found in the accused device." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004). Nowhere does Dr. Budavári identify the claimed "memory with computer instructions," and there is no genuine dispute that the accused products do not infringe claims 11 and 14.

### B. Dr. Budavári's New Infringement Theory Espoused For The First In Deposition Cannot Raise A Genuine Dispute

Conceding that his report failed to identify the claimed "memory including computer instructions," Dr. Budavári attempted to offer a new theory in his deposition: although he "didn't think of including it explicitly" in his report, he claimed that "any POSITA would point at the RAM as the memory." (Ex. 3 at 186:23–187:13).

This Court strikes and precludes expert testimony in such circumstances. *511 Techs., Inc. v. Microchip Tech. Inc.*, 6:20-CV-00245 No. 241, at 8–9 (W.D. Tex. 2022). Neither WSOU nor Dr. Budavári previously alleged that RAM (or any other memory) met the "memory including computer instructions" limitation, and neither WSOU nor Dr. Budavári previously

alleged or provided any evidence of computer instructions on RAM, let alone any evidence that "any POSITA would point at the RAM as the memory."

Even had Dr. Budavári's report identified RAM as the claimed memory including computer instructions (and there is no dispute that he did not do so), no rational jury could find the claim limitation met on that basis. Google's expert Dr. Welch's uncontroverted analysis makes clear that RAM is volatile memory that cannot hold any data, such as computer instructions, while it is powered off. (Ex. 4 at ¶ 427). Google does not (and cannot) make or sell any Pixel products with RAM containing any computer instructions because the products are powered off at the time of the sale. (Id.). Thus, even under Dr. Budavári's untimely and undisclosed theory, RAM cannot meet the claimed "memory including computer instructions."

Because there is no genuine dispute that the accused products do not infringe the apparatus claims, Google respectfully requests summary judgment of non-infringement of claims 11 and 14.

## V.     CONCLUSION

For all the foregoing reasons, Google respectfully requests that the Court grant this motion for summary judgment of non-infringement.

13

Date: June 28, 2023                                    Respectfully submitted,

*/s/ T. Gregory Lanier with permission by Shaun W. Hassett*
T. Gregory Lanier (pro hac vice)
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

Michael E. Jones (Texas Bar No. 10929400)
Shaun W. Hassett (Texas Bar No. 24074372)
**Potter Minton, P.C.**
102 North College, Suite 900
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
shaunhassett@potterminton.com

Tracy A. Stitt
Edwin O. Garcia
**Jones Day**
51 Louisiana Avenue NW
Washington, DC 20001
+1 (202) 879-3641
tastitt@jonesday.com
edwingarcia@jonesday.com

Matthew S. Warren (CA Bar No. 230565)
Jennifer A. Kash (CA Bar No. 203679)
Erika Warren (CA Bar No. 295570)
Francesca Miki Shima Germinario
(CA Bar No. 326208)
Virginia G. Kain (CA Bar No. 344545)
Sachli Balazadeh-Nayeri
(CA Bar No. 341885)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-585@cases.warrenlex.com
***Attorneys for Defendant Google LLC***

14

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

*/s/ Shaun W. Hassett*
