# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a<br>BRAZOS LICENSING & DEVELOPMENT<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 6:20-cv-00585-ADA<br><br>JURY TRIAL DEMANDED |

### DEFENDANT GOOGLE LLC'S MOTION TO STRIKE AND EXCLUDE CERTAIN OPINIONS OF TECHNICAL EXPERT DR. TAMÁS BUDAVÁRI

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | DR. BUDAVÁRI'S NEW INFRINGEMENT THEORIES SHOULD BE STRICKEN | 1 |
| | A. WSOU'S Amended Final Infringement Contentions Accused Google Products And Services Based On ▓▓▓▓ | 2 |
| | B. Dr. Budavári's Infringement Report Never Addresses ▓▓▓▓ | 3 |
| | C. Specific Passages Of Dr. Budavári's Report Substitute New Infringement Theories In Place of ▓▓▓▓ And Should Be Stricken | 4 |
| III. | DR. BUDAVÁRI'S OPINIONS BASED ON MISQUOTED CLAIM LANGUAGE SHOULD BE STRICKEN | 7 |
| IV. | DR. BUDAVÁRI'S *IPSE DIXIT* SHOULD BE STRICKEN | 8 |
| | A. Dr. Budavári's Unsupported Opinions Regarding The "Determining Whether The Mobile Device Is Moving Outside A Specified Area" Element Should Be Stricken | 8 |
| | B. Dr. Budavári's Unsupported Opinions Regarding The "Incrementing of A Count For a Stationary State" Element Should Be Stricken | 9 |
| | C. Dr. Budavári's Unsupported Opinions Regarding The "Determining A Primary Set of Stationary States" Limitation Should Be Stricken | 10 |
| | D. Dr. Budavári's Unsupported Opinions Regarding The "Memory With Computer Instructions" Limitation Should Be Stricken | 10 |
| | E. Dr. Budavári's Unsupported Opinions Regarding The "Delivery of a Service" Limitation Should Be Stricken | 10 |
| V. | DR. BUDAVÁRI'S OPINIONS REGARDING "TECHNICAL COMPARABILITY" OF NON-ACCUSED PRODUCTS SHOULD BE STRICKEN | 11 |
| | A. Dr. Budavári Concludes That Non-Accused Google Products Which Share "Aspects" of The Claimed Invention, Such as Determining Location, Are "Technically Comparable" to the '961 Patent | 12 |
| | B. Dr. Budavári Concludes That Patents Are Not Technically Comparable to the '961 Patent Based on a Contradictory Standard | 13 |
| VI. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Biscotti Inc. v. Microsoft Corp.*,
   2017 WL 2607882 (E.D. Tex. 2017) ..................................................................................12

*Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*,
   951 F.3d 248 (5th Cir. 2020) ...............................................................................................1

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .............................................................................................................8

*GE v. Joiner*,
   522 U.S. 136 (1997) .............................................................................................................8

*Homeland Housewares, LLC v. Whirlpool Corp.*,
   865 F.3d 1372 (Fed. Cir. 2017) ............................................................................................7

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................7

*PMJ Bleu Terre Mgmt., LLC v. AmTrust Ins. Co. of Kansas, Inc.*,
   2023 WL 2818000 (W.D. Tex. Apr. 5, 2023) ....................................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   711 F.3d 1348 (Fed. Cir. 2013) ..........................................................................................13

*Tomax AS v. Turbo Drill Indus., Inc.*,
   2023 WL 3171744 (W.D. Tex. 2023) ........................................................................1, 2, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c)(1) ..................................................................................................................1

Fed. R. Civ. P. 702(d) ..................................................................................................................11

*\* Emphasis added throughout unless indicated otherwise.*

*\*\* Deposition objections removed unless indicated otherwise*.

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | U.S. Patent No. 8,737,961 |
| 2 | WSOU's Amended Final Infringement Contentions |
| 3 | 2022-02-17 Discovery Hearing Transcript |
| 4 | Transcript of WSOU's Technical Tutorial |
| 5 | 2022-09-08 Letter from G. Love to E. Warren |
| 6 | 2023-01-18 Letter from G. Love to J. Kash |
| 7 | 2023-05-25 Deposition of T. Budavári |
| 8 | T. Budavári Opening Infringement Report |
| 9 | Screenshot at 3:12 of WSOU's Technical Tutorial |

## I.     INTRODUCTION

Google respectfully moves under Fed. R. Civ. P. 37(c)(1) to strike and exclude the infringement opinions of WSOU's technical expert Dr. Tamás Budavári.  First, Dr. Budavári improperly advances infringement theories unrelated to WSOU's infringement contentions. Second, Dr. Budavári offers unreliable opinions concerning the "technical comparability" of Google APIs and other technology that he admits are not accused of infringement.

## ARGUMENT

## II.    DR. BUDAVÁRI'S NEW INFRINGEMENT THEORIES SHOULD BE STRICKEN

"It is well-settled that in patent litigation, expert infringement reports may not introduce theories not previously set forth in infringement contentions."  *Tomax AS v. Turbo Drill Indus., Inc.*, No. :21-cv-00260-ADA, 2023 WL 3171744, at *2 (W.D. Tex. Apr. 6, 2023) (cleaned up). Courts strike expert evidence when there is "potential prejudice in allowing the testimony." *Certain Underwriters at Lloyd's v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020).

Here, Dr. Budavári advances infringement theories entirely unrelated to WSOU's infringement contentions.  The asserted claims of U.S. Patent No. 8,737,961 (Ex. 1) (the "'961 patent") relate to incrementally determining location context for mobile devices and recite a series of steps, including determining whether a device is moving outside a specified area and culminating in delivery of a service based on the device's location.  One year after serving its Final Infringement Contentions, WSOU sought leave to serve Amended Final Infringement Contentions ("AFICs") in order to change its infringement theories to identify ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as the basis for infringement.  (Dkt. 107 at 14).  WSOU's new theory was that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Then, twelve months later, WSOU served its expert infringement report, which presented another set of new theories entirely unrelated to ▓▓▓▓▓▓.  Dr. Budavári's infringement report never once

1

mentions ▮▮▮, and his testimony disclaims any relevance of ▮▮▮. WSOU's continuously revolving door of infringement theories severely prejudices Google. "Prejudice occurs when the Defendant is forced to respond to infringement theories that it sees for the first time in the expert's infringement report." *Tomax*, 2023 WL 3171744 at *4. This Court should exclude Dr. Budavári's opinions because they are not based on theories disclosed in the AFICs.

A.  **WSOU'S Amended Final Infringement Contentions Accused Google Products And Services Based On** ▮▮▮

When seeking leave to file its AFICs over a year ago, WSOU's basis for doing so was unequivocal:



(Dkt. 111 Ex. 14 at 2). WSOU further represented that the AFICs were ▮▮▮ ▮▮▮ (Dkt. 107 at 14), and WSOU sought leave because it allegedly ▮▮▮ ▮▮▮ (Dkt. 115 at 17).

Like its motion for leave, the AFICs' claim charts asserted that ▮▮▮ ▮▮▮ All told, WSOU's AFICs pointed to ▮▮▮ more than 100 times.

2

WSOU also represented to this Court that the '961 patent is about geofencing. At the February 2022 hearing, WSOU stated that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 3 at 9:11–17, 31:12–16). WSOU also submitted a technical tutorial, explaining that the asserted claims cover the use of geofencing. (Ex. 4 at 02:47–04:47 ("The following example illustrates how geofencing-based services are delivered in the context of the '961 patent.")).

After serving its AFICs, WSOU maintained that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Despite these repeated representations in hearings, filings, and correspondence that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, WSOU abruptly abandoned that position when submitting its expert infringement report and impermissibly substituted yet another set of new infringement theories.

**B.    Dr. Budavári's Infringement Report Never Addresses** ▓▓▓▓▓▓▓▓

In stark contrast to the discovery and motion practice centering on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dr. Budavári's infringement report never uses that term. In fact, ▓▓▓▓▓▓▓ plays no role in any of his opinions. Dr. Budavári was crystal clear on this point: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 7 at 219:2–8). Thus, three years after this case was filed, two years after serving the final infringement contentions, and nine months after serving the AFICs, WSOU abandoned the theory that the accused products ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3

. Instead, Dr. Budavári attempted to present a brand new infringement case.

Dr. Budavári confirmed that the infringement theories in his report have nothing to do with ███████, and he believes that ███████ is not even relevant to the asserted patent:

(*Id..* at 214:9–17). Dr. Budavári confirmed that he provides no opinion regarding ███████ because he did not even consider ███████ for purposes of his report:

(*Id.* at 214:19–216:6).

  C. **Specific Passages Of Dr. Budavári's Report Substitute New Infringement Theories In Place of ███████ And Should Be Stricken**

As defined by WSOU, "[g]eofencing is the use of location information to create a virtual geographic boundary, enabling [a] system to trigger a response when a mobile device enters or leaves a specified virtual geographic area." (Ex. 9). WSOU's theory in its AFICs was that

4

██████████████████████████████████████

██████████████████████████████████████. (Ex. 2 at 101, 105). WSOU's technical tutorial explained that entering a geofenced area triggers an immediate delivery of a service without the user requesting the service:

> The following example illustrates how geofencing-based services are delivered in the context of the '961 patent. . . . The location-based service provider determines *whenever the device enters a specified area* that has an associated frequently incremented count. The location-based service provider then *pushes the location-based service* such as a marketing notification.

(Ex. 4 at 3:45–4:47).

But Dr. Budavári now fully distances himself from ██████████████ ██████ because, after two rounds of discovery, *WSOU still has no evidence of* ███████ ██████████████████████████████. Instead, Dr. Budavári theorizes about ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████.

In ¶¶ 57–69 of his report, for example, Dr. Budavári states that the Google Maps Timeline and Popular Times features ██████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████. This is an impermissible new theory, and ¶¶ 57–69 and figures 19–30 should be stricken.

In ¶¶ 126–127, Dr. Budavári states that ██████████████████████████ ██████████████████████████████████████ ██████████████ Dr. Budavári's own words show that ██████████████████ ██████████████████████████████████████.

5

█████████████████████████████████████

This is an impermissible new theory, and ¶¶ 126–127 and figures 62–65 should be stricken.

In ¶ 128, Dr. Budavári states that ████████████████████████████████████ ████████████████████████████████████████████ Dr. Budavári offers only ████████████████████████████████ ████████████████████████████ but he never states that █████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ This is an impermissible new theory, and ¶ 128 and figures 66–70 should be stricken.

In ¶ 129, Dr. Budavári asserts ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █ This is an impermissible new theory, and ¶ 129 and figure 71 should be stricken.

None of Dr. Budavári's new infringement theories involve ██████████████ ████████ as Dr. Budavári himself confirmed.  Presented with similar circumstances in *Tomax*, this Court struck WSOU's expert testimony because it shifted from the final infringement contentions.  *Tomax*, 2023 WL 3171744 at *6.  Specifically, in *Tomax*, this Court struck an expert opinion when the plaintiff for the first time disclosed a doctrine of equivalents theory. (*Id.*)  In *Tomax*, though the expert shifted from literal infringement to doctrine of equivalents in his report, the basis for infringement remained largely the same.  This case is even more egregious than *Tomax*.  Here, the basis for infringement is now entirely different from the AFICs.

6

WSOU's shifting infringement theories have already resulted in additional rounds of discovery and claim construction. The time has long passed for WSOU to figure out its infringement theories and provide fair notice to Google. For the reasons above, Google respectfully requests that the Court strike all opinions in Dr. Budavári's report that are not based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including at least ¶¶ 57–69 and ¶¶ 124–129 and figures 19–30 and 61–71.

### III. DR. BUDAVÁRI'S OPINIONS BASED ON MISQUOTED CLAIM LANGUAGE SHOULD BE STRICKEN

A "court should discount any expert testimony that is clearly at odds with . . . the written record of the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). Here, Dr. Budavári repeatedly misquotes the claim language reciting "incrementing of a count for a stationary state associated with ***the*** set of one or more distinct signal sources at the current time," resulting in an incorrect understanding of this limitation. The correct language, as recited in claim 1, is reproduced above. Yet when discussing this language, Dr. Budavári repeatedly misquotes "***the*** set" as "***a*** set." (Ex. 8 ¶ 74). This change has material consequences.

The antecedent basis for "***the*** set of one or more distinct signal sources" is "a set of one or more distinct signal sources from which signals are received ***at a mobile device*** for each of a plurality of different times." This set of signal sources, including its application to a particular mobile device, is what "the set" means. Dr. Budavári, however, excises the antecedent basis. As a result, he arrives at an erroneous understanding of this claim limitation, such as ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*). Courts "must disregard the testimony of an expert that is plainly inconsistent with the record . . . or based on an incorrect understanding of the claims." *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017).

This clear error renders unreliable Dr. Budavári's analysis of this claim limitation, because that analysis is predicated on his misquoting and misunderstanding the claim language. Such opinions are not relevant to the issue of whether the *actual* claim language is met. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Accordingly, the Court should strike from Dr. Budavári's report ¶¶ 74–122 and corresponding figures 31–60.

## IV. DR. BUDAVÁRI'S *IPSE DIXIT* SHOULD BE STRICKEN

Nothing "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *GE v. Joiner*, 522 U.S. 136, 146 (1997). Dr. Budavári offers conclusions without explaining how his proffered evidence relates to the conclusions or without offering any evidence. This Court should strike such opinions.

### A. Dr. Budavári's Unsupported Opinions Regarding The "Determining Whether The Mobile Device Is Moving Outside A Specified Area" Element Should Be Stricken

In ¶ 56, Dr. Budavári asserts that  but he says nothing further and does not explain how the figures that follow or any other documentation demonstrates his assertion. (Ex. 8 ¶ 56). This is *ipse dixit*, and ¶ 56 and corresponding figures should be stricken.

In ¶ 66, Dr. Budavári asserts that Popular Times but he says nothing further and does not explain how the figure that follows or any other evidence demonstrates his assertion. (*Id.* ¶ 66). In ¶ 67, Dr. Budavári asserts that

███████████ but he says nothing further and does not explain how the figures that follow or any other evidence demonstrates his assertion. (*Id.* ¶ 67). Accordingly ¶¶ 66–67 and corresponding figures should be stricken.

Without the *ipse dixit* above or his improper new infringement theories discussed above, Dr. Budavári's analysis of this element comprises only the bare assertion in ¶ 56 that this element is met, with no evidence or explanation to support that conclusion. (*Id.* ¶ 56). Accordingly, ¶ 56 should be stricken.

### B. Dr. Budavári's Unsupported Opinions Regarding The "Incrementing of A Count For a Stationary State" Element Should Be Stricken

As discussed in Google's concurrently filed Motion for Summary Judgement of Non-Infringement, Dr. Budavári is silent on the claim limitation "associated with the set of one or more distinct signal sources at the current time." He merely parrots the claim language and states that it is met (Ex. 8 ¶ 70), or he offers supposed evidence with no explanation connecting the evidence to the conclusion (*id.* ¶¶ 99–100). Accordingly, ¶¶ 70, 90, 93, 99–100, 107, and 108 and corresponding figures of his report should be stricken.

As also discussed in the concurrent summary-judgment motion, while Dr. Budavári identifies at least 14 incomplete and incompatible "examples" of so-called "counts" or "counters" (*id*. ¶¶ 75–108), he does not identify any of them as actually meeting the claim language, saying only that they "could be relevant or not relevant" to his analysis. (Ex. 7 at 116:7–21). Rather than explain how these examples meet the claim limitation, he cites them as "evidence" that Google implements the claimed count—in other words, "it's counted somewhere." (Id. at 140:1–19). This is pure ipse dixit. The unreliability of Dr. Budavári's testimony is demonstrated by his "example" in ¶¶ 90–92: ████████████████

9

██████████████████████████████████

████████████████████

████████████████████████ (Ex. 8 ¶ 91). Dr. Budavári confirmed this non-committal testimony would not be helpful to the jury, conceding that it "may not be the best example." (Ex. 7 at 137:18–22). Accordingly, ¶¶ 75–108 and the corresponding figures should be stricken.

### C. Dr. Budavári's Unsupported Opinions Regarding The "Determining A Primary Set of Stationary States" Limitation Should Be Stricken

As discussed in the concurrently filed summary-judgment motion, Dr. Budavári fails to analyze "a frequently incremented count for one or more similar sets of one or more distinct signal sources." Instead, he addresses an entirely different claim limitation, one that recites a "count for a stationary state" rather than a count for "distinct signal sources" that is "frequently incremented." His conclusion that this claim element is met is thus *ipse dixit*, and ¶¶ 110–11 should be stricken. Dr. Budavári also fails to identify a "primary set of stationary states," and fails to explain what makes any such set "primary." (Ex. 8 ¶¶ 112–22). For these reasons, ¶¶ 110–122 and the corresponding figures should be stricken.

### D. Dr. Budavári's Unsupported Opinions Regarding The "Memory With Computer Instructions" Limitation Should Be Stricken

As discussed in the concurrently filed summary-judgment motion, Dr. Budavári fails to identify the claimed "memory with computer instructions," instead concluding without any analysis that the claim limitation is met. This conclusion is *ipse dixit*, and ¶¶ 158–160 and corresponding figures should be stricken.

### E. Dr. Budavári's Unsupported Opinions Regarding The "Delivery of a Service" Limitation Should Be Stricken

In several places, Dr. Budavári asserts that ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ but says nothing further and does not explain how the figure that follows or any other evidence demonstrates his assertion. (Ex. 8 ¶¶ 129, 151; ¶ 122 (concluding instead that

10

██████████████████████████████

██████████████████████████████████)). Accordingly, ¶¶ 122, 129, and 151 and corresponding figures should be stricken.

In ¶ 125, attempting to support his assertion that ████████████████████ ████████████████████████████████████████ Dr. Budavári provides the supposed "example" from a public document that a user with Location History turned on "may see a number of benefits across Google products and services, including . . . more useful ads." (*Id.* ¶ 125). He says nothing further and does not explain how this quote or any other evidence relates to ██████████████████████████████ ████████████████████████. Accordingly, ¶ 125 and its figure should be stricken.

Without the *ipse dixit* above or his improper new infringement theories discussed above, Dr. Budavári's analysis of this element comprises only the bare assertion in ¶ 124 that this element is met, with no evidence or explanation to support that conclusion. (*Id.* ¶ 124). Accordingly, ¶ 124 should be stricken.

## V.   DR. BUDAVÁRI'S OPINIONS REGARDING "TECHNICAL COMPARABILITY" OF NON-ACCUSED PRODUCTS SHOULD BE STRICKEN

The Court should exclude expert opinions which fail to "reliably appl[y] the principles and methods to the facts of the case." Fed. R. Civ. P. 702(d). Expert testimony is reliable if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *PMJ Bleu Terre Mgmt., LLC v. AmTrust Ins. Co. of Kansas, Inc.*, 2023 WL 2818000, at *2 (W.D. Tex. Apr. 5, 2023). "When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the expert testimony." *Id.*

Dr. Budavári's report includes a section titled "Technical Comparability Analysis," under which he offers opinions that non-accused Google APIs and location features are "technically

11

comparable" to the accused Google Maps "Timeline" and "Popular Times" features. (Ex. 8 ¶¶ 208–13). There is no dispute that Dr. Budavári performed no infringement analysis as to any of the products or features he concludes to be technically comparable. (Ex. 7 at 196:10–201:25). In fact, Dr. Budavári's only analysis of these non-accused products is that each of the non-accused products "is comparable to aspects of the claimed invention," referring, in each instance, to entirely conventional location functions. (Ex. 8 ¶¶ 210–13 ). More troubling still, Dr. Budavári reaches conflicting conclusions regarding technical comparability of licensed patents, applying, there, a far more stringent requirement than he has for technical comparability of non-accused products. Google accordingly requests the Court strike Dr. Budavári's opinions in paragraphs 208 to 213 as unreliable and inconsistent, and thus likely to confuse the jury.

### A. Dr. Budavári Concludes That Non-Accused Google Products Which Share "Aspects" of The Claimed Invention, Such as Determining Location, Are "Technically Comparable" to the '961 Patent

Dr. Budavári concludes that non-accused products are comparable to "aspects" of the claimed invention, and thus treats them as technically comparable. (Ex. 8 ¶ 210 ("Geocoding API is comparable to *aspects* of the claimed invention . . ."); ¶ 211 ("Geolocation API is comparable to *aspects* of the claimed invention . . ."); ¶ 212 ("Places API is comparable to *aspects* of the claimed invention . . ."); ¶ 213 ("[redacted] is comparable to *aspects* of the claimed invention")). Although he does not explain what standard he applies to reach these conclusions as to non-accused products—and none exists—Dr. Budavári appears to conclude that merely sharing a conventional "aspect" such as "determination of mobile device locations" means a product is technically comparable to a patent. (*Id*. ¶¶ 210–11, 213). By this logic, two patents that require the use of computers would be technically comparable to each other, even if they shared no other common features. Dr. Budavári's loose comparability opinions should accordingly be excluded as unreliable. *Biscotti Inc. v. Microsoft Corp.*, 2017

WL 2607882, at *3 (E.D. Tex. 2017) ("alleging a loose or vague comparability between different technologies or licenses does not suffice" and "a one-sentence conclusion" is insufficient).

### B. Dr. Budavári Concludes That Patents Are Not Technically Comparable to the '961 Patent Based on a Contradictory Standard

To the extent Dr. Budavári applies any standard to his conclusions concerning non-accused Google products, it is inconsistent with the standard he applies to his opinions concerning technical comparability of licensed patents.  Dr. Budavári concludes that licensed patents are "not comparable *to the technology involved in the invention* of the '961 patent including technology for determining a mobile device's stationary state based on wireless signal transmissions, determining the mobile device's state within specified areas, *and incrementing counts for the stationary states.*"  (Ex. 8 ¶¶ 216–18).  For example, Dr. Budavári concludes that U.S. Patent No. 7,421,278 is "narrower and only somewhat comparable to the technology" because:

> [T]he method involves determining a location of the wireless device, predicting and pushing to the user information potentially of interest to the user based on the location and time of day associated with the device as well as a preference of the user.  *Id*.  In my opinion, this technology which depends on user preferences is rather narrower than the technology involved in the invention of the '961 patent . . .

(*Id*. ¶ 220).  Dr. Budavári thus applies an irreconcilable standard to non-accused products versus licensed patents:  in the former case, a similar "aspect" is sufficient; in the latter, only an exact match meets Dr. Budavári's threshold.  Dr. Budavári's conclusions concerning "technical comparability" of non-accused Google products are thus not only unreliable in themselves, but reflect an unreliable and inconsistent application of a technical comparability standard.  This is not a matter for cross examination; "The trial judge must ensure that the expert has 'reliably applied the principles and methods to the facts of the case.'"  *Power Integrations, Inc. v.*

13

*Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013).  This Court should strike Dr. Budavári's paragraphs 208–213 of his infringement report.

## VI.   CONCLUSION

Google respectfully requests that the Court grant this motion to strike and exclude.

Dated:  June 28, 2023                    Respectfully submitted,

By: */s/ T. Gregory Lanier, with permission*
*by Shaun W. Hassett*

    Michael E. Jones (State Bar No. 10929400)
    mikejones@potterminton.com
    Shaun W. Hassett  (State Bar No. 24074372)
    shaunhassett@potterminton.com
    POTTER MINTON, P.C.
    102 North College, Suite 900
    Tyler, Texas, 75702
    (903) 597-8311
    (903) 593-0846 facsimile

    T. Gregory Lanier
    (California Bar No. 138784) (pro hac vice)
    tglanier@jonesday.com
    JONES DAY
    1755 Embarcadero Road
    Palo Alto, California, 94303
    (650) 739-3939
    (650) 739-3900 facsimile

    Matthew S. Warren
    (California Bar No. 230565)
    matt@warrenlex.com
    WARREN LEX LLP
    2261 Market Street, No. 606
    San Francisco, California, 94114
    (415) 895-2940
    (415) 895-2964 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

/s/ T. Gregory Lanier