PUBLIC REDACTED VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a<br>BRAZOS LICENSING & DEVELOPMENT<br><br>        *Plaintiff*,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        *Defendant*. | Case No. 6:20-cv-00585-ADA<br><br>JURY TRIAL DEMANDED |

**GOOGLE'S MOTION TO EXCLUDE TESTIMONY OF
<u>WSOU'S DAMAGES EXPERT MR. JUSTIN BLOK</u>**

████████████████████████████████

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .............................................................................................. 2

        A.      ████████████████████████████████████.................... 3

        B.      First Step: Mr. Blok Uses ███████████████ As His Starting
                Point Without Making Any Deductions For The Accused Functionality.............. 4

        C.      Second Step: Mr. Blok Flips ████████████████████████
                ████████████████ ..................................... 4

        D.      Third Step: Mr. Blok's ███████████████
                Is Based Entirely On Non-Accused Products ......................................... 5

        E.      Fourth Step: Mr. Blok's █████ "Split Of Benefits"
                Is Based Entirely On Non-Accused Products ......................................... 8

III.    LEGAL STANDARD FOR EXPERT ADMISSIBILITY ................................ 9

IV.     MR. BLOK'S FOUR STEPS SHOULD BE EXCLUDED AS UNRELIABLE
        BECAUSE HE NEVER PERFORMS AN APPORTIONMENT OF THE ACCUSED
        FUNCTIONALITY ........................................................................... 10

        A.      Mr. Blok's First Step Should Be Excluded Because ██████
                ████████████████████████████████████.......... 10

        B.      Mr. Blok's Second Step Regarding ████████████Should Be Excluded
                Because He Concedes It Is Untethered To The Value Of The '961 Patent.......... 15

        C.      Mr. Blok's Third Step Regarding A ████████████
                Should Be Excluded Because It Is The Opposite Of Apportionment.................. 17

        D.      Mr. Blok's Fourth Step Regarding A █████ Split Should Be Excluded
                Because It Is Indistinguishable From The Rule Of Thumb And
                Based Entirely On Non-Accused Features ........................................ 21

V.      THIS COURT SHOULD PRECLUDE MR. BLOK FROM TESTIFYING ABOUT
        INFORMATION FOR WHICH ████████████████████████████
        ████████████████ ..................................................... 23

        A.      This Court Should Exclude Mr. Blok's Testimony About
                Plaintiff's ████████████████ ................................... 23

█████████████████████

B.     The Court Should Exclude Mr. Blok's Testimony About ████████
████ Based On His Conversations With And Opinions From ████
████ .............................................................................................. 24

VI.     CONCLUSION........................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Bourjaily v. U.S.*,
    483 U.S. 171 (1987)...................................................................................................................10

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993)...................................................................................................................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)...................................................................................................1

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)................................................................................................20

*GE v. Joiner*,
    522 U.S. 136 (1997)...................................................................................................................17

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)........................................................................................11, 12, 14

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)........................................................................................2, 15, 20

*Sonos, Inc. v. Google LLC*,
    2023 WL 3933071 (N.D. Cal. Jun. 9, 2023)............................................................................22

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..........................................................................................14, 21

*Via Vadis, LLC v. Amazon.com, Inc.*,
    2022 WL 23351 (W.D. Tex. 2022)...........................................................................................14

*VirnetX, Inc. v. Cisco Sys.*,
    767 F.3d 1308 (Fed. Cir. 2014)..........................................................................................11, 17

**Rules**

FED. R. EVID. 702................................................................................................................. *passim*

FED. R. EVID. 104(a) ........................................................................................................... *passim*

FED. R. CIV. P. 37(c) ....................................................................................................................24

███████████████████

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Excerpted Transcript of Mr. Justin Blok Deposition (Vol. 2) dated May 25, 2023 |
| 2 | Expert Report of Justin R. Blok dated March 29, 2023, including Exhibits 4-6, 9-10 |
| 3 | Google Presentation, GOOG-WSOU585-00222347-406 |
| 4 | Excerpted Expert Report of Dr. Tamás Budavári Regarding Infringement Of U.S. Patent No. 8,737,961 by Google LLC dated March 29, 2023 |
| 5 | Excerpted Transcript of Dr. Tamás Budavári dated May 25, 2023 |
| 6 | Plaintiff's Objections and Responses to Google's First Set of Requests for Production |
| 7 | September 15, 2021 Correspondence regarding discovery from WSOU to Google |
| 8 | Plaintiff's Objections Google's Rule 30(b)(6) Deposition Notice |
| 9 | Excerpted Deposition Transcript of Mr. Craig Etchegoyen |
| 10 | Excerpted Deposition Transcript of ████████████ |
| 11 | Plaintiff' 3rd Supplemental Rule 26(a) Disclosures |

*__* Emphasis and highlighting added throughout unless indicated otherwise.__*

*__** Deposition objections removed unless indicated otherwise__*.

██████████████████████████

## I.     INTRODUCTION

WSOU's damages expert Mr. Justin Blok submits that WSOU is entitled to a ██████ ████████████. He uses four steps to calculate this ██████████. In none of those steps does Mr. Blok actually value the accused functionality. Instead, Mr. Blok relies on non-accused products and features in every step. In short, Mr. Blok never conducts an apportionment specific to the accused functionality. His damages opinion simply is not tied to the facts of this case.



This is not an issue of weight. Rather, Mr. Block's methodology violates the fundamental principle that "the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, ***and no more***." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Mr. Blok's failure to apportion at any step renders his opinion unreliable and inadmissible.

Alarmingly, Mr. Blok also leaves his ████████████████████████████

███████████████████████

████████████   Before Mr. Blok can present such significant figures to the jury, Rules

702 and 104(a) require a rigorous analysis of whether Mr. Blok "carefully tie[d] proof of damages

to the claimed invention's footprint in the market place."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594

F.3d 860, 869 (Fed. Cir. 2010).  By his own admission, Mr. Blok did not do so.  Mr. Blok admits

████████████████████████████████:



Ex. 1, Blok Dep. Vol. 2, 31:6-22 and 33:8-17.

████████████████████████████, Mr. Blok cannot

(and did not) "carefully tie proof of damages" to the '961 patent.  Such opinions that dangerously

skew the damages horizon for the jury should be excluded.

## II.   BACKGROUND

Mr. Blok calculates a ██████████████████ using four steps.[1]  Blok Vol. 2,

39:18-40:6.  He identifies Google and ██████ as the parties to the hypothetical negotiation that he

opines would occur in ████████.  Ex. 2, Blok Rpt. ¶ 51.  As detailed below, none of Mr. Blok's

---

[1]   Mr. Blok calculated this ███████████████████████████████

████████████████████████████████████████

████████████████



four steps is actually based on the accused functionality in this case.

    **A.**    

There is no dispute that ███████████████████████████████████████
████████████████████ in this case.  Google Maps, GMM, and Google Ads are three

separate products.  Each of these products contains hundreds of components.  Google Maps is a

free online mapping platform.  GMM is the mobile version of Google Maps, made available as a

free mobile app.  Google Maps and GMM are not synonymous.  For example, Mr. Blok explains

that ███████████████████████████████████.  Blok Dep. Vol.

2, 14:13-16 and 15:6-12.  Google Ads is an online advertising program.

There is no dispute that the ████████████████████.  There also is no

dispute that GMM is a multi-component product that includes accused and non-accused

functionalities.  *Id.* at 25:13-24, 23:1-4, 20:10-18.   Mr. Blok defines ██████████████

████████████████ Blok Rpt. ¶ 30.  He then defines the accused functionality as ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *Id.*

However, WSOU's technical expert, Dr. Budavári defines the accused functionality as

███████████████████████████████ He did not identify

GMM as a whole as infringing the '961 patent. ██████████████████████████

████████████████████████████████████████████

Although Dr. Budavári mentions other Google products in passing in his report, he performs no

---

[2]    As discussed in Google's Motion for Summary Judgement of Non-Infringement filed
concurrently herewith, Dr. Budavári did not perform an infringement analysis for every element
of the asserted claims for Popular Times and Timeline.

███████████████████████████████████████

element-by-element infringement analysis for any products other than █████████████████

█████████

  Google produced ████████████████ for ████████████████ in this

case.  Mr. Blok admits he did not address ████████████████████████ in his report

because ██████████████████████████████████████████████████████

████████████████ Blok Dep. Vol. 2, 32:13-18.

  **B.**  **First Step: Mr. Blok Uses ████████████████████ As His Starting Point Without Making Any Deductions For The Accused Functionality**

  Mr. Blok starts his calculations using ████████████████████████████.

Blok Rpt. ¶ 172; Blok Dep. Vol 2, 45:10-12.  Mr. Blok admits this ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at ¶ 172. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Mr. Blok admits his starting point encompasses this common scenario.  *Id.*  Yet

Mr. Blok makes no deductions to account for such irrelevant ████████.

  **C.**  **Second Step: Mr. Blok Flips ████████████████████████**

████████████████████

  For his second step, Mr. Blok multiplies his starting point of ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Blok Rpt. at Ex.9.

As shown above, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ was arbitrary and not tied to the

value of the '961 patent.  Blok Dep. Vol. 2, 71:19-72:18.

**D.    Third Step: Mr. Blok's ██████████████████ Is Based Entirely
On Non-Accused Products**

For his third step, Mr. Blok applies a ████████████████████ Blok Rpt. at

Ex. 4.  Mr. Blok states that he uses ██ ██ ██████████████████████ Blok

████████████████████████████████████████████████ Blok

████████████████████████████████

Rpt. ¶ 208 (original emphasis).   Mr. Blok relies on two Google documents for his ██████████

████████████ factor.   Critically, neither document has anything to do with the accused

functionality.

Mr. Blok relies on the following excerpt from the first Google document that mentions

████████████████████████████████████



Blok Rpt. ¶¶ 213-215 (citing to Ex. 3, GOOG-WSOU585-00222347-406 at 365).

This information about █████████████████████████████████

████ ████████████████████████████████████

██████████████████████████████████████.[3]  Ex.

---

[3]     As discussed in Google's Motion to Exclude Testimony of Dr. Budavári filed concurrently

██████████████████████████████████

4, Budavári Rpt. ¶ 213.  Dr. Budavári's report does not provide any infringement analysis of ███.

Mr. Blok relies on the second Google document to calculate another ██████████

██████ factor.   He simply selects ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

Blok Rpt. ¶ 212.

Mr. Blok relies on these ████████████████████████████

██████████████████████████████████████████.[4]  Blok Rpt. ¶ 211.

But there is no dispute that these ████████████████████████.   Ex. 5, Budavári

---

herewith, Dr. Budavári only offers a cursory, one-paragraph opinion on ████ that does not meet the reliability tests of Rules 702 and 104(a) by a preponderance of the evidence.

[4]   As discussed in Google's Motion to Exclude Testimony of Dr. Budavári filed concurrently herewith, Dr. Budavári also offers a cursory opinion on these ████████ that does not meet the reliability tests of Rules 702 and 104(a) by a preponderance of the evidence.

██████████████████████████████

Dep., 196:15-198:23; 199:25-200:19.   Even though these ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ Blok

Rpt. ¶ 215.

     **E.**     **Fourth Step: Mr. Blok's** ██████ **"Split Of Benefits" Is Based Entirely On Non-Accused Products**

For Mr. Blok's last step, he multiplies by ████████████████████████████

████████████████████████████████████████████████. Blok Rpt. ¶¶

232-237.  Mr. Blok relies on two data points for this ██████ split.  For his first data point, Mr. Blok

relies on publicly reported net income and invested capital for Google's parent company—

Alphabet Inc.—to calculate a ███████████████████████ for Alphabet Inc.:



Blok Rpt. at Ex. 10.  Mr. Blok admits ███ █████████ ████████████████████████████

██████████████████████████████. Blok Dep. Vol. 2, 158:16-25.

██████████████████████████████████████

For his second data point, Mr. Blok relies on news articles about Google app developer commissions.  Mr. Blok contends these articles indicate that "Google allows developers to commercialize their mobile applications in exchange for commissions equal to between 15% and 30% of the revenues."  Blok Rpt. ¶ 235.  Mr. Blok, however, ████████████████████████ ██████████████████████████████████  Blok Dep. Vol. 2, Blok Dep. Vol. 2, 159:5-19. ████████████████████████████████████████████ ████████████████████████████████  *Id.*

Based solely on these two data points that have nothing to do with the accused functionality, Mr. Blok then states he ████████████████ ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████"  Blok Rpt. ¶ 237.

## III.    LEGAL STANDARD FOR EXPERT ADMISSIBILITY

"Judicial gatekeeping is essential" to protect jurors from unreliable expert opinions.  Fed. R. Evid. 702, Advisory Committee note on 2023 amendment.  Both Federal Rules of Evidence 702 and 104(a) govern this gatekeeping function.  Rule 702 requires that expert testimony be "the product of reliable principles and methods."  Fed. R. Evid. 702(c).  To be admissible, Rule 104(a) requires that expert testimony satisfy Rule 702's requirements for reliability by a preponderance of the evidence.

The forthcoming 2023 amendments to Rule 702 clarify that the preponderance standard applies to current Rule 702 because "jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion." Fed. R. Evid. 702, Advisory Committee note on 2023 amendment.  "The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the

██████████████████████████

technical issues and policy concerns addressed by the Federal Rules of Evidence have been

afforded due consideration." *Bourjaily v. U.S.*, 483 U.S. 171, 175 (1987).

## IV.   MR. BLOK'S FOUR STEPS SHOULD BE EXCLUDED AS UNRELIABLE BECAUSE HE NEVER PERFORMS AN APPORTIONMENT OF THE ACCUSED FUNCTIONALITY

Mr. Blok calculates a ████████████████████ based on the following four steps.

Blok Rpt. at Ex. 4.  As discussed below, Mr. Blok does not actually apportion the value of the

accused functionality in any of these steps:



### A.   Mr. Blok's First Step Should Be Excluded Because He Neither Apportions Nor Properly Applies The Entire Market Value Rule

For his starting point, Mr. Blok relies on ████████████████████

████.  Blok Rpt. at ¶ 172.  Where, as here, damages are calculated based on the entire value of

████████████████████, the Entire Market Value Rule ("EMVR") applies.  Before

Mr. Blok can rely on ████████████, however, the EMVR requires proof that the



"patented feature drives the demand for an entire multi-component product." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).  "In the absence of such a showing, principles of apportionment apply."  *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (vacating $368 million verdict for failing to properly apply EMVR or apportion).  Mr. Blok does neither here.

As a threshold matter, Mr. Blok admits ███████████████████████████████████ ████████████████████████:

Blok Dep. Vol. 2, 25:13-24; 23:1-4.

Mr. Blok also admits his starting point of ██████████████████████████████ ████████████.  As Mr. Blok explains in his report, his starting point broadly encompasses ████████████████████████████████████████████████████████████████████ ███████  Blok Rpt. ¶ 172.  But as Mr. Blok himself acknowledges, the accused functionality is limited to ████████████████████████  *Id.* at ¶ 30.  In other words, Mr. Blok's ██████ ████████████████████████████████████████████████████████████████████

██████████████████████████████

█████████████████████████████████. By contrast, the '961 patent does not cover this common scenario. Importantly, Mr. Blok did not subtract the value of such non-accused features from his starting point.

Instead, Mr. Blok contends he apportioned his starting point by ████████████ ████████████████████████████ *Id.* at 41:17-22. But Google Maps is a separate product than GMM and is not accused of infringement in this case. *See supra* Section III.B. Further, Mr. Blok admits ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ is akin to excluding Apple iphone revenue from ipad revenue. Those are two different products and therefore excluding revenue from one is not an apportionment at all. Even WSOU's technical expert Dr. Budavári agrees:



Blok Dep. Vol. 2, 20:10-18.

By not apportioning his starting point, Mr. Blok applies the EMVR without even attempting to make the requisite showing that the accused functionality drives consumer demand for ████████████. "[I]n any case involving multi-component products, patentees may not calculate damages based on sales of the entire product . . . without showing that the demand for the entire product is attributable to the patented feature." *LaserDynamics*, 694 F.3d at 67-68. Here, Mr. Blok cannot make any such showing because he does not know which specific features in ██████



are accused of infringement and which are not:



Blok Dep. Vol. 2, 31:6-22.

Moreover, Mr. Blok contradicts himself—sometimes saying Dr. Budavari told him

(*id.* at 31:6-22).  Mr. Blok's internally inconsistent testimony renders his

opinion entirely unreliable.  And regardless of which statement is correct, Mr. Block did not do

any necessary apportionment.

Mr. Blok denies that he needs to make a showing that the accused functionality

. Blok Rpt. ¶ 206.  Despite

claiming a

. Blok Dep. Vol. 2, 39:18-40:6  and

48:22-25

. But that is exactly what Mr. Blok is doing here.  Mr.

Blok's Exhibit 4 plainly shows that he is applying a

:

Blok Rpt. at Ex. 4.  Speaking to this issue, the Federal Circuit has rejected similar testimony. "Whether called 'product value apportionment' **_or anything else_**, the fact remains that the royalty was expressly calculated as a percentage of the ███████████████ rather than [the accused functionality] alone.  This, **_by definition, is an application_** of the entire market value rule." *LaserDynamics*, 694 F.3d at 68.

"Regardless of the chosen royalty rate, one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only." *LaserDynamics*, 694 F.3d at 67-68.  Mr. Blok's starting point is inadmissible for these same reasons. *See also Via Vadis, LLC v. Amazon.com, Inc.*, 2022 WL 23351, at *3 (W.D. Tex. 2022) (excluding plaintiff's starting point as a violation of the EMVR "notwithstanding subsequent apportionment" because the violation rendered the starting point "neither reliable nor relevant to calculation of a reasonable royalty damages")

Mr. Blok's failure to apportion and misapply the EMVR in Step 1 "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (noting that "the $19 billion cat was never put back into the bag," and that neither cross-examination nor a curative jury instruction could have offset the resulting unfair prejudice).

For these reasons, Mr. Blok's first step does not meet the reliability tests of Rules 702 and

████████████████████████████████████████

104(a) by a preponderance of the evidence and at least the following paragraphs and exhibits of his report should be stricken: ¶¶ 8, 14, 30, 35-36, 43,166-174, 189-190, 196-198, 229 and Exhibits 4-6, 9.

    **B.**    **Mr. Blok's Second Step Regarding █████████████████ Should Be Excluded Because He Concedes It Is Untethered To The Value Of The '961 Patent**

Particularly in the area of patent damages, expert opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993). Damages experts therefore must "carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com*, 594 F.3d at 869. Mr. Blok's ███████████████ step is exactly the type of "speculative and unreliable evidence divorced from proof of economic harm linked to the claimed invention" that warrants exclusion under Rules 702 and 104(a). *Id.* at 868.

For this step, Mr. Blok multiplies his starting point of ████████████████████████ ████████████████████████████████████████████████████████████████ Blok Rpt. ¶ 176. But this █████ incremental profit margin has no connection to the accused functionality. These percentages do not appear anywhere in Google's actual financial documents. Instead, ████████████████████████████████████████████████████████████████ ████████████████████████████████████. Blok Rpt. at Ex. 9.

    ████████████████████████████████████████████████

████████████████████████████████████████████



*Id.*

Importantly, Mr. Blok admits this removal was arbitrary.  He explains that his reason for



Blok Dep. Vol. 2, 71:19-72:18.

In short, Mr. Blok concedes he does not know one way or the other whether any of the

"[N]othing

in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522

U.S. 136, 146 (1997).

Mr. Blok's second step has "simply too great an analytical gap" to meet the reliability tests

of Rules 702 and 104(a) by a preponderance of the evidence. *Id.* For these reasons, at least the

following paragraphs of Mr. Blok's report should be stricken: ¶¶ 8, 164-177, 196, 208, 229 and

Exhibits 4, 5, 9.

> **C.  Mr. Blok's  Third  Step  Regarding  A ▮▮▮▮▮▮▮▮
> Should Be Excluded Because It Is The Opposite Of Apportionment**

"No matter what the form of the royalty, a patentee must take care to seek only those

damages attributable to the infringing features." *VirnetX*, 767 F.3d at 1326.  As *VirnetX* makes

clear, "only theories comporting with settled principles of apportionment [are] allowed to reach

the jury*." Id.* at 1328.  Mr. Blok's ▮▮▮▮▮▮▮▮ violates this governing

principle and should not reach the jury.

███████████████████████████████████

Mr. Blok's report states that this technical apportionment factor reflects ██████

████████████████████████████████████████████████████████████

████████  Blok Rpt. ¶ 208.  But instead of valuing the accused functionality, Mr. Blok does the

opposite.  Mr. Blok offers a ███████████████████ for his ████████████ factor.

Blok Rpt. at Ex. 4 and ¶ 208.  Both percentages are taken directly from non-accused products.  The

█████ is taken from the following page of a Google presentation.  As the title indicates, the

information on this page is about ████████████████████████████████

████████████



Blok Rpt. ¶¶ 213-215 (citing to Ex. 2, GOOG-WSOU585-00222347-406 at 365).

WSOU's technical expert Dr. Budavári admits that ████ is not an accused functionality.

Instead, he opines that ██████████████████████████████████████

█████.  Ex. 3, Budavári Rpt. ¶ 213.  But Dr. Budavári performs no infringement analysis of

██████████ in his report.

Mr. Blok testified that he does not know one way or the other whether ████ is an accused

█████████████████████████████████████

functionality or not—further confirming that his reliance on ████████████ ████████

████████ factor is unreliable and inadmissible.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Blok Dep. Vol. 2, 140:10-19.

Likewise, Mr. Blok takes his ████████████████ directly from ████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Blok Rpt. ¶ 212. Mr. Blok contends he relied on these ████████████████████

████████████████████████████████████████████████████████
████████████████████████████████:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



Budavári Dep., 196:15-198:23; 199:25-200:19.



Nor can Mr. Blok rely on these non-accused features as "proxies" for the accused functionality. The Federal Circuit made clear in *Finjan v. Blue Coat* that "non-infringing features" are ***not a proxy*** for the incremental value of the patented technology" unless a "[f]urther apportionment" was performed "to reflect the value of the patented technology compared to the value of the unpatented elements." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018).

. Even under some undisclosed "proxy" theory, Mr. Blok's

opinions violate fundamental principles of apportionment and should not reach the jury. *ResQNet.com*, 594 F.3d at 869.

███████████████████████

For these reasons, Mr. Blok's third step does not meet the reliability tests of Rules 702 and 104(a) by a preponderance of the evidence and at least the following paragraphs of his report should be stricken: ¶¶ 8, 191-194, 208-216 and Exhibit 4.

### D.   Mr. Blok's Fourth Step Regarding A ████ Split Should Be Excluded Because It Is Indistinguishable From The Rule Of Thumb And Based Entirely On Non-Accused Features

In *Uniloc*, the Federal Circuit held as a matter of law that "the 25 percent rule of thumb is a fundamentally flawed tool" that is "inadmissible under *Daubert* and the Federal Rules of Evidence." 632 F.3d at 1311.  By "hypothesizing that 25% of the value of the product would go to the patent owner and the other 75% would remain with" the defendant, the 25% rule of thumb "fails to tie a reasonable royalty base to the facts of the case at issue." *Id.* at 1311, 1315.  In this case, Mr. Blok's 30-70 split is indistinguishable from the banned 25% rule of thumb and should likewise be excluded as a matter of law.

Here, Mr. Blok relies on two generic data points for his ████ split that have nothing to do with the accused functionality.  First, he relies on publicly reported net income and invested capital for Google's parent company—Alphabet Inc.—to calculate a ██████████████████████ ████████ for Alphabet Inc. as a whole.  Blok Rpt. at Ex. 10.  Mr. Blok concedes this ██████████ ████████████████████████████████████████████:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

21

Blok Dep. Vol. 2, 159:5-19.  Like the 25% rule of thumb, Mr. Blok's ███ split is not even remotely related to the accused functionality.

For his second data point, Mr. Blok relies on news articles about app developer commissions of 15%-30% from Google's app store.  Blok Rpt. ¶ 235.  Mr. Blok concedes he ███ ████████████████████████████████████████████████████████ ████████████  Blok Dep. Vol. 2, 162:21-163:3.

Moreover, the ████ ███ split based on app developer commissions from Google's app store was squarely rejected in *Sonos v. Google*.  There, the court held this ██████████ "strains credulity" and is a "sleight of hand and smoke and mirrors":

> **[I]t is unclear what connection this revenue split had to the facts in this case beyond that this case happens to involve Google and that Google happens to own an app store.**  Indeed, applying this 70%/30% split appears almost as arbitrary as applying the "25 percent rule of thumb" that the Federal Circuit rejected in *Uniloc*. . . .
>
> There is no evidence on this record that Google would agree to such terms in the context of patent licensing broadly or in the context of the two specific patents-in-suit. ***A patent licensing agreement is fundamentally different than a commercial arrangement for commissions based on the use of app store infrastructure.*** Because patent owners and app developers enter their respective negotiations with different goals, ***it strains credulity that they would arrive at the same revenue split*. . . .**
>
> The imagination of trial lawyers and their paid "experts" never sleeps in search of damages theories that reach stratospheric (or subterranean) levels yet, at first blush, have surface plausibility. It is incumbent on district judges, as gatekeepers, to determine whether surface plausibility is really sleight of hand and smoke and mirrors. ***This was sleight of hand and smoke and mirrors.***

*Sonos, Inc. v. Google LLC*, 2023 WL 3933071, *30 (N.D. Cal. Jun. 9, 2023).

Mr. Blok offers the ████████ split and opinion, which should be excluded for the same reasons set forth in *Sonos* and *Uniloc*.  Mr. Blok's fourth step  does not meet the reliability tests of Rules 702 and 104(a) by a preponderance of the evidence and at least the following

██████████████████████████████████

paragraphs of his report should be stricken: ¶¶ 8, 208-239 and Exhibits 4 and 10.

**V.      THIS COURT SHOULD PRECLUDE MR. BLOK FROM TESTIFYING ABOUT INFORMATION FOR WHICH** ████████████████████████████████
████████████████████████

     **A.      This Court Should Exclude Mr. Blok's Testimony About Plaintiff's** ████████
████████████

For the first *Georgia Pacific* factor, Mr. Blok addresses various licenses that ████████
██████████████████████████████████. Blok Rpt. ¶¶ 82-100.  Mr. Blok attempts

to dismiss the applicability of those ████████████████████████████████████

██████████████████████. *Id.*  Because Plaintiff denied Google any document or

deposition discovery about ██████████████████████, this Court should preclude Mr.

Blok from offering any testimony about those ████████.[5]

Responding to document requests, Plaintiff asserted that ██████████████████████

██████████████████████████████ Ex. 6 at 4-6.  In correspondence, Plaintiff insisted

that ████████████████████████████████████████████████

████████████████████████████████████████████.  Ex. 7 at 1-2.

Plaintiff further stated that it ██████████████████████████████████████

████████████████████████████████████ Ex. 8 at 29-30, 35-

36.  At his deposition, Mr. Etchegoyen doubled-down on that position, stating that ████████

██████████████████████████████ Ex. 9 at 130:23-24.

Having purposefully blocked any discovery about ██████████████, Plaintiff cannot

have its expert testify about the precise issue.  In such circumstances, Rule 37 is clear and self-

executing:  "If a party fails to provide information … as required by Rule 26[e], the ***party is not***

---

     [5]      Google makes similar arguments in its Motion to Exclude WSOU's damages expert Mr. Perry's testimony in the -572 and -584 cases.

███████████████████████████████████

*allowed to use that information* … to supply evidence … at a trial." Fed. R. Civ. P. 37(c).  A straightforward application of this rule bars any testimony about negotiations.  Accordingly, this Court should exclude any testimony from Mr. Blok regarding Plaintiff's licensing negotiations, including such testimony found at least in ¶¶ 82-100 of his report.

      **B.**     **The Court Should Exclude Mr. Blok's Testimony About** █████████ ███████ **Based On His Conversations With And Opinions From** ███████████

Mr. Blok identifies Google and ████ as parties to the hypothetical negotiation.  Blok Rpt. ¶ 51.  Mr. Blok also opines about ████████████████████.  *Id.* at ¶¶ 60-81, 222-223.  Mr. Blok—███████████████████████████████████████████ ████████████—relies on his conversations with ████████████ (*id.* at ¶¶ 222-223), and ██████████ opinion about ██████████████████████ at the time of the hypothetical negotiation.  *Id.*  Expert testimony must be both reliable and relevant.  Fed. R. Evid. 702.  Here, Mr. Blok's testimony relying on conversations with and testimony from ████████████ is improper and should be excluded for at least three reasons.

First, any information from ████████████ is not relevant.  ████████████ never worked at ████.  Ex. 10 at 89:10-13.  Second, any opinions that ████████████ conveyed to Mr. Blok are unreliable and inadmissible.  Plaintiff disclosed ████████████ as a fact witness, not an expert. (Ex. 11 at 2; Ex. 10 at 89:6-9).  ████████████ never submitted a report in this case.  In fact, ████ ████████████ admits that he is not an expert in the field nor designated as an expert in this case.  Ex. 10 at 55:8-11, 59:3-8.  Accordingly, it is improper for Mr. Blok to rely on or testify about any opinion that ████████████ conveyed to him.

Third, and given the two reasons above, Plaintiff cannot "smuggle[] inadmissible opinion testimony past the expert-disclosure and expert-discovery obligations imposed by the discovery and evidentiary rules by offering ████████████ as a lay witness," which would "unfairly

███████████████████████████████

influence the jury." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 267 (5th Cir. 2022). Yet that is what Mr. Blok's testimony ██████████████████████ attempts to do.

Accordingly, this Court should exclude any testimony from Mr. Blok regarding ██████ ██████████████ based on conversations with and opinions from ███████████, including such testimony found at least in ¶¶ 222-223 of his report.

## VI.   CONCLUSION

From start to finish, Mr. Blok did not perform an apportionment of the accused functionality. Google therefore respectfully requests exclusion of Mr. Blok's damages opinion because they do not pass the reliability and preponderance tests of Rules 702 and 104(a).

Dated:  June 28, 2023                        Respectfully submitted,

By: */s/ T. Gregory Lanier, with permission by Shaun W. Hassett*
_____
Michael E. Jones (Texas Bar 10929400)
Shaun W. Hassett (Texas Bar 24074372)
**POTTER MINTON, P.C.**
102 North College, Suite 900
Tyler, Texas, 75702
(903) 597-8311
(903) 593-0846 facsimile
mikejones@potterminton.com
shaunhassett@potterminton.com

T. Gregory Lanier (*pro hac vice*)
(California Bar No. 138784)
**JONES DAY**
1755 Embarcadero Road
Palo Alto, California 94303
(650) 739-3939
(650) 739-3900 facsimile
tglanier@jonesday.com

Matthew S. Warren
(California Bar No. 230565)
**WARREN LEX LLP**
2261 Market Street, No. 606

San Francisco, California 94114
(415) 895-2940
(415) 895-2964 facsimile
matt@warrenlex.com

*Attorneys for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

/s/ *T. Gregory Lanier*
T. Gregory Lanier