# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,** | |
| *Plaintiff,* | **Case No.: 6:20-cv-00585-ADA** |
| **v.** | **JURY TRIAL DEMANDED** |
| **GOOGLE LLC,** | ███████████████ |
| *Defendant.* | |

**PLAINTIFF'S OPPOSED *DAUBERT* MOTION TO EXCLUDE CERTAIN DAMAGES OPINIONS IN THE EXPERT REPORT OF W. CHRISTOPHER BAKEWELL, OR IN THE ALTERNATIVE STRIKE PORTIONS OF THE EXPERT REPORT OF W. CHRISTOPHER BAKEWELL**

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................................... 1

II. RELEVANT FACTS ................................................................................................ 1

    A.    The '961 Patent and Brazos' Claims ..................................................... 1

    B .    █████████████████████████████████ ............................. 2

    *i.*    ████████████ ....................................................... 2

    *ii.*    ████████████ ..................................................... 3

    *iii.*    ██████████████ ................................................ 4

III. LEGAL STANDARDS ........................................................................................... 6

    A.    Requirements for Reliable Expert Testimony ....................................... 6

    B.    Patent Damages ..................................................................................... 7

IV. ARGUMENT ........................................................................................................... 8

    A.    Mr. Bakewell's Opinions that Do Not Assume Infringement are Unreliable ........ 8

    B.    Reliance on Agreements With No Technological or Economic Comparability is Prohibited .......................................................... 10

    *i.*    ███████████ ........................................................... 12

    *ii.*    ████████████████████ ................................... 13

V.  CONCLUSION ....................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)................................................................................ 8

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993)......................................................................................... 6

*Endress Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.*,
  892 F. Supp. 1123 (S.D. Ind. 1995), aff'd, 122 F.3d 1040, 43 U.S.P.Q.2d 1849 (Fed. Cir.
  1997) .................................................................................................... 15

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010).................................................................... 7, 11, 12

*I4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ...................................... 7

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012)) ....................................................................... 6

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ........................................................................ 6

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999).................................................................................. 6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)....................................................................... 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)................................................................. 7, 12, 15

*Mathis v. Exxon Corp.*,
  302 F.3d 448 (5th Cir. 2002) ........................................................................ 6

*MLC Intellectual Property LLC v. Micron Technology Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021) .................................................................. 14, 15

*Moore v. Ashland Chem. Inc.*,
  151 F. 3d 269 (5th Cir. 1998). ...................................................................... 6

*Multimedia Patent Trust v. Apple, Inc.*,
  No. 10-CV-2618-H KSC, 2012 WL 5873711 (S.D. Cal. Nov. 20, 2012)........................... 8, 12

*Opticurrent, LLC v. Power Integrations, Inc.*,
 No. 17-cv-03597-WHO, 2018 U.S. Dist. LEXIS 215907 (N.D. Cal. Dec. 21, 2018)............... 8

*ResQNet.com, Inc. v. Lansa, Inc.*,
 594 F.3d 860 (Fed. Cir. 2010)........................................................................................ 7, 11, 12

*Spectralytics, Inc. v. Cordis Corp.*,
 650 F. Supp. 2d 900 (D. Minn. 2009)...................................................................................... 15

*Trell v. Marlee Electronics Corp.*,
 912 F.2d 1443 (Fed. Cir. 1990)............................................................................................... 15

*Via Vadis, LLC v. Amazon.com, Inc.*,
 No. 1:14-cv-00813-LY, 2022 WL 23341 (W.D. Tex. Jan. 3, 2022) ......................................... 6

*VirnetX v. Cisco Systems, Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014)............................................................................................... 11

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
 No. 16-cv-13456, 2019 U.S. Dist. LEXIS 124062 (E.D. Mich. Jul. 25, 2019)............... 7, 8, 10

**Statutes**

35 U.S.C. § 284................................................................................................................................. 7

## I.  INTRODUCTION

WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos") hereby moves, pursuant to Federal Rules of Evidence 702, 403 and 408, to exclude or in the alternative, strike, certain opinions of Defendant Google LLC's ("Google") expert report of W. Christopher Bakewell (the "Bakewell Report"), regarding a lump sum royalty pertaining to the infringement of the patent-in-suit (the "961 patent")  for the following reasons: (1) Mr. Bakewell's opinions assume Google's narrow view of the claims of the '961 patent and do not assume infringement, rendering them unreliable; and ███████████████████████████████████ ███████████████████████████████████████████

## II. RELEVANT FACTS

### A.    The '961 Patent and Brazos' Claims

The '961 Patent, titled "Method and Apparatus for Incrementally Determining Location Context and issued on May 27, 2014, is generally directed to determining the location context of mobile devices based on available wireless signal data around those devices. Ex. 1 (Blok Report, p. 13, ¶ 24 and p. 14, ¶ 26). At that time, there were several drawbacks to the primary method that provided the geolocation of a mobile device ("GPS"), that the '961 patent provided a novel solution to by describing practical and scalable techniques to use multiple wireless signals (even when GPS is not present) to accomplish this. *Id*.; *see also* Ex. 1 (Blok Report, p. 14, ¶¶ 26 – 27).

Brazos has alleged that Google infringed the '961 patent as a result of manufacturing, selling, using, offering for sale, and/or importing in the U.S. certain products and services that are used to incrementally determine the location context of a mobile device. Ex. 1 (Blok Report, p. 14, ¶ 26). Brazos alleges that Google has infringed the '961 patent through Google Maps Mobile ("GMM" or the "Accused Instrumentality"), which includes the ability ██████████████████ ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ (the "Accused Functionality"). Ex. 1 (Blok Report, p. 16, ¶ 30).  In addition, Brazos

designated Dr. Tamas Budavari as an expert to determine infringement of the asserted claims of

the '961 patent. Dr. Budavari provided a detailed description of his understanding of the accused

instrumentality which infringes the '961 patent.  Further, according to Dr. Budavari, one of "the

primary benefit[s] of the Patent-in-Suit is that a device or a system practicing the teachings of the

Patent-in-Suit is able to more reliably and consistently identify the location context of a mobile

device by overcoming the limitations and issues associated with GPS alone." Ex. 1 (Blok Report,

p. 15, ¶ 29).

Google designated Gregory Welch, Ph.D. to provide opinions on whether GMM infringes

the asserted claims of the '961 patent. Ex. 2 (Bakewell Report, ¶22). Ignoring Brazos' infringement

contentions and Dr. Budavari's report, Dr. Bakewell accepted Dr. Welch's narrow view of the

accused instrumentality and thus infringement: ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ at ¶49.

This narrow interpretation is the proverbial "drop in the bucket" view of the scope of Brazos'

infringement contentions.

**B.** ████████████████████████████████████████████████

*i.* ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

2

*ii.*

███████████████████████████████████████████████

████████████████████████████████████

░░░░░░░█████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

░░░░░░░█████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

*iii.*     ██████████████████

░░░░░░░██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



## III. LEGAL STANDARDS

### A.      Requirements for Reliable Expert Testimony

Federal Rule of Evidence 702 creates a "gatekeeping role" for district courts, "tasking them with 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Via Vadis, LLC v. Amazon.com, Inc*., No. 1:14-cv-00813-LY, 2022 WL 23341, at *1 (W.D. Tex. Jan. 3, 2022) (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993)). Rule 702 sets forth distinct requirements for the admission of expert testimony: (i) the expert must be qualified, (ii) the opinion must be reliable, and (iii) the expert's opinion must relate to the facts of the case. *See id*.; *see also Moore v. Ashland Chem. Inc*., 151 F. 3d 269, 276 (5th Cir. 1998). "The reliability prong mandates that expert opinion be grounded in the methods of procedure and science" and "be more than unsupported speculation or subjective belief." *Via Vadis*, 2022 WL 23341, at *1 (quoting *Johnson v. Arkema, Inc*., 685 F.3d 452, 459 (5th Cir. 2012)); *see also Daubert*, 509 U.S. at 590.  Because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice against probative force under [Federal Rule of Evidence] 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal citation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion . . ." *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 355 (5th Cir. 2007). In short, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Id*.

Google, as the "party offering the expert [,] must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." *Mathis v. Exxon Corp*., 302 F.3d 448, 459–60 (5th Cir. 2002); *Moore.*, 151 F.3d at 276 (proponent of the expert has the burden of establishing

admissibility).

### B.    Patent Damages

A patentee is entitled to "damages adequate to compensate for the infringement, but in no

event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C.

§ 284. The most common approach to determining a reasonable royalty is through a hypothetical

negotiation, which "attempts to ascertain the royalty upon which the parties would have agreed

had they successfully negotiated an agreement just before infringement began." *Lucent Techs.,*

*Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The hypothetical negotiation construct

tries "to recreate the ex ante licensing negotiation scenario and to describe the resulting

agreement," based upon the assumption that the patent claims are valid and infringed. *Lucent*, 580

F.3d at 1325. A court performing its gatekeeping function should ensure that an expert's license

comparability analysis meets the "minimum threshold" of using a "sound" methodology and relies

upon evidence "sufficiently related to the case at hand." *I4i Ltd. P'ship v. Microsoft Corp.*, 598

F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

"[F]or purposes of calculating damages, a damages expert must assume that the patent in

suit is valid and infringed." *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-cv-

13456, 2019 U.S. Dist. LEXIS 124062, at *12-13 (E.D. Mich. Jul. 25, 2019) (excluding damages

expert's opinion that positioned accused infringing product as alleged non-infringing alternative).

A party seeking to "use . . . past patent licenses under [*Georgia-Pacific*] factors 1 and 2 must

account for differences in the technologies and economic circumstances of the contracting parties."

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211-1212 (Fed. Cir. 2010) (citations

omitted); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010) ("the

district court erred by considering [certain at-issue] licenses to significantly adjust upward the

reasonable royalty without any factual findings that accounted for the technological and economic differences between those licenses and the [asserted] patent."). "Although the degree of comparability 'is a factual issue [] best addressed by cross examination and not by exclusion,' there must be some comparability to begin with." *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-WHO, 2018 U.S. Dist. LEXIS 215907, at *39 (N.D. Cal. Dec. 21, 2018) (quoting *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012)) (alteration in original). *See also Multimedia Patent Trust v. Apple, Inc.*, No. 10-CV-2618-H KSC, 2012 WL 5873711 at *9 (S.D. Cal. Nov. 20, 2012). ("[Plaintiff] has failed to provide any evidence showing how the [at-issue] license is technologically comparable to the hypothetical license at issue in this case.")

Mr. Bakewell's report fails to meet the minimum threshold of using a sound methodology, fails to fully assume the patent in suit is infringed, and fails to rely upon evidence sufficiently related to the case at hand.  Therefore, the entirety of the Bakewell Report should be excluded by this Court. Alternatively, the damages opinions relating to or relying upon: 1) Google's narrow view of the claims of the '961 patent and do not assume infringement, and 2 ████████████ ████████████████████████████████ should be excluded because they do not meet the minimum standards set forth regarding entitlement to patent damages.

## IV. ARGUMENT

### A. Mr. Bakewell's Opinions that Do Not Assume Infringement are Unreliable

Mr. Bakewell admits that, in his role as Google's damages expert, he is "required to assume that the patent-in-suit is valid, enforceable, and infringed by the hypothetical licensee," and that "[i]f Brazos asserts that Google infringes a particular patent claim, [he has] to assume it's infringed." Ex. 7 (Bakewell Dep. Tr.) at 29:11-14, 31:4-7. Courts have in fact excluded damages

expert opinions that do not properly adopt the scope of infringement as alleged by the plaintiff. *See, e.g.*, *Webasto.*, No. 16-cv-13456, 2019 U.S. Dist. LEXIS 124062, at *12 (excluding damages expert's opinion that positioned accused infringing product as alleged non-infringing alternative).

Mr. Bakewell's opinions assume the Defendant's narrow view of the claims of the patent, and thus the infringing functionality, in order to establish a narrowed scope of incremental benefit to minimize the royalty base at issue. In fact, Mr. Bakewell spends several paragraphs of his report relying on Google's technical experts, and repeatedly stating everything he "understands" that the '961 patent allegedly **is not** and **cannot do**, instead of accepting Brazos' claims of infringement. Ex. 2, (Bakewell Report, p. 12 - 14, ¶¶ 30 – 36). He calls the solution of the '961 patent "purported", and states that the drawbacks the '961 patent intended to address are "overstated by the '961 patent or incorrect." *Id*. at p. 12, ¶¶ 31 – 32. Mr. Bakewell continuously states that the technology the '961 patent intended to improve already existed at the time of the patent, and he condescendingly refers to the '961 patent as a "novel solution," clearly indicating that he did not find it novel at all. *Id*. at p. 12 – 13, ¶¶ 31 – 36. He goes so far as to disagree with the description of the '961 patent specifications. *Id*. at p. 13, ¶ 35.

Ultimately, Mr. Bakewell uses Dr. Welch's view of infringement to ███████████████ ████████████████████████████████████████████████████████████████ █████████████████████ Ex. 2, (Bakewell Report, p. 18, ¶ 49). Mr. Bakewell applies this narrow view in order to limit Brazos' potential damages. Ex. 2 (Bakewell report, p. 38, ¶117 – ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ p. 39, ¶ 123 – ██████████████████████ ████████████████████████████████████████████████████████████████

¶ 118 – "Blok does not identify a significant incremental economic benefit that is specific to the '961 patent;" ¶ 120 – "Blok has not demonstrated a connection between the '961 patent and the █████ ████████████████████████████ p. 99, ¶ 332 – "Blok disregards that Google also provided data showing…the █████████████████ modules…Combined together, only ████████████████████████████████████████████ ███████████████████ This improperly narrowed view undergirds both qualitative and quantitative analyses performed by Mr. Bakewell.

Courts have excluded damages expert opinions that do not properly adopt the scope of infringement as alleged by the plaintiff. *See, e.g.*, *Webasto*, No. 16-cv-13456, 2019 U.S. Dist. LEXIS 124062, at *12-13 (excluding damages expert's opinion that positioned accused infringing product as alleged non-infringing alternative).  Because Mr. Bakewell's entire report and opinions are premised on statements that indicate his understanding and belief that the '961 patent is far narrower than what Brazos has alleged, his opinions as a whole are inconsistent with Brazos' actual allegations of infringement in this case, and his opinions should be excluded here.

**B.      Reliance on Agreements With No Technological or Economic Comparability is Prohibited**

The testimony of Mr. Bakewell pertaining to separate agreements between ████████████ ████████████████████ is unreliable and should be excluded because the parties, economic circumstances and technology involved in the agreements is not comparable to the hypothetical negotiation that would have taken place in this case.

An important foundational requirement for basing a reasonable royalty on a prior license agreement is demonstrating sufficient economic and technological comparability of the prior license agreement under circumstances that tend to confirm that the value of the patented technology was considered and "apportioned" in the agreed royalty. *LaserDynamics, Inc. v.*

*Quanta Comput., Inc.*, 694 F.3d 51, 79-81 (Fed. Cir. 2012); *VirnetX v. Cisco Systems, Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79 (Fed. Cir. 2012).

Economic comparability may be evaluated by going through the *Georgia-Pacific* factors to compare and contrast the circumstances of the hypothetical negotiation and the prior agreement. Relevant circumstances may include the bargaining positions of and relationship between the parties, whether there was a settlement of litigation, the date of the prior agreement, the inclusion of other patents, technology, products or services in the prior agreement, the license structure (e.g., lump sum versus running royalty), the patentee's licensing policies, the royalty base and rate, the geographic and/or temporal scope of the license, exclusivity versus non-exclusivity of the license, the importance of the licensed technology in driving sales and usage of the licensed products, the profitability of the licensed products, etc. Similarly, technological comparability of the prior agreement must be evaluated, and differences accounted for. *VirnetX*, 767 F.3d at 1330-1331; *ResQNet.com,* 594 F.3d at 872-873; *Finjan*, 626 F.3d at 1211-1212 ; *Lucent Techs*, 580 F.3d at 1326-1339.  Demonstrating economic and technological comparability, and accounting for economic and technological differences, of prior license agreements has been a focus of recent decisions of the Federal Circuit, and it is clear that a damages expert who fails to identify and rely on "factual findings that account for the technological and economic differences between [reference] licenses and the [asserted] patent" is an error meriting exclusion. *See ResQNet.com*, 594 F.3d at 873. In particular, where an expert "fail[s] to provide *any evidence* showing how the [at-issue] license is technologically comparable to the hypothetical license at issue in this case," that expert simply cannot clear the bar presented by governing Federal Circuit caselaw. *Multimedia Patent Trust*, No. 10-CV-2618-H KSC, 2012

WL 5873711 at *9.  This total absence of underlying technical analysis regarding the following

agreements is precisely the situation in which Mr. Bakewell finds himself.

█      ████████████

In his discussion of the Market Approach, Mr. Bakewell also incorrectly claims that the

████████████████████  is  technologically  and  economically  comparable  to  the

hypothetical  negotiation  between  Brazos  and  Google,  and  that  it  provides  guidance  on  the

reasonable royalty in this case.  Ex. 2 (Bakewell Report, p. 56 - 60, ¶¶ 183 - 192).  However, Mr.

Bakewell merely makes a blanket statement that the ████████████ "involved the '961 patent,

which makes it comparable to the hypothetical license(s) from a technological point of view." *Id.*

at p. 56, ¶ 183.  Then, without any additional information about technical comparisons, he proceeds

with the  economic comparisons he believes to exist. *Id.* at p. 56, ¶ 183 — p. 59, ¶ 192.  This

contradicts the legal requirement that technological comparability of the prior agreement must

be evaluated, and differences accounted for. See *VirnetX*, 767 F.3d at 1330-1331; *ResQNet.com*,

594 F.3d at 872-873; *Finjan, Inc.*, 626 F.3d at 1211-1212 ; *Lucent Techs, Inc.*, 580 F.3d at 1326-

1339; *see also Multimedia Patent Trust, No. 10-CV-2618-H KSC, 2012 WL 5873711 at *9* (where

an expert "fail[s] to provide *any evidence* showing how the [at-issue] license is technologically

comparable to the hypothetical license at issue in this case," that expert simply cannot clear the

bar presented by governing Federal Circuit caselaw).

Aside from the absence of technological comparisons (which in itself renders Mr.

Bakewell's opinions on the ████████████unreliable), the economic comparisons are

lacking.  Specifically, ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  Ex. 4 (Etchegoyen Dep. Tr.) at 182:12-

21 ██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

Futhermore, the ████████████████████████████████████████

██████████████ Ex. 3 (WSOU-GOOALL-0002640 – 931, at 641).  Circumstances such as

this have been held to be incomparable to the licensing of a ████████████ as further discussed

*infra*. ████████████████████████████████ Ex. 4 (Etchegoyen Dep. Tr.) at 182:12-

21.

The overwhelming evidence shows that Mr. Bakewell did no real technological

comparison of the ████████████ and that the economic comparison analysis fail to show any

similarities. Therefore, Mr. Bakewell's reliance on the ████████████ is unfounded and his

opinions on the same should be excluded.

*ii.* ██████████████████████████

Mr. Bakewell claims that both a ████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████ are comparable. Ex. 2

(Bakewell Report, p. 62-72).  He draws comparisons which are shaky at best and opines that

██████████████████████████████████████████████████████

████████████████████████████████████████ *Id.* at p. 64, ¶

204 and p. 69, ¶ 222). Mr. Bakewell again makes a blanket statement that the ████████████

████████████████ "involved the '961 patent, which makes it comparable to the hypothetical

license(s) from a technological point of view." *Id.* at p. 62, ¶ 197 and p. 67, ¶ 216.  Then, once again, and without any additional information about technical comparisons, he proceeds with the economic comparisons he believes to exist, and utterly disregards the legal requirement that technological comparability of the prior agreement must be evaluated, and differences accounted for, as has been discussed ad nauseam. *Id.* at p. 62, ¶ 197— p. 71, ¶ 230.  Despite Mr. Bakewell's questionable arguments, the ███████████████████ can easily be distinguished from a hypothetical negotiation with Google in the case at hand, both factually and legally.

First, ████████████████████████████████████████████████████ ████████████████████████████ Ex. 1 (Blok Report, p. 42-43, citing to WSOU-GOOALL-0002624 – 639, at 625; WSOU-GOOALL-0004672, WSOU-GOOALL-0002948 – 963, at 949 and WSOU-GOOALL-0004674).  Once more, circumstances such as this have been held to be incomparable to the licensing of a single patent.

For example, in an August 26, 2021 decision, the Federal Circuit affirmed exclusion of a damage expert's opinion on a reasonable royalty rate where the expert had used two license agreements that the patent at issue's previous owner had with two manufacturers. *MLC Intellectual Property LLC v. Micron Technology Inc.*, 10 F.4th 1358 (Fed. Cir. 2021).  The expert had opined that prior license agreements (the "Hynix and Toshiba agreements") were comparable to the hypothetical negotiation of a reasonable royalty for the patent-in-suit so that apportionment would already be accounted for by using a royalty rate that the expert derived from the prior license agreements. *MLC,* 10 F.4th at 1363 - 1364.  In affirming the district court's exclusion of the expert testimony, the Federal Circuit first held that the expert's derivation of the royalty rate from the prior license agreements was inadmissible because it was "not sufficiently tethered

to the evidence presented." *Id*. at 1368.  On the issue of apportionment, the Federal Circuit held, "we reject the view that the Hynix and Toshiba agreements are comparable licenses." 10 F.4th at 1374.  In particular, the Court stressed that "...the Hynix agreement is not a license for the same single patent. To the contrary, the Hynix agreement granted a license to a portfolio of forty-one U.S. and international patents and patent applications, and only one of those forty-one patents is at issue in the hypothetical negotiation." 10 F.4th at 1375; *see also Lucent Technologies, Inc.,* 580 F.3d 1301 at 1327-32 (finding that evidence of licensing agreements having a running royalty were not probative of what a lump-sum royalty should be, nor were agreements licensing an entire portfolio probative of an agreement licensing a single patent as at issue in the case); *see also Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1446-47 (Fed. Cir. 1990) (rejecting reliance on an agreement that conveyed rights more broad in scope than those covered by the individual patent at issue in setting a reasonable royalty).

Second, Mr. Bakewell's opinion that the ██████████████████ hold more value than a hypothetical negotiation between Brazos and Google is not based on a proper test or standard.  Specifically, courts have held that "the price paid to acquire a patent or patent portfolio does not establish an upper bound for a reasonable royalty.  *Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 914–16 (D. Minn. 2009) ('...the Federal Circuit has never held that, as a matter of law, a reasonable-royalty award cannot exceed what someone paid to acquire a patent portfolio that includes the patent-in-suit.'); *see also Endress Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.*, 892 F. Supp. 1123, 1128 (S.D. Ind. 1995), aff'd, 122 F.3d 1040, 1043, 43 U.S.P.Q.2d 1849, 1852 (Fed. Cir. 1997) (rejecting argument that the damage award had to be no more than the price the patentee had paid to acquire the patent plus others from its prior owner, or

the amount the patentee accepted in cross-licensing the asserted and other patents with another competitor).

Further, the ███████████████████████████ are not probative as to the reasonable royalty that Brazos and Google would have agreed to at the hypothetical negotiation, due to a number of economic and financial considerations and circumstances that impacted the negotiations underlying these agreements that would not be present in the hypothetical negotiation between Brazos and Google.  Mr. Bakewell fails to take into account that ███████████████████ ███████████████████████████████████ Ex. 4 (Etchegoyen Dep. Tr.) at 182 ("As far as their kind of fair and reasonable, I don't – again, I didn't do any infringement analysis or – or validity on the particular patents that they would want.")).

Mr. Bakewell also discounts the mindset of ███████████████ and the fact that it believed ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ Ex. 4 (Etchegoyen Dep. Tr.) at 132 – 133, 179 – 183, and 211 – 215 ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

Like *MLC*, *Lucent* and *Trell*, the ████████████████████████ relied on heavily by

Mr. Bakewell, ██████████████████████████████████████   At the outset,

and as laid out in the relevant caselaw, this presents complex issues in valuing the '491 patent

individually and creates disparity when attempting to compare agreements.   Similar to

*Spectralytics* and *Endress Hauser,* ████████████████████████████████████████

████████████████████████████████ on the amount that would have been paid by

Google in a hypothetical negotiation, and in fact, courts would not disagree that such amounts paid

could be exceeded in a hypothetical negotiation.  As also discussed, there were varying economic

and financial considerations in the negotiations of the ████████████████████████ that

impacted the negotiations and which would not be present in the hypothetical negotiation between

Brazos and Google.   Therefore, aside from the fact that Mr. Bakewell failed to perform any

technological comparison analysis, the ████████████████████████ are incomparable to a

hypothetical negotiation with Google for a multitude of reasons and Mr. Bakewell's opinions

regarding the same should be excluded by this Court.

## V.  CONCLUSION

For the foregoing reasons, Brazos respectfully requests that the Court grant this Motion,

and apply the clear legal standards that require the exclusion of the Bakewell Report in its entirety.

Alternatively, the portions of the damages opinions relating to or relying upon: 1) Google's narrow

view of the claims of the '961 patent and do not assume infringement, and 2) the ██████████████

████████████████████████████████████ should be excluded.

Dated: June 28, 2023

Respectfully Submitted,

By: */s/ Greg Love*
Greg Love
State Bar No. 24013060
Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
400 Austin Avenue
Suite 903
Waco, TX 76701
Tel.: (254) 732-2242
Fax: (866) 627-3509
greg@swclaw.com
mark@swclaw.com

Joseph M. Abraham, TX SB No. 24088879
Timothy Dewberry, TX Bar No. 24090074
**FOLIO LAW GROUP PLLC**
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
T: 737-234-0201
Email: joseph.abraham@foliolaw.com
Email: timothy.dewberry@foliolaw.com

Cliff Win, CA Bar No. 270517
**FOLIO LAW GROUP PLLC**
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel:     (206) 880-1802
Email: cliff.win@foliolaw.com

*Attorneys for Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing & Development*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document was served on all counsel of record via email on June 28, 2023.

*/s/ Greg Love*
Greg Love

**<u>CERTIFICATE OF CONFERENCE</u>**

Pursuant to Local Rule CV-7(G), counsel for Brazos conferred with counsel for Google regarding the subject of this motion, and this motion is opposed.

*/s/ Greg Love*
Greg Love
