# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | ███████████████ |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-585-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**GOOGLE'S OPPOSITION TO PLAINTIFF'S OPPOSED *DAUBERT* MOTION TO EXCLUDE CERTAIN DAMAGES OPINIONS IN THE EXPERT REPORT OF W. CHRISTOPHER BAKEWELL, OR IN THE ALTERNATIVE STRIKE PORTIONS OF THE EXPERT REPORT OF W. CHRISTOPHER BAKEWELL**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

   I.   MR. BAKEWELL'S OPINIONS CORRECTLY ASSUME THAT THE ASSERTED
       CLAIMS ARE VALID AND INFRINGED FOR PURPOSES OF THE
       HYPOTHETICAL NEGOTIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

          *Plaintiff Wrongly Asserts That Mr. Bakewell Should Have Adopted Plaintiff's*
          *Infringement Theory.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          *Mr. Bakewell Relies on Plaintiff's Infringement Expert in Defining the Scope of*
          *Infringement and Associated Damages.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  II.   THE ███████████████████ LICENSES INVOLVE THE ASSERTED
       PATENT AND REFLECT THE ECONOMIC VALUE OF THE PATENTED
       TECHNOLOGY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 III.   MR. BAKEWELL ESTABLISHES THE COMPARABILITY OF THE ████
       ██████████████ LICENSES TO THE HYPOTHETICAL
       NEGOTIATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          *The Three Licenses Involve the Same Asserted Patent and*
          *Same Conveyance of Rights as the Hypothetical Negotiation* . . . . . . . . . . . . . . . 9

          *The Licensees Were Similarly Situated to Google at the Hypothetical*
          *Negotiation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          *The Licenses are Contemporaneous with the Hypothetical Negotiation* . . . . . . . 10

          *The Licenses and the Hypothetical Negotiation Involve* ███████████ . . 10

          *Mr. Bakewell Accounts for Differences Between the Hypothetical Negotiation*
          *and the License Agreements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          *Mr. Bakewell Establishes a Sufficient Nexus Between the License Agreement and*
          *the Hypothetical Negotiation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

 IV.   PLAINTIFF'S DISAGREEMENT WITH MR. BAKEWELL'S ANALYSIS IS BEST
       LEFT TO THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          *Plaintiff's Arguments About Negotiations Concern the Weight, Not the*
          *Admissibility, of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          *Differences Between* ███████████ *and the Hypothetical Negotiation*
          *go to Weight* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Plaintiff's Arguments Regarding the Cost of* ███████████ *are Irrelevant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

## <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                  **Pages**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Apple Inc. v. Motorola, Inc.,*
    757 F.3d 1286 (Fed. Cir. 2014), *overruled by Williamson v. Citrix Online, LLC,*
    792 F.3d 1339 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.,*
    967 F.3d 1353 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Daubert v. Merrell Dow Pharms. Inc.,*
    509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Ericsson, Inc. v. D-Link Sys., Inc.,*
    773 F.3d 1201 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Everlight Elecs. Co. v. Nichia Corp.,*
    No. 12-11758, 2014 WL 4707053, (E.D. Mich. Sept. 22, 2014) . . . . . . . . . . . . . . . . . . . 16

*Finjan, Inc. v. Cisco Sys. Inc.,*
    17-072, 2020 WL 13180005 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fromson v. W. Litho Plate & Supply Co.,*
    853 F.2d 1568 (Fed. Cir. 1988), *overruled by Knorr-Bremse Systeme Fuer*
    *Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) . . . . . . . . . . . . . 15

*Helios Software, LLC v. Awareness Techs., Inc.,*
    No. 11–1259, 2015 WL 12806482 (D. Del. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*i4i Ltd. P'ship v. Microsoft Corp.,*
    598 F.3d 831(Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 14

*LaserDynamics, Inc. v. Quanta Comp., Inc.,*
    694 F.3d 51 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Lucent Technologies Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*MLC Intell. Prop., LLC v. Micron Tech., Inc.,*
    10 F.4th 1358 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

*Multimedia Patent Trust v. Apple, Inc.,*
    No. 10-2618, 2012 WL 5873711 (S.D. Cal. Nov. 20, 2012) . . . . . . . . . . . . . . . . 11, 12, 16

## <u>TABLE OF AUTHORITIES CONTINUED</u>

*Cases* **Pages**

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Trell v. Marlee Elecs. Corp.*,
    912 F.2d 1443 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*,
    No. 16-13456, 2019 WL 3334563 (E.D. Mich. Jul. 25, 2019). . . . . . . . . . . . . . . . . . . . . 3, 4

*Virentx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Voxer, Inc. v. Meta Platforms, Inc.*,
    No. 20-655, 2022 WL 3371634 (W.D. Tex. Aug. 16, 2022) . . . . . . . . . . . . . . . . . . . . . . . 5


*Rules* **Pages**

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
| --- | --- |
| SEALED A | Expert Report of Dr. Tamás Budavári Regarding Infringement of U.S. Patent No. 8,737,961 by Google LLC (June 2, 2021)[1] |
| SEALED B | Excerpts from the Rebuttal Expert Report Regarding Damages ('961 Patent) of W. Christopher Bakewell (Apr. 28, 2023) |
| SEALED C | Excerpts from the Rebuttal Expert Report of Gregory Welch Regarding Noninfringement Of U.S. Patent No. 8,737,961 (Apr. 28, 2023) |
| SEALED D | Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development's Objections and Responses to Defendant's First Set of Requests for Production (May 19, 2021). |
| SEALED E | Letter from Travis Richins to Counsel for Google (Sept. 15, 2021) |
| SEALED F | WSOU Investments, LLC d/b/a Brazos Licensing and Development's Objections to Google LLC's Rule 30(B)(6) Notice of Deposition (Sept. 30, 2021) |
| SEALED G | Excerpts from the Deposition Transcript of Craig Etchegoyen (Mar. 15, 2023) |

---

[1] All exhibits are to the concurrently filed declaration of Sachli Balazadeh-Nayeri.

## INTRODUCTION

Plaintiff WSOU Investments, LLC ("plaintiff" or "WSOU") asks this Court to exclude Google's damages expert Mr. Bakewell's opinions because he allegedly (1) failed to assume infringement and (2) improperly opined on licenses to the *asserted patent* in forming his opinions.  Both arguments lack merit.  Mr. Bakewell's report and deposition testimony are uniform and unequivocal:  he assumed infringement throughout his analysis.  Plaintiff's position ultimately collapses to the assertion that a defendant's damages expert must accept plaintiff's "view of the claims" at issue.  Yet, plaintiff cites no case law supporting that proposition, and relevant precedent holds otherwise.  A damages expert's "view that [defendant] might perceive no value from licensing the patents-in-suit does not mean that he believes them to be not infringed."  *Helios Software, LLC v. Awareness Techs., Inc*., No. 11–1259, 2015 WL 12806482, at *3 (D. Del. 2015).

Plaintiff also seeks to exclude Google's damages expert Mr. Bakewell from testifying about license agreements that actually include the asserted patent.  Plaintiff's arguments are contrary to bedrock principles of patent damages, and its motion should be denied.  Plaintiff cannot exclude expert testimony about contemporaneous, non-litigation licenses involving the same asserted patent, similar licensees and licensors based on factual disagreements with Mr. Bakewell's analysis—such assessments are for the trier of fact.

## ARGUMENT

## I.    MR. BAKEWELL'S OPINIONS CORRECTLY ASSUME THAT THE ASSERTED CLAIMS ARE VALID AND INFRINGED FOR PURPOSES OF THE HYPOTHETICAL NEGOTIATION

Plaintiff contends that despite Mr. Bakewell's statements in his report and deposition that he "assume[d] that the patent-in-suit is valid, enforceable, and infringed by the hypothetical

licensee," his opinions should be excluded because they "do not properly adopt the scope of infringement as alleged by the plaintiff."  (Dkt. 176 at 8-9) (citing Bakewell Dep. Tr. 29:11-14, 31:4-7).  But the plaintiff here presents three competing theories as to the scope of the asserted claims—one by its infringement expert, one by its validity expert, and yet a third by its damages expert.  Plaintiff cannot and does not cite any case requiring the defendant's damages expert to adopt the particular theory of "use" set forth by a damages expert.  Plaintiff's motion should therefore be denied.

Faced with Mr. Bakewell's report and testimony, plaintiff pivots to an equally erroneous argument that Mr. Bakewell was required to accept plaintiff's view about scope of the asserted claims.  That is incorrect.  Rejecting such arguments, courts explain that a damage expert's disagreement with plaintiff's view about scope and value of asserted claims does not mean that the expert failed to assume infringement.  *See, e.g., Helios*, 2015 WL 12806482, at *3.  "The parties' technical experts are free to battle the scope of infringement at trial, but that dispute is not a basis for excluding the damages expert's opinion."  *Finjan, Inc. v. Cisco Sys. Inc.*, 2020 WL 13180005, at *8 (N.D. Cal. 2020).  In *Helios*, the court denied a motion to exclude testimony from defendant's damages expert, holding that the expert's acceptance of defendant's view about scope of the asserted claims "***does not*** necessarily require ***an assumption of non-infringement*** as opposed to, for instance, a belief about the ease of design-arounds."  2015 WL 12806482, at *3 (emphasis added).  As the court explained, the damages expert's "view that [defendant] might perceive no value from licensing the patents-in-suit ***does not mean that he believes them to be not infringed***."  *Id.* (emphasis added).  The same reasoning applies here.

**___Plaintiff Wrongly Asserts That Mr. Bakewell Should Have Adopted Plaintiff's Infringement Theory.___**  Plaintiff admits, as it must, that Mr. Bakewell's report and testimony

make clear that he assumes that the asserted patent is both valid and infringed.  (Dkt. 176 at 8) ("Mr. Bakewell admits that, in his role as Google's damages expert, he is 'required to assume that the patent-in-suit is valid, enforceable, and infringed by the hypothetical licensee'").  Yet plaintiff asserts that Mr. Bakewell's opinions should be excluded because his "opinions assume the Defendant's narrow view of the claims of the patent, and thus the infringing functionality, in order to establish a narrowed scope of incremental benefit to minimize the royalty base at issue." (*Id*. at 9).  As a factual matter, plaintiff is incorrect:  its infringement expert limited his infringement opinion and analysis to the Timeline and Popular Times features of Google Maps. (Ex. A).  Mr. Bakewell adopted that view in his own report.  (Ex. B ¶ 49).  Even setting aside, however, plaintiff's argument is incorrect as a matter of law.

Plaintiff's argument reduces to the proposition that Mr. Bakewell's opinion should be excluded because he disagrees with plaintiff that the assumed infringement must include broad swaths of technology not covered by the '961 patent, for which neither plaintiff nor its experts provide any infringement theory.  Courts have rejected similar arguments.  *See Helios*, 2015 WL 12806482, at *3 (emphasis added).  The same is true in this case.

Plaintiff relies on a single case, *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc*., No. 16-13456, 2019 WL 3334563 (E.D. Mich. Jul. 25, 2019), for the proposition that Mr. Bakewell must assume infringement beyond that identified by plaintiff's infringement expert, which is limited to Google Maps Timeline and Popular Times.  (Dkt. 176 at 9-10).  This is incorrect as a matter of law.  In *Webasto*, the court held that "for purposes of calculating damages, a damages expert must assume that the patent in suit is valid and infringed," and that the expert "observe[d] this premise in his Report, assuming for purposes of his analysis 'that the Asserted Patent is valid and that at least one claim of the Asserted Patent will be found to have

– 3 –

been infringed.'"  *Webasto*, 2019 WL 3334563, at *4.  As plaintiff itself recognizes,*Webasto*

"exclud[ed] damages expert's opinion" because he "positioned [sic] accused infringing product

as alleged non-infringing alternative," and not because the expert did not adopt the plaintiff's

scope of infringement.  (Dkt. 176 at 7).  Plaintiff cites no other cases to support this proposition.

Because Mr. Bakewell correctly assumed validity and infringement, his opinions are reliable and

admissible.

### *Mr. Bakewell Relies on Plaintiff's Infringement Expert in Defining the Scope of Infringement and Associated Damages.*  Even though the law does not require him to do so, and

although Google disagrees with the opinions of plaintiff's infringement expert, Mr. Bakewell

adopted the scope of infringement as defined by plaintiff's infringement expert, Dr. Budavari,

who opined that "Google Maps Timeline and Popular Times features, rely upon the ability of

Google . . . to determine whether a mobile device is moving outside of a specified area at a

current time of the plurality of different times based on the signal data."  (Ex. A ¶ 57; *see, e.g.,*

*id*. at ¶¶ 77-81, 90-91, 93, 96, 102, 105, 113, 118-122, 126-127, 129).  Dr. Budavari expressly

referenced those features in his definition of "Google Maps," and did not opine that any other

Google Maps functionality or features meet the limitations of the '961 patent.  (Ex. A ¶ 38).

Plaintiff cannot fault Mr. Bakewell for adopting plaintiff's own infringement theory as

the basis for damages in this action.  Mr. Bakewell explicitly relies on his understanding of Dr.

Budavari's opinions of the scope of infringement.  (Ex. B ¶ 49) ("I understand Dr. Budavari

defined the 'accused instrumentality' as 'Google Maps' and 'Google Pixel Products (as defined

further herein) that incorporate, operate, and/or utilize Google Maps.'  I further understand Dr.

Budavari provides no definition of 'accused functionality.'").  Plaintiff fails to identify any

legitimate concern with the *reliability* of Mr. Bakewell's opinions, instead only raising

disagreements with his conclusions.  Even if Mr. Bakewell's opinions rested on "Google's narrow view of the claims," (Dkt. 176 at 8), as plaintiff claims, plaintiff's "complaints are for the factfinder to assess.  Cross-examination and the presentation of contrary evidence are the traditional and appropriate means of addressing" this issue.  *Voxer, Inc. v. Meta Platforms, Inc.*, No. 20-655, 2022 WL 3371634, at *4 (W.D. Tex. Aug. 16, 2022) (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 596 (1993)).

Moreover, plaintiff cannot exclude Mr. Bakewell's opinions to the extent he cites to Google's technical expert Dr. Welch's opinions because plaintiff did not seek to exclude any opinions of Dr. Welch.  Plaintiff argues that "Mr. Bakewell uses Dr. Welch's view of infringement to improperly narrow the scope of the accused instrumentality to 'Google Maps 'Timeline'' feature and the 'Google Maps 'Popular Times' feature." (Dkt. 176 at 9) (citing Ex. B ¶ 49).  But Mr. Bakewell defined the accused functionalities in the same manner as plaintiff's infringement expert, Dr. Budavari.  (Ex. B ¶ 49) ("I understand Dr. Budavari defined the 'accused instrumentality' as 'Google Maps' and 'Google Pixel Products (as defined further herein) that incorporate, operate, and/or utilize Google Maps.'  I further understand Dr. Budavari provides no definition of 'accused functionality.  According to Dr. Welch, Dr. Budavari's infringement opinions concerning the asserted claims are limited to two features of Google Maps:  the Google Maps 'Timeline' feature and the Google Maps 'Popular Times' feature.").

In defining the Accused Products, Mr. Bakewell relied on a portion of Dr. Welch's rebuttal report that sets forth the "accused products" as understood through his review of "WSOU's Original, Final, and Amended Final Infringement Contentions," and "WSOU's Complaint, its Technical Tutorial and arguments to the Court, and certain discovery correspondence concerning WSOU's infringement contentions," and ultimately focused his

opinions on the theory set forth in Dr. Budavari's report.  (Ex. B ¶ 49; Ex. C ¶ 97).[2]  Plaintiff did

not move to strike any portions of Dr. Welch's opinions, and it could not:  Dr. Welch is correct

that Dr. Budavari's report does in fact limit the accused functionality to Google Maps Timeline

and Google Maps Popular Times features.  (*See* Ex. A ¶ 57, 77-81, 90-91, 93, 96, 102, 105, 113,

118-122, 126-127, 129).  Therefore, Mr. Bakewell's reliance on Dr. Welch's report is reliable and

in line with plaintiff's own scope of the accused functionality.

## II.   THE ██████████████████████ LICENSES INVOLVE THE ASSERTED PATENT AND REFLECT THE ECONOMIC VALUE OF THE PATENTED TECHNOLOGY

Plaintiff seeks to exclude Mr. Bakewell from providing damages testimony based on its

own license agreements that include the asserted patent.[3]  This Court should reject plaintiff's

attempt to prevent the jury from hearing expert testimony about highly probative evidence of two

arms-length licenses—not borne from litigation—between plaintiff WSOU and three separate

entities that are comparable to Google.

First, plaintiff admitted in its Opposition to Defendant Google's Motion for Partial

Summary Judgment Under 35 USC § 287 that ██████ practices the accused functionality of

Google Maps.  (Dkt. 164 at 11).  Moreover, there is no dispute that the ██████████████

██████████ agreements involve a license for the asserted '961 patent.  ██████████████

---

[2] Plaintiff complains that Mr. Bakewell "ignor[ed] Brazos' infringement contentions." (Dkt. 176 at 2).  Plaintiff faults Mr. Bakewell for relying on the opinions of its infringement expert, evidently agreeing with Google that those opinions differ from those set forth in its infringement contentions, and which Google has accordingly sought to strike.  (Dkt. 173).  Mr. Bakewell properly relied on the opinions of Dr. Welch, who in turn explains that Dr. Budavari did "not render any infringement opinions regarding Google's Awareness API" or "geofencing," (Ex. C ¶¶ 98-99), and "maps the asserted claim elements against (often disparate and disconnected) aspects of the Google Maps Timeline and Google Maps Popular Times features."  (*Id.* ¶ 109).
[3] Given plaintiff's virtually identical arguments in all four *Daubert* motions regarding Mr. Bakewell's use of plaintiff WSOU's license agreements, this section contains material that is substantively similar to Section I in Google's -580 and -584 response briefs and Section II in Google's -572 response brief.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████. (Dkt. 176 at 3-5).  Contrary to plaintiff's undeveloped

assertion about lack of technological comparability, the licenses themselves establish such

comparability for a hypothetical negotiation involving the '961 patent.

The Federal Circuit instructs that "[a]ctual licenses to the patented technology are highly

probative as to what constitutes a reasonable royalty for those patent rights because such actual

licenses most clearly reflect the economic value of the patented technology in the marketplace."

*LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (citation omitted).

As the Federal Circuit has "held many times, using sufficiently comparable licenses is a generally

reliable method of estimating the value of a patent."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286,

1325 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d

1339 (Fed. Cir. 2015).  In particular, "actual licenses to the patents-in-suit are probative not only

of the proper amount of a reasonable royalty, but also of the proper form of the royalty structure."

*LaserDynamics*, 694 F.3d 51 at 79-80.  So too in this case:  Mr. Bakewell opines that the █████

███████████████ agreements demonstrate both the value and payment structure for a

hypothetical negotiation involving the '961 patent.  (Ex. B ¶¶ 180-192, 195-230).

Plaintiff relies on *LaserDynamics* for the proposition that "alleging loose or vague

comparability between different technologies or licenses does not suffice."  (Dkt. 176 at 11)

(citing 694 F.3d at 79).  The opposite is true here.  The ████████████████████████

agreements have direct technical comparability because they each provide a license for the same

asserted patent.  Plaintiff also admitted that ███████████████████████████████.

(Dkt. 164 at 11).  Indeed, in *LaserDynamics*, the Federal Circuit rejected a party's attempt to rely

on licenses that "did not involve the [asserted] patent" while "ignor[ing] [plaintiff's] long history for licensing the [asserted] patent." 694 F.3d at 80-81. *LaserDynamics* expressly endorses Mr. Bakewell's reliance on the ██████████████ licenses because "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace." *Id*. at 79 (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)).

Plaintiff also relies on *ResQNet.com*, but that decision only serves to reinforce why plaintiff's motion should be denied. (Dkt. 176 at 11). In *ResQNet.com*, the Federal Circuit vacated a damages award that rested on "inapposite licenses" which were contrary to the actual licenses involving the asserted patents. 594 F.3d at 870, 872 ("[n]one of these licenses even mentioned the patents in suit or showed any other discernible link to the claimed technology."). The Federal Circuit explained that "the record already contained evidence of licenses on the claimed technology. [Defendant] was entitled to rely on that record evidence to show a royalty rate reasonably related to the technology in this litigation." *Id*. at 872. Mr. Bakewell does exactly that.

### III. MR. BAKEWELL ESTABLISHES THE COMPARABILITY OF THE ██████ ███████████████████ LICENSES TO THE HYPOTHETICAL NEGOTIATION

Mr. Bakewell's comparability analysis—which plaintiff ignores—far exceeds the "minimum standards of relevance and reliability" required under the Federal Rules of Evidence to testify about the ██████████████ agreements. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010). Mr. Bakewell analyzes numerous factors establishing the comparability of those licenses to the hypothetical negotiation in this case.

– 8 –

***<u>The Three Licenses Involve the Same Asserted Patent and Same Conveyance of Rights</u>***

***<u>as the Hypothetical Negotiation.</u>***  All three licenses involve the same asserted patent and the

same conveyance of rights as the hypothetical negotiation, which Mr. Bakewell discusses in his

report.  Mr. Bakewell notes that licenses included the '961 patent, and that, in all cases, plaintiff

WSOU granted █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████ (Ex. B ¶ 196 (██████ ¶ 214 (██████ ¶ 181

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████  These are the same rights which Google would have received in the

hypothetical negotiation.  (*Id.* ¶ 198 (██████ ¶ 217 (██████ ¶ 184 (████)).

***<u>The Licensees Were Similarly Situated to Google at the Hypothetical Negotiation.</u>***  Mr.

Bakewell's report discusses the similarities between Google, ██████████████ as the

licensees.  With respect to ██████ Mr. Bakewell states:

> The ████████████████ has parallels to the hypothetical license in terms of
> the relationship between the parties.  Google and ████████████████████
> ███████████████████████████████████████
> ████████████████████

(Ex. B ¶ 184; *see id.* ¶ 198, ¶ 217 (similar opinion with respect to ████████████).  Mr.

Bakewell also evaluates that ██████ as the potential licensor at the hypothetical negotiation would

be similarly positioned as plaintiff WSOU when it consummated the ████████████

████████ licenses.  Mr. Bakewell opines that both ██████ and plaintiff WSOU are non-practicing

entities with respect to the asserted patent:

Neither WSOU nor Mr. Blok have identified evidence that ███ offered products in 2014, that practiced the '961 patent.  WSOU is a non-practicing entity and is similar to ███ who would be present at the hypothetical negotiation, in that it does not practice the '961 patent.  Mr. Blok disregards that ███████████████ and that neither party would want to be economically disadvantaged by agreeing to terms that are as significantly different as he envisions.

(Ex. B ¶ 208 (███████); ¶ 226 (███████); ¶ 186 (█████)).

   *The Licenses are Contemporaneous with the Hypothetical Negotiation.*  Mr. Bakewell takes into account the contemporaneous timing between the ███████████████ agreements—all signed in 2018 (Ex. B ¶¶ 184, 198, 217)—and the potential dates for the hypothetical negotiations here:  May 2014.  (*Id.* ¶ 89).  Mr. Bakewell then performs a temporal adjustment to appropriately value those licenses relative to the hypothetical negotiation.  (*Id.* ¶¶ 187-188 (█████); ¶¶ 202-203 (███████); ¶¶ 220-221 (███████)).

   *The Licenses and the Hypothetical Negotiation Involve* ███████████████.  Mr. Bakewell also considers that the ███████████████ licenses ███████████████ ███████ and that a hypothetical negotiation would ███████████████ with Google as the licensee.  Mr. Bakewell explains that WSOU's "licenses ███████████████ ███████████████," and Google "███████████████."  (Ex. B ¶¶ 94-95).  Mr. Bakewell thus concludes that "[t]he evidence shows that ███████████████ ███████████████."  (*Id.* ¶ 93).

   *Mr. Bakewell Accounted for Differences Between the Hypothetical Negotiation and the License Agreements.*  Mr. Bakewell accounts for ███████████████

– 10 –

██████████████████████████████████████████████████████

████████████████████████████████:

> Relative to the hypothetical license, ███████████████████
> █████████████████████████████████████████████
> █████████████████████████████████████████████
> █████████████████████████████████████████████
> ██████████████████████████

(Ex. B ¶ 189; ¶ 204 (██████████); ¶ 222 (██████████)).  Though plaintiff disputes the merits of

Mr. Bakewell's adjustments, his analysis is conservative when considering ██████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████ (*Id.* ¶ 359).

> ***Mr. Bakewell Establishes a Sufficient Nexus Between the License Agreements and the***
> ***Hypothetical Negotiation.***  Mr. Bakewell's analysis provides far more than a "sufficient nexus"

between the licenses and the hypothetical negotiation as "to the relevant market, the parties, []

the alleged infringement," the contemporaneous timeframes, ███████████████████████

██████████████████████████████████████████████. *i4i*, 598 F.3d at

856.  Indeed, while plaintiff cites *Multimedia Patent Trust* and attributes a quote to the case that

does not appear anywhere in the decision (Dkt. 176 at 8, 11), that case affirmatively notes that

"under Federal Circuit precedent, a [party] may rely on licenses that are different from the

hypothetical agreement as long as they are not 'radically different.'"  *Multimedia Patent Trust v.*

*Apple, Inc.*, No. 10-2618, 2012 WL 5873711, at *7 (S.D. Cal. Nov. 20, 2012) (quoting *Uniloc*

*USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011)).  ████████████████

████████████████████████████████████████████████

███████████████████████████████   Mr. Bakewell's report demonstrates that the

███████████████████████   licenses are anything but "radically different" from the

hypothetical negotiation.

In sum, Mr. Bakewell's report meets every requirement of Fed. R. Evid. 702.  Mr.

Bakewell addresses the facts of the case "according to well-known and standard approaches to

intellectual property valuation that are frequently used in litigation and non-litigation situations,

known as:  the market approach, the income approach, and the cost approach."  (Ex. B ¶ 100).

He further addresses each *Georgia-Pacific* factor in detail.  (*Id.* § 5).  Plaintiff's remaining

criticisms of Mr. Bakewell's analysis are textbook examples of disputes concerning weight rather

than admissibility.

## IV. PLAINTIFF'S DISAGREEMENT WITH MR. BAKEWELL'S ANALYSIS IS BEST LEFT TO THE JURY

Plaintiff's motion to exclude Mr. Bakewell's testimony regarding the ███████████████

███████   agreements raises disputes going to the weight of the evidence, rather than its

admissibility.[4]  Plaintiff itself confirms that its criticisms of Mr. Bakewell's analysis concern

weight, not admissibility, by labeling Mr. Bakewell's analysis "shaky" and "questionable."  (Dkt.

176 at 13-14).  As *Daubert* makes clear, "[v]igorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking *shaky but admissible* evidence."  509 U.S. at 596 (emphasis added).  Moreover, Mr.

Bakewell considered the parallels between the licensees, licensors, and the timing involved in

those licenses and the hypothetical negotiation here.  Thus, the possible "existence of other facts

---

[4] This section contains material that is substantively similar to Section III in Google's -584 and -580 response briefs and Section IV in Google's -572 response brief.

[] does not mean that the facts used failed to meet the minimum standards of relevance or reliability." *i4i* , 598 F.3d at 855-56.  In the same vein, the Federal Circuit stresses that the "issue of comparability is often one of sufficiency of the evidence, not admissibility." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020).  And, "the 'degree of comparability' of the license agreements is a 'factual issue [] best addressed by cross examination and not by exclusion." *Id*. at 1373-74 (alterations in original) (citation omitted).  Whether an expert appropriately "control[s] for certain variables" when assessing comparability is "best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).  So too here.

### ***Plaintiff's Arguments About Negotiations Concern the Weight, Not the Admissibility, of Evidence.***  Plaintiff asserts that Mr. Bakewell did not account for "a number of economic and financial considerations that impacted the negotiations underlying these [license] agreements." (Dkt. 176 at 16).  To start, plaintiff cannot rely on evidence about license negotiations—and it certainly cannot exclude Mr. Bakewell's testimony for not considering such evidence—when it systematically blocked any discovery about such negotiations.  Responding to Google's document requests, plaintiff asserted that it "will not produce assignments, licenses, conveyances, and/or grants that are not executed, as ***negotiations and unexecuted agreements are irrelevant and not proportional to the needs of this case***." (Ex. D at 4) (emphasis added).  In correspondence, WSOU insisted that "[n]egotiations for consummated licenses . . . ***are not discoverable***" and directed Google to withdraw discovery requests for "negotiations leading up to" the license agreements.  (Ex. E) (emphasis added).  Plaintiff further stated that it "***will not designate*** a witness to testify concerning negotiations" because such topics seek "***non-discoverable information about negotiations***." (Ex. F) (emphasis added).  Plaintiff's

corporate representative also declined to testify about negotiations, stating that "we're not supposed to talk about, I think, specific negotiations." (Ex. G at 130:23-24). Under such circumstances, plaintiff's own cited cases defeat its argument. In *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, the Federal Circuit held that "when a 'party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion." 10 F.4th 1358, 1369 (Fed. Cir. 2021) (quoting Fed. R. Civ. P. 37).

In any event, plaintiff's argument is also substantively wrong. As established in Section III, *supra*, Mr. Bakewell expressly: (1) considers the contemporaneous timing of the licenses and the hypothetical negation; (2) evaluates the similarly situated positions of Google and the licensees; (3) accounts for the similarly situated positions of ███ and WSOU as licensors, and (4) notes that each license ████████████████████████████████████████ ████████████████████████. Accordingly, when, as here, "the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i*, 598 F.3d at 852. As the Federal Circuit routinely holds, "[t]he existence of other facts, however, ***does not mean that the facts used failed to meet the minimum standards of relevance or reliability***. Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *Id.* at 855-56 (emphasis added). Though plaintiff may disagree with Mr. Bakewell's opinions, its disagreement does nothing to detract from Mr. Bakewell's analysis of facts directly bearing on comparability.

Plaintiff also contends that Mr. Bakewell does not address how the "extent of use" by ████████████████████████████ affected license negotiations. (Dkt. 176 at 16). This is a variant of the same argument about negotiations addressed immediately above. Here, Mr. Bakewell

– 14 –

considers ████████████████████████████ and determines that those

three companies were similarly positioned as Google would be at the hypothetical negotiation.

*See* Section III, *supra*.

Plaintiff also asserts that the ████████████████ agreements are not

comparable because plaintiff WSOU did not evaluate validity or infringement during

negotiations. (Dkt. 176 at 16).  Such supposed differences are true of virtually any real-world

non-litigation license and would disqualify nearly every agreement.  A hypothetical negotiation,

however, is by definition a "fantasy because it requires a court to imagine what warring parties

would have agreed to as willing negotiators."  *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d

1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer*

*Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).  Thus, while the

hypothetical negotiation presumes validity and infringement, the absence of such presumptions

in actual licenses does not negate the fact that they "most clearly reflect the economic value of

the patented technology in the marketplace."  *LaserDynamics*, 694 F.3d at 79.  Plaintiff cannot

categorically exclude expert testimony about non-litigation licenses involving the same patent,

similarly-situated licensees and licensors, and a contemporaneous timeframe on the premise that

validity and infringement were not presumed in the ████████████████ agreements.

### ***Differences Between*** ████████████ ***and the Hypothetical Negotiation go to Weight.***

Plaintiff raises a factual dispute with Mr. Bakewell's analysis given that ████████████

██████████████████████████████████████████████████.  (Dkt. 176 at

14-15).  On this issue, the Federal Circuit instructs that "the fact that a license is not perfectly

analogous generally goes to the weight of the evidence, not its admissibility."  *Ericsson, Inc. v.*

*D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).  Courts "have never required identity of

circumstances" to establish comparability.  *Virnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1330

(Fed. Cir. 2014).  Rather, comparable licenses may ███████████████████████████████

███████████████████████████.  To that end, "whether these licenses are sufficiently

comparable . . . goes to the weight of the evidence, not its admissibility."  *Apple*, 757 F.3d at

1326.

Applying this guidance, district courts regularly allow expert testimony about ████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████  █████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████ Again, Mr. Bakewell expressly accounts

for this fact.

  **_Plaintiff's Arguments Regarding the Cost of_** █████████████████████ **_are_**

**_Irrelevant._** Plaintiff contends that ████████████████████████████████████████

████████████████████ (Dkt. 176 at 17).  That argument is off the mark because the

████████████████████ agreements are *license* agreements, not purchase agreements.

Moreover, Mr. Bakewell's report never applies a hard rule that a purchase price ████████

████████████████████████████████.  Rather, Mr. Bakewell determines an

appropriate royalty based on the totality of facts and circumstance.

**CONCLUSION**

  Google respectfully requests that this Court deny plaintiff's motion in its entirety.

Date:  July 26, 2023      Respectfully submitted,

            */s/ Jennifer A. Kash, with permission by*
            *Shaun W. Hassett*
            Michael E. Jones (State Bar No. 10929400)
            mikejones@potterminton.com

– 17 –

Shaun W. Hassett  (State Bar No. 24074372)
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 North College, Suite 900
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile

Tharan Gregory Lanier
(California Bar No. 138784) (*pro hac vice*)
tglanier@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208)
Virginia G. Kain (California Bar No. 344545)
Sachli Balazadeh-Nayeri
(California Bar No. 341885)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-585@cases.warrenlex.com

Tracy A. Stitt
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
+1 (202) 879-3641
tastitt@jonesday.com

*Attorneys for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on July 26, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on July 26, 2023.

_____/s/ Shaun W. Hassett_____
