IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT, | ) ) ) |
| Plaintiff, | ) Case No. 6:20-cv-00585-ADA ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) |
| GOOGLE LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF BRAZOS LICENSING & DEVELOPMENT'S
OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGMENT OF U.S. PATENT NO. 8,737,961**

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. LEGAL STANDARD......................................................................................................1

III. ARGUMENT ...................................................................................................................2

    A. Google Maps Satisfies the Limitation of "Incrementing [of] a Count[er] For a Stationary State" ...........................................................................4

    B. Google Maps Performs the Step of "Determin[e/ing] a Primary Set of Stationary States" .................................................................................................7

    C. The Accused Google Pixel Products All Have or Incorporate a "Memory Including Computer Instructions" ........................................................10

IV. CONCLUSION..............................................................................................................12

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 1

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006) .................................................................................... 2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................... 1

*Citizens State Bank v. Leslie*,
    No. 6-18-cv-00237-ADA, 2020 U.S. Dist. LEXIS 58552 (W.D. Tex. Apr. 2, 2020) ................ 1

*CXT Sys. v. Acad., Ltd.*,
    2020 U.S. Dist. LEXIS 13615 (E.D. Tex. Jan. 28, 2020) .......................................... 7

*Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*,
    99 Fed. App'x 911 (Fed. Cir. 2004) ............................................................................. 2

*Effingo Wireless, Inc. v. Motorola Mobility, Inc.*,
    No. SA-11-CA-649, 2013 U.S. Dist. LEXIS 194408 (W.D. Tex. Apr. 16, 2013) ................ 2

*Vadis v. Amazon*, No. 1:14-cv-00813-LY,
    2022 U.S. Dist. LEXIS 9169 (W.D. Tex. Jan. 18, 2022) ................................... 1, 2, 12

*Via Vadis, LLC v. Amazon.com, Inc.*,
    No. 1:14-cv-00813-LY, 2022 U.S. Dist. LEXIS 184681 (W.D. Tex. Feb. 7, 2022) ............ 1

*WSOU Invs., LLC v. Dell Techs., Inc.*,
    No. 6:20-cv-00480-ADA (W.D. Tex. 2023) ............................................................. 11

*Xitronix Corp. v. KLA-Tencor Corp.*,
    No. A-08-CA-723-SS, 2010 U.S. Dist. LEXIS 156678 (W.D. Tex. Oct. 27, 2010) ............ 2

### Rules

Fed. R. Civ. P. 56(a) ............................................................................................................ 1

**I.      INTRODUCTION**

The Court should deny Defendant Google, LLC's ("Google") Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 8,737,961 (Dkt. 171) ("Motion") because contrary to Google's arguments, Plaintiff WSOU Investments, LLC's d/b/a Brazos Licensing & Development ("Brazos") infringement expert, Dr. Tamás Budavári, presents ample evidence—including citations to documents, source code, and deposition testimony from Google employees—demonstrating infringement by Google's Google Maps platform in his expert report.[1] In light of Dr. Budavári's report, which details Brazos' infringement theories and proof, summary judgment is inappropriate; the Court should deny Google's Motion.

**II.     LEGAL STANDARD**

Summary judgment should be denied where, as here, the movant fails to show "that there is no genuine dispute as to any material fact" and the movant fails to show that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986); *Vadis v. Amazon,* No. 1:14-cv-00813-LY, 2022 U.S. Dist. LEXIS 9169, *17-*18 (W.D. Tex. Jan. 18, 2022).[2] A genuine dispute regarding a material fact exists if the evidence and all justifiable inferences drawn therefrom—which must be viewed in the light most favorable to the nonmovant—is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-255 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *Citizens State Bank v. Leslie*, No. 6-18-cv-00237-ADA, 2020 U.S. Dist. LEXIS 58552, *5 (W.D. Tex. Apr. 2, 2020) (same).

---

[1] Citations to Dr. Budavári's report as used herein, e.g., "Budavári Report," refer to Exhibit A to Brazos's Opposition to Google's Motion, filed concurrently herewith under seal.
[2] Report and recommendation adopted February 7, 2022. *See Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-cv-00813-LY, 2022 U.S. Dist. LEXIS 184681 (W.D. Tex. Feb. 7, 2022).

Literal infringement of a properly construed claim is a question of fact. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006). To prevail on a motion for summary judgment of non-infringement, a movant must demonstrate that "no genuine issues of fact exist as to whether the accused products are 'encompassed by the claims.'" *Vadis*, 2022 U.S. Dist LEXIS 9169 at *17-*18 (recommending denial of summary judgment of non-infringement); *Xitronix Corp. v. KLA-Tencor Corp.*, No. A-08-CA-723-SS, 2010 U.S. Dist. LEXIS 156678, *31 (W.D. Tex. Oct. 27, 2010) (summary judgment of non-infringement is appropriate only when it is apparent "the facts and inferences, when viewed in the light most favorable to the patentee, would not persuade a reasonable jury to return a verdict in favor of the patent-holder."). A court should deny a motion for summary judgment where it is presented with a "battle of the experts." *Vadis*, 2002 U.S. Dist. LEXIS 9169, *23 (citing *Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 Fed. App'x 911, 921 (Fed. Cir. 2004) (reversing district court's grant of summary judgment of non-infringement where conflicting evidence between experts rendered summary judgment inappropriate); *see also Effingo Wireless, Inc. v. Motorola Mobility, Inc.*, No. SA-11-CA-649, 2013 U.S. Dist. LEXIS 194408, *4-*6, (W.D. Tex. Apr. 16, 2013) (summary judgment was inappropriate where each side provided opposing expert testimony regarding the presence of required claim elements in the accused products).

### III. ARGUMENT

As a preliminary matter, the Accused Instrumentality in this case is Google Maps[3]—not merely the Google Maps *features* named Popular Times or Timeline as Google erroneously argues

---

[3] *See, e.g.*, Ex. A (Budavári Report) at ¶ 38 ████████████████████████████████████████

2

in its Motion[4]—as well as devices such as the Google Pixel line of products that come pre-installed with and are intended to run the Google Maps application.[5] Despite being on notice for well over a year regarding the scope of Brazos's infringement theories[6]; despite having had possession of Dr. Budavári's Report wherein he renders his expert opinions concerning infringement by Google Maps and the Google Pixel products since March 29, 2023[7]; and despite having deposed Dr. Budavári on May 25, 2023[8]; Google continues to mischaracterize the accused instrumentality in this case. This is demonstrably incorrect.

Regardless, Google takes apparent issue with the sufficiency of the evidence concerning the following two elements of claims 1 and 11: (1) "incrementing [of] a count[er] for a stationary state associated with the set of one or more distinct signal sources at the current time"; and (2) "determin[e/ing] a primary set of stationary states, each stationary state in the primary set

---

[4] See, e.g., Motion at 1-2.
[5] "████████████████████████████████████████████" (emphasis added); id. at ¶ 71 (████████████████████████████) (emphasis added). ████████████████████ Ex. A (Budavári Report) at ¶ 39.
[6] Prior to the Court granting Brazos leave to serve Google with amended final infringement contentions. See Exhibit C (text order dated 8/3/22 granting motion to amend, serve amended infringement contentions), Brazos provided Google a set of proposed infringement contentions on April 20, 2022.
[7] See Ex. A (Budavári Report) at 1.
[8] During his deposition, Dr. Budavári was clear that the accused instrumentality was Google Maps. See, e.g., Exhibit B (excerpted portions of the May 25, 2023 deposition transcript of Dr. Budavári, hereinafter "Budavári Dep. Tr.") at 114:12-14 (testifying that ████████████████████████████ ; 138:20-139:9; 140:5-19.

associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area." Google further takes issue with the purported failure to identify a "memory including computer instructions" for claims 11 and 14. Brazos addresses each ground below.

      **A.    Google Maps Satisfies the Limitation of "Incrementing [of] a Count[er] For a Stationary State"**

First, Google argues that Dr. Budavári failed to show "that any alleged stationary state is 'associated with the set of one or more distinct signal sources at the current time.'"[9] Google is simply incorrect and ignores entire sections of Dr. Budavári's report to present an incomplete picture of Dr. Budavári's opinions.

For example, in paragraphs 46-54 of his report, Dr. Budavári addresses the claim language "a set of one or more distinct signal sources from which signals are received at a mobile device for each of a plurality of different times," which establishes the antecedent basis for the language "*the* set of one or more distinct signal sources at the current time." In these paragraphs, Dr. Budavári explains that, in his opinion, the set of one or more distinct signal sources refers to the "signal sources around a mobile device[], including without limitation GPS, cell towers, and/or individual WiFi access points," which indicates the geographic location of the mobile device.[10] Dr. Budavári further explains that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[11] Thus, Dr. Budavári states that a POSITA at the time of the invention "would have understood that a 'stationary state associated with a set of one or more distinct signal sources at the current time' may refer to a stationary state associated

---

[9] Motion at 2-4.
[10] Ex. A (Budavári Report) at ¶ 50.
[11] Ex. A (Budavári Report) at ¶¶ 51-53.

with a particular location."[12] Dr. Budavári continues, "it is my opinion that in the context of claim 1, a 'stationary state associated with a set of one or more distinct signal sources at the current time' refers to the state (e.g., present at, entering, or exiting) of a mobile device as it relates to a specific place, such as, for example, a business."[13] Thus, Google's argument that Dr. Budavári has failed to address or account for all of the claim language is simply not correct—which is alone a basis to deny Google's motion as to this ground.

Google further takes Dr. Budavári's deposition testimony out of context to suggest that he ascribes no meaning to the claim language relating to the "count" limitation.[14] But that is not what Dr. Budavári was saying or implying when the following exchange took place:



---

[12] Ex. A (Budavári Report) at ¶ 74.
[13] Ex. A (Budavári Report) at ¶ 74.
[14] *See* Motion at 3-4.
[15] Ex. B (Budavári Dep. Tr.) at 115:12-116:21.

Dr. Budavári thus observed that the claim language did not ascribe the counter element a specific purpose ("no specific goal or no specific meaning")—i.e., the claim language requires the *existence* of a count meeting the claim limitations, but the claim language does not require that count to be *used for any particular goal or for any particular purpose*.[16] Indeed, that is why Dr. Budavári ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that met the requirements of the claim language.[17]

But Google also takes issue with the fact that ▮▮▮▮▮▮▮▮ in Google Maps' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ can and do meet the limitations of the asserted claim, as opposed to the existence of ▮▮▮▮▮▮▮▮▮▮.[18] Google apparently argues that because Dr. Budavári identifies ▮▮▮▮▮▮▮▮▮▮ that evidence infringement, Dr. Budavári has somehow not expressed an infringement theory.[19] However, Google cites no precedent wherein reliance on multiple indicia of infringement is forbidden—because indeed, nothing prevents an expert's presentation of multiple paths to infringement, as Dr. Budavári has done.[20] *See, e.g., CXT Sys. v. Acad., Ltd.*, 2020

---

[16] The claim language at issue is what Dr. Budavári identified as claim element 1[c] in his analysis: "if the mobile device is determined to be not moving outside the specified area, then causing at least in part an incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time." *See* Dkt. 172-001 ('961 patent) at claim 1. i.e., Claim 1 requires only that the count exist.

[17] *See, e.g.*, Ex. A (Budavári Report) at ¶¶ 81-107 (citing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that satisfy the requirements of the claim language); *see also* Ex. B (Budavári Dep. Tr.) at 115:25-116:6 ("So it wouldn't be ... a problem to show Google Maps ▮▮▮▮▮▮▮▮. ... I think I do here in ... the following sections or paragraphs ▮").

[18] Motion at 4-8.

[19] Motion at 6. In raising this ▮▮▮▮▮▮▮▮▮▮▮▮ non-infringement argument at summary judgment, Google has simply pivoted from its prior closely-related claim construction position that Brazos's reliance on ▮▮▮▮▮▮▮▮▮▮ rendered this same claim limitation indefinite. Dkt. 127 at 10-15. The Court rightly denied Google's motion at the claim construction stage, and should follow suit here. Exhibit D (email from chambers containing Court's preliminary constructions).

[20] *See, e.g.*, Ex. A (Budavári Report) at ¶¶ 81-107 (detailing ▮▮▮▮▮▮▮▮▮▮ that meet the limitations of the claim language are found).

U.S. Dist. LEXIS 13615, *9 (E.D. Tex. Jan. 28, 2020) ("[an expert's] report may discuss multiple infringement theories … in parallel as long as those theories are each adequately disclosed"). In particular, Dr. Budavári's report sets forth a detailed analysis of the source code via which he arrives at his conclusions, specifically identifying ▮▮▮ he regards as satisfying the required counter element.[21] Though Dr. Budavári testified ▮▮▮

▮▮▮."[22]

Accordingly, because Dr. Budavári has demonstrated and identified code that satisfies the claim language "causing at least in part an incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time," summary judgment is inappropriate on this ground.

### B. Google Maps Performs the Step of "Determin[e/ing] a Primary Set of Stationary States"

Next, Google argues that Brazos failed "to meet its burden to demonstrate infringement of the 'determin[e/ing] a primary set of stationary states limitation."[23] But again, this is contrary to Dr. Budavári's report and testimony.

Google argues that Brazos and Dr. Budavári failed to demonstrate that the following language was met by Google Maps: "determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified

---

[21] *See, e.g.*, Ex. A (Budavári Report) at ¶¶ 86 (▮▮▮); 87 (▮▮▮); 88 (▮▮▮); 93 (▮▮▮); 94 (▮▮▮); 98 (▮▮▮).
[22] Ex. B (Budavári Dep. Tr.) at 140:1-19.
[23] Motion at 8-10.

area."[24] Google advances two theories: (1) that Dr. Budavári's analysis with regard to claim element 1[c] purportedly does not apply to his analysis of claim element 1[d] and so there is an alleged failure of proof; and (2) that Dr. Budavári failed to "offer any evidence for 'a primary set of stationary states.'"[25] Both are unavailing.

First, Google is incorrect that the "stationary state" limitation in claim element 1[d] is different from the "stationary state" limitation analyzed by Dr. Budavári for claim element 1[c]. The "stationary state," as the claim language and the specification make clear, refers to a "limited area where the user of the mobile terminal has a tendency to stay," which location is determined by the "one or more distinct signal sources" visible to that mobile device.[26] Those stationary states are each associated with "counts" or counters, as Dr. Budavári analyzes in his report wherein he identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[27] The difference between the stationary states of claim elements 1[c] and 1[d] is merely the categorization of stationary states into a "*primary set of stationary states*" in element 1[d]. This categorization is done, at least in part, through a determination of the frequency that the geographic area is entered by the mobile device—i.e., "a frequently incremented count for one or more similar sets of one or more distinct signal sources." But element 1[d]'s narrower focus on the "primary set" does not affect the underlying data associated with the stationary state or otherwise require reanalyzing what constitutes a stationary state. According to the '961 patent, a stationary state record includes, in relevant part, sets of transmitter IDs indicating locations, as well as "count fields."[28] The determination of what

---

[24] *See* Dkt. 172-001 ('961 patent) at claim 1.
[25] Motion at 8-9.
[26] *See, e.g.*, Dkt. 172-001 ('961 patent) at 7:18-29.
[27] Ex. A (Budavári Report) at ¶¶ 70-108 (claim element 1[c] analysis); 111 (incorporating by reference Dr. Budavári's analysis of claim element 1[c])
[28] Dkt. 172-001 ('961 patent) at 8:60-9:4 (detailing a stationary state record); *see also id.* at 13:30-36 (detailing the process of updating a stationary state); *see also* Ex. B (Budavári Dep. Tr.) at

8

qualifies as a "*primary* stationary state" as opposed to merely a "stationary state" depends at least in part on the frequency that a mobile device is detected at a particular location and/or user input.[29] Thus, Dr. Budavári's analysis of claim element 1[c] with respect to a "stationary states" and its incremented count applies to claim element 1[d].

Second, Google is incorrect that Dr. Budavári failed "to offer any evidence for 'a primary set of stationary states.'" In his report, Dr. Budavári details how Google—via its Google Maps platform—███████████████████████.[30] In particular, Dr. Budavári points out that Google ████████████████████████████████████████████████████████████████████████████████████████████████.[31] Dr. Budavári's testimony further confirms that ████████████████████████████████████████████.[32] Thus, contrary to Google's argument, Dr. Budavári does present evidence that Google satisfies claim element 1[d], and summary judgment is inappropriate on this ground as well.

---

157:19-159:25 ("██████████████████████████████████████████████████").
[29] Dkt. 172-001 ('961 patent) at 8:5-15 (describing how user input may inform the determination of a "primary stationary state"); 23:23-54 (discussing "frequently visited places"); Ex. B (Budavári Dep. Tr.) at 160:2-11 ("████████████████████████████████████████").
[30] Ex. A (Budavári Report) at ¶¶ 112-122.
[31] Ex. A (Budavári Report) at ¶ 115.
[32] Ex. B (Budavári Dep. Tr.) at 160:19-24 ███████████████████████████████████████.

9

### C. The Accused Google Pixel Products All Have or Incorporate a "Memory Including Computer Instructions"

Lastly, Google argues that it is entitled to summary judgment on apparatus Claims 11 and 14 because Dr. Budavári allegedly failed to provide any evidence directed to "at least one memory including computer instructions… configured to" perform the claim steps. Google alleges that Dr. Budavári failed to identify the memory or the computer instructions. Google's criticisms are overwrought, and the Court should disregard them.

First, and most importantly, Google ignores how computers in general, and the accused Pixel products in particular, function. The apparatus claims of the '961 patent require, in relevant part, the following: "at least one memory including computer instructions, the at least one memory and computer instructions configured to, with the at least one processor, cause the apparatus to: [execute a series of claimed steps]." But this is just a recitation of the fundamental parts of what a computer needs to execute instructions, such as applications or programs running on that computer. The specification of the '961 patent confirms that the required "at least one memory including computer instructions" is not some specialized or unique part of the invention; all the specification requires is that the apparatus contain memory "such as a random access memory (RAM) or other dynamic storage device [that] stores information including processor instructions for incrementally determining location context."[33] Such memory "is also used by the processor to store temporary values during execution of processor instructions."[34] And the computer system described "also includes a read only memory (ROM) or other static storage device… for storing static information, including instructions."[35] Other non-volatile storage is also mentioned: "a magnetic disk, optical disk or flash card, for storing information, including instructions, that persists even when the

---

[33] Dkt. 172-001 ('961 patent) at 31:6-27.
[34] *Id.*
[35] Dkt. 172-001 ('961 patent) at 31:6-27.

10

computer system 1600 is turned off or otherwise loses power."[36] And the claim limitation in question only requires that the accused products incorporate "at least one memory including computer instructions."

Dr. Budavári states that the claim element requiring the "at least one memory including computer instructions" is met by the accused Google Pixel devices.[37] That is because those accused devices function as computers, and the very fact that they run applications—such as Google Maps—is sufficient proof that those devices contain (1) computer instructions—i.e., the code that allows the application to function; (2) memory that stores that code; and (3) a processor that allows that code to execute on that device.[38] This is not a question of purported failure to identify a specific hardware component required by the asserted claims in connection with a software-only accused product, as has been at issue in other recent litigation before this Court. *Cf.*, *e.g.*, Motion at 11 (citing to directed verdict in *WSOU Invs., LLC v. Dell Techs., Inc.*, No. 6:20-cv-00480-ADA (W.D. Tex. 2023)). Rather, the accused products in this case are actual physical mobile computing devices that run programs comprised of computer instructions; that such accused devices contain memory and computer instructions to allow them to function is fundamental. Google does not and cannot dispute that its products—actual physical Pixel devices that run applications—meet this claim limitation.

Further, Google argues that RAM allegedly cannot meet this limitation for the reasons expressed it its own expert Dr. Welch's report and analysis.[39] But as noted above, a motion for summary judgment is not appropriate when it requires the Court to resolved a "battle of the

---

[36] *Id.*; *see also id.* at 34:48-35:8 (describing the computer framework as it applies to mobile devices).
[37] *See*, *e.g.*, Ex. A (Budavári Report) at ¶¶ 155-160; Ex. B (Budavári Dep. Tr.) at 163:19-164:24.
[38] *See*, *e.g.*, Ex. B (Budavári Dep. Tr.) at 190:2-191:6.
[39] Motion at 12-13.

experts," such as presented via the conflict between Dr. Budavári's and Dr. Welch's respective opinions. *Via Vadis*, 2002 U.S. Dist. LEXIS 9169, *23.

To that end, the asserted apparatus claims require only that a memory "includes" computer instructions. The claims notably *do not* require that the memory includes those instructions at all times, including when the products "are powered off at the time of the sale."[40] Here Google simply weaves a new claim limitation out of whole cloth; the Court should disregard it entirely. Finally, RAM can and does hold computer instructions and variables when a computer or a mobile device is operating.[41] That is, when running an application—e.g., Google Maps—a device's RAM is loaded with the instructions, variables, and values necessary to run that application; that is, RAM "includes" those computer instructions.

Because there ought to be no dispute that the accused Google Pixel devices indeed contain "at least one memory including computer instructions," Google's motion should be denied on this ground.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should deny Google's Motion for Summary Judgment.

---

[40] *Id.* at 13.
[41] *See, e.g.*, Ex. B (Budavári Dep. Tr.) at 185:22-186:22; 187:14-188:14.

|  |  |
|---|---|
| Dated: July 26, 2023 | Respectfully submitted,<br><br>/s/ Joseph M. Abraham<br>Joseph M. Abraham, TX SB No. 24088879<br>Timothy Dewberry, TX Bar No. 24090074<br>**FOLIO LAW GROUP PLLC**<br>13492 Research Blvd., Suite 120, No. 177<br>Austin, TX 78750<br>Tel: 737-234-0201<br>Email: joseph.abraham@foliolaw.com<br>       timothy.dewberry@foliolaw.com<br><br>Cliff Win, CA Bar No. 270517<br>Alexandra Fellowes, CA Bar. No. 261929<br>C. Maclain Wells, CA Bar No. 221609<br>Alden K. Lee, *(pro hac vice)*<br>**FOLIO LAW GROUP PLLC**<br>1200 Westlake Ave. N., Ste. 809<br>Seattle, WA 98109<br>Tel: (206) 880-1802<br>Email: cliff.win@foliolaw.com<br>       alexandra.fellowes@foliolaw.com<br>       maclain@foliolaw.com<br>       alden.lee@foliolaw.com<br><br>Gregory P. Love<br>State Bar No. 24013060<br>Mark D. Siegmund<br>State Bar No. 24117055<br>Melissa S. Ruiz<br>State Bar No. 24128097<br>**Cherry Johnson Siegmund James**<br>400 Austin Ave., Ste. 9th Floor<br>Waco, TX 76701<br>Tel: 254-732-2242<br>Email: glove@cjsjlaw.com<br>       msiegmund@cjsjlaw.com<br>       mruiz@cjsjlaw.com<br><br>*Attorneys for Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing & Development* |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of July, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served a copy via email to all counsel of record.

*/s/ Joseph M. Abraham*
Joseph M. Abraham
