Public Redacted Version

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT, | ) ) ) ) Case No. 6:20-cv-00585-ADA |
| Plaintiff, | ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) |
| GOOGLE LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFF BRAZOS LICENSING & DEVELOPMENT'S
OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT OF
<u>INVALIDITY OF U.S. PATENT NO. 8,737,961</u>**

**I.      INTRODUCTION**

Google's Motion for Summary Judgment (Dkt. 168) alleges that the asserted claims of U.S. Patent Nos. 8,737,961 (the '961 Patent") are invalid by arguing that the specification lacks written description and enabling disclosure for the claimed limitation "determining a primary set of stationary states." Google does not dispute that determining a primary set of stationary states includes determining frequently counted stationary states. Google also does not dispute that focusing on frequently counted stationary states alone is not enough to satisfy this claim limitation, and that more is required to elevate a stationary state to the "primary set."

What Google disputes is whether the patent specification and Brazos's expert identify the additional requirement needed to determine this primary set. But the specification provides adequate description of this claim element and informs a POSITA how to determine a "primary set of stationary states"—specifically by way of criteria such as an associated frequently incremented count, as well as considering confirmatory criteria, such as an associated active or passive user input—as consistently understood by both of Brazos's experts. As detailed below, Brazos's expert Dr. Cooklev repeatedly explained what further considerations beyond the count frequency for the stationary state were involved in determining a primary set of stationary states in light of the patent's description. Accordingly, Google's Motion should be denied.

**II.     ARGUMENT**

    **A.     The '961 Patent's Claims Have Adequate Written Description Because the Specification Describes How to Determine a "Primary Set of Stationary States"**

Google ignores the '961 patent specification's unambiguous and repeated disclosure of how to determine the claimed "primary set of stationary states"—the same disclosure upon which Brazos's experts base their understanding of this claim limitation in forming their opinions. For

example, the specification at columns 8-9 describes embodiments for how a primary stationary state is identified and confirmed. *See, e.g.*, Ex. A ("'961 patent") at 8:5-34.

The description of these embodiments, and Brazos's experts relying thereon, explain that in order for a stationary state to be a member of the "primary set of stationary states"—i.e., to be a primary stationary state[1]—the stationary state must meet certain criteria. '961 patent at 8:5-9:11, 23:15-54; Ex. B ("Cooklev Rep.") at ¶¶ 38, 160, 180, 204, 231, 255, 278, 301; Ex. C ("Budavári Rep.") at ¶¶ 109-129. That is, the stationary state must first be of some importance by way of, for example, having a count associated with it that is frequently incremented. *See, e.g.*, '961 patent at 23:15-54; Ex. D ("Cooklev Tr.") at 66:2-67:12, 73:15-75:13, 76:11-20, 91:4-92:25, 134:23-135:22; Cooklev Rep. at ¶ 301.

Second, "when the system believes the user is in a stationary state of some importance"—i.e., a potentially primary stationary state—the patent describes determining that this stationary state is a primary stationary state by way of, for example, active or passive input such as user confirmation or GPS polling. '961 patent at 8:5-49; Cooklev Tr. at 73:2-5, 76:11-20, 83:9-16, 89:18-90:5, 91:4-93:18, 99:23-100:6, 134:23-135:22; Cooklev Rep. at ¶¶ 38, 160, 180, 204, 231, 255, 278.

B. **Brazos's Experts Dr. Cooklev and Dr. Budavári Reach the Same Conclusions on How to Determine a "Primary Set of Stationary States"**

Google alleges that "[Brazos]'s two experts reach[ed] opposite conclusions as to what is and isn't a 'primary set of stationary states.'" Contrary to Google's allegations, Dr. Budavári and

---

[1] Google quibbles with the fact that the specification does not mention the term "primary set of stationary states" but rather mentions the term "primary stationary states." Google then alleges that Brazos's expert Dr. Cooklev testified that a "primary stationary state" is not the same as the "primary set of stationary states." Dkt. 168 at 6 (citing Cooklev Tr. at 61:5-22). This is not correct. Dr. Cooklev testified that a "[p]rimary stationary state is a stationary state that belongs to the primary set of stationary states." Cooklev Tr. at 61:20-22.

Dr. Cooklev reach the same conclusions. For example, Dr. Cooklev, relying in part on the specification at columns 8-9, concluded that the determination of a primary set of stationary states[2] doesn't just stop at whether a stationary state is frequently counted, but rather additionally involves confirming that each stationary state associated with a frequently incremented count is a stationary state of some importance by way of some active or passive input. *See e.g.*, '961 patent at 8:5-49; Cooklev Tr. at 66:2-67:12 ("in column 8 […] [t]he user is prompted or polled for information, and this happens when the system believes the user is in a stationary state of some importance"), 73:2-5, 76:11-20, 83:9-16, 89:18-90:5 ("in addition to the stationary state being among the most frequent stationary state […] there is additional content here […] and in this passive mode, this is how determination can be made, as an example; or in the active mode, the user is prompted or polled for information, and the user can confirm […] this is among the most frequent stationary states [and] is a member of the primary set"). *See, also, e.g.*, Cooklev Tr. at 91:4-93:18, 99:23-100:6, 134:23-135:22, 138:5-17.

Consistent with this conclusion, Dr. Cooklev also provided a similar opinion in his expert report. *See, e.g.*, Cooklev Rep. at ¶¶ 38, 160, 180, 204, 231, 255, 278 ("[A] POSITA reviewing the '961 patent would understand how to determine a primary set of stationary states. For example, in

---

[2] Google suggests that during the first round of *Markman*, Brazos's prior counsel admitted that the determination of a primary stationary state only involves determining whether a stationary state is frequently counted. Dkt. 168 at 2. Brazos's counsel at that time, however, stated that "determining a primary set of stationary states ***includes*** stationary states with the most observations, or highest (most frequently) incremented counts." Dkt. 41 [WSOU's Reply *Markman* Brief] at 6 (emphasis added); *see also* Dkt. 168 at 2 (Google's motion confirming WSOU's counsel statement regarding primary stationary states was not limited to frequency of count: "determining a primary set of stationary states ***includes*** stationary states with the most observations") (citing Dkt. 38 [WSOU's *Markman* Brief] at 6-7) (emphasis added). WSOU's counsel never limited the determination of a stationary state to only determining whether stationary state is frequently counted; WSOU's counsel merely stated that it included the count frequency.

3

column 8, lines 5-15 of the '961 patent, the specification discloses that in accordance with at least one embodiment of the invention, a primary stationary state may be derived from user input prompted by the system. As another example, GPS data may be used to determine "which particular location is associated with the stationary state and further provide context") (citing '961 patent at 8:35-49, 9:5-10). In other words, Dr. Cooklev concluded that a stationary state cannot be a primary stationary state simply because it is frequently counted. Additional confirmatory information as described in column 8 of the '961 patent is required to determine whether it is a primary stationary state. Google does not and cannot dispute this. Dkt. 168 at 7-10.

Dr. Budavári reaches the same conclusion as he opines that the accused Google products meet the claimed "primary set of stationary states" limitation because the products incorporate ███████████████████████████████████████ ███████ For example, Dr. Budavári opines that: "[w]ith regard to 'determining a primary set of stationary states' […], [f]or example, ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████.'" Budavári Rep. at ¶¶ 112-113 (emphasis added).

Dr. Budavári further described such ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████" Budavári Rep. at ¶ 127 (emphasis added). Indeed, these examples of the accused products

4

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████.

Google, however, argues that the two experts reach opposite conclusions by mischaracterizing Dr. Budavári's testimony ████████████████████████████

██████████████████████████████████████████████████████

████████████████████████



Ex. E ("Budavári Tr.") at 160:19-24 (emphasis added). Dr. Budavári's conclusion is consistent with Dr. Cooklev's conclusion in that something more than frequency of count for the stationary state is required in determining a primary set of stationary states.

### C. Dr. Cooklev Explained How to Determine the "Primary Set of Stationary States"

As detailed above, Dr. Cooklev repeatedly explained how to determine the claimed "primary set of stationary states" as described in the '961 patent specification. As an initial matter, Google does not dispute Dr. Cooklev's and the specification's explanation of the first step of this determination process, which involves determining the stationary states that are frequently counted. *See, e.g.*, Dkt. 168 at 8-9 (citing Dr. Cooklev's discussion of frequent stationary states and the '961 patent specification's disclosure of frequent counts at, for example, Table 6, Figures 11A, 11B, etc.). Google, however, purports that this is where Dr. Cooklev's explanation stops. Indeed, Google's allegation is belied by Dr. Cooklev's repeated and in-depth explanations of the

specification's disclosure at columns 8-9 describing how a primary stationary state is determined by incorporating additional confirmatory information for a stationary state that the system believes to be important. '961 patent at 8:5-9:11; Cooklev Tr. at 73:2-5, 76:11-20, 83:9-16, 89:18-90:5, 91:4-93:18, 99:23-100:6, 134:23-135:22; Cooklev Rep. at ¶¶ 38, 160, 180, 204, 231, 255, 278.

Google also criticizes Dr. Cooklev for purportedly addressing only Dr. Welch's opinions on lack of enablement and failing to address Dr. Welch's opinions that the specification contains inadequate written description. Dkt. 168 at 7-8 (citing Cooklev Rep. at ¶¶ 293-301). This is not correct. In his report, Dr. Cooklev directly addressed Dr. Welch's opinions on written description. *See, e.g.*, Cooklev Rep. at ¶¶ 38, 160, 180, 204, 231, 255, 278, 301 ("Dr. Welch also opines that the '961 patent 'likewise does not teach any particular technique for 'determining a primary set of stationary states'' and that it 'lacks any description whatsoever in the specification.' I disagree. Indeed, it is my opinion that a POSITA reviewing the '961 patent would understand how to determine a primary set of stationary states. For example, in column 8, lines 5-15 of the '961 patent, the specification discloses that in accordance with at least one embodiment of the invention, a primary stationary state may be derived from user input prompted by the system. As another example, GPS data may be used to determine "which particular location is associated with the stationary state and further provide context") (citing Welch Rep. at ¶ 741 and '961 patent at 8:35-49, 9:5-10).

For all these reasons, Google has not shown that the '961 patent claims lack adequate written description. At minimum, the "battle of the experts" between Dr. Cooklev (concerning whose opinions Google has not filed a *Daubert* motion) and Dr. Welch leaves this issue subject to a genuine question of fact for the jury to resolve, rendering summary judgment inappropriate. *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc)

6

(compliance with written description requirement is a question of fact); *see also Vadis v. Amazon*, No. 1:14-cv-00813-LY, 2002 U.S. Dist. LEXIS 9169, *23 (W.D. Tex. Jan. 18, 2022) (citing *Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 F. App'x 911, 921 (Fed. Cir. 2004) (reversing district court's grant of summary judgment of non-infringement where conflicting evidence between experts rendered summary judgment inappropriate); *see also Effingo Wireless, Inc. v. Motorola Mobility, Inc.*, No. SA-11-CA-649, 2013 U.S. Dist. LEXIS 194408, *4-*6, (W.D. Tex. Apr. 16, 2013) (summary judgment was inappropriate where each side provided opposing expert testimony regarding the presence of required claim elements in the accused products).

### III. The '961 Patent's Claims Requiring "Primary Set of Stationary States" Are Sufficiently Enabled by the Specification

Google argues that the asserted claims of the '961 patent are invalid for lack of enablement because the specification "does not say whether determining the 'most frequent stationary states' is enough to 'determine a primary set of stationary states,'" and Dr. Cooklev allegedly "testified that such a determination of frequency is insufficient." Dkt. 168 at 10. Google's argument here is largely duplicative of its argument for written description. In other words, Google accepts Dr. Cooklev's opinion that determining a primary stationary state at least includes determining frequently counted stationary states, but ignores Dr. Cooklev's explanation of the further parts of the determination as described in columns 8-9 of the specification. That is, "when the system believes the user is in a stationary state of some importance," Dr. Cooklev explained that the patent describes determining whether it is a primary stationary state by way of, for example, confirmation by some active or passive input such as user input or GPS polling. '961 patent at 8:5-49; Cooklev Tr. at 73:2-5, 76:11-20, 83:9-16, 89:18-90:5, 91:4-93:18, 99:23-100:6, 134:23-135:22; Cooklev Rep. at ¶¶ 38, 160, 180, 204, 231, 255, 278.

Therefore, as detailed above, both the specification and Dr. Cooklev provide clear guidance on how to determine a primary set of stationary states. Dr. Cooklev testified that a POSITA reading the passages of the specification at columns 8-9 would be sufficiently informed to implement the claimed step of determining a primary set of stationary states. Cooklev Tr. at 75:23-76:20, 79:18-80.

## IV.  CONCLUSION

For the foregoing reasons, Brazos respectfully requests that the Court deny Google's Motion for Summary Judgment under 35 U.S.C. § 112.

Dated: July 26, 2023                                              Respectfully submitted,

/s/ *Joseph M. Abraham*
Joseph M. Abraham, TX SB No. 24088879
Timothy Dewberry, TX Bar No. 24090074
**FOLIO LAW GROUP PLLC**
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
Tel: 737-234-0201
Email: joseph.abraham@foliolaw.com
          timothy.dewberry@foliolaw.com

Cliff Win, CA Bar No. 270517
Alexandra Fellowes, CA Bar. No. 261929
C. Maclain Wells, CA Bar No. 221609
Alden K. Lee, *(pro hac vice)*
**FOLIO LAW GROUP PLLC**
1200 Westlake Ave. N., Ste. 809
Seattle, WA 98109
Tel: (206) 880-1802
Email: cliff.win@foliolaw.com
          alexandra.fellowes@foliolaw.com
          maclain@foliolaw.com
          alden.lee@foliolaw.com

>Gregory P. Love
>State Bar No. 24013060
>Mark D. Siegmund
>State Bar No. 24117055
>Melissa S. Ruiz
>State Bar No. 24128097
>**Cherry Johnson Siegmund James**
>400 Austin Ave., Ste. 9th Floor
>Waco, TX 76701
>Tel: 254-732-2242
>Email: glove@cjsjlaw.com
>          msiegmund@cjsjlaw.com
>          mruiz@cjsjlaw.com
>
>*Attorneys for Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing & Development*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served a copy via email to all counsel of record.

>*/s/ Joseph M. Abraham*
>Joseph M. Abraham

9