# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT,<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 6:20-cv-00585-ADA<br><br>JURY TRIAL DEMANDED |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE CERTAIN OPINIONS OF TECHNICAL EXPERT DR. TAMÁS BUDAVÁRI**

████████████████████████████████

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

I. DR. BUDAVÁRI'S NEW INFRINGEMENT THEORIES SHOULD BE
   STRICKEN ........................................................................................................................ 1

   A. Plaintiff Admits That It Has Now Abandoned The "████████"
      Infringement Theory That Formed The Sole Basis For Its Request To Add
      Accusations Against Google Maps ...................................................................... 1

   B. Exclusion Is Warranted Because Plaintiff Failed To Put Google On Notice
      Of Dr. Budavári's New Infringement Theories .................................................... 3

II. DR. BUDAVÁRI'S INFRINGEMENT ANALYSIS FOR "INCREMENTING
    OF A COUNT FOR A STATIONARY STATE ASSOCIATED WITH THE SET
    OF ONE OR MORE DISTINCT SIGNAL SOURCES AT THE CURRENT
    TIME" IS BASED ON AN ERROR OF LAW. ................................................................. 6

III. DR. BUDAVÁRI OFFERS NO BASIS OR REASONS FOR HIS IPSE DIXIT. ............. 7

   A. Dr. Budavári's Unsupported Opinions Regarding The "Determining
      Whether The Mobile Device Is Moving Outside A Specified Area"
      Limitation Should Be Stricken............................................................................. 7

   B. Dr. Budavári's Unsupported Opinions Regarding The "Incrementing of A
      Count For a Stationary State" Element Should Be Stricken................................ 8

   C. Dr. Budavári's Unsupported Opinions Regarding The "Determining A
      Primary Set of Stationary States" Limitation Should Be Stricken ...................... 8

   D. Dr. Budavári's Unsupported Opinions Regarding The "Memory With
      Computer Instructions" Limitation Should Be Stricken ...................................... 8

   E. Dr. Budavári's Unsupported Opinions Regarding The "Delivery of a
      Service" Limitation Should Be Stricken.............................................................. 8

IV. PLAINTIFF CANNOT MEET ITS BURDEN TO SHOW DR. BUDAVÁRI'S
    "TECHNICAL COMPARABILITY" OPINIONS ARE RELIABLE. .............................. 9

   A. Plaintiff Concedes Dr. Budavári's "Analysis" Concerns Only Vague
      "Aspects" ............................................................................................................. 9

   B. Plaintiff Cannot Square Dr. Budavári's Opinions That Non-Accused
      Products Are Comparable With His Opinions That Certain Patents Are
      Not........................................................................................................................ 9

V. CONCLUSION................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Biscotti Inc. v. Microsoft Corp.*,
    2017 WL 2607882 (E.D. Tex. 2017) ...................................................................................10

*GE v. Joiner*,
    522 U.S. 136 (1997) ...............................................................................................................7

*Homeland Housewares, LLC v. Whirlpool Corp.*,
    865 F.3d 1372 (Fed. Cir. 2017) ..............................................................................................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..................................................................................................9

*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed. Cir. 1990) ..............................................................................................5

*Ravgen, Inc. v. Lab. Corp. of Am. Holdings*,
    6:20-cv-00969-ADA, Dkt. 226 (W.D. Tex. 2022) .................................................................6

*Tomax AS v. Turbo Drill Indus., Inc.*,
    No. :21-cv-00260-ADA, 2023 WL 3171744 (W.D. Tex. Apr. 6, 2023) ............................2, 5

**OTHER AUTHORITIES**

Fed. R. Evid. 702 .........................................................................................................................10

*\* Emphasis added throughout unless indicated otherwise.*

*\*\* Deposition objections removed unless indicated otherwise.*

██████████████████████████████

## TABLE OF EXHIBITS

| EX. | DKT. NO. | DESCRIPTION |
|---|---|---|
| 1 | 174-1 | U.S. Patent No. 8,737,961 |
| 2 | 173-1 | WSOU's Amended Final Infringement Contentions |
| 3 | 173-2 | 2022-02-17 Discovery Hearing Transcript |
| 4 | 174-2 | Transcript of WSOU's Technical Tutorial |
| 5 | 173-3 | 2022-09-08 Letter from G. Love to E. Warren |
| 6 | 173-4 | 2023-01-18 Letter from G. Love to J. Kash |
| 7 | 173-5 | 2023-05-25 Deposition of T. Budavári |
| 8 | 173-6 | T. Budavári Opening Infringement Report |
| 9 | 174-3 | Screenshot at 3:12 of WSOU's Technical Tutorial |
| 10 | - | WSOU's Amended Final Infringement Contentions (additional excerpts) |

## INTRODUCTION

Google established that Dr. Budavári (1) impermissibly substitutes new and different infringement theories than those presented in plaintiff's amended final infringement contentions, (2) purports to analyze erroneous claim language, (3) repeatedly offers bare, unsupported conclusions that the claim limitations are met, and (4) offers unreliable opinions regarding the so-called "technical comparability" of unaccused products and features. Plaintiff's response is long on excuses, but short on evidence, legal authority, or reasoned explanation supporting admission of the challenged opinions. Google's motion should be granted.

## I. DR. BUDAVÁRI'S NEW INFRINGEMENT THEORIES SHOULD BE STRICKEN

### A. Plaintiff Admits That It Has Now Abandoned The "▮▮▮▮▮" Infringement Theory That Formed The Sole Basis For Its Request To Add Accusations Against Google Maps

Plaintiff's response is remarkable for what it does ***not*** dispute:

First, plaintiff does not dispute that it amended its final infringement contentions, which accused only Google's Awareness API, to accuse additional Google products based solely on the theory that those products, including certain features of Google Maps, allegedly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Nor could it dispute that; plaintiff is on record stating that it sought amendment in April 2022 after ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 173 (citing Dkt. 115 at 7)).

Second, plaintiff does not dispute that after being granted leave to amend its final infringement contentions in August 2022 to add this second infringement theory, it repeatedly represented to both Google and this Court that it was accusing these additional Google products,

1

including certain features of Google Maps, based on ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (Dkt. 173 at 3, Exs. 3-6).

Third, plaintiff does not dispute that it has now completely abandoned any infringement theory based on ▮▮▮▮▮▮▮▮▮▮ by Google Maps. (Dkt. 193 at 4). In fact, Dr. Budavári concedes not only that his report makes no allegations that Google Maps ▮▮ ▮▮▮▮▮▮▮▮▮▮ allegedly infringe, but also that he did not even consider ▮▮▮▮▮▮—the sole basis for plaintiff's amendment to accuse certain features of Google Maps—to be at all relevant to his infringement analysis. (Dkt 173 at 3-4).

Finally, plaintiff's response admits *why* it abandoned that infringement theory—because it discovered in Google documents that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ (Dkt. 193 at 4–5). At that point in time, it was incumbent upon plaintiff to either dismiss its infringement allegations—having no good-faith basis to proceed under its infringement theory—or move the Court for leave to amend its contentions to pursue a *third* new infringement theory. Plaintiff did neither, opting instead to surprise Google and the Court with its new theory for the first time in its expert report.

Plaintiff's response confirms that Dr. Budavári has impermissibly substituted an entirely new infringement theory for Google Maps. In such circumstances, this Court and others strike opinions that completely diverge from the final infringement contentions. *See Tomax AS v. Turbo Drill Indus., Inc.*, No. :21-cv-00260-ADA, 2023 WL 3171744, at *4-*6 (W.D. Tex. Apr. 6, 2023) (striking "five new infringement theories which were not identified in the final infringement contentions" because "Defendant has been severely prejudiced by the late and inconsistent disclosure of Plaintiff's infringement theory").

### B. Exclusion Is Warranted Because Plaintiff Failed To Put Google On Notice Of Dr. Budavári's New Infringement Theories

Faced with the consequences of the undisputed fact that Dr. Budavári does not provide any opinions based on the ▮▮▮ theory set forth in plaintiff's amended final infringement contentions for certain features of Google Maps, plaintiff resorts to mischaracterizations and meritless excuses that only confirm that exclusion is appropriate.

<u>First</u>, Dr. Budavári's new infringement theories are not disclosed in the April 2022 amended final infringement contentions. Plaintiff attempts to retroactively rewrite its contentions to accuse more than just ▮▮▮ by claiming for the first time that it ▮▮▮ (Dkt 193 at 4 n.7). In other words, plaintiff asks this Court to believe that when it repeatedly used the term ▮▮▮ plaintiff meant "any way that Google Maps determined a device's location." But that is incompatible with plaintiff's previous representations to this Court. As plaintiff informed the Court as recently as January 2023, ▮▮▮ (Ex. 9). This is the understanding of ▮▮▮ that plaintiff has had all along—in a February 2022 hearing, plaintiff described ▮▮▮ as ▮▮▮[1] (Ex. 3 at 9:15–17). Accordingly, the

---

[1] Although plaintiff did not finish this sentence, the meaning "geographic boundary" is clear from how plaintiff continued: "Okay. So we've accused that. So, for example, there might be an application -- an application wants to say when a person is within ten miles of my business . . ." (Ex. 3 at 9:19–22).

infringement theory disclosed in the amended final infringement contentions was that certain features of Google Maps ▮▮▮▮▮ in order to deliver them a service. (*See*, *e.g.*, Ex. 10 at 10). Plaintiff's response conspicuously does not address the specifics of Dr. Budavári's new infringement theory, which claims that ▮▮▮▮▮ is how Google Maps allegedly meets the claim limitations. (*See* Dkt. 173 at 5.) That theory does not appear anywhere in the amended final infringement contentions.

Plaintiff's attempt to morph cherry-picked generalized statements from the amended final infringement contentions to cover Dr. Budavári's new theories is equally unavailing. Plaintiff's primary example is a short passage that briefly discusses ▮▮▮▮▮ from which plaintiff asserts that this is "precisely what Dr. Budavári analyzed." (Dkt. 193 at 5–6). Tellingly, the part of Dr. Budavári's report to which plaintiff points does not mention or discuss ▮▮▮▮▮. (Dkt. 193. at 5–6.) Plaintiff also lists a few figures and points to the phrase about "delivery of a service" that Dr. Budavári copied from the contentions. (Dkt. 193 at 6). But none of these examples from the contentions disclose or explain Dr. Budavári's new theory in his report—that they were copied from the contentions into his report only shows that Dr. Budavári repurposed certain figures. There is no dispute that: (i) the amended final infringement contentions accused ▮▮▮▮▮ (ii) sometime during discovery plaintiff realized that it could not sustain its ▮▮▮▮▮ theory; and (iii) Dr. Budavári therefore no longer accuses ▮▮▮▮▮

Second, plaintiff cannot blame Google for its failure to put Google on notice of its latest infringement theories before Dr. Budavári's report. Plaintiff asserts that it relied on a single statement from a Google deponent and public documentation to form its "belief" that Google Maps allegedly ▮▮▮▮▮ in a manner that infringed the asserted claims. Plaintiff attempts

4

to justify its new infringement theory because it is allegedly based on confidential Google information it "necessarily had to learn in the discovery process," claiming "[t]hat is how discovery works." (Dkt. 193 at 4-5). Contrary to plaintiff's assertion, "discovery rules are designed to assist a party ***to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim***." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). Plaintiff's argument that it changed theories due to discovery simply demonstrates that plaintiff's ▬▬▬ theory lacked a reasonable basis from the start. And it is undisputed that, after plaintiff learned that Google Maps did not ▬▬▬ as alleged in the amended final infringement contentions, at no point did it inform Google that it was dropping that infringement theory and substituting yet another one.

This Court properly strikes from expert reports any new infringement theories not disclosed in the infringement contentions, such as in *Tomax*. 2023 WL 3171744, at *2. Plaintiff makes the pedestrian point that citing evidence found in discovery is possible without departing from the infringement contentions. But that point is irrelevant here, because as plaintiff itself admits, there is no dispute that Dr. Budavári does not accuse ▬▬▬ His new infringement theories are untimely and prejudicial because Google was forced to respond to them after seeing them for the first time in Dr. Budavári's report. *See id*. at *4. Google also relied on plaintiff's contentions in preparing its invalidity contentions. Had Google known that plaintiff was going to advance new infringement theories that did not involve ▬▬▬ Google could have reacted with new invalidity theories. The Court should grant the motion to strike.

5

II.  **DR. BUDAVÁRI'S INFRINGEMENT ANALYSIS FOR "INCREMENTING OF A COUNT FOR A STATIONARY STATE ASSOCIATED WITH THE SET OF ONE OR MORE DISTINCT SIGNAL SOURCES AT THE CURRENT TIME" IS BASED ON AN ERROR OF LAW.**

Plaintiff's response does not dispute that Dr. Budavári misstates the claim language in his analysis of this limitation—its only argument is that his misstatement should be ignored because it was merely a "typographical error." (Dkt. 193 at 7). That misses the point. As Google established (Dkt. 173 at 7-8), the problem extends far beyond that Dr. Budavári merely ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 193 at 7); the irremediable defect is that his analysis confirms he excised the antecedent basis for "*the* set of one or more distinct signal sources." (Dkt. 173 at 7-8). Plaintiff agrees that the antecedent basis is necessary for a correct understanding of this claim limitation (Dkt. 193 at 7), but plaintiff then fails to identify anything in Dr. Budavári's report that discusses the antecedent basis for this term. Opinions that are "premised on an incorrect understanding of the law should be excluded." *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, 6:20-cv-00969-ADA, Dkt. 226 (W.D. Tex. 2022).

Contrary to plaintiff's assertion, Google *did* point to evidence that Dr. Budavári misunderstood this claim limitation given his failure to acknowledge the required antecedent basis. Dr. Budavári's opinion that "this claim element does not require that the 'count for a stationary state' be limited to any particular individual user or mobile device" is not merely an "observation," as plaintiff now contends. (Dkt. 193 at 7). As explained in Google's Motion for Summary Judgment of Non-Infringement, Dr. Budavári also purports to identify "counts" that are not limited to any particular individual user or mobile device, including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Dkt. 171 at 5). Dr. Budavári's opinions must be disregarded because they are based on an incorrect understanding of this claim

6

limitation. *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017).

### III. DR. BUDAVÁRI OFFERS NO BASIS OR REASONS FOR HIS *IPSE DIXIT*.

Dr. Budavári fails to provide evidentiary support or explanation for the conclusions at issue in the motion. Unable to point to any specific evidentiary support or explanation in Dr. Budavári's report to rebut Google's arguments, plaintiff responds with unsupported attorney argument that Dr. Budavári's opinions are "supported by documentation and source code." (Dkt. 193 at 8-10). That is insufficient.

#### A. Dr. Budavári's Unsupported Opinions Regarding The "Determining Whether The Mobile Device Is Moving Outside A Specified Area" Limitation Should Be Stricken

Plaintiff does not dispute that Dr. Budavári fails to explain the bases for his conclusions such as that ███████████████████████████████████████████████████ ███████ (Dkt. 193 at 8). That alone warrants grant of Google's motion. Instead, plaintiff apparently argues that this conclusory expert opinion is admissible as long as nearby figures excerpting technical documents "contain significant amounts of text that, using Google's own words, explain how and why the figures were chosen." (Dkt. 193 at 8). But *Google* cannot explain how or why **Dr. Budavári** chose particular figures, nor do *Google* documents discuss or explain how **Dr. Budavári** contends that the text in those documents maps to the claim limitations. Simply put, Google documents can provide facts upon which Dr. Budavári may rely, but they alone cannot explain the reasoning for his conclusion. Only he can explain that. In making this argument, Plaintiff demonstrates that Dr. Budavári has not done so. His opinions are quintessential *ipse dixit*, and the Court should grant the motion to strike. *GE v. Joiner*, 522 U.S. 136, 146 (1997).

B.  **Dr. Budavári's Unsupported Opinions Regarding The "Incrementing of A Count For a Stationary State" Element Should Be Stricken**

Plaintiff's only response to Google's arguments is the bare assertion that Dr. Budavári's "opinions are supported by documentation and source code." (Dkt. 193 at 9). As explained in the current motion, as well as in Google's Motion for Summary Judgment of Non-Infringement and the concurrently filed Reply in support, Dr. Budavári offers no basis or reasoning for his conclusory opinions that this claim element is met, and this Court should grant the motion to strike. (Dkt. 173 at 9-10; Dkt. 171 at 2-8).

C.  **Dr. Budavári's Unsupported Opinions Regarding The "Determining A Primary Set of Stationary States" Limitation Should Be Stricken**

Again, plaintiff responds with only the conclusory assertion that Dr. Budavári's "opinions are supported by documentation and source code." (Dkt. 193 at 9). As explained in the current motion, as well as in Google's Motion for Summary Judgment of Non-Infringement and the concurrently filed Reply in support, Dr. Budavári offers no basis or reasoning for his conclusory opinions that this claim element is met, and his analysis demonstrates that he fails to address the "count" recited in this claim at all. His opinions should be stricken.

D.  **Dr. Budavári's Unsupported Opinions Regarding The "Memory With Computer Instructions" Limitation Should Be Stricken**

For the reasons stated in Google's Motion for Summary Judgment of Non-Infringement and the concurrently filed Reply in support, Dr. Budavári offers no basis or reasoning for his opinions with respect to this claim element, and this Court should grant the motion to strike.

E.  **Dr. Budavári's Unsupported Opinions Regarding The "Delivery of a Service" Limitation Should Be Stricken.**

Plaintiff cannot point to evidence or explanation supporting Dr. Budavári's conclusory opinions regarding this element, either. Contrary to plaintiff's assertion, Dr. Budavári's recitation of a generic example of what he understands *could* satisfy this limitation

8

██████████████████████████

██████████████████████████████████████ does not explain the reasoning supporting his conclusion that this claim limitation is *actually* met in Google Maps. (Dkt. 193 at 10). Nor does his unexplained citation to ██████████████████ ██████████████████████████████████. And Dr. Budavári never explains how the "testing" he allegedly conducted confirms that there is a "delivery of a service based upon a stationary state." The Court should grant the motion to strike.

### IV. PLAINTIFF CANNOT MEET ITS BURDEN TO SHOW DR. BUDAVÁRI'S "TECHNICAL COMPARABILITY" OPINIONS ARE RELIABLE.

#### A. Plaintiff Concedes Dr. Budavári's "Analysis" Concerns Only Vague "Aspects"

Plaintiff argues that Dr. Budavári's review compares "specific technical *aspects* of each of the subject Google products against . . . specific *aspects* of the invention claimed in the '961 patent." (Dkt. 193 at 11). Plaintiff thus admits, as Google explained, Dr. Budavári compared only specific *aspects* of the '961 patent to the non-accused products in question. Though he identifies no standard at all, to the extent Dr. Budavári concludes that "aspects" of the technology are the same, so too would any two technologies that share generic "aspects" such as location, or even computing. (Ex. 8 ¶¶ 208–13). Even if Dr. Budavári did announce a standard for product comparability, "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

#### B. Plaintiff Cannot Square Dr. Budavári's Opinions That Non-Accused Products Are Comparable With His Opinions That Certain Patents Are Not

Plaintiff argues that Google's objections go to Dr. Budavári's conclusions, not his methodology. This is incorrect. Google has identified two gaping holes in Dr. Budavári's methodology: First, that he failed to compare the technology itself, but only 'aspects' of the

9

technology; and second, that he applies inconsistent analysis to Google products, which he would like to find comparable, and licensed patents, which he would like to find not comparable.

Plaintiff offers no response to Google's arguments concerning Dr. Budavári's inconsistent application of whatever unspoken standard he applied to the comparability analysis. Google explained Dr. Budavári applies incompatible degrees of exactitude to what he deems comparable (seemingly any Google API that shares a loose 'aspect' of the patent, such as ▮▮▮▮▮▮▮▮▮▮▮▮), and what is not (seemingly any patent, no matter how close). (Ex. 8 ¶ 210). This is precisely the form of results-driven "analysis" Rule 702 forbids. *Biscotti Inc. v. Microsoft Corp.,* 2017 WL 2607882, at *3 (E.D. Tex. 2017).

## V.   CONCLUSION

For all the foregoing reasons and those in Google's motion, Google respectfully requests that the Court grant the motion to strike.

Date:  August 11, 2023

Respectfully submitted,

*/s/ T. Gregory Lanier*
Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
Shaun W. Hassett  (State Bar No. 24074372)
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 North College, Suite 900
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile

T. Gregory Lanier
(California Bar No. 138784) (*pro hac vice*)
tglanier@jonesday.com
**JONES DAY**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile

10

██████████████████████████

Sasha Mayergoyz
(Illinois Bar No. 6271800) (*pro hac vice*)
smayergoyz@jonesday.com
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, Illinois 60606
 (312) 782-3939
 (312) 782-8585 facsimile

Tracy A. Stitt
(D.C. Bar No. 1015680) (*pro hac vice*)
tastitt@jonesday.com
Edwin O. Garcia
(Texas Bar No. 24097726) (*pro hac vice*)
edwingarcia@jonesday.com
Daniele San Román
(D.C. Bar No. 1673021) (*pro hac vice*)
dsanroman@jonesday.com
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20001
(202) 879-3939
(202) 626-1700 facsimile

Rita J. Yoon
(Illinois Bar No. 6298019) (*pro hac vice*)
ryoon@jonesday.com
Michael A. Lavine
(California Bar No. 321727) (*pro hac vice*)
mlavine@jonesday.com
**JONES DAY**
555 California Street 26th Floor
San Francisco, California 94104
(415) 626-3939
(415) 875-5700 facsimile

Walter Mostowy
(California Bar No. 341454) (*pro hac vice*)
wmostowy@jonesday.com
**JONES DAY**
1755 Embarcadero Rd.
Palo Alto, CA 94303
(650) 739-3939
(650) 739-3900 facsimile

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

        Matthew S. Warren
        (California Bar No. 230565)
        matt@warrenlex.com
        **WARREN LEX LLP**
        2261 Market Street, No. 606
        San Francisco, California, 94114
        (415) 895-2940
        (415) 895-2964 facsimile

        *Attorneys for Defendant Google LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on August 11, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on August 11, 2023.

                                                            */s/ T. Gregory Lanier*