# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING & DEVELOPMENT,<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 6:20-cv-00585-ADA<br><br>JURY TRIAL DEMANDED |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,737,961**

**TABLE OF CONTENTS**

                                                                                                         **Page**

INTRODUCTION .................................................................................................................. 1

I.     WSOU FAILS TO MEET ITS BURDEN TO SATISFY THE "INCREMENTING [OF] A COUNT[ER] FOR A STATIONARY STATE" LIMITATION ........................................................................................................ 2

         A.     Plaintiff Cannot Identify A Single "Count" Meeting All The Claim Requirements ...................................................................................... 3

         B.     Plaintiff's Cannot Avoid Summary Judgment With Unsupported Attorney Argument ..................................................................................... 6

II.    PLAINTIFF FAILS TO ESTABLISH THE "DETERMIN[E/ING] A PRIMARY SET OF STATIONARY STATES" LIMITATION ........................................... 7

III.   GOOGLE IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ASSERTED APPARATUS CLAIMS 11 AND 14 ...................... 9

IV.   CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Centillion Data Sys., LLC v. Qwest Commc'ns Intern., Inc.*,
 631 F.3d 1279 (Fed. Cir. 2011)..................................................................................10

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
 424 F.3d 1276 (Fed. Cir. 2005)....................................................................................6

*Fintiv, Inc. v. Apple Inc.*,
 No. 1:21-cv-896-ADA, Dkt. 468 (W.D. Tex. June 21, 2023) ......................................2

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
 103 F.3d 978 (Fed. Cir. 1997).................................................................................5, 6

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
 381 F.3d 1111 (Fed. Cir. 2004)....................................................................................4

*MasterMine Software, Inc. v. Microsoft Corp.*,
 874 F.3d 1307 (Fed. Cir. 2017).............................................................................10, 11

*Pipitone v. Biomatrix, Inc.*,
 288 F.3d 239 (5th Cir. 2002) .......................................................................................4

*WSOU Invs. LLC v. Dell Techs. Inc.*,
 6:20-cv-00480 No. 399 (W.D. Tex. 2023)..................................................................9

*\* Emphasis added throughout unless indicated otherwise.*

*\*\* Deposition objections removed unless indicated otherwise*.

## TABLE OF EXHIBITS

| EX. | DKT. NO. | DESCRIPTION |
|---|---|---|
| 1 | 172-1 | U.S. Patent No. 8,737,961 |
| 2 | 171-1 | T. Budavári Opening Infringement Report |
| 3 | 171-2 | 05/25/2023 Deposition of T. Budavári |
| 4 | 171-3 | G. Welch Rebuttal Non-Infringement Report |
| 5 | - | Plaintiff's Disclosures of Proposed Amended Final Infringement Contentions |
| 6 | - | 10/21/2022 Letter to Google re Google Discovery Deficiencies |
| 7 | - | 05/25/2023 Deposition of T. Budavári (additional excerpts) |

## INTRODUCTION

Google's motion should be granted because plaintiff fails to raise any triable issue regarding infringement. Plaintiff's response confirms that Dr. Budavári did not conduct an analysis mapping the accused features of Google Maps to each claim limitation.[1] Instead, Dr. Budavári simply concluded that because Google Maps allegedly determines a user's current location, certain claim limitations ***must*** be met somehow, somewhere within Google Maps. Yet neither Dr. Budavári nor plaintiff's response ever says where, let alone explains how. His opinions hinge on an unsupported "hunch," which cannot preclude summary judgment.

<u>First</u>, plaintiff contends that Google Maps implements multiple counters meeting the claim language of "incrementing [of] a count[er] for a stationary state associated with the set of one or more distinct signal sources at the current time" (limitation 1(c)), but it fails to identify a single allegedly infringing count, let alone any evidence or explanation from Dr. Budavári as to how any such count meets each of the claim requirements. Plaintiff's response confirms that Dr. Budavári ignored the claim language and simply listed any "counters" he found in Google Maps. (Dkt. 191 at 4-7).

<u>Second</u>, plaintiff asserts that at some point Google Maps "determin[es] a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented

---

[1] It is plaintiff, not Google, that mischaracterizes the accused instrumentality, which has been a constantly moving target throughout this case. Plaintiff's original contentions accused only Awareness API. (*See* Dkt. 11 at 17-18). Then, plaintiff's proposed amended final infringement contentions, on which it now relies, accused *all* Google products using ████████ ████████, not just Google Maps. (Dkt. 191 at 2-3; Ex. 5 at 1-2). Finally, plaintiff confirmed to Google through subsequent correspondence that the Google Maps Timeline and Google Maps Popular Times features are accused, but not any other features of Google Maps. (*See* Ex. 6). Moreover, Dr. Budavári's analysis focuses on only those two features, and he confirmed that Google Maps includes other features that were not relevant to his infringement analysis. (*See* Ex. 7 at 88:6-89:11, 89:23-92:6). Regardless of how the accused instrumentality is identified, Dr. Budavári fails to establish infringement.

count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area" (limitation 1(d)), but it again fails to explain how Google Maps allegedly makes that determination and fails to identify what constitutes the "primary set of stationary states." Plaintiff merely provides unexplained and unsupported examples of what the "primary set of stationary states" *could* be. (Dkt. 191 at 7-9).

<u>Third</u>, plaintiff does not dispute that the accused Google Pixel products have multiple memories. Nor does it dispute that Dr. Budavári failed to identify which of those memories satisfy the claimed "at least one memory and computer instructions configured to, with the at least one processor, cause the apparatus" to perform the claimed steps. Contrary to plaintiff's assertion, the mere fact that Pixel phones are computers capable of running applications like Google Maps cannot establish infringement. (Dkt. 191 at 10-12).

I. **WSOU FAILS TO MEET ITS BURDEN TO SATISFY THE "INCREMENTING [OF] A COUNT[ER] FOR A STATIONARY STATE" LIMITATION**

As Google explained, Dr. Budavári fails to answer the fundamental question for showing infringement: ***What is the count that Google increments as required by this claim limitation?*** (Dkt. 171 at 5; Ex. 3 at 117:6-9). Plaintiff's response still cannot provide an answer. Instead of identifying even a single allegedly infringing count accompanied by supporting evidence, plaintiff offers sketchy and conclusory assertions that "multiple counters in Google Maps' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ can and do meet the limitations," that "Dr. Budavári identifies multiple counters that *evidence* infringement," and that "Dr. Budavári has demonstrated and identified code that satisfies the claim language." (Dkt. 191 at 6-7; *see id.* nn.17-18, n.20). Plaintiff's attorney argument is devoid of evidence and cannot preclude summary judgment. *Fintiv, Inc. v. Apple Inc.*, No. 1:21-cv-896-ADA, Dkt. 468 at 9 (W.D. Tex. June 21, 2023).

2

### A.  Plaintiff Cannot Identify A Single "Count" Meeting All The Claim Requirements

The asserted claims require "incrementing" a specific count—one that is "for a stationary state," and not just any "stationary state," but one that is "associated with the set of one or more distinct signal sources at the current time."[2]  Plaintiff concedes that one must look to the previous steps of the claim for the antecedent basis for the language reciting "*the* set of … signal sources" and "at *the* current time." (Dkt. 191 at 4).  Step one (limitation 1(a)) requires "receiving of signal data that indicates ***a set of one or more distinct signal sources from which signals are received at a mobile device*** for each of a plurality of different times," and step 2 (limitation 1(b)) requires "determining whether the mobile device is moving outside a specified area at ***a current time of the plurality of different times*** based on the signal data." (Ex. 1 at 37:6-12).

Read together, the first three steps require a mobile device (1) receiving signal data from a set of one or more distinct signal sources, (2) using the received signal data to determine whether the mobile device is moving outside a specified area at a current time, and (3) if it is not, incrementing a count for a stationary state associated with the set of one or more distinct signal sources from which the mobile device received signal data at the current time.  The plain language requires that the "count" incremented in step 3 must be tied to the set of distinct signal sources at the current time.  It cannot be just any count (or counter) of anything.  But that is all Dr. Budavári identifies in his report—he said so himself:

> So we are looking at the patent that is concerned with the context to your location.  And that system is a large and complicated system that has many aspects.  And, yes, there are counters that are relevant to determining this location.  ***And there is more than one count in Google Maps that could be relevant or not relevant to***

---

[2] The parties agree that the analysis of limitation 1(c) applies equally to the corresponding limitation in claim 11.

> *those systems and locations. What I do here in this report is I list a number of those counters that Google Maps implements.*

(Ex. 3 at 116:7-21). Dr. Budavári admits that he merely provided a list of "counters" in Google Maps that may—or may not—be relevant to infringement. He further admits that in his opinion, "there's no specific goal or no specific meaning assigned to [the claimed] count," and it is not "limited to any particular individual user or mobile device."[3] (Ex. 3 at 115:12-116:6; Ex. 2 at ¶ 74). His failure to adhere to the claim limitations is evident from the "counters" he lists in his report—ranging from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Dkt. 171 at 5). Dr. Budavári's failure to give meaning and effect to all terms in this claim limitation is wrong as a matter of law. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004).

Plaintiff does not dispute that Dr. Budavári lists a hodgepodge of at least 14 examples of "counters" that he testified "could be relevant or not relevant" to this limitation. (Dkt. 191 at 5-6). Plaintiff cannot demonstrate that this claim element is met by a preponderance of the evidence by relying on such equivocal testimony. "A perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002). Largely ignoring Google's arguments, plaintiff doubles down and asserts that *all* of Dr. Budavári's examples meet the claim limitations—even the counter that Dr. Budavári himself conceded "may not be the best

---

[3] Plaintiff tries to explain away this admission by claiming he meant "the claim language does not require that count to be used for any particular goal or for any particular purpose." (Dkt. 191 at 5-6.) But he went on to state that because the count has no specific goal or meaning "it wouldn't be a problem to show that Google Maps increments the count." (*Id*.) Regardless of how one interprets his testimony, Dr. Budavári's analysis shows he ignored the claim language.

4

example."[4]  (Dkt. 191 at 6).  And it does so without discussing the specifics of any one of those examples, including what is allegedly being counted.  (Opp. at 6-7).

Plaintiff's assertion that Dr. Budavári should be allowed to present *all* of his examples to the jury as "multiple paths to infringement" is a red herring.  The central defect is that Dr. Budavári fails to identify even a *single* path to infringement.  At no point in the expert report or plaintiff's response is there any explanation or supporting evidence showing how any of his 14 so-called examples constitutes a "count for a stationary state" or how the alleged stationary state is "associated with the set of one or more distinct signal sources at the current time."  Dr. Budavári's testimony about one example demonstrates that his conclusory analysis is divorced from the claim requirements:

> Q:  So is it your opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ constitutes incrementing a count as required by Claim element 1C?
>
> A:  Well, if you're asking if a total is a result of counting, then yes.  *I mean, the way you obtain the total number of anything is by counting them.  So in that regard, I don't see why that wouldn't meet the claim language.*

(Ex. 3 at 130:12-20).  According to Dr. Budavári, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ meets this claim limitation simply because that total is obtained by "counting"—not because it is a count "for a stationary state associated with the set of one or more distinct signal sources at the current time." (*Id.*).  Failure to address all the requirements is fatal to plaintiff's claim.  *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).

Additionally, plaintiff does not address Dr. Budavári's admission that he "did not know where exactly the incrementing happens" in Google Maps (Dkt. 191 at 7 (cleaned up)), and simply assumed that it happened somewhere.  Plaintiff attempts to brush off the impact of this

---

[4] Plaintiff wholly ignores Google's discussion of this debunked "count."  (Dkt. 191 at 6).

5

admission as "referring to a prior discussion about ███████████████████████ ███████████████████████████████" (Dkt. 191 at 7). Even if this were so (and plaintiff never explains the alleged connection), Dr. Budavári still must identify *where* in the accused product the claim limitation is met, and he admittedly cannot. As this Court recently ruled, a plaintiff cannot defeat summary judgment by merely speculating that the infringing component "must be in there somewhere." *Fintiv*, Dkt. 468 at 9. Rather, "a plaintiff must prove with admissible evidence that the accused products meet each limitation of an asserted claim." *Id.* Plaintiff fails to do so here.

### B. Plaintiff's Cannot Avoid Summary Judgment With Unsupported Attorney Argument

Unable to defend Dr. Budavári's conclusory and incomplete opinions, plaintiff resorts to unsupported attorney argument and mischaracterizations of those opinions. That is insufficient as a matter of law because attorney argument "is no substitute for evidence." *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005).

Plaintiff offers no credible response to Google's argument that Dr. Budavári excises the claim requirement that a stationary state must be "associated with the set of one or more distinct signal sources at the current time" from his analysis. (Dkt. 171 at 2-4). Instead, plaintiff tries to fill the holes in his analysis by creating opinions that Dr. Budavári himself never offered. (Dkt. 191 at 2-4). Plaintiff asserts that in paragraphs 46-54 of his report, "Dr. Budavári explains that, in his opinion, the set of one of more distinct signal sources refers to the 'signal sources around a mobile device[], including without limitation GPS, cell towers, and/or individual WiFi access points, which indicates the geographic location of the mobile device." (Dkt. 191 at 4). That is simply incorrect: Those paragraphs discuss claim limitation 1(a), and at no point does Dr. Budavári address limitation 1(c)'s reference to "the set of one or more distinct signal

6

sources," nor incorporate those paragraphs into his discussion of limitation 1(c) (*see* Ex. 2 ¶¶ 70-108).

Plaintiff's citation to paragraph 74 does not help its case either. As discussed in Google's motion to strike certain of his opinions (Dkt. 173), Dr. Budavári misquotes the claim language in that paragraph as "stationary state associated with *a* set of one or more distinct signal sources"—demonstrating that he failed to account for the antecedent basis relationship that plaintiff now attempts to use to justify his failure to address certain claim language. Typo or not, Dr. Budavári never addresses the link between limitations 1(a) and 1(c). Moreover, paragraph 74 does not refer to the "distinct signal sources" that plaintiff asserts Dr. Budavári discussed in paragraphs 46-54, nor does it address the "at the current time" requirement of limitation 1(c).

Summary judgment of non-infringement of all asserted claims is required.

## II.  PLAINTIFF FAILS TO ESTABLISH THE "DETERMIN[E/ING] A PRIMARY SET OF STATIONARY STATES" LIMITATION

Plaintiff has no real response to Google's arguments that Dr. Budavári fails to: (1) address the language requiring each stationary state in the primary set to be associated with "a frequently incremented count for one or more similar sets of one or more distinct signal sources" and (2) identify the "primary set of stationary states" or explain why they are "primary."

First, plaintiff misstates Google's argument regarding Dr. Budavári's failure to address portions of this limitation. Plaintiff's assertion that "stationary state" has the same meaning in limitations 1(c) and 1(d) knocks down a straw man, because Google does not argue that "stationary state" has a different meaning in those elements. (Dkt. 191 at 8). Instead, what Google argues is that while limitations 1(c) and 1(d) both require a "count" that is incremented, the "counts" are *not* the same—they count two ***different*** things. In limitation 1(c), the count that is incremented is "for a ***stationary state***." In contrast, the count incremented in limitation 1(d) is

7

"for *one or more similar sets of one or more distinct signal sources*." (Dkt. 171 at 8-9). Plaintiff has no response to this showing. Plaintiff does not claim that "stationary state" and "one or more sets of one or more distinct signal sources" are synonymous. Rather, it defines "stationary state" as something different—"a limited area where users tend to stay." (Dkt. 191 at 8). Plaintiff cannot dispute that Dr. Budavári fails to analyze the actual count in limitation 1(d) at all, let alone determine whether that count is "frequently" incremented as the claims require. He simply refers back to his list of counts implemented by Google Maps from limitation 1(c) with no further explanation. That is insufficient.

Second, plaintiff points to nothing in Dr. Budavári's report that either identifies any "primary set of stationary states" determined by Google Maps or explains how this requirement is met by Google Maps. Instead, plaintiff provides two examples of what *could* be considered primary stationary states. Initially, plaintiff points to a conclusory statement that Google uses ▇▇▇▇▇▇ to identify what *could* be considered primary stationary states, such as ▇▇▇▇▇▇ (Dkt. 191 at 9). Plaintiff does not argue that ▇▇▇▇▇▇ *are* the claimed primary set of stationary states, just that they *could* be, but fails to explain how or why. Neither Dr. Budavári's report nor plaintiff's response describes how ▇▇▇▇▇▇ are allegedly associated with a frequently incremented count for one or more sets of distinct signal sources, and plaintiff points to no evidence supporting the bare assertion that they could be "primary."

Plaintiff next points to Dr. Budavári's testimony that "▇▇▇▇▇▇ *can* constitute a primary set of stationary states." (Dkt. 191 at 9). That opinion does not appear in Dr. Budavári's report. Even if it did, it still does not address the claimed count of one or more sets of one or more distinct signal sources. In its response to Google's motion for

8

summary judgment of invalidity, plaintiff argues that, without more, locations that are visited frequently *cannot* constitute a primary set of stationary states—"something more" than being frequently counted is required to meet limitation 1(d).  (Dkt. 189 at 4-5).  Here, plaintiff points to nothing in Dr. Budavári's report discussing what constitutes a "frequently visited place," let alone anything further required to determine that such a place is in the primary set of stationary states.  (Dkt. 191 at 8-9).  The cited testimony is insufficient *under plaintiff's own theory*.  There is no factual issue precluding summary judgment.

### III. GOOGLE IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF ASSERTED APPARATUS CLAIMS 11 AND 14

Plaintiff does not dispute that there is more than one memory in the accused Pixel devices, nor that Dr. Budavári fails to identify which memory is the claimed "memory including computer constructions."  That alone warrants granting Google's motion.  *WSOU Invs. LLC v. Dell Techs. Inc.*, 6:20-cv-00480 No. 399, at 679-83, 700 (W.D. Tex. 2023).

Plaintiff's assertion that memory is a "fundamental part[] of what a computer needs to execute instructions" (Dkt. 191 at 10) does not absolve its obligation to identify *which* memory in the Pixel product it alleges includes the claimed "computer instructions configured to . . . cause the apparatus at least to" perform steps required by the claim.  Plaintiff's reliance on the specification's disclosure of multiple types of memory (RAM, ROM, other non-volatile media) capable of storing computer instructions only confirms the need to identify which memory in the Pixel product it alleges includes the required computer instructions.  (Dkt. 191 at 10).

Plaintiff claims that the mere fact that the accused devices function as computers and run applications such as Google Maps shows that the accused devices contain (1) computer instructions (code) that allow Google Maps to function, (2) memory that stores that code, and (3) a processor that allows that code to execute on that device.  (Dkt. 191 at 11).  Plaintiff ignores

9

the claim language.  First, specific computer instructions are required—those allowing the device to perform the claimed steps.  Dr. Budavári never attempts to identify those instructions.  Second, a specific memory is required—one that includes the claimed instructions.  Dr. Budavári admits that he failed to identify which of the multiple memories in the accused products includes the required instructions.  (Ex. 3 at 186:23-187:13).  His after-the-fact identification of RAM during deposition is too late, and as plaintiff concedes in its response, RAM is only capable of storing computer instructions some of the time.  (Dkt. 191 at 12).  Third, a specific processor is required—one that works with the memory to execute the claimed instructions.  Dr. Budavári admitted that there are multiple processors in the accused products, and there is no dispute that he failed to identify which one is the claimed processor.  (Ex. 7 at 188:15-190:21).

Plaintiff's further attempts to defend its untimely RAM theory are self-defeating.  Plaintiff asserts that Google infringes apparatus claims because "when running an application— e.g., Google Maps—a device's RAM is loaded with the instructions" at that time.  (Dkt. 191 at 12).  But plaintiff only asserts direct infringement by Google, and "[i]n order to 'make' [or sell] the system under § 271(a), [Google] would need to combine *all* of the claim elements." *Centillion Data Sys., LLC v. Qwest Commc'ns Intern., Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011).  Instead, plaintiff asserts that a combination of all of the elements only occurs once a user takes certain actions.[5]  Plaintiff's own theory shows that Google does not infringe.

### IV. CONCLUSION

Google respectfully requests that the Court grant Google's summary-judgment motion.

---

[5] In accusing Google of direct infringement based on user action, plaintiff reads a method step into the apparatus claims.  Such claims would be indefinite since they "create confusion as to when direct infringement occurs because they are directed both to systems and to actions performed by [users]." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1314 (Fed. Cir. 2017).  Functional language is permitted in apparatus claims, but the asserted "memory including computer instructions" is not functional language.  *See id.*

10

Date: August 11, 2023 　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ T. Gregory Lanier*
　　　　　　　　　　　　　　　　　　　　Michael E. Jones (State Bar No. 10929400)
　　　　　　　　　　　　　　　　　　　　mikejones@potterminton.com
　　　　　　　　　　　　　　　　　　　　Shaun W. Hassett  (State Bar No. 24074372)
　　　　　　　　　　　　　　　　　　　　shaunhassett@potterminton.com
　　　　　　　　　　　　　　　　　　　　**POTTER MINTON, P.C.**
　　　　　　　　　　　　　　　　　　　　102 North College, Suite 900
　　　　　　　　　　　　　　　　　　　　Tyler, Texas, 75702
　　　　　　　　　　　　　　　　　　　　+1 (903) 597-8311
　　　　　　　　　　　　　　　　　　　　+1 (903) 593-0846 facsimile

　　　　　　　　　　　　　　　　　　　　T. Gregory Lanier
　　　　　　　　　　　　　　　　　　　　(California Bar No. 138784) (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　tglanier@jonesday.com
　　　　　　　　　　　　　　　　　　　　**JONES DAY**
　　　　　　　　　　　　　　　　　　　　1755 Embarcadero Road
　　　　　　　　　　　　　　　　　　　　Palo Alto, California, 94303
　　　　　　　　　　　　　　　　　　　　+1 (650) 739-3939
　　　　　　　　　　　　　　　　　　　　+1 (650) 739-3900 facsimile

　　　　　　　　　　　　　　　　　　　　Sasha Mayergoyz
　　　　　　　　　　　　　　　　　　　　(Illinois Bar No. 6271800) (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　smayergoyz@jonesday.com
　　　　　　　　　　　　　　　　　　　　**JONES DAY**
　　　　　　　　　　　　　　　　　　　　110 N. Wacker Drive, Suite 4800
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　 (312) 782-3939
　　　　　　　　　　　　　　　　　　　　 (312) 782-8585 facsimile

　　　　　　　　　　　　　　　　　　　　Tracy A. Stitt
　　　　　　　　　　　　　　　　　　　　(D.C. Bar No. 1015680) (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　tastitt@jonesday.com
　　　　　　　　　　　　　　　　　　　　Edwin O. Garcia
　　　　　　　　　　　　　　　　　　　　(Texas Bar No. 24097726) (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　edwingarcia@jonesday.com
　　　　　　　　　　　　　　　　　　　　Daniele San Román
　　　　　　　　　　　　　　　　　　　　(D.C. Bar No. 1673021) (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　dsanroman@jonesday.com
　　　　　　　　　　　　　　　　　　　　**JONES DAY**
　　　　　　　　　　　　　　　　　　　　51 Louisiana Avenue NW
　　　　　　　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　　　　　　　(202) 879-3939
　　　　　　　　　　　　　　　　　　　　(202) 626-1700 facsimile

Rita J. Yoon
(Illinois Bar No. 6298019) (*pro hac vice*)
ryoon@jonesday.com
Michael A. Lavine
(California Bar No. 321727) (*pro hac vice*)
mlavine@jonesday.com
**JONES DAY**
555 California Street 26th Floor
San Francisco, California 94104
(415) 626-3939
(415) 875-5700 facsimile

Walter Mostowy
(California Bar No. 341454) (*pro hac vice*)
wmostowy@jonesday.com
**JONES DAY**
1755 Embarcadero Rd.
Palo Alto, CA 94303
(650) 739-3939
(650) 739-3900 facsimile

Matthew S. Warren
(California Bar No. 230565)
matt@warrenlex.com
**WARREN LEX LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
(415) 895-2940
(415) 895-2964 facsimile

*Attorneys for Defendant Google LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on August 11, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on August 11, 2023.

*/s/ Jo Vallery*