IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GOOGLE, LLC.,<br><br>　　　　Defendant. | Case No. 6:20-cv-585-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF BRAZOS'S REPLY IN SUPPORT OF ITS OPPOSED *DAUBERT* MOTION TO EXCLUDE DAMAGES OPINIONS IN THE EXPERT REPORT OF W. CHRISTOPHER BAKEWELL, OR IN THE ALTERNATIVE STRIKE PORTIONS OF THE EXPERT REPORT OF W. CHRISTOPHER BAKEWELL**

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  ARGUMENT ...................................................................................................................... 1

   A. Google's Response Fails to Demonstrate that Mr. Bakewell Assumed Infringement of the '961 Patent.................................................................................................................................. 1

   B. Mr. Bakewell Failed to Sufficiently Analyze the Technological Comparability of the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Licenses ................................................................................................... 6

   C. The Economic Comparisons of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Licenses Highlighted in Google's Response are Specious and Insufficient ............................................................ 8

   D. Mr. Bakewell Failed to Consider Evidence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ........................... 9

III. CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014*), overruled by Williamson v. Citrix Online, LLC,* 792 F.3d 1339 (Fed. Cir. 2015) ........ 3

*Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*,
No. CV CCB-13-2053, 2016 WL 4426681 (D. Md. Aug. 22, 2016), *aff'd,* 721 F. App'x 983 (Fed. Cir. 2018) ........ 6

*Finjan, Inc. v. Cisco Sys. Inc.*,
2020 WL 13180005 (N.D. Cal. 2020)) ........ 3, 5

*Gen. Motors Corp. v. Devex Corp.*,
461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983) ........ 3

*Helios Software, LLC v. Awareness Techs., Inc.*,
2015 WL 12806482 (D. Del. 2015) ........ 5

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ........ 11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........ 8

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ........ 7

*Multimedia Patent Tr. v. Apple Inc.*,
No. 10-CV-2618-H (KSC), 2012 WL 12868264 (S.D. Cal. Nov. 20, 2012) ........ 7

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd*,
853 F.3d 1370 (Fed. Cir. 2017) ........ 8

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ........ 10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780 (N.D. Cal. May 22, 2008) ........ 6

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ........ 6, 11

*Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-cv-13456, 2019 U.S. Dist. LEXIS 124062 (E.D. Mich. Jul. 25, 2019) ........ 3

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308 (Fed. Cir. 2010)) ........ 7

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

**Statutes**

35 U.S.C. § 284 .................................................................................................................................. 3

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

## I. INTRODUCTION

Defendant Google's Response to Brazos's Opposed *Daubert* Motion to Exclude Certain Damages Opinions in the Expert Report of W. Christopher Bakewell, or in the Alternative Strike Portions of the Expert Report of W. Christopher Bakewell (the "Response") (Dkt. 188) fails to meaningfully address Brazos's arguments for exclusion set forth in Brazos's opening motion (the "Motion") (Dkt. 176). Further, in forming many opinions in his report, Mr. Bakewell utterly disregards two basic requirements of patent damages law that apply to *all* damages experts, regardless of whether they appear in support of the patentee or the accused infringer: (1) the expert must assume the asserted patent is valid and infringed; and (2) the expert must ground all applications of a comparable license on adequate technical foundation. Google's Response pays lip service to Mr. Bakewell's alleged application of these requirements, and a detailed examination of his opinions reveals no corresponding substance. To the extent that Mr. Bakewell fails to apply these fundamental principles of damages law that all experts must follow, his opinions fall short of the *Daubert* standard, and must be excluded as unreliable, as detailed in Brazos's opening brief.

## II. ARGUMENT

### A. Google's Response Fails to Demonstrate that Mr. Bakewell Assumed Infringement of the '961 Patent

As set forth in Section IV(A) of the Motion, Mr. Bakewell failed to assume infringement of the '961 patent and instead adopted Google's technical expert's allegations of non-infringement in his damages opinions. *See* Motion at 8-10. The Motion cited numerous examples where Mr. Bakewell acknowledged he is required to assume Google's infringement of the '961 Patent, insisted he did so, but then rebuffed this basic requirement by assuming the Defendant's narrow view of the claim-at-issue, and thus the infringing functionality. *See id.* Instead of addressing these specific instances of Mr. Bakewell's departure from the theory of infringement in this case,

1

Google's Response merely cites more of Mr. Bakewell's conclusory assertions that he did assume infringement. *See* Response at 2-3. But Google's and Mr. Bakewell's bare insistence that Mr. Bakewell assumed infringement does not make it so and cannot excuse Mr. Bakewell's consistent reliance on Google's non-infringement theories in his Report. The logical result of Google's position is that, as long as a damages expert asserts in conclusory fashion that he assumes infringement of the patents-in-suit, he may, in practice, assume non-infringement when analyzing the hypothetical negotiation. Of course, that is not the standard for reliability.

Google argues that "Mr. Bakewell's report and testimony make clear that the assumes that the asserted patents is both valid and infringed." Response at 2-3. Mr. Bakewell *says* that he assumes infringement—thus acknowledging his obligation to do so under the law. *See* Motion at 8; *see also Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, No. 16-cv-13456, 2019 U.S. Dist. LEXIS 124062, at *12-13 (E.D. Mich. Jul. 25, 2019). However, Mr. Bakewell pays no more than lip service to this fundamental principle of patent damages law, by adopting assumptions and/or understandings that are by design utterly inconsistent with the core of Brazos's infringement allegations and result in a drastically reduced (and flawed) damages model.

The Federal Circuit urges this fundamental principle of "considering the full scope of infringement" for damages calculations. *Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1317 (Fed. Cir. 2014*), overruled by Williamson v. Citrix Online, LLC,* 792 F.3d 1339 (Fed. Cir. 2015) (overruling *Apple Inc. v. Motorola, Inc.* only in regard to the presumption of the means-plus-function statute). Specifically, the Federal Circuit states that "the proper inquiry evaluates the expert's methodology in view of the ***full scope*** of the infringed claims." *Id.* at 1318 (emphasis added). The purpose of this principle is so that the Court can determine "damages adequate to compensate *for the infringement*…a reasonable royalty for the use made of *the invention* by the

2

infringer." 35 U.S.C. § 284. Admittance of Mr. Bakewell's damages opinions based on a narrowing of the scope of infringement would prevent "the [C]ourt…[from] award[ing] [Brazos] damages *adequate to compensate* for [Google's] infringement". *Gen. Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983) (citation omitted) (emphasis in original).

To be clear, Mr. Bakewell's opinions do not represent a mere battle of experts as Google suggests. *See* Dkt. Response at 1-2 (citing *Finjan, Inc. v. Cisco Sys. Inc.*, 2020 WL 13180005, at *8 (N.D. Cal. 2020)). Instead, the foundation of Mr. Bakewell's damages opinion wholly denies that certain functionalities of GMM infringe the '961 Patent even though Brazos accuses these functionalities of infringement. Also, Mr. Bakewell's infringement assumptions are built upon a faulty premise that shows Mr. Bakewell's lack of understanding for the scope of infringement. Response at 2. Specifically, Google and Mr. Bakewell allege that Brazos presents multiple theories as to the scope of the asserted claims. Response at 2 ("plaintiff…presents three competing theories as to the scope of the asserted claims—one by its infringement expert [(Dr. Tamas Budavari)], one by its validity expert[1] [(Dr. Todor Cooklev)], and yet a third by its damages expert [(Mr. Justin Blok)]"); *see also* Motion, Ex. B at ¶ 347 ("Mr. Blok indicates that he relies upon Dr. Budavari for a technical apportionment, but the two experts provide competing definitions of 'Accused Instrumentality'"). On the contrary, each of Brazos's experts presents only *one* scope of the asserted claims in their reports and testimony. For example, Brazos's infringement expert, Dr. Budavari, states that he reviewed "relevant materials and compare[d] the claims of the '961 patent with Google Maps [Mobile] ("GMM")…and Google Pixel Products...that incorporate, operate, and/or utilize Google Maps (collectively, the 'Accused Instrumentalities')". Dkt. 194, Ex. B (Expert Report of Budavari Regarding Infringement) at ¶ 3. Google attempts to narrow the scope

---

[1] Google did not cite to any expert report or testimony regarding Brazos's validity expert's opinion. Further, Dr. Cooklev's report discusses validity of the '961 patent, not the scope of infringement.

3

of the claims by limiting Dr. Budavari's opinion of GMM functionality or features that meet the limitations of the '961 patent to Google Maps Timeline and Popular Times features. *See* Reponse at 4. Google would like to limit the Accused Instrumentalities to exemplary features of GMM (e.g. Popular Times and Timeline) with the ultimate goal of limiting Brazos's damages, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Motion 9-10. However, Google ignores that Dr. Budavardi (1) specifically states that Google Maps Timeline and Popular Times is not an exhaustive list of Accused Functionality that meet the limitations of the '961 patent; and (2) he defines the Accused Functionality inherent in GMM:

> [V]*arious features and functionality accessible by users via Google Maps, <u>including for example,</u> the Google Maps Timeline and Popular Times features*, rely upon the ability of Google, via its Google Maps product, software application, and/or service as well as the associated underlying software and hardware infrastructure supporting Google Maps, to determine whether a mobile device is moving outside of a specified area at a current time of the plurality of different times based on the signal data.

Dkt. 194, Ex. B at 57 (emphasis added). Mr. Blok's definition reflects that of Dr. Budavari's. *See* Dkt. 195, Ex. B (May 25, 2023, Justin R. Blok Deposition Transcript Excerpts) at 31:18-19; Dkt. 195, Ex. F (July 6, 2023, Justin R. Blok Errata Sheet); *see also* Dkt. 195, Ex. A (March 29, 2023, Expert Report of Justin R. Blok) at ¶30 ("Brazos alleges that Google has infringed the Patent-in-Suit through Google Maps Mobile ('GMM' or the 'Accused Instrumentality'), which includes the ability to determine a mobile device's current location and, based on confirmation of certain criteria (e.g., the mobile device is in a certain location), provide a 'service' to the user (e.g., a targeted advertisement is displayed via GMM).

Google's citation to an out-of-context quote from *Finjan, Inc. v. Cisco Sys. Inc.* is misplaced as that case does not concern a damages expert's failure to assume infringement for purposes of a hypothetical negotiation. 2020 WL 13180005, at *8 (N.D. Cal. 2020). The defendant

in *Finjan* moved to exclude the plaintiff's damages expert for an alleged failure to properly apportion the value of the allegedly infringing features from the value of all other features in the accused products. *Id.* The court denied the motion because the damages expert properly relied on the plaintiff's technical expert's opinion that the accused functionality comprised the entirety of those products. *Id.* In other words, the damages expert in *Finjan* properly assumed infringement as alleged by the plaintiff, unlike Mr. Bakewell here, who has improperly disregarded infringement of the accused products in his analysis. Google's reliance on *Helios Software, LLC v. Awareness Techs., Inc.* is similarly unavailing. 2015 WL 12806482, at *3 (D. Del. 2015). In that case, the court merely noted that the expert's belief about the ease of design-arounds does not equate to an assumption of non-infringement. *See id.* The damages expert in that case did not unequivocally deny the infringement of the accused instrumentality as Mr. Bakewell does here. *See id.*

In basing his opinions on a narrower scope of infringement than Brazos's full scope, Google is utilizing Mr. Bakewell, a non-technical expert, and his acceptance of Google's non-infringement position to reduce the amount of the reasonable royalty damages. It is not the role of the accused infringer's damages expert to incorporate positions that simply assume away infringement based on the infringer's unilateral *ipse dixit. See, for e.g., Therasense, Inc. v. Becton, Dickinson & Co.,* No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 124780, at *13 (N.D. Cal. May 22, 2008) ("One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated facts to a hired expert who then relies on the information to express an opinion") (citation omitted)). Mr. Bakewell's narrowing of the scope of infringement to exclude GMM as an Accused Instrumentality as a starting point for his apportionment analysis is the definition of an unreliable methodology. *See Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("Beginning from a fundamentally flawed premise and adjusting it

based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion*.*"); *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.,* No. CV CCB-13-2053, 2016 WL 4426681 (D. Md. Aug. 22, 2016), *aff'd,* 721 F. App'x 983 (Fed. Cir. 2018) ("Without a relevant starting point, a *Georgia-Pacific* analysis is not a reliable methodology").

Thus, for the foregoing reasons, Mr. Bakewell's damages opinions should be excluded as unreliable.

### B. Mr. Bakewell Failed to Sufficiently Analyze the Technological Comparability of the ▇▇▇▇▇▇▇▇▇▇▇▇ Licenses

As set forth in the Motion, Mr. Bakewell's entire analysis of the technological comparability of the ▇▇▇▇▇▇▇▇▇▇▇▇ licenses to the hypothetical negotiation at issue is limited to a single sentence that each respective license involves the patent-in-suit. *See* Motion at 12 & 13-15. Google's Response confirms as much and does not identify any further analysis by Mr. Bakewell regarding the technological comparability of these licenses. *See* Response at 7-9. Instead, Google insists that conveying rights to the '961 Patent renders the licenses technologically comparable. *See id.* at 2. However, the fact that a license involves the patent-in-suit is legally insufficient on its own to establish technological comparability. *See Multimedia Patent Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868264, at *9 (S.D. Cal. Nov. 20, 2012) ("[A] license is not comparable simply because it contains the patents-in-suit.") (citing *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010)).

Further, as discussed in the Motion, these licenses involved ▇▇▇▇▇▇▇▇▇ patents covering technologies unrelated to the patent-at-issue, but Mr. Bakewell never attempted to evaluate whether these ▇▇▇▇▇▇▇▇ patents relate to the patented technology or the accused

infringing products. In this regard, the Federal Circuit's holding in *MLC Intellectual Prop., LLC v. Micron Tech., Inc.* is directly on point. 10 F.4th 1358 (Fed. Cir. 2021). The damages expert in that case relied on a prior license to a portfolio ***including the patent-in-suit*** but "conducted no assessment of the licensed technology versus the accused technology to account for any differences," and the Court accordingly affirmed the exclusion of his reasonable royalty opinion. *See id.* at 1375 (emphasis added).

To be sure, not one of the cases cited by Google holds or suggests that the fact that a license merely involves the patent-in-suit renders the license technologically comparable to the hypothetical negotiation. *See* Response at 6-9. For instance, in *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*, the Federal Circuit approved of plaintiff's damages expert's reliance on a settlement license between plaintiff and a settling defendant from the same case. 853 F.3d 1370, 1381 (Fed. Cir. 2017) ("Mr. Weinstein used a settlement agreement Rembrandt entered into with BlackBerry, ***which was a defendant in this suit before settling*** . . . The BlackBerry settlement agreement was relevant here because it contained a ***license of the very patents Samsung was found to infringe***") (emphasis added). In the instant matter, the licenses at issue were executed ▮▮▮ the hypothetical negotiation, involved ▮▮▮ patents than just the '961 patent, and ▮▮▮. Similarly, Google misconstrues the crux of *LaserDynamics, Inc. v. Quanta Computer, Inc.*, which was a condemnation of a damages expert embracing an outlier license unrelated to the patented technology while disregarding the many licenses for the patented technology based upon strained reasoning not supported by the record. 694 F.3d 51, 79-81 (Fed. Cir. 2012). Nowhere in that opinion did the Federal Circuit, as Google states, "expressly endorse[]" Mr. Bakewell's approach of forgoing a technological comparison of the licenses at issue simply because they involve the patent-in-suit. *See* Response at 6. On the

contrary, the Court cautioned against relying upon licenses "without proving a relationship to the patented technology or the accused infringing products" and insisted that licenses "be sufficiently comparable to the hypothetical negotiation at issue." *See LaserDynamics, Inc.*, 694 F.3d at 79. Google also attempts to forge a bond between ▮▮▮ and Google, stating that they "both

▮▮▮

Because Mr. Bakewell was required to address the technological comparability of the ▮▮▮ licenses beyond their inclusion of the '961 Patent, but failed to do so, Mr. Bakewell's opinions concerning these licenses should be excluded as unreliable on this basis alone.

C. **The Economic Comparisons of the** ▮▮▮ **Highlighted in Google's Response are Specious and Insufficient**

While Mr. Bakewell's failure to analyze the technological comparability of the ▮▮▮ licenses is sufficient on its own to render his opinions unreliable (*see MLC Intellectual Prop.*, 10 F.4th at 1375; *Multimedia*, 2012 WL 12868264, at *9 ("[A] license is not comparable simply because it contains the patents-in-suit.")), Mr. Bakewell also failed to adequately address the economic differences between the licenses and the hypothetical negotiation. Moreover, the economic comparisons in Mr. Bakewell's Report highlighted by Google's Response are merely conclusory qualitative observations without rigorous economic

---

[2] Google misconstrues Brazos's Opposition to Defendant Google's Motion for Partial Summary Judgment Under 35 USC § 287 as an admission that "▮▮▮ practices the accused functionality of Google Maps." Response at 6. On the contrary, Brazos merely states that ▮▮▮ Dkt. 164 at 11. Brazos does not acknowledge that ▮▮▮ sells phones with Google Maps preloaded on the phones. Further, Brazos notes that there is no display of an ▮▮▮'s usage of the accused functionality (Google Maps) via one of its phones and an offer for sale regarding that usage. *See* Dkt. 164 at 11.

8

analysis. *See* Response at 6-12. For example, Google claims that Mr. Bakewell accounted for the fact that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ licenses cover a ▇▇▇▇▇▇▇ rather than the asserted patent alone. However, as noted previously herein and in the Motion, Mr. Bakewell did not attempt to calculate the value of the '961 Patent or apportion the same from the thousands of other patents. He instead does no more than acknowledge the licenses involve more patents than the '961 Patent and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Response at 11 ("▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Neither Google's Response nor Mr. Bakewell's Report offer any evidence or explanation for how Mr. Bakewell determined the value of the '961 Patent relative to the other rights conveyed in the licenses. In this regard, Mr. Bakewell's "downward shift from the [▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇] royalties is an admission that his calculations are speculative without any relation to actual market rates at all." *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010).

D. **Mr. Bakewell Failed to Consider Evidence of Brazos's ▇▇▇▇▇▇▇▇▇▇**

Google misconstrues what occurred during discovery to support its argument that "[Brazos] systematically blocked any discovery about such ▇▇▇▇▇▇▇". Response at 13. Moreover, Google cannot point to any information concerning these ▇▇▇▇▇▇▇▇▇ upon which Brazos's relied and that Brazos or its corporate representatives (Mr. Stuart Shanus and Mr.

---

[3] This section contains material that is substantively similar to Section II(D) in Brazos's -580 reply brief; Section II(D) in Brazos's -584 reply brief; and Section II(D) in Brazos's -572 reply brief.

Craig Etchegoyen) refused to discuss in deposition testimony. Google deposed Mr. Craig Etchegoyen, who testified extensively on the topic of ███████ ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ Mr. Bakewell's failure to consider this evidence in his damages analysis is a failure to "sufficiently tie[] [his methodology] to the facts of the case", thus making his proffered damages opinion unreliable and inadmissible. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010)); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1315 (Fed. Cir. 2011).

### III.   CONCLUSION

Mr. Bakewell's damages opinions should be excluded or stricken from Mr. Bakewell's analysis of damages regarding infringement of the Patent-in-Suit because they are unreliable. For the foregoing reasons, Brazos respectfully requests that the Court grant Brazos's Motion.

Dated: August 11, 2023                                              Respectfully submitted,

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY

                    */s/ Greg P. Love*
                    Greg P. Love
                    State Bar No. 24013060
                    glove@cjsjlaw.com
                    Mark D. Siegmund
                    State Bar No. 24117055
                    msiegmund@cjsjlaw.com
                    Melissa S. Ruiz
                    State Bar No. 24128097
                    mruiz@cjsjlaw.com
                    **CHERRY JOHNSON SIEGMUND JAMES PLLC**
                    400 Austin Avenue, 9th Floor
                    Waco, Texas 76701
                    P: (254)-732-2242
                    F: (866)-627-3509

                    Joseph M. Abraham, TX SB No. 24088879
                    Timothy Dewberry, TX Bar No. 24090074
                    **FOLIO LAW GROUP PLLC**
                    13492 Research Blvd., Suite 120, No. 177
                    Austin, TX 78750
                    T: 737-234-0201
                    Email: joseph.abraham@foliolaw.com
                    Email: timothy.dewberry@foliolaw.com

                    Cliff Win, CA Bar No. 270517
                    Alexandra Fellowes, CA Bar No. 261929
                    C. Maclain Wells, CA Bar No. 221609
                    **FOLIO LAW GROUP PLLC**
                    1200 Westlake Ave. N., Ste. 809
                    Seattle, WA 98109
                    Tel:    (206) 880-1802
                    Email: cliff.win@foliolaw.com
                    Email: alexandra.fellowes@foliolaw.com
                    Email : maclain@foliolaw.com

                    **Attorneys for Plaintiff WSOU Investments LLC, d/b/a Brazos Licensing and Development**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was served or delivered electronically via email to all counsel of record, on this 11th day of August, 2023.

>*/s/ Greg P. Love*
>Greg P. Love