IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, <br><br> *Plaintiff,* <br><br> v. <br><br> GOOGLE LLC <br><br> *Defendant.* | § § § § § § § § § § § § | CIVIL ACTION 6:20-CV-585-ADA |

**Memorandum Opinion and Order**
<u>**Granting Google's Rule 50(a) Motion for Judgment as a Matter of Law**</u>

## I. Introduction

Before the Court is Defendant Google LLC's ("Google") Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a). On October 4th, 2023, the Court held arguments on the Motion after Plaintiff WSOU Investments ("WSOU") rested its case-in-chief in a jury trial. Tr. at 545:1–18.[1] After considering the relevant arguments, trial testimony, and evidence, the Court orally granted Google's Rule 50(a) Motion for Judgment as a Matter of Law. Tr. at 633:2–5. This memorandum explains the Court's basis for its decision.

## II. Factual and Procedural Background

WSOU filed this case on March 12, 2020, alleging that Google infringed claims 1, 4, 5, 9, 11, and 14 of U.S. Patent No. 8,737,961 ("the '961 Patent"). ECF No. 242 at 4. WSOU claimed that Google directly infringes the '961 Patent by making and/or selling its Google Maps and Google Pixel Products. *Id.* at 6. The '961 Patent is aimed at "deriv[ing] or predict[ing] location context for

---

[1] Citations to the trial transcript are from a rough draft of the transcript.

a user of a mobile device, or both, that scales well to many users, such as incrementally determining location context." '961 Pat. at 1:33–36. Claim 1 of the '961 Patent is an independent method claim which claims the following:

> 1. A method comprising:
> causing at least in part a receiving of signal data that indicates a set of one or more distinct signal sources from which signals are received at a mobile device for each of a plurality of different times;
> determining whether the mobile device is moving outside a specified area at a current time of the plurality of different times based on the signal data;
> if the mobile device is determined to be not moving outside the specified area, then causing at least in part an incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time;
> determining a primary set of stationary states, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area and
> causing at least in part initiation of delivery of a service to the mobile device based on the stationary state.

'961 Patent at 37:5–24.

Claims 4, 5, and 9 are dependent claims of Claim 1. *Id.* at 37:44–51, 38:1–4. Claim 11 is an independent apparatus claim that recites the same process for incrementally determining location context through a processor, memory, and computer instructions to achieve the objective of the invention. *Id.* at 38:12–38. Claim 14 depends on Claim 11. *Id.* at 38:62–67. During the claim construction phase of this case, the parties only asked the Court to construe the terms "stationary state," "incrementing [of] a count[er] for a stationary state," and "determin[e/ing] a primary set of stationary states." *See* ECF No. 49. The Court construed each term according to its plain and ordinary meaning. *Id.* at 5.

When WSOU rested its case, Google moved for Judgment as a Matter of Law under Rule 50(a). Tr. at 545:1–18. At that point, Google made multiple arguments related to the sufficiency of the evidence. This memorandum opinion and order addresses only one of those arguments: That WSOU failed to show that the independent and dependent method claims of the '961 Patent and the corresponding apparatus claims are performed by the accused Google products in the order stated in the Patent. WSOU did not respond to this argument by claiming that it had sufficient evidence to show the steps are performed in the order claimed in the method. Instead, WSOU argued that the '961 Patent is not required to be performed in the order it is written. Thus, the only question before the Court is whether the asserted claims must be read such that each step of the method must be performed sequentially.

### III.  Legal Standard

#### A.  Judgment as a Matter of Law

Rule 50(a)(1) of the Federal Rules of Civil Procedure states that if, after a party has been fully heard on an issue, there remains no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue and grant the opposing party's motion for judgment as a matter of law. Fed. R. Civ. P. 50(a)(1). Thus, a trial court may remove the case from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 2521, at 240 (2d ed.1995)). Before doing so, however, "the court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

#### B.  Claim Construction

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Claim construction is a legal question, and thus not for the jury. *Id.* Claim construction begins with the words of the claim, which "must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–15 (Fed. Cir. 2005) (en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Limitations of method claims are ordinarily presumed that they can be performed in any order, "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (emphasis added) (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc*., 256 F.3d 1323, 1342-43 (Fed. Cir. 2001)). "*Interactive Gift* recites a two-part test for determining if the steps of a method claim that do not otherwise recite an order, must nonetheless be performed in the order in which they are written." *Altiris*, 318 F.3d at 1369. First, based on grammar or logic, do the claims recite an order? ("First, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written."), and second, does the specification implicitly or explicitly require a specific order? *Id.* ("If not, the inquiry turns to whether the specification 'directly or implicitly requires such a narrow construction.'")

IV.     **Discussion**

**A. Order of the Steps in Method Claims 1, 4, 5, and 9**

The key question the Court must answer is whether the steps of the method described in Claim 1 of the '961 Patent are required to be read in the order they are written. The Court believes they are. The method's first step recites "causing at least in part a receiving of signal data that indicates a set of . . . distinct signal sources from which signals are received at a mobile device for each of

4

a plurality of different times[.]" '961 Patent at 37:6–9. The second step recites the method "determining whether the mobile device is moving outside a specified area at a current time of the plurality of different times ***based on the signal data***[.]" *Id.* at 10–12 (emphasis added). The receiving of signal data by the mobile device as mentioned in the first step must occur before any determination of the mobile device's location in a specified area can be made. The first two steps in independent Claim 1 cannot be read in a logical manner unless they are performed in order. *Altiris*, 318 F.3d at 1369.

After it is determined that a mobile device has not moved outside a specified area based on the signal data, Claim 1 performs the third step of "causing . . . an incrementing of a count for a stationary state associated with the set of one or more distinct signal sources at the current time[.]" '961 Patent at 37:14–17. The logical question here is: could any increase in the stationary state count occur before the mobile device receives the signal data and then the method determines whether the mobile device is still within a specified area? The answer is no because if the mobile device has not received a signal, its location cannot be determined. And if the mobile device's location has not been determined, the incremental counter would have nothing to count. So the third step must occur after the first and second steps are performed sequentially.

The fourth step listed in Claim 1 contemplates "determining a primary set of stationary States, each stationary state in the primary set associated with a frequently incremented count for one or more similar sets of one or more distinct signal sources when the mobile device is not moving outside the specified area[.]" WSOU argues that this method step is something that occurs "over and over" frequently, whether the preceding steps occur. Trail Tr. at 576:1–7. Yet the Court need not resolve this argument because the last step in the method relies on the completion of the first four steps.

5

The fifth and final step recites the signal data of a user's mobile device having incremented a count showing whether a user has remained or left a specified area, and it serves the mobile device an advertisement or other piece of information. The Claim 1 method's last step teaches "causing at least in part initiation of delivery of a service to the mobile device based on the stationary state." '961 Patent at 37:23–24. The "service" delivered by this step used the preceding steps to determine whether the mobile device should receive that delivery. Even if Google's accused products might have performed each step, this does not change the fact that the steps of Claim 1, read as a matter of . . . logic . . . must be performed in the order written." *Altiris*, 318 F.3d at 1369.

The only question the Court needs to address here is whether that reading is required by the claim language. And while it may be true that the fourth step of Claim 1 is not required to come after the third or second step, the Court finds that logic demands that the first three steps occur in sequence, and the fifth step must occur last. *Id.*; *see also Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1375–76 (Fed. Cir. 1998) (holding that the method requires an sequential order where each step relied on the preceding step's completion); *Loral Fairchild Corp. v. Sony Electronics Corp.*, 181 F.3d 1313, 1321 (Fed. Cir. 1999) (finding a first step of a method must occur before the second because the second step required the alignment of a second structure with a first structure formed by the prior step). The outcome of this motion is resolved no matter where in the order the fourth step must occur. *See infra* Part IV.C; *see also Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."). Claims 4, 5, and 9, are dependent method claims which depend on Claim 1. The Court finds that the ordering requirement is also present from a plain reading of each of the asserted dependent method claims.

Under the test articulated in *Altiris,* the first part of the test controls when the claim language itself requires the method to be performed in order. *Altiris*, 318 F.3d at 1369 (citing *Interactive Gift*, 256 F.3d at 1342-43). Thus, analysis of the specification is not controlling in the Cout's ruling here. For ease of understanding, however, below is an illustrative figure of the method:



Figure 3 shows the steps of the method as an ordered flow chart. But the specification includes boilerplate language that would seem to contradict this Court's ruling: "Although particular steps are shown in FIG. 3 and subsequent flowcharts (FIG. 4, FIG. 5, FIG. 6A and FIG. 7A) in a particular order for purposes of illustration, in other embodiments one or more steps are omitted or performed in a different order or overlapping in time[.]" Nonetheless, this Court is bound to

enforce the plain meaning of the claims, and only look to the specification where it finds ambiguity. *Altiris*, 318 F.3d at 1369. Here, Claim 1 unambiguously teaches a sequential order.

During the JMOL hearing, WSOU argued requiring the claim to be read sequentially was a problem of perspective. Trial Tr. at 569:17–20 (WSOU's counsel arguing, "Google is viewing the claim from the perspective of the individual user. [WSOU] view[s] the claim from the perspective of Google up at the server level."). WSOU went on to explain that its infringement theory was one that viewed the method as being performed "in aggregate" and without a particular sequence requirement. *Id*. at 568:19–20. For instance, WSOU argued that the first step of Claim 1—"causing at least in part receiving of a signal"—could be performed either from the mobile device or the server sending the signal. *Id. at* 570:4–21. Yet the Court is not persuaded that reading the claims logically depends on the perspective from which they are performed. Even if this step could be read in way that the sever-side is "causing at least in part" receipt of signals, it still follows that no determination of the mobile device location can occur before such signal is caused to be received. Without further reiterating the explanation of the steps above and the requirement they be read in order, it suffices to say that even WSOU agrees that the method requires at least some order to be read logically. WSOU's counsel rhetorically asked "[n]ow, as a matter of basic logic… do some of the actions in the earlier elements have to happen before some of the actions in the later elements?" to which he replied "Yes. That is correct." *Id*. at 568:9–15.

### B. Apparatus Claims 11 and 14

The Court finds that the asserted apparatus Claims 11 and 14 also teach a device that is configured to perform the same steps in the same order found in the method claims discussed above. Claim 11 recites an apparatus that includes "at least one processor, and at least one memory including computer instructions[.]" '961 Patent at 38:13–17. Claim 11 then recites the steps

8

contemplated in Claim 1 almost verbatim. Nothing in the language of apparatus Claims 11 or 14 indicate that the recited steps could be performed in a manner other than in sequential order. WSOU's argument against that reading is the same as the one mentioned above: "Again, from the perspective of the single user/single transaction reading of the claim that Google urges and apparently the Court adopts, we would say the same thing. . . . [T]hat is not the case we tried." Trial Tr. at 629:25, 630:1–4. The Court finds that Claims 11 and 14 also require sequential performance as a matter of logic and plain reading.

### C.  Judgment as a Matter of Law for Non-Infringement

Because of the ordering requirements discussed above, the Court finds that WSOU failed to present evidence sufficient to support a jury verdict that Google's accused products infringe the method of Claim 1. WSOU's infringement case was explained though the testimony of Dr. Tamas Budavári—a qualified expert witness. His testimony was devoid of any opinion that Claim 1 is performed by Google's accused products in the order it is written. But Dr. Budavári did acknowledge the ordering requirement was necessary if Google's accused products infringed. Budavári was asked on cross-examination:

> Q: Now, you have to do the steps like they're claimed in order to infringe, right?
> A. Yes.
> . . . .
> Q. Okay. If you don't do the steps that are claimed in the order—if there's an order set forth, if you don't do them in that order, do you infringe?
> A. I don't think so.

Trial Tr. 280:1–14.

Indeed, once the Court informed the parties that it decided the ordering issue above, WSOU's Counsel informed the Court "we have not put on evidence about the method steps being performed in order [a] through [e]. That is not the case we tried." Trial Tr. at 628:15–18.

While WSOU did introduce evidence that Google's accused products performed steps of the method, its case lacked any evidence to show that the steps were performed in the order required by a plain reading of the claims. After drawing all reasonable inferences for WSOU, the Court finds that there was not a legally sufficient basis for a reasonable jury to find infringement. Fed. R. Civ. P. 50(a).

### D. Conclusion

The Court regrets this claim construction issue could not be resolved until after WSOU rested its case at trial, and WSOU's objection to the timeliness of this decision is understandable. Trial Tr. at 636:8–14. Still, WSOU was on notice that Google's non-infringement contentions included the argument that the steps of the asserted claims must be performed in the order they are written in. The jury would have unavoidably been confronted by this ordering problem had this motion been denied, and it is not the province of the jury to decide issues of claim construction. *O2 Micro*, 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."); *TNS Media Rsch., LLC v. Tivo Rsch. & Analytics, Inc.*, 629 F. App'x 916, 938 (Fed. Cir. 2015) ("Generally, when a determinative claim construction dispute arises, a district court must resolve it."). For the reasons above, the Court **GRANTS** Google's Rule 50(a) Motion for Judgment as a Matter of Law on all claims of infringement alleged. All other relief not expressly granted is denied.

SIGNED this 6th day of December, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE